# EX. 4

# SCHEDULE A

## DEFINITIONS

The definitions and instructions set forth in the Federal Rules of Civil Procedure and the applicable Local Rules are adopted and treated as if fully set forth herein. The words and phrases set forth below have the following meanings:

1. "PwC" "You" or "Your" means PricewaterhouseCoopers LLP and all of their subsidiaries, divisions, local, regional, national, international and executive offices and any present or former partners, principals, employees, agents, representatives and attorneys.

2. "Defendant" means Xerox, any Individual Defendant, and any KPMG Defendant, and includes any parent, subsidiaries, segments, divisions, affiliates, successors or predecessors thereof and any person, employee, agent, or representative acting on their behalf.

3. "Governmental Authority" means any state or federal regulatory body or agency responsible for control and supervision over any area of public interest or otherwise responsible for the enforcement of any law, rule or regulation, including but not limited to Governmental Authorities charged with responsibility for criminal investigations and/or prosecutions in the United States or any other country and Governmental Authorities responsible for licensing Certified Public Accountants.

4. "Individual Defendants" means Defendants Paul Allaire ("Allaire"), Richard Thoman ("Thoman"), Barry Romeril ("Romeril"), Philip Fishbach ("Fishbach"), Gregory Tayler ("Tayler"), and Ann Mulcahy ("Mulcahy") and any person, employee, agent, or representative acting on their behalf.

5. "Xerox" or the "Company" means Xerox Corporation. and includes any parent, subsidiaries, segments, divisions, affiliates, successors, or predecessors thereof and any present and former officers, directors, employees, agents, representatives, or other persons (as defined below) acting or purporting to act on behalf of Xerox, including its parents, subsidiaries, segments, divisions, affiliates, successors, or predecessors.

6. "KPMG" means KMPG LLP and all of their subsidiaries, divisions, local, regional, national, international and executive offices and any present or former partners, principals, employees, agents, representatives and attorneys.

7. "SEC" means the United States Securities and Exchange Commission and any person, employee, agent, or representative acting on its behalf.

8. "Financial Statements" mean, but are not limited to, the following (whether audited or unaudited, and whether final, interim, pro forma, complete, or partial): consolidated and non-consolidated balance sheets; statements of earnings, additional paid-in capital, retained earnings, or cash flows (or source and application of funds); cash-flow projections; notes to each of such statements; and any other statements and notes that pertain to Xerox's past or present financial condition, including accountants' work papers.

9. "Person" or "persons" refer to any natural person or any business, legal, or government entity or association.

10. "Agent" shall mean any agent, employee, partner, member, officer, director, attorney, consultant, independent contractor, or any other person acting at the direction of or on behalf of another.

11. "Plaintiff(s)" and "Defendant(s)," as well as a party's full or abbreviated name or a pronoun referring to a party, mean the party and, where applicable, its officers, directors,

employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

12. The following rules of construction apply to all discovery requests.

    (a) the use of the singular form of any word includes the plural and vice versa;

    (b) the term "including" means "including but not limited to"; and

    (c) "his" includes his, hers, and its, and "he" includes he, she and it.

13. "Employee" refers to any individual currently in the employ of, or at any time employed by, You.

14. "Communication" shall mean any oral, electronic, digital or written utterance, notation, or statement of any nature whatsoever, by or whomever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings between or among two or more persons in whatever form or format.

15. "Meeting" means the contemporaneous presence of any natural persons, whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity.

16. "GAAP" means Generally Accepted Accounting Principles as applied under the United States accounting standards.

17. "Engagement" refers to:

    a. PwC's retention by or on behalf of Xerox to provide assistance in gathering and analyzing facts in connection with the investigation initiated by Xerox and or the Company's Board of Directors in connection with the Company's business and accounting practices that were subject to the formal investigation conducted by the SEC and this Action and to consider Xerox's compliance with generally accepted accounting principles;

      b. PwC's retention by or on behalf of Xerox to provide assistance in gathering and analyzing facts in connection with the investigation of the Company's business operations and internal controls in Mexico (the "Investigation")

      18. "Audit Program" consists of all documents setting forth the expected conduct and scope of any Engagement or used for the purpose of detailing for PwC the procedures necessary to accomplish the objectives of any Engagement, including engagements performed in accordance with the requirements set forth in AICPA Professional Standards, §§ 311.03-05, or any other professional standards, and encompasses PwC's proprietary materials utilized to document performance of procedures on any Engagement.

