## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUSSELL CARLSON, Individually And On
Behalf Of All Others Similarly Situated,

Plaintiffs,

v.

XEROX CORPORATION, KPMG LLP,
PAUL A. ALLAIRE, G. RICHARD THOMAN,
ANNE MULCAHY, BARRY D. ROMERIL,
GREGORY TAYLER AND PHILIP FISHBACH

Defendants.

3:00-CV-1621 (AWT)

This document relates to:

| | | |
|---|---|---|
| 00-cv-01758 | 00-cv-01908 | 01-cv-00449 |
| 00-cv-01779 | 00-cv-01916 | 01-cv-00497 |
| 00-cv-01792 | 00-cv-01967 | 01-cv-00583 |
| 00-cv-01795 | 00-cv-02029 | 01-cv-00584 |
| 00-cv-01824 | 01-cv-00244 | 01-cv-00591 |
| 00-cv-01846 | 01-cv-00285 | 01-cv-00614 |
| 00-cv-01883 | 01-cv-00341 | |

## XEROX DEFENDANTS' ANSWER TO PLAINTIFFS' THIRD
## CONSOLIDATED AMENDED COMPLAINT

Defendants Xerox Corporation ("Xerox" or the "Company"), Paul A. Allaire, G.

Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler and Philip Fishbach (the

"Individual Defendants", and together with Xerox, the "Xerox Defendants"), upon personal

knowledge and/or upon information and belief, answer Plaintiffs' Third Consolidated Amended

Complaint, dated August 7, 2002 (the "Complaint"), as follows:

1.    Deny the averments of paragraph 1, except admit that Business Week

published an article concerning Xerox on March 5, 2001, and refer to that article for its contents,

and refer to Xerox's publicly filed financial statements for the contents thereof and to the public

record for data concerning Xerox's market share and financial performance during the 1990s.

2.    Admit the averments of the first sentence of paragraph 2.  Deny the

remaining averments of paragraph 2, except admit that Business Week published an article

concerning Xerox on March 5, 2001, and refer to that article for its contents, and refer to Xerox's publicly filed Forms 10-Q for the contents thereof.

3.    Deny the averments of the first sentence of paragraph 3. Deny the remaining averments of paragraph 3, except admit that Xerox restated and revised certain financial results in a Form 10-K for the year-end 2000 filed with the Securities and Exchange Commission ("SEC") on June 7, 2001, and further admit that Xerox restated and revised certain financial results in a Form 10-K for the year-end 2001 filed with the SEC on June 28, 2002, and refer to those Forms 10-K for the contents thereof.

4.    Deny the averments of paragraph 4, except admit that the SEC filed a complaint against Xerox in the United States District Court for the Southern District of New York ("SEC complaint") in April 2002 and refer to that complaint for its contents, admit that in April 2002 a Consent and Undertaking was entered between Xerox and the SEC with respect to the SEC complaint ("Xerox Consent"), and refer to the Xerox Consent for its contents, admit that Wells Notices were sent to defendants Allaire and Romeril and refer to those notices for the contents thereof, and state that they are without knowledge or information sufficient to form a belief as to whether Michael Conway received a Wells Notice.

5.    Deny the averments of the first sentence of paragraph 5. Deny the remaining averments of paragraph 5, except admit that Federal Reserve Chairman Alan Greenspan testified before the U.S. Senate Committee on Banking, Housing, and Urban Affairs on July 16, 2002, and refer to a transcript of his testimony for its contents.

6.    Deny the averments of paragraph 6, except admit that the SEC issued a press release designated 2002-52 concerning Xerox on April 11, 2002, and admit that the

Washington Post published an article concerning Xerox on June 29, 2002, and refer to those documents for the contents thereof.

   7. Deny the averments of paragraph 7, except admit that Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by the Xerox Defendants, and violations by KPMG of Section 10(b) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and state that no response is required to footnote 1.

   8. Deny the averments of paragraph 8 and refer to the SEC complaint for its contents.

   9. Deny the averments of paragraph 9 and refer to the SEC complaint for its contents.

   10. Deny the averments of the first sentence of paragraph 10.  Deny the averments of the second sentence of paragraph 10, except admit that the SEC issued a release designated 2002-52 on April 11, 2002, and refer to that release for its contents.  Deny the remaining averments of paragraph 10, except admit that Federal Reserve Chairman Alan Greenspan testified before the U.S. Senate Committee on Banking, Housing, and Urban Affairs on July 16, 2002, and refer to a transcript of his testimony for its contents.

