161.    Decline to respond to the averments of the first five sentences of paragraph 161 as they in part call for a legal conclusion to which no response is required and refer to SFAS 13 for its contents.  Deny the averments of the final sentence of paragraph 161.

162.    Deny the averments of paragraph 162, except refer to the Company's Forms 10-K for the years-end 1995 through 1999 for the contents thereof.

163.    Deny the averments of paragraph 163.

164.    Decline to respond to the averments of paragraph 164 as they in part call for a legal conclusion to which no response is required and refer to SFAS 13 for its contents.

165.    Decline to respond to the averments of paragraph 165 as they in part call for a legal conclusion to which no response is required and refer to SFAS 13 for its contents.

166.    Decline to respond to the averments of paragraph 166 as they in part call for a legal conclusion to which no response is required and refer to Statement of Financial Accounting Concepts No. 7 ("CON 7") for its contents.

167.    Deny the averments of paragraph 167, except admit that the Wall Street Journal published an article concerning Xerox on June 1, 2001, in which certain statements were attributed to Kimber Bascom and refer to that article for its contents.

168.    Deny the averments of paragraph 168.

169.    Deny the averments of paragraph 169, except refer to the Akin Gump report for its contents.

170.    State that they are without knowledge or information sufficient to form a belief as to whether the Organisation for Economic Co-operation and Development published data as described in the first sentence of paragraph 170 and refer to the public record for data concerning the average Mexican interest rate for 10-year bonds from 1996 through 1999.  Deny

31

the averments of the second sentence of paragraph 170, except refer to the public record for data concerning the rate of interest in Mexico for 10-year bonds in 1999.

171. Deny the averments of paragraph 171, except admit that the Wall Street Journal published an article concerning Xerox on June 1, 2001, in which certain statements were attributed to Kimber Bascom and refer to that article for its contents.

172. Deny the averments of paragraph 172, except admit that the Wall Street Journal published an article concerning Xerox on June 1, 2001, and refer to that article for its contents.

173. Deny the averments of paragraph 173, except refer to the Company's Forms 10-K for the years-end 1996 through 1998 for information concerning the percentage of Xerox's revenue that was attributable to its Brazilian operations, refer to the public record for Brazilian treasury bill rates from 1997 to 1999, and refer to the SEC complaint for its contents.

174. Deny the averments of paragraph 174, except state that they are without knowledge or information sufficient to form a belief as whether certain statements were made by an unidentified former XBS DMO manager as described in paragraph 174, and refer to the public record for information concerning interest rate data from the Central Bank of Venezuela.

175. Deny the averments of paragraph 175, except admit that the Wall Street Journal published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

176. Deny the averments of paragraph 176.

177. Deny the averments of paragraph 177 and refer to 17 C.F.R. §229.303(a)(3)(ii) for its contents.

178. Deny the averments of paragraph 178 and refer to GAAP for its contents.

179.    Decline to respond to the averments of paragraph 179 as they in part call for a legal conclusion to which no response is required and refer to SFAS 13 for its contents.

180.    Decline to respond to the averments of paragraph 180 as they in part call for a legal conclusion to which no response is required and refer to FASB Technical Bulletin No. 90-1 for its contents.

181.    Decline to respond to the averments of paragraph 181 as they in part call for a legal conclusion to which no response is required and refer to Statement of Financial Accounting Concepts No. 5 ("CON 5") for its contents.

182.    Deny the averments of paragraph 182, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 182.

183.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 183, except deny the averments of paragraph 183 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants.

184.    Deny the averments of paragraph 184.

185.    Decline to respond to the averments of the first and second sentences of paragraph 185 as they in part call for a legal conclusion to which no response is required and refer to SFAS 13 for its contents.  Deny the averments of the third sentence of paragraph 185.

186.    Deny the averments of paragraph 186, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 186.

187.    Deny the averments of paragraph 187, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified XBS manager as described in paragraph 187.

188.    Deny the averments of paragraph 188.

189.    Deny the averments of paragraph 189 and refer to SFAS 13 for its contents.

190.    Deny the averments of paragraph 190, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by current or former Xerox employees as described in paragraph 190.

191.    Deny the averments of paragraph 191, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 191.

192.    Deny the averments of paragraph 192 and refer to the transcript of Bingham's testimony before the SEC for its contents.

193.    Deny the averments of paragraph 193, except admit that the Wall Street Journal published an article concerning Xerox on May 22, 2001, and refer to that article for its contents.