      19. "Management Letter" or "Report" refers to (1) any document(s) generated by PwC for the purpose of identifying misstatements in, or omissions from, Financial Statements issued or prepared by Xerox; (2) any documents identifying the reasons for such misstatements and/or omissions as well as the person(s) responsible for such misstatements and/or omissions; and (3) any documents recommending changes or improvements in accounting procedures and controls or other business operation of Xerox, in connection with any Engagement.

## INSTRUCTIONS

      1. If any responsive document is withheld in whole or in part for any reason, including but not limited to any claim of privilege, confidentiality, or trade secret, set forth separately with respect to each such document: (a) the type of document (i.e., letter, memorandum, etc.); (b) the author(s) of the document; (c) the addressee(s) of the document; (d) the date of the document; (e) the identity of all persons having received copies of the document, having seen the document, or to whom the document was disclosed; (f) the subject matter of the

document; (g) a brief statement or synopsis of the matters dealt with in the document or the circumstances surrounding the making of the document; and (h) the nature of the privilege or other rule relied on in withholding production of the document.

2. If a portion of any responsive document is protected from disclosure by privilege, work product, or otherwise, such document must be produced with redaction of only the portion claimed to be protected.

3. If any responsive document was, but no longer is in the possession or subject to the control of the responding party, state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance explain the circumstances surrounding such loss, destruction, transfer, or disposition thereof, and state the date or approximate date thereof.

## RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant period is from February 17, 1998 to the present ("Relevant Period") and shall include all documents and information that relate in whole or in part to the Relevant Period, or to events or circumstances during such period, even though dated, prepared, generated or received prior to or subsequent to that period.

## DOCUMENT REQUESTS

1. All documents concerning the engagement of PwC by Xerox in connection with any investigation of accounting or business practices at Xerox including but not limited to:

    (a) working papers, including an index and legend that describes the referencing system and abbreviations used in the working papers;

    (b) permanent file, including intra-office memoranda, memoranda of telephone conversations, personal conversations, meetings and conferences;

5

(c) Charts of accounts with a description of the use of each account;

(d) documents relating to and resulting from PwC's review and/or investigation of Xerox's accounting practices;

(e) general correspondence files, intra-office and interoffice memoranda and correspondence;

(f) Engagement letters, including any document describing conditions or limitations placed upon any Engagement;

(g) Management Letters or Reports reporting on Xerox's internal controls or any other matter;

(h) Representation letters including, but not limited to, those from Xerox's legal counsel and from Xerox's management;

(i) all interviews or discussions conducted with Xerox employees in connection with any Engagement;

(j) all communications between PwC and the Individual Defendants concerning the scope and findings of any work performed by PwC on behalf of Xerox;

(k) audit programs used in any Engagement including any additions, deletions, substitutions, or amendments thereto, and any document reflecting the reason for any such event;

(l) names, titles, and last known addresses of all persons associated with each Engagement showing the lines of authority and responsibility;

(m) reports, special reports and studies, informal memoranda, management advisory service reports, recommendations or advice to Xerox's management, or any other person or entity on whose behalf any Engagement is performed; and

    (n)  point sheets, findings, memoranda for the attention of partners or any other writing designated to highlight or analyze points that arise during any Engagement.

    2.  All documents concerning the scope of PwC's engagement and professional services provided to Xerox in connection with the investigation of accounting or business practices at Xerox.

    3.  All documents and communications concerning Xerox's compliance with GAAP reviewed or prepared by PwC in connection with any Engagement.

    4.  All documents sent, received, reviewed or generated by PwC in connection with any investigation of accounting or business practices at Xerox including but not limited to Xerox's methodology for lease accounting.

    5.  All documents and communications sent, received, reviewed or generated between PwC and KPMG regarding this Litigation or Xerox.

    6.  All documents concerning any communications with legal counsel for Xerox.

    7.  All documents filed, delivered, or received, including deposition transcripts, concerning any formal or informal SEC or Governmental Authority investigations in connection with any litigation against Xerox or any Defendant.

    8.  All documents filed, delivered, or received, including deposition transcripts and documents produced in connection with any litigation against Xerox or any Defendant concerning Xerox in any jurisdiction, including but not limited to <u>Securities and Exchange Commission v. KPMG LLP, et al</u>, Civil File Number 03 Civ. 671 (DLC) (S.D. N.Y.).

    9.  All documents concerning communications and/or meetings between any Engagement team/office and any regional and/or national office employees of PwC concerning Xerox, whether or not made prior to, concurrent with, and/or subsequent to any Engagement.

10.     All documents concerning Your filing and record keeping system and Your document preservation or destruction policy during the Relevant Period.