   11. Deny the averments of the first two sentences of paragraph 11, except admit that the Company filed a Form 10-K with the SEC on June 28, 2002, in which it restated and revised certain financial results, and refer to that filing for its contents.

   Deny the averments of the first subparagraph of paragraph 11, except admit that the Company issued a press release in June 2000 regarding an SEC investigation into accounting issues at Xerox's Mexican operations and refer to that

3

release for its contents, and refer to the public record for Xerox's public statements

concerning the SEC's investigation into accounting issues at Xerox's Mexican

operations.

Deny the averments of the second subparagraph of paragraph 11, except

admit that the Company issued a press release on February 1, 2001, and refer to that press

release for its contents.

Deny the averments of the first sentence of the third subparagraph of

paragraph 11, except admit that the Wall Street Journal published an article concerning

Xerox on February 6, 2001, and refer to that article for its contents. Deny the averments

of the second sentence of the third subparagraph of paragraph 11, except refer to the

public record for the Company's public statements regarding the February 6, 2001, Wall

Street Journal article.

Deny the averments of the fourth subparagraph of paragraph 11, except

admit that Xerox issued a press release on April 2, 2001, and refer to that press release

for its contents.

Deny the averments of the fifth and sixth subparagraphs of paragraph 11,

except admit that the Company filed a Form 8-K with the SEC on May 31, 2001, in

which it restated and revised certain financial results for the years-end 1998 and 1999 and

adjusted certain financial results for the year-end 2000, and refer to that filing for its

contents. With respect to the sixth subparagraph of paragraph 11, also refer to the SEC

complaint for its contents.

Deny the averments of the seventh subparagraph of paragraph 11, except admit that the Company filed a Form 8-K with the SEC on January 7, 2002, and refer to that filing for its contents.

Deny the averments of the first sentence of the eighth subparagraph of paragraph 11, including the averments contained in footnote 2, except admit that the SEC issued a press release designated 2002-52 on April 11, 2002, and admit that Xerox filed a Form 10-K for the year-end 2001 on June 28, 2002, in which it restated and revised certain financial results and refer to those materials for the contents thereof. Deny the averments of the second sentence of the eighth subparagraph of paragraph 11, except admit that the SEC complaint was filed on April 11, 2002, and refer to the SEC complaint for its contents. Deny the averments of the third sentence of the eighth subparagraph of paragraph 11, except admit that Xerox issued a press release on April 11, 2002, and refer to that press release for its contents. Deny the averments of the final sentence of the eighth subparagraph of paragraph 11, except refer to the public record for the contents of public reports concerning whether Wells Notices were sent to defendants Allaire, Romeril and KPMG, and Michael Conway of defendant KPMG.

Deny the averments of the first sentence of the final subparagraph of paragraph 11, except admit that the Company filed a Form 10-K for the year-end 2001 on June 28, 2002, in which it restated and revised certain financial results and refer to that Form 10-K for its contents. Deny the remaining averments of the final subparagraph of paragraph 11, except state that they are without knowledge or information sufficient to form a belief as to whether certain comments were made by Harvey Pitt as alleged in the final subparagraph of paragraph 11.

12.    Deny the averments of the first sentence of paragraph 12.

Deny the averments of the first subparagraph of paragraph 12 and refer to the SEC complaint for its contents.

Deny the averments of the second subparagraph of paragraph 12.

Deny the averments of the third subparagraph of paragraph 12, including the averments of footnote 3, except admit that the law firm of Akin, Gump, Strauss, Hauer & Feld ("Akin Gump") was retained by the Audit Committee of the Xerox Board of Directors ("Audit Committee") to conduct an independent investigation of accounting issues in Mexico, and that Akin Gump engaged members of PricewaterhouseCoopers to assist in the investigation on behalf of the Audit Committee, and admit that Xerox filed proxy statements with the SEC on July 13, 2001, and July 3, 2002, and refer to those filings for the contents thereof.

Deny the averments of the final subparagraph of paragraph 12, except admit that Ronald Safran provided sworn testimony before the staff of the SEC pursuant to a subpoena in March 2001, and admit that Xerox restated and revised certain financial results in a Form 10-K filed with the SEC on June 7, 2001, and refer to that Form 10-K for its contents.

13.    Deny the averments of paragraph 13.

14.    Deny the averments of paragraph 14, except admit that the SEC complaint was filed in April 2002 and refer to the SEC complaint for its contents.

15.    Deny the averments of paragraph 15, except admit that the SEC complaint was filed in April 2002 and refer to the SEC complaint for its contents.