194.    Deny the averments of paragraph 194 and refer to the transcript of Bingham's testimony before the SEC for its contents.

195.    Deny the averments of paragraph 195, except admit that the Wall Street Journal published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

196.    Deny the averments of paragraph 196 and refer to the transcript of Bingham's testimony before the SEC for its contents.

197.    Deny the averments of paragraph 197, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on May 22, 2001, and refer to that article and the transcript of Bingham's testimony before the SEC for the contents thereof.

198.    Deny the averments of paragraph 198.

199.    Deny the averments of paragraph 199 and refer to the transcript of Bingham's testimony before the SEC for its contents.

200.    Deny the averments of paragraph 200 and refer to SFAS 13 for its contents.

201.    Deny the averments of paragraph 201 and refer to SFAS 13 for its contents.

202.    Deny the averments of paragraph 202.

203.    Deny the averments of paragraph 203.

204.    Deny the averments of paragraph 204, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in the first sentence of paragraph 204 and in the example provided in the second sentence of paragraph 204.

205.    Deny the averments of paragraph 205, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 205.

206.    Deny the averments of paragraph 206.

207.    Deny the averments of paragraph 207, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 207.

208.    Deny the averments of paragraph 208, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox employee as described in paragraph 208.

209.    Deny the averments of paragraph 209, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox employee as described in paragraph 209.

210.    Deny the averments of paragraphs 210, 210(a) and 210(b) and refer to SFAS No. 5 and CON 5 for the contents thereof.

211.    Deny the averments of paragraph 211.

212.    Deny the averments of paragraph 212.

213.    Deny the averments of paragraph 213.

214.    Deny the averments of paragraph 214 and refer to the SEC complaint for its contents.

215.    Deny the averments of the first sentence of paragraph 215, except admit that at certain times during the period from 1997 through 2000 defendants Allaire, Romeril, Thoman, Fishbach, Tayler and Mulcahy held some or all of the positions identified in the first sentence of paragraph 215. Deny the averments of the second sentence of paragraph 215, except admit that the SEC sent Wells Notices to defendants Allaire and Romeril.

216.    Deny the averments of paragraph 216, except admit that <u>Dow Jones</u> <u>Business News</u> issued a report concerning Xerox on April 12, 2002, and refer to that report and to the SEC complaint for the contents thereof.

217.    Deny the averments of paragraph 217, except admit that Xerox issued a press release on February 1, 2001, and refer to that press release for its contents.

218.    Deny the averments of paragraph 218.

219.    Deny the averments of paragraph 219.

220.    Deny the averments of paragraph 220.

221.    Deny the averments of paragraph 221.

222.    Deny the averments of paragraph 222 and refer to the SEC complaint for its contents.

223.    Deny the averments of paragraph 223, except admit that the <u>Wall Street</u> <u>Journal</u> published an article concerning Xerox on February 7, 2001, and refer to that article for its contents, and state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by unidentified former Xerox employees as described in paragraph 223.

224.    Deny the averments of paragraph 224, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 224.

225.    Deny the averments of paragraph 225, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by former Xerox employees as described in paragraph 225.

226.    Deny the averments of paragraph 226, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 226.

227.    Deny the averments of paragraph 227, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by lawyers for Rafael Florez as described in paragraph 227, and admit that the Wall Street Journal published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

228.    Deny the averments of paragraph 228, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by former Xerox employees as described in paragraph 228, and state that they are without knowledge or information sufficient to form a belief as to whether the Wall Street Journal published an article concerning Xerox on February 7, 2001, as described in paragraph 228.

229.    Deny the averments of paragraph 229.

230.    Deny the averments of paragraph 230, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former XBS manager as described in paragraph 230.

231.    Deny the averments of paragraph 231, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox employee as described in paragraph 231.

232.    Deny the averments of paragraph 232, except admit that Bingham accompanied defendants Mulcahy and Romeril on a trip to certain Xerox offices in July 2000, admit that Bingham drafted a memorandum prior to that trip and refer to that memorandum for

38

its contents, and admit that Bingham filed a complaint against Xerox in November 2000 and refer to that complaint for its contents.

233.    Deny the averments of paragraph 233, except admit that Bingham wrote a memorandum that was circulated to Xerox treasurer Eunice Filter and to defendants Mulcahy and Romeril in July 2000 and refer to that memo for its contents, and admit that the Wall Street Journal published an article concerning Xerox on February 6, 2001, and refer to that article for its contents.