16.    Deny the averments of paragraph 16, except refer to the public record for the per share price of Xerox common stock during the period from February 17, 1998, through June 28, 2002.

17.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 17, except deny the averments of paragraph 17 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants.

18.    Admit the averments of paragraph 18.

19.    Deny the averments of paragraph 19, except admit that Plaintiffs purport to assert claims pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated under § 10(b) by the SEC (17 C.F.R. § 240.10b-5).

20.    Deny the averments of paragraph 20, except admit that Xerox maintained its executive offices and principal place of business within the District of Connecticut during the period from February 17, 1998, through June 28, 2002, and that venue is proper in the United States District Court for the District of Connecticut.

21.    Deny the averments of paragraph 21.

22.    Deny the averments of paragraph 22, except state that they are without knowledge or information sufficient to form a belief as to the truth of the averments that plaintiffs Louisiana State Employees' Retirement System, Paul Dantzig, and Thomas Zambito purchased Xerox common stock during the period from February 17, 1998, through June 28, 2002, and admit that on January 4, 2002, the Court entered a superceding order appointing Louisiana State Employees' Retirement System, Paul Dantzig and Thomas Zambito Lead Plaintiffs.

7

23.     Deny the averments of paragraph 23, except state that they are without knowledge or information sufficient to form a belief as to the truth of the averments that plaintiffs SOUTHBank-FSB and Alvin Feder purchased Xerox bonds during the period from February 17, 1998, through June 28, 2002.

24.     Admit the averments of paragraph 24.

25.     Admit the averments of the first and third sentences of paragraph 25. With respect to the second sentence of paragraph 25, state that they are without knowledge or information sufficient to form a belief as to whether the market for Xerox's common stock was open, well-developed, and efficient during the period from February 17, 1998, through June 28, 2002.

26.     Admit the averments of the first two sentences of paragraph 26(a), except deny that defendant Allaire served on the Board of Directors after December 31, 2001. Admit the averments of the first sentence of paragraph 26(b). Admit the averments of the first sentence of paragraph 26(c), except deny that defendant Romeril served on the Board of Directors or as Vice Chairman after December 31, 2001. Admit the averments of the first sentence of paragraph 26(d). Admit the averments of paragraph 26(e), except deny that defendant Tayler served as Treasurer after September 27, 2002. Admit the averments of the first, third and fourth sentences of paragraph 26(f), except state that defendant Mulcahy was President of the General Markets Organization from January 1999 through May 11, 2000, and deny that defendant Mulcahy served as CEO prior to August 1, 2001. Except as so admitted, deny the averments of paragraphs 26 and 26(a) through 26(f), and refer to publicly available materials filed with the SEC for the relevant time period for information concerning the Individual Defendants' stock sales, compensation and bonuses as well as Xerox's executive compensation policies.

8

27.    Decline to respond to the averments of the first sentence of paragraph 27 as they in part call for a legal conclusion to which no response is required, except deny the averments of the first sentence of paragraph 27 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants. Deny the averments of the second and third sentences of paragraph 27, except admit that each of the Individual Defendants was responsible, at various times, for managing some portion of Xerox's operations, and admit that one or more of the Individual Defendants was or were involved in the drafting and reviewing of one or more publicly filed financial statements during the period from February 17, 1998, through June 28, 2002.

28.    Decline to respond to the averments of paragraph 28 as they in part call for a legal conclusion to which no response is required, except deny the averments of paragraph 28 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, deny that each of the Individual Defendants was provided with each of the documents referenced herein, and admit that one or more of the Individual Defendants was or were provided with one or more of the financial statements or documents referenced herein during the period from February 17, 1998, through June 28, 2002.

29.    Decline to respond to the averments of paragraph 29 as they in part call for a legal conclusion to which no response is required, except deny the averments of paragraph 29 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants.

30.    Deny the averments of paragraph 30, except admit that one or more of the Individual Defendants participated in the drafting, preparation, and/or approval of one or more of the various public, shareholder and investor reports and other communications referenced herein or portions thereof.

31.    Admit the averments of the first, second and fifth sentences of paragraph 31. Deny the averments of the third sentence of paragraph 31, except admit that KPMG has an office located at 3001 Summer Street, Stamford, Connecticut 06905, and state that they are without knowledge or information sufficient to form a belief as to the number of offices that KPMG maintains in the United States. Deny the averments of the fourth sentence of paragraph 31, deny the averments of the fourth sentence of paragraph 31 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, and state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

32.    Deny the averments of paragraph 32.

33.    Deny the averments of paragraph 33.

34.    Deny the averments of paragraph 34, except admit that Xerox often charges its lease customers a single monthly fee as payment for the various portions of an equipment lease transaction which can include payments for the use of Xerox equipment, financing charges, service plans, and/or supplies for use with Xerox equipment, and refer to Xerox's publicly filed financial statements for data concerning the percentage of Xerox's business that resulted from various types of lease transactions during the relevant time period.