234.    Deny the averments of paragraph 234, except admit that Filter removed Bingham from his position and that defendant Romeril offered Bingham a new position within Xerox sometime during July 2000.

235.    Deny the averments of paragraph 235, except admit that Bingham met with Barry Romeril, Kevin Colburn (Xerox's Director of Worldwide Audit at that time), and another Xerox executive on August 28, 2000, and admit that Bingham prepared a memorandum for that meeting and refer to that memorandum for its contents.

236.    Deny the averments of the first, second and fourth sentences of paragraph 236, except admit that Bingham was terminated from Xerox in August 2000, and admit that a letter dated August 30, 2000, was sent to Bingham concerning his termination and refer to that letter for its contents.  Deny the averments of the third sentence of paragraph 236, except refer to the public record for Xerox's public statements concerning its internal investigation into accounting issues in its Mexican operating unit.

237.    Deny the averments of paragraph 237 and refer to the transcript of Bingham's testimony before the SEC for its contents.

238.    Deny the averments of paragraph 238 and refer to the transcript of Bingham's testimony before the SEC for its contents.

239.    Deny the averments of paragraph 239 and refer to the transcript of Bingham's testimony before the SEC for its contents.

240.    Deny the averments of paragraph 240 and refer to the transcript of Bingham's testimony before the SEC for its contents.

241.    Deny the averments of paragraph 241.

242.    Deny the averments of paragraph 242, except admit that the <u>Grand Rapids Press</u> published an article concerning Xerox on April 2, 2002, and refer to that article for its contents.

243.    Deny the averments of paragraph 243, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified current or former Xerox employee as described in paragraph 243.

244.    Deny the averments of paragraph 244, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox manager as described in paragraph 244.

245.    Deny the averments of paragraph 245, except admit that the Company filed a Form 8-K with the SEC on October 5, 2001, and refer to that filing for its contents.

246.    Deny the averments of paragraph 246.

247.    Deny the averments of paragraph 247, except state that they are without knowledge or information sufficient to form a belief as to whether Lynn Turner reached a particular conclusion as described in paragraph 247, and admit that the <u>Washington Post</u> published an article concerning Xerox on June 29, 2002, and refer to that article for its contents.

248.    Deny the averments of paragraph 248, except admit that the <u>Los Angeles Times</u> published an article concerning Xerox on June 29, 2002, and refer to that article for its contents.

249.    Deny the averments of paragraph 249.

250.    Deny the averments of paragraph 250.

251.    Deny the averments of paragraph 251 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants and refer to the public record for the contents of contemporaneous public reports concerning Xerox's public statements regarding accounting issues in its Mexican operating unit.

252.    Deny the averments of paragraph 252, except admit that the <u>Wall Street Journal</u> published an article concerning Xerox on April 10, 2002, and refer to that article for its contents.

253.    Deny the averments of paragraph 253, except admit that Xerox issued a press release on February 1, 2001, and refer to that press release for its contents.

254.    Deny the averments of paragraph 254, except admit that the Xerox Defendants believed that Bingham's allegations were without merit and continued to believe that Xerox's accounting methods complied with GAAP after Bingham raised his allegations, and refer to the public record for contemporaneous publicly reported statements attributed to Xerox or Xerox employees.

255.    Deny the averments of paragraph 255, except state that the Xerox Defendants continued to believe after KPMG conducted its review that Xerox's accounting methods were accurate and complied with GAAP and refer to the public record for contemporaneous publicly reported statements attributed to Xerox or Xerox employees.

41

256.    Deny the averments of paragraph 256, except state that the Xerox
Defendants continued to believe after the SEC expanded its investigation that Xerox's
accounting methods were accurate and complied with GAAP and refer to the public record for
contemporaneous publicly reported statements attributed to Xerox or Xerox employees.

257.    Deny the averments of paragraph 257, except admit that Xerox issued a
press release on May 31, 2001, and refer to that press release for its contents.

258.    Deny the averments of paragraph 258, except admit that Xerox held a
meeting with shareholders on August 28, 2001, and refer to a transcript of that meeting for its
contents.

259.    Deny the averments of paragraph 259, except admit that the Company
filed a Form 8-K with the SEC on October 5, 2001, and refer to that filing for its contents, and
admit that the Wall Street Journal published an article concerning Xerox on October 8, 2001, in
which certain statements were attributed to Christa Carone, and refer to that article for its
contents.

260.    Deny the averments of paragraph 260, except admit that defendant
Mulcahy met with then SEC Chairman Harvey Pitt on December 7, 2001, and refer to the public
record for the contents of contemporaneous public news reports concerning that meeting.