35.    Decline to respond to the averments of paragraph 35 as they in part call for a legal conclusion to which no response is required and refer to Statement of Financial Accounting Standards No. 13 ("SFAS 13") for its contents.

36.    Deny the averments of paragraph 36, except admit that Xerox issued a press release on June 16, 2000, and refer to that press release for its contents, and admit that Xerox held a teleconference with analysts on June 16, 2000, and refer to a transcript of that teleconference for its contents.

37.    Deny the averments of the first sentence of paragraph 37, except refer to the public record for the per share price of Xerox common stock on June 16, 2000.  State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the second sentence of paragraph 37.  Deny the averments of paragraphs 37(a) and 37(b), except admit that <u>Dow Jones Business News</u> and the <u>Wall Street Journal</u> published articles concerning Xerox on June 16, 2000, and June 19, 2000, respectively, and refer to those reports for the contents thereof.

38.    Deny the averments of paragraphs 38 and 38(a) through 38(c), except admit that PaineWebber and JPMorgan issued analyst reports concerning Xerox on June 16, 2000, and June 19, 2000, respectively, and refer to those reports for the contents thereof, refer to the public record for the contents of contemporaneous public reports concerning Xerox, and state that they are without knowledge or information sufficient to form a belief as to whether Merrill Lynch issued an analyst report concerning Xerox on June 20, 2000, as described in paragraph 38(c).

39.    Deny the averments of paragraph 39, except admit that Xerox issued a press release on June 29, 2000, and refer to that press release for its contents, and refer to the public record for the per share price of Xerox common stock on June 29, 2000.

40.    Deny the averments of paragraph 40, except admit that Xerox issued a press release on July 26, 2000, and refer to that press release for its contents.

41.    Deny the averments of paragraph 41, except refer to the public record for the per share price of Xerox common stock on July 26, 2000, and the trading volume of Xerox common stock on July 25 and 26, 2000.

42.    Deny the averments of the first sentence of paragraph 42, except refer to the public record for the contents of contemporaneous press reports concerning Xerox. Deny the averments of paragraph 42(a), except admit that CNNfn anchor Kathy Pilgrim and CNNfn correspondent Allan Dodds Franks discussed Xerox during a broadcast on July 26, 2000, and refer to a transcript of that broadcast for its contents. Deny the averments of paragraph 42(b), except admit that CNNfn anchor Rhonda Schaffler discussed Xerox with CNNfn Stocks Editor Greg Clarkin during a July 26, 2000, broadcast of CNNfn Morning Market Coverage, and refer to a transcript of that broadcast for its contents.

43.    Deny the averments of paragraph 43, except refer to the public record for the per share price of Xerox common stock on July 27, 2000, admit that the Wall Street Journal published an article concerning Xerox on July 27, 2000, and refer to that article for its contents, and refer to the public record for the contents of other press reports concerning Xerox issued on July 27, 2000.

44.    Deny the averments of paragraph 44, except refer to the public record for the contents of contemporaneous analyst reports concerning Xerox and state that they are without knowledge or information sufficient to form a belief as to whether PaineWebber issued an analyst report concerning Xerox on July 26, 2000, as described in paragraph 44.

45.    Deny the averments of paragraph 45, except refer to the public record for the per share price of Xerox common stock on August 3, 2000, and admit that the National Post's Financial Post and FP Investing (Canada) published an article concerning Xerox on August 3, 2000, and refer to that article for its contents.

46.    Deny the averments of paragraph 46, except admit that the Company filed a Form 8-K with the SEC on October 2, 2000, and refer to that filing for its contents.

47.    Deny the averments of the first two sentences of paragraph 47, except refer to the public record for the per share price of Xerox common stock on October 3, 2000, the trading volume of Xerox common stock on October 2 and 3, 2000, and the contents of contemporaneous public reports concerning Xerox.  Deny the averments of paragraphs 47(a) and 47(b), except admit that Associated Press Online and Dow Jones Business News issued reports concerning Xerox on October 2, 2000, and refer to those reports for the contents thereof.