261.    Deny the averments of paragraph 261, except admit that the Company
filed a Form 8-K with the SEC on January 7, 2002, and refer to that filing for its contents.

262.    Deny the averments of paragraph 262, except admit that Dow Jones
Business News issued a report concerning Xerox on April 12, 2002, and refer to that report for
its contents.

263.    Deny the averments of paragraph 263.

42

264.    Deny the averments of paragraph 264, except admit that the Individual Defendants were provided with some forms of confidential, proprietary information concerning various Xerox business issues at various times throughout their careers at Xerox.

265.    Deny the averments of paragraph 265.

266.    Deny the averments of paragraph 266, including the averments contained in the tables included within paragraph 266, and refer to publicly available materials filed with the SEC for information concerning sales of Xerox stock by any of the Individual Defendants during the relevant time period.

267.    Deny the averments of paragraphs 267 and 267(a) through 267(e) and refer to publicly available materials filed with the SEC for information concerning sales of Xerox stock by any of the Individual Defendants during the relevant time period.

268.    Deny the averments of paragraph 268, except admit that Xerox issued press releases on July 23, 1998, January 26, 1999, and October 24, 2000, admit that Xerox filed a Form S-8 with the SEC on December 21, 1999, and refer to those documents for the contents thereof, and refer to publicly available materials filed with the SEC for information concerning sales of Xerox stock by any of the Individual Defendants during the relevant time period.

269.    Deny the averments of paragraph 269.

270.    Deny the averments of paragraph 270, except state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by unidentified former Xerox managers as described in paragraph 270.

271.    Deny the averments of paragraph 271, except admit that the Company filed a proxy statement on April 14, 2000, and refer to that statement for its contents.

272.    Deny the averments of paragraph 272 and refer to the SEC complaint for its contents.

273.    Deny the averments of paragraphs 273 and 273(a) through 273(e), except admit that the Company filed a Form S-3 with the SEC on July 17, 1998, that the Company filed a Form S-3/A on March 10, 1999, that the Company filed a Form 424(b)(2) on May 11, 1999, and that the Company filed Forms 8-K on November 28, 2001, and January 17, 2002, and refer to those filings for the contents thereof.

274.    Deny the averments of paragraph 274 and refer to Xerox's publicly filed financial statements for information concerning its credit facility and debt obligations during 2000 and 2001.

275.    Deny the averments of the first sentence of paragraph 275, except admit that Bloomberg News issued a report concerning Xerox on November 17, 2000, and refer to that report for its contents.  Deny the averments of the second sentence of paragraph 275, except admit that Moody's issued a ratings report concerning Xerox on December 1, 2000, and refer to that report for its contents.

276.    Deny the averments of the first, third, fourth and fifth sentences of paragraph 276 and refer to Xerox's Form 10-K for the year-end 2001 filed with the SEC on June 28, 2002, for information concerning Xerox's turnaround program and its transition to third-party financing.  Deny the averments of the second sentence of paragraph 276 and refer to the public record for contemporaneous analyst reports concerning Xerox.  Deny the averments of the sixth sentence of paragraph 276, including the averments contained in footnote 5, except admit that the Company issued press releases on November 27, 2001, December 28, 2001, March 27, 2002, and May 13, 2002, and refer to those releases for the contents thereof.

277.    Deny the averments of paragraph 277, except admit that the Company issued a press release on October 23, 2001, filed a Form S-4 on April 17, 2002, and filed a Form 10-K on June 28, 2002, and refer to those documents for the contents thereof, and refer to the public record for statements attributed to Xerox during the Spring of 2002 concerning its revolving credit agreement.

278.    Deny the averments of paragraph 278, except admit that Xerox filed a Form 10-Q for the quarter ended September 30, 2001, on November 13, 2001, and refer to that filing for its contents, and admit that Salomon Smith Barney issued an analyst report concerning Xerox on June 11, 2002, and refer to that report for its contents.

279.    Admit the averments of the first sentence of paragraph 279. Deny the remaining averments of paragraph 279, except admit that KPMG served as the Company's independent auditor from prior to February 17, 1998, through October 4, 2001, that KPMG maintained an office in Stamford, Connecticut during that time, and that KPMG issued unqualified audit opinion letters concerning the Company's financial statements for the years 1998 through 2001, and refer to GAAS for the obligations imposed upon an independent auditor.