48.    Deny the averments of paragraph 48, except admit that Fitch issued a release concerning Xerox on October 13, 2000, and refer to that release for its contents, and state that they are without knowledge or information sufficient to form a belief as to whether the Wall Street Journal published an article concerning Xerox on October 16, 2001, as described in paragraph 48.

49.    Deny the averments of paragraph 49, except state that Xerox restated and revised certain financial results in a Form 10-K for the year-end 2000 filed with the SEC on June 7, 2001, and further admit that the Company restated and revised certain financial results in a Form 10-K for the year-end 2001 filed with the SEC on June 28, 2002, and refer to those Forms 10-K for the contents thereof, and refer to the public record for the per share price of Xerox common stock on October 13 and 16, 2000.

50.    Deny the averments of the first three sentences of paragraph 50, except admit that the Company issued press releases on October 2, 2000, and October 24, 2000, and refer to those press releases for the contents thereof.  Deny the averments of the final sentence of paragraph 50, except refer to the public record for the per share price of Xerox common stock on October 24, 2000.

51.    Deny the averments of the first sentence of paragraph 51, except refer to the public record for the contents of contemporaneous public reports concerning Xerox, and state that they are without knowledge or information sufficient to form a belief as to whether such reports affected Xerox's stock price. Deny the remaining averments of paragraph 31, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on October 25, 2000, and refer to that article for its contents.

52.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 52, except refer to the public record for the per share price of Xerox common stock on October 25, 2000.

53.    Deny the averments of paragraphs 53 and 53(a) through 53(g), except admit that the Company issued press releases on June 29, 2000, October 24, 2000, and February 1, 2001, that PaineWebber issued an analyst report concerning Xerox on October 25, 2000, that Xerox filed Forms 10-Q with the SEC on August 14, 2000, and November 14, 2000, and refer to those documents for the contents thereof.

54.    Deny the averments of paragraph 54, except admit that the Company issued a press release on February 1, 2001, and refer to that press release for its contents.

55.    Deny the averments of paragraph 55, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

56.    Deny the averments of paragraph 56, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

57.     Deny the averments of paragraph 57, except admit that the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

58.     Deny the averments of paragraph 58, except admit that the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

59.     Deny the averments of paragraph 59, except admit that the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

60.     Deny the averments contained of paragraph 60, except admit that the <u>Wall</u> <u>Street Journal</u> published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

61.     Deny the averments of paragraph 61, except admit that the <u>Wall Street</u> <u>Journal</u> and <u>Associated Press Online</u> issued reports concerning Xerox on February 6, 2001, and refer to those reports for the contents thereof.

62.     Deny the averments of paragraph 62, except admit that the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on February 7, 2001, and refer to that article for its contents.

63.     Deny the averments of paragraph 63, except refer to the public record for the contents of contemporaneous public reports concerning Xerox and admit that <u>Dow Jones</u> <u>Business News</u> issued a report concerning Xerox on February 6, 2001, and refer to that report for its contents.

64.    Deny the averments of paragraph 64, except admit that <u>Dow Jones Business News</u> issued a report concerning Xerox on February 7, 2001, and refer to that report for its contents, and refer to the public record for additional contemporaneous press reports concerning Xerox.

65.    Deny the averments of paragraph 65, except admit that the <u>New York Times</u> published an article concerning Xerox on February 9, 2001, and refer to that article for its contents.

66.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 66.  Deny the remaining averments of paragraph 66, except admit that Morgan Keegan issued an analyst report concerning Xerox on February 6, 2001, and refer to that report for its contents.

67.    Deny the averments of paragraph 67, except admit that Credit Suisse First Boston ("CSFB") issued an analyst report concerning Xerox on February 8, 2001, and refer to that report for its contents.

68.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 68, except deny the averments of paragraph 68 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, including deny the averments that Xerox issued "false denials", and refer to the public record for the per share price of Xerox common stock on February 6 and 7, 2001.

69.    Deny the averments of paragraph 69, except admit that the Company issued a press release on April 2, 2001, and refer to that press release for its contents.

70.    Deny the averments of paragraph 70, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on April 3, 2001, and refer to that article for its contents.

71.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 71.  Deny the remaining averments of paragraph 71, except admit that Standard and Poor's issued a report concerning Xerox on April 3, 2001, admit that the <u>Wall Street Journal</u> published an article concerning Xerox on April 4, 2001, and refer to those reports for the contents thereof, and refer to the public record for the per share price of Xerox common stock on April 3, 2001.

72.    Deny the averments of paragraph 72, except admit that <u>USA Today</u> published an article concerning Xerox on April 4, 2001, and refer to that article for its contents.