280.    Deny the averments of the first sentence of paragraph 280, except admit that KPMG served as Xerox's external auditor from at least the early 1980s. Deny the averments of the second and fourth sentences of paragraph 280, except admit that during the period from February 17, 1998, through October 4, 2001, KPMG served as Xerox's external auditor and provided various consulting services during limited periods of time for which KPMG was compensated. State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of the third sentence of paragraph 280.

281.    Deny the averments of paragraph 281, except admit that the Company filed a proxy statement on July 13, 2001, and refer to that statement for its contents, and admit that Xerox compensated KPMG for its auditing and consulting services and refer to documents filed by the Company with the SEC for the fees paid by the Company to KPMG during the years 1997 through 2000.

282.    State that they are without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 282, except deny the averments of paragraph 282 to the extent they suggest any wrongdoing on the part of any of the Xerox Defendants.

283.    Deny the averments of paragraph 283.

284.    Admit the averments of the first two sentences of paragraph 284, admit that a publication entitled The Financial Statement Audit:  Why a New Age Requires An Evolving Methodology is available on KPMG's internet site and refer to that publication for its contents, and state that they are without knowledge or information sufficient to form a belief as to whether certain other materials were at some time contained on KPMG's internet site as described in paragraph 284.

285.    Admit the averments of paragraph 285.

286.    Deny the averments of the first sentence of paragraph 286, except admit that KPMG frequently reviewed sales transactions and frequently was consulted for accounting advice regarding large transactions, and state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by an unidentified former Xerox employee as described in the first sentence of paragraph 286.  Admit the averments of the second sentence of paragraph 286.

46

287. Deny the averments of paragraph 287 and refer to the Akin Gump Report for its contents.

288. Deny the averments of paragraph 288, except admit that the Company filed a Form 10-K for the year-end 2000 on June 7, 2001, and refer to that filing for its contents, and admit that KPMG fully was aware of Xerox's lease accounting policies during the relevant time period.

289. Deny the averments of paragraph 289.

290. Deny the averments of paragraph 290, except state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

291. Deny the averments of paragraph 291.

292. Deny the averments of paragraph 292 and refer to the Akin Gump report for its contents.

293. Deny the averments of the first sentence of paragraph 293. Decline to respond to the averments of the second sentence of paragraph 293 as they in part call for a legal conclusion to which no response is required. Deny the averments of the final sentence of paragraph 293, except admit that, in accordance with Xerox accounting policies that were reviewed by KPMG, Xerox recognized revenue for certain lease modifications at the time of such modifications under certain circumstances.

294. Deny the averments of the first sentence of paragraph 294, except admit that KPMG was aware of Xerox's policies concerning accounting for lease modifications, and admit that KPMG and Xerox discussed Xerox's policies concerning accounting for lease modifications at various times, including during 1999. Deny the averments of the second and third sentences of paragraph 294, except admit that, following discussions with KPMG in early

47

1999, Xerox reduced the amount of revenue that it recognized as the result of current period lease modifications and admit that KPMG issued an unqualified audit opinion with respect to Xerox's 1999 financial statements.

295.    Deny the averments of the first sentence of paragraph 295, except admit that KPMG was aware of Xerox's policies concerning accounting for the residual values of equipment subject to lease transactions.  Decline to respond to the averments of the second and third sentences of paragraph 296 as they in part call for a legal conclusion to which no response is required and refer to SFAS 23 for its contents.

296.    Deny the averments of the first two sentences of paragraph 296, except admit that Xerox presented a draft of internal lease accounting policy ACC 603 to KPMG in 1996, and admit that ACC 603 included a discussion of accounting for residual values.  Deny the averments of the final sentence of paragraph 296, except admit that KPMG was aware of Xerox's accounting policies concerning residual values at all relevant times, and admit that KPMG issued unqualified audit opinions for Xerox's publicly filed financial statements for the years 1996 through 2000.

297.    Deny the averments of paragraph 297, except admit that KPMG issued unqualified audit opinions for Xerox's financial statements for the fiscal years 1997 through 2000.

298.    Deny the averments of paragraph 298, except admit that Xerox filed a Form 10-Q for the quarter ended June 30, 2000, on August 14, 2000, and refer to that filing for its contents.

299.    Deny the averments of paragraph 299.

300.    Deny the averments of paragraph 300 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants and state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

301.    Deny the averments of the first sentence of paragraph 301, except state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind. Deny the remaining averments of paragraph 301, except admit that Xerox filed a Form 8-K with the SEC on October 5, 2001, and refer to that filing for its contents.