73.    Deny the averments of paragraph 73, except refer to the public record for the contents of contemporaneous analyst reports concerning Xerox, and admit that the <u>Wall Street Journal</u> published an article concerning Xerox on April 3, 2001, and refer to that article for its contents.

74.    Deny the averments of paragraph 74, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on April 3, 2001, and refer to that article for its contents.

75.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 75, except deny the averments of the first sentence of paragraph 75 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, including the averments that Xerox issued "false assurances".  Deny the remaining averments of paragraph 75, except admit that Salomon Smith

Barney issued an analyst report concerning Xerox on April 16, 2001, and refer to that report for its contents.

76.    Deny the averments of paragraph 76, except admit that UBS Warburg issued an analyst report concerning Xerox on April 20, 2001, and refer to that report for its contents.

77.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 77, except refer to the public record for the per share price of Xerox common stock on April 20, 2001.

78.    Deny the averments of the first sentence of paragraph 78, except admit that the Company announced its preliminary financial results for the year-end 2000 on April 19, 2001, prior to the date on which it filed its Form 10-K for the year-end 2000 with the SEC. Deny the averments of the second sentence of paragraph 78, except refer to the public record for the per share price of Xerox common stock on April 19, 2001, and the trading volume of Xerox common stock on April 18 and 19, 2001. Deny the remaining averments of paragraph 78, except admit that the Wall Street Journal published an article concerning Xerox on April 20, 2001, and refer to that article for its contents.

79.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 79. State that they are without knowledge or information sufficient to form a belief as to whether Salomon Smith Barney issued an analyst report concerning Xerox on April 20, 2001, as described in paragraph 79.

80.    Deny the averments of paragraph 80, except admit that <u>Dow Jones</u> <u>Business News</u> issued a report concerning Xerox on May 22, 2001, and refer to that report for its contents.

81.    Deny the averments of paragraph 81, except state that they are without knowledge or information sufficient to form a belief as to whether the <u>Wall Street Journal</u> published an article concerning Xerox on May 22, 2001, as described in paragraph 81, and refer to the public record for the contents of contemporaneous public reports concerning Xerox.

82.    Deny the averments of the first sentence of paragraph 82 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, including the averments of "false statements", and refer to the public record for the contents of contemporaneous analyst reports concerning Xerox.  Deny the remaining averments of paragraph 82, except state that they are without knowledge or information sufficient to form a belief as to whether the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on May 22, 2001, as described in paragraph 82.

83.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 83, except refer to the public record for the per share price of Xerox common stock on May 22, 2001.

84.    Deny the averments of paragraph 84, except admit that on May 31, 2001, the Company filed a Form 8-K with the SEC in which it restated and revised certain financial results, and refer to that filing for its contents.

85.    Deny the averments of paragraph 85, except admit that the Company issued a press release on May 31, 2001, and admit that the Company filed a Form 10-K for the year-end 2000 with the SEC on June 7, 2001, and refer to those documents for the contents thereof.

86.    Deny the averments of paragraph 86, including those contained in the chart referenced in paragraph 86, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

87.    Deny the averments of paragraph 87, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

88.    Deny the averments of paragraph 88, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

89.    Deny the averments of paragraph 89, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

90.    Deny the averments of paragraph 90, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

91.    Deny the averments of paragraph 91, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

92.    Deny the averments of the first sentence of paragraph 92, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.  Deny the averments of the second sentence of paragraph 92, except state

that they are without knowledge or information sufficient to form a belief as to whether Adriana Rios made the statements attributed to her in paragraph 92.

93.    Deny the averments of paragraph 93, except admit that Xerox restated and revised certain financial results in a Form 8-K filed with the SEC on May 31, 2001, and in a Form 10-K filed with the SEC on June 7, 2001, and refer to those filings for the contents thereof.

94.    Deny the averments of paragraph 94.

95.    Deny the averments of paragraph 95, except decline to respond to the averments of the second sentence of paragraph 95 as they in part call for a legal conclusion to which no response is required and refer to Statement of Financial Accounting Standards No. 5 ("SFAS 5") for its contents.

96.    Deny the averments of paragraph 96, except admit that Xerox filed a Form 10-K for the year-end 2000 with the SEC on June 7, 2001, and refer to that filing for its contents.

97.    Deny the averments of paragraph 97.

98.    Deny the averments of paragraph 98, except admit that the SEC has issued public statements concerning the establishment of acquisition reserves and refer to the public record for the contents of any such statements, and admit that former SEC Chairman Arthur Levitt presented a speech entitled "The Numbers Game" at New York University on September 28, 1998, and refer to a transcript of that speech for its contents.