302.    Deny the averments of the first sentence of paragraph 302, except admit that a letter from KPMG to the SEC dated October 4, 2001, was attached as Exhibit 16 to a Form 8-K filed by Xerox with the SEC on October 5, 2001, and refer to that letter for its contents. Deny the averments of the second sentence of paragraph 302, but state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

303.    Deny the averments of paragraph 303, except state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

304.    Deny the averments of paragraph 304, except admit that Lynn Turner, the then Chief Accountant of the SEC, sent a letter to the AICPA on October 13, 2000, and refer to that letter, which can be found on the SEC's internet site, for its contents, state that they are without knowledge or information sufficient to form a belief as to whether certain statements were made by the AICPA to auditors as described in paragraph 304, state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind, and refer to the SEC complaint and Audit Risk Alert "98-2, Professional Skepticism and Related Topics" for the contents thereof.

305.    Deny the averments of paragraph 305.

49

306.    State that they are without knowledge or information sufficient to form a belief as the truth of the averments contained in the first two sentences of paragraph 306, including whether certain statements were made by former Xerox employees as described in paragraph 306, except deny those averments to the extent they allege any wrongdoing on the part of any of the Xerox Defendants.  Deny the averments of the final sentence of paragraph 306, except refer to the Company's publicly filed financial statements for the year-end 2000 for the contents thereof.

307.    Deny the averments of paragraph 307, except state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

308.    Deny the averments of paragraph 308.

309.    Deny the averments of paragraph 309 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, and admit that KPMG was aware of Bingham's allegations and the fact that the SEC was conducting an investigation into Xerox's accounting practices prior to the time that KPMG issued its unqualified audit opinion for Xerox's year-end 2000 financial statements.

310.    Deny the averments of paragraph 310 to the extent they allege any wrongdoing on the part of any of the Xerox Defendants, admit that KPMG was aware of the nature of the SEC's investigation into Xerox's accounting policies prior to the time that KPMG issued its unqualified audit opinion for Xerox's year-end 2000 financial statements and admit that Ronald Safran provided sworn testimony before the staff of the SEC in March 2001 pursuant to a subpoena and refer to the transcript of his testimony for its contents.

311.    Deny the averments of paragraph 311, except admit that the Company restated and revised certain financial results in a Form 10-K filed with the SEC on June 7, 2001,

and in a Form 10-K filed with the SEC on June 28, 2002, and refer to those filings for the contents thereof.

312.    Deny the averments of paragraphs 312 and 312(a) through 312(e) and refer to AU § 316 for its contents.

313.    Deny the averments of paragraph 313.

314.    Deny the averments of paragraph 314.

315.    Deny the averments of paragraph 315, except admit that the Wall Street Journal published an article concerning Xerox on May 6, 2002, and refer to that article for its contents.

316.    Deny the averments of paragraph 316 to the extent they suggest any wrongdoing on the part of any of the Xerox Defendants, state that they are without knowledge or information sufficient to form a belief as to whether defendant KPMG and Michael Conway of defendant KPMG were sent Wells Notices, and refer to the public record for contemporaneous public statements attributed to KPMG.

317.    Deny the averments of paragraph 317, except admit that Xerox and KPMG discussed various issues concerning Xerox's accounting policies at different times throughout March 2001, and admit that the Wall Street Journal published an article concerning Xerox on May 6, 2002, and refer to that article for its contents.

318.    Deny the averments of paragraph 318, except refer to the public record for public statements attributed to KPMG, admit that PwC replaced KPMG as Xerox's independent auditor in October 2001, and admit that Xerox restated and revised certain of its financial results in a Form 10-K filed with the SEC on June 28, 2002.

319.    Decline to respond to the averments of the first sentence of paragraph 319 as they in part call for a legal conclusion to which no response is required and refer to AU § 110.01 for its contents. Deny the remaining averments of paragraph 319, except admit that Xerox restated and revised certain financial results in a Form 10-K for the year-end 2000 filed with the SEC on June 7, 2001, and further admit that the Company restated and revised certain financial results in a Form 10-K for the year-end 2001 filed with the SEC on June 28, 2002, and refer to those Forms 10-K for the contents thereof, and state that they are without knowledge or information sufficient to form a belief as to KPMG's state of mind.

320.    Deny the averments of paragraph 320, except admit that the Company filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing for its contents.

321.    Deny the averments of paragraph 321, except admit that the Company filed a Form 10-K with the SEC for the year-end 1998 on March 22, 1999, and refer to that filing for its contents.