99.    Deny the averments of paragraph 99, except admit that the Chicago Sun-Times published an article concerning Xerox on May 31, 2001, and refer to that article for its contents, and refer to the public record for the contents of contemporaneous public reports concerning Xerox.

100.    Deny the averments of paragraph 100, except admit that the <u>Wall Street</u> <u>Journal</u> published two articles concerning Xerox on June 1, 2001, and refer to those articles for the contents thereof, and refer to the public record for the contents of additional contemporaneous public reports concerning Xerox.

101.    Deny the averments of paragraph 101, except admit that the <u>National</u> <u>Post's Financial Post and FP Investing (Canada)</u> issued a report concerning Xerox on June 1, 2001, and refer to that report for its contents.

102.    Deny the averments of paragraph 102, except refer to the public record for the contents of contemporaneous analyst reports concerning Xerox, and admit that <u>AFX</u> issued a report concerning Xerox on May 31, 2001, and refer to that report for its contents.

103.    Deny the averments of paragraph 103, except admit that CSFB issued an analyst report concerning Xerox on June 1, 2001, and refer to that report for its contents.

104.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 104, except deny the averments of the first sentence of paragraph 104 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants. Deny the averments of the second and third sentences of paragraph 104, except refer to the public record for the per share price of Xerox common stock on May 31 and June 1, 2001.

105.    Deny the averments of paragraphs 105, 105(a), and 105(b), except admit that the <u>Wall Street Journal</u> and the <u>New York Times</u> published articles concerning Xerox on June 1, 2001, and refer to those articles for the contents thereof.

106.    Deny the averments of paragraph 106, except admit that the Company filed a Form 8-K with the SEC on January 7, 2002, and refer to that filing for its contents.

107.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 107 and refer to the public record for the contents of contemporaneous analyst reports concerning Xerox. Deny the remaining averments of paragraph 107, except admit that Lehman Brothers issued an analyst report concerning Xerox on January 7, 2002, and refer to that report for its contents.

108.    Deny the averments of paragraph 108, except admit that Salomon Smith Barney issued an analyst report concerning Xerox on January 8, 2002, and refer to that report for its contents.

109.    State that they are without knowledge or information sufficient to form a belief as to whether Merrill Lynch issued an analyst report concerning Xerox on January 15, 2002, as described in paragraph 109.

110.    Deny the averments of paragraph 110 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, including the averments of "false assurances", and refer to the public record for the per share price and trading volume of Xerox common stock on January 7, 2002.

111.    Deny the averments of the first four sentences of paragraph 111, except admit that Xerox issued a press release on January 28, 2002, and refer to that press release for its contents, and admit that Xerox held a teleconference with analysts on January 28, 2002, and refer to a transcript of that teleconference for its contents. Deny the averments of the final sentence of paragraph 111, except admit that the Wall Street Journal published an article concerning Xerox on January 29, 2002, and refer to that article for its contents.

112.    Deny the averments of paragraph 112, except admit that the Company held a teleconference with analysts on January 28, 2002, and refer to a transcript of that teleconference for its contents.

113.    Deny the averments of paragraph 113, except admit that the Wall Street Journal published an article concerning Xerox on January 29, 2002, and refer to that article for its contents.

114.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 114, and refer to the public record for the contents of contemporaneous analyst reports concerning Xerox. Deny the remaining averments of paragraph 114, except admit that Deutsche Bank Alex. Brown issued a report concerning Xerox on January 29, 2002, and refer to that report for its contents.

115.    Deny the averments of paragraph 115 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, including the averments of "false statements", and refer to the public record for the per share price of Xerox common stock on January 28 and 29, 2002.

116.    Deny the averments of paragraph 116, except admit that Associated Press Online issued a report concerning Xerox on April 1, 2002, and refer to that report for its contents.

117.    Deny the averments of paragraph 117, except admit that Dow Jones Business News issued a report concerning Xerox on April 1, 2002, and refer to that report for its contents.

118.    Deny the averments of paragraph 118, except refer to the public record for the contents of contemporaneous public reports concerning Xerox, and admit that the

Washington Post published an article concerning Xerox on April 2, 2002, and refer to that article for its contents.

119.    Deny the averments of paragraph 119, except admit that the Washington Post published an article concerning Xerox on April 2, 2002, and refer to that article for its contents.