322.    Deny the averments of paragraph 322, except admit that the Company filed a Form 10-K with the SEC for the year-end 1999 on March 27, 2000, and refer to that filing for its contents.

323.    Deny the averments of paragraph 323, except admit that the Company filed a Form 10-K with the SEC for the year-end 2000 on June 7, 2001, and refer to that filing for its contents.

324.    Deny the averments of the first sentence of paragraph 324, except admit that Xerox restated and revised certain financial results in a Form 10-K for the year-end 2000 filed with the SEC on June 7, 2001, and further admit that the Company restated and revised

certain financial results in a Form 10-K for the year-end 2001 filed with the SEC on June 28,
2002, and refer to those Forms 10-K for the contents thereof.  Deny the averments of the second
sentence of paragraph 324 to the extent they allege any wrongdoing on the part of any of the
Xerox Defendants, and state that they are without knowledge or information sufficient to form a
belief as to KPMG's state of mind or conduct.

    325. Deny the averments of paragraph 325, except admit that the Company
issued a press release on January 23, 1998, and refer to that press release for its contents.

    326. Deny the averments of paragraph 326, except admit that the Company
filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing
for its contents.

    327. Deny the averments of paragraph 327, except admit that the Company
filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing
for its contents.

    328. Deny the averments of paragraph 328, except admit that the Company
filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing
for its contents.

    329. Deny the averments of paragraph 329, except admit that the Company
filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing
for its contents.

    330. Deny the averments of paragraph 330, except admit that the Company
filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing
for its contents.

331.    Deny the averments of paragraph 331, except admit that the Company filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing for its contents.

332.    Deny the averments of paragraph 332, except admit that the Company filed a Form 10-K with the SEC for the year-end 1997 on March 23, 1998, and refer to that filing for its contents.

333.    Deny the averments of paragraphs 333 and 333(a) through 333(h).

334.    Deny the averments of paragraph 334, except admit that the Company issued a press release on April 22, 1998, and refer to that press release for its contents.

335.    Deny the averments of paragraph 335, except admit that the Company issued a press release on April 24, 1998, and refer to that press release for its contents.

336.    Deny the averments of paragraph 336, except admit that <u>Dow Jones Online News</u> issued a report concerning Xerox on April 24, 1998, and refer to that report for its contents.

337.    Deny the averments of paragraph 337, except admit that Morgan Stanley issued an analyst report concerning Xerox on May 12, 1998, and refer to that report for its contents, and state that they are without knowledge or information sufficient to form a belief as to what formed the basis of Morgan Stanley's May 12, 1998, report.

338.    Deny the averments of paragraph 338, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1998, on May 13, 1998, and refer to that filing for its contents.

339.    Deny the averments of paragraph 339, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1998, on May 13, 1998, and refer to that filing for its contents.

340.    Deny the averments of paragraph 340, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1998, on May 13, 1998, and refer to that filing for its contents.

341.    Deny the averments of paragraphs 341, 341(a) and 341(b) and repeat and reallege their responses to paragraphs 333(a) through 333(c) as if fully set forth herein.

342.    Deny the averments of paragraph 342, except admit that the Company issued a press release on July 23, 1998, and refer to that press release for its contents.

343.    Deny the averments of paragraph 343, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1998, on August 13, 1998, and refer to that filing for its contents.

344.    Deny the averments of paragraph 344, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1998, on August 13, 1998, and refer to that filing for its contents.

345.    Deny the averments of paragraph 345, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1998, on August 13, 1998, and refer to that filing for its contents.

346.    Deny the averments of paragraphs 346 and 346(a) through 346(c), and repeat and reallege their responses to paragraphs 333(a) through 333(c) as if fully set forth herein.

347.    Deny the averments of paragraph 347, except state that they are without knowledge or information sufficient to form a belief as to whether Merrill Lynch issued an analyst report concerning Xerox on September 24, 1998, as described in paragraph 347.

348.    Deny the averments of paragraph 348, except admit that the Company issued a press release on October 22, 1998, and refer to that press release for its contents.

349.    Deny the averments of paragraph 349, except admit that the Company filed a Form 10-Q for the quarter ended September 30, 1998, on November 10, 1998, and refer to that filing for its contents.

350.    Deny the averments of paragraph 350, except admit that the Company filed a Form 10-Q for the quarter ended September 30, 1998, on November 10, 1998, and refer to that filing for its contents.