120.    Deny the averments of paragraph 120, except refer to the public record for contemporaneous public reports concerning Xerox and KPMG, and admit that the Wall Street Journal published an article concerning Xerox on April 2, 2002, and refer to that article for its contents.

121.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the first sentence of paragraph 121, except deny the averments of the first sentence of paragraph 121 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants. Deny the remaining averments of paragraph 121, except admit that UBS Warburg and Lehman Brothers issued analyst reports concerning Xerox on April 2, 2002, and refer to those reports for the contents thereof.

122.    Deny the averments of paragraph 122, except refer to the public record for the contents of contemporaneous public reports concerning Xerox and the per share price of Xerox common stock on April 10, 2002, and admit that the Wall Street Journal published an article concerning Xerox on April 10, 2002, and refer to that article for its contents.

123.    Deny the averments of paragraph 123, except admit that the SEC issued two releases concerning Xerox on April 11, 2002, and refer to those releases for the contents thereof.

124.    Deny the averments of paragraph 124, except admit that the SEC filed the SEC complaint on April 11, 2002, and admit that the SEC issued two releases concerning Xerox on April 11, 2002, and refer to those documents for the contents thereof.

125.    Deny the averments of paragraph 125, except admit that Xerox issued a press release on April 11, 2002, and refer to that press release for its contents, and refer to the public record for the contents of contemporaneous public reports concerning Xerox.

126.    Deny the averments of paragraph 126, expect admit that <u>Dow Jones Business News</u> issued a report concerning Xerox on April 11, 2002, and that Xerox issued a press release on April 11, 2002, and refer to those documents for the contents thereof.

127.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 127, except refer to the public record for the per share price of Xerox common stock on April 11, 2002.

128.    Deny the averments of the first sentence of paragraph 128, except admit that the Company held a teleconference with analysts on April 24, 2002, and refer to a transcript of that teleconference for its contents.  State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the second sentence of paragraph 128, except refer to the public record for the per share price of Xerox common stock on April 24, 2002.

129.    Deny the averments of paragraph 129, except admit that Moody's and <u>Dow Jones Business News</u> issued reports concerning Xerox on May 1, 2002, and May 2, 2002, respectively, and refer to those reports for the contents thereof, and refer to the public record for the contents of contemporaneous public reports concerning Xerox and the per share price of Xerox common stock on May 2, 2002.

130.    Deny the averments of paragraph 130, except state that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the second and third sentences of paragraph 130.

131.    Deny the averments of paragraph 131 and refer to the SEC complaint for its contents.

132.    Deny the averments of paragraph 132 and refer to the SEC complaint for its contents.

133.    Deny the averments of paragraph 133, including the averments contained in the chart referenced in paragraph 133, and refer to the SEC complaint for its contents.

134.    Deny the averments of paragraph 134 and refer to SFAS 13 and the SEC complaint for the contents thereof.

135.    Deny the averments of paragraphs 135 and 135(a) through 135(e) and refer to the SEC complaint for its contents.

136.    Deny the averments of paragraphs 136 and 136(a) through 136(e) and refer to the SEC complaint for its contents.

137.    Deny the averments of paragraph 137, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

138.    Deny the averments of paragraph 138, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

139.    Deny the averments of paragraph 139, including those contained in the chart referenced in paragraph 139, except refer to the Company's Forms 10-K for the years-end 1997 through 2001 and the SEC complaint for the contents thereof.

140.    Deny the averments of paragraph 140, including those contained in the chart referenced in paragraph 140, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

141.    Deny the averments of paragraph 141, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

142.    Deny the averments of paragraph 142, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

143.    Deny the averments of paragraph 143, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

144.    Deny the averments of paragraph 144, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

145.    Deny the averments of paragraph 145, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

146.    Deny the averments of paragraph 146, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

147.    Deny the averments of paragraph 147, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

148.    Deny the averments of paragraph 148, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

149.    Deny the averments of paragraph 149, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

150.    Deny the averments of paragraph 150, including the averments contained in footnote 4, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

151.    Deny the averments of paragraph 151, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

152.    Deny the averments of paragraph 152, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

153.    Deny the averments of paragraph 153, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

154.    Deny the averments of paragraph 154, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

155.    Deny the averments of paragraph 155, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

156.    Deny the averments of paragraph 156, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

157.    Deny the averments of paragraph 157, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 28, 2002, and refer to that filing for its contents.

158.    Deny the averments of paragraph 158 and state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox Business Services ("XBS") Manager as described in paragraph 158.

159.    Deny the averments of paragraph 159 and refer to APB Opinion No. 20 for its contents.

160.    Deny the averments of paragraph 160.