351.    Deny the averments of paragraph 351, except admit that the Company filed a Form 10-Q for the quarter ended September 30, 1998, on November 10, 1998, and refer to that filing for its contents.

352.    Deny the averments of paragraphs 352 and 352(a) through 352(c), and repeat and reallege their responses to paragraphs 333(a) through 333(c) as if fully set forth herein.

353.    Deny the averments of paragraph 353, except admit that Morgan Stanley issued an analyst report concerning Xerox on December 2, 1998, and refer to that report for its contents.

354.    Deny the averments of paragraph 354, except admit that the Real devalued in January 1999 and refer to the public record for data concerning that devaluation and refer to

Xerox's publicly filed financial statements for the years 1998 and 1999 for information concerning the performance of Xerox's Brazilian operating unit during that time period.

355.    Deny the averments of paragraph 355, except admit that the Company issued a press release on January 26, 1999, and refer to that press release for its contents.

356.    Deny the averments of paragraph 356, except admit that the <u>Orange County Register</u> published an article concerning Xerox on January 27, 1999, and refer to that article for its contents.

357.    Deny the averments of paragraph 357, except admit that <u>Barron's</u> published an article concerning Xerox on February 1, 1999, and refer to that article for its contents.

358.    Deny the averments of paragraph 358, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

359.    Deny the averments of paragraph 359, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

360.    Deny the averments of paragraph 360, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

361.    Deny the averments of paragraph 361, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

362.     Deny the averments of paragraph 362, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

363.     Deny the averments of paragraph 363, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

364.     Deny the averments of paragraph 364, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

365.     Deny the averments of paragraph 365, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

366.     Deny the averments of paragraph 366, except admit that the Company filed a Form 10-K for the year-end 1998 with the SEC on March 22, 1999, and refer to that filing for its contents.

367.     Deny the averments of paragraphs 367 and 367(a) through 367(e), and repeat and reallege their responses to the averments of paragraphs 333(a) through 333(c) as if fully set forth herein.

368.     Deny the averments of paragraph 368, except admit that the Company issued a press release on April 22, 1999, and refer to that press release for its contents.

369.     Deny the averments of paragraph 369, except admit that the Company issued a press release on April 22, 1999, and refer to that press release for its contents.

370.    Deny the averments of paragraph 370, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1999, on May 14, 1999, and refer to that filing for its contents.

371.    Deny the averments of paragraph 371, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1999, on May 14, 1999, and refer to that filing for its contents.

372.    Deny the averments of paragraph 372, except admit that the Company filed a Form 10-Q for the quarter ended March 31, 1999, on May 14, 1999, and refer to that filing for its contents.

373.    Deny the averments of paragraphs 373 and 373(a) through 373(e), and repeat and reallege their responses to the averments of paragraphs 333(a) through 333(c) as if fully set forth herein.

374.    Deny the averments of paragraph 374, except admit that the Dow Jones News Service issued a report concerning Xerox on May 14, 1999, and refer to that report for its contents.

375.    Deny the averments of paragraph 375, except admit that Merrill Lynch issued an analyst report concerning Xerox on May 17, 1999, and refer to that report for its contents.

376.    Deny the averments of paragraph 376.

377.    Deny the averments of paragraph 377, except admit that the Company issued a press release on July 22, 1999, and refer to that press release for its contents.

378.    Deny the averments of paragraph 378, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1999, on August 11, 1999, and refer to that filing for its contents.

379.    Deny the averments of paragraph 379, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1999, on August 11, 1999, and refer to that filing for its contents.

380.    Deny the averments of paragraph 380, except admit that the Company filed a Form 10-Q for the quarter ended June 30, 1999, on August 11, 1999, and refer to that filing for its contents.

381.    Deny the averments of paragraphs 381 and 381(a) through 381(d), and repeat and reallege their responses to the averments of paragraphs 333(a) through 333(c) as if fully set forth herein.

382.    Deny the averments of paragraph 382, except admit that PaineWebber issued an analyst report concerning Xerox on September 23, 1999, and refer to that report for its contents.

383.    Deny the averments of paragraph 383, except admit that the Company issued a press release on October 18, 1999, and refer to that press release for its contents.

384.    Deny the averments of paragraph 384, except admit that the Company filed a Form 10-Q with the SEC for the quarter ended September 30, 1999, on November 12, 1999, and refer to that filing for its contents.

385.    Deny the averments of paragraph 385, except admit that the Company filed a Form 10-Q with the SEC for the quarter ended September 30, 1999, on November 12, 1999, and refer to that filing for its contents.