## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated, )<br><br>Plaintiff, )<br>v. )<br><br>XEROX CORPORATION, KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY BARRY D. ROMERIL, GREGORY TAYLER and PHILIP FISHBACH )<br><br>Defendants. ) | 3:00-CV-1621 (AWT)<br>**ALL CASES**<br><br>December 2, 2005 |

## <u>XEROX DEFENDANTS' POSITION STATEMENT REGARDING THE RULE 26(f) REPORT AND THE CONFIDENTIALITY ORDER</u>

# TABLE OF CONTENTS

BACKGROUND ...........................................................................................................1

ARGUMENT ...............................................................................................................1

I.     THE XEROX DEFENDANTS' PROPOSALS CONCERNING THE RULE 26(f)
      REPORT PROMOTE EFFICIENCY AND COMPORT WITH THE FEDERAL
      RULES OF CIVIL PROCEDURE. ........................................................................1

      A.    Depositions Should Begin After the Substantial Completion of
            Defendants' Document Production. ..............................................................2

      B.    The Number and Length of Depositions Should be Determined in
            Accordance With the Federal Rules of Civil Procedure. ..............................5

      C.    Defendants Should Not Be Required to Oppose Class Certification Prior to
            the Substantial Completion of Class Discovery. ...........................................8

II.    THE XEROX DEFENDANTS RESPECTFULLY SUBMIT THAT
      PARAGRAPH 16 SHOULD BE INCLUDED IN THE CONFIDENTIALITY
      ORDER. ...........................................................................................................10

CONCLUSION ............................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

ACE Ltd. v. Cigna Corp., No. 00 Civ. 9423 (WK), 2001 U.S. Dist. LEXIS
    19090 (S.D.N.Y. Nov. 20, 2001) ................................................................. 2

Carpenter Tech. Corp. v. Armco, Inc., CIV. A., No. 90-0740, 1990 WL
    61180 (E.D. Pa. May 8, 1990) ................................................................. 4

Chambers v. Capital Cities, 159 F.R.D. 429 (S.D.N.Y. 1995) ........................................ 2, 3

Chateau De Ville Prods., Inc. v. Tams-Witmark Music Library, Inc., 586
    F.2d 962 (2d Cir. 1978)............................................................................ 9, 10

Gramm v. Horsehead Indus., Inc., No. 87 Civ. 5122 (MJL), 1990 WL
    142404 (S.D.N.Y. Jan. 25, 1990)................................................................. 12

In re Xerox Sec. Litig., No. 3:99-CV-2374 (AWT)...................................................... 4, 10

LaPlante v. Estano, 226 F.R.D. 439 (D. Conn. 2005) ......................................................... 8

Masters v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911(HB)(HBP),
    2003 WL 21089073 (S.D.N.Y. May 13, 2003)................................................. 9

McKernan v. United Techs. Corp., 120 F.R.D. 452 (D. Conn. 1988) ................................. 9

Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441 (S.D.N.Y.
    2004) ....................................................................................................... 12

Nat'l Org. For Women v. Sperry Rand Corp., 88 F.R.D. 272 (D. Conn.
    1980) ......................................................................................................... 9

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst,
    Inc., No. 02 Civ. 1334 (SAS), 2002 WL 1822738 (S.D.N.Y. Aug. 8,
    2002) ....................................................................................................... 5, 6

New Colt Holding Corp. v. RJG Holdings of Fla., Inc., No. Civ.
    302CV173PCD, 2003 WL 22326978 (D. Conn. Mar. 27, 2003) ............................. 7, 8

Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 218 F.R.D. 29 (D. Conn.
    2003) ......................................................................................................... 7

United States v. Kovel, 296 F.2d 918 (2d Cir. 1961) ......................................................... 12

United States v. Schwimmer, 892 F.2d 237 (2d Cir. 1989)................................................. 12

**Statutes**

Fed. R. Civ. P. 1 ................................................................................................................. 6

Fed. R. Civ. P. 23 Advisory Committee's Notes ................................................................ 8

Fed. R. Civ. P. 23 ............................................................................................................... 8

Fed. R. Civ. P. 30 ......................................................................................................... 5, 6, 7

Fed. R. Civ. P. 30 Advisory Committee's Notes ............................................................ 5, 7

Defendants Xerox Corporation ("Xerox"), Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler and Philip Fishbach (collectively with defendant Xerox, the "Xerox Defendants") respectfully submit this statement in support of their positions concerning the Rule 26(f) Report of the Parties' Planning Meeting ("Rule 26(f) Report") and the Joint Motion for Entry of the Confidentiality Order.

## BACKGROUND

On November 18, 2005, the parties jointly submitted a Rule 26(f) Report to the Court. (Orsini Aff.[1] Ex. A.) Prior to submitting that report, the parties were able to agree upon all the issues addressed therein, with the exception of three discovery matters. (See Orsini Aff. Ex. A. ¶¶ E.8, E.18 & E.19.) On that same day, the parties also submitted a joint motion seeking entry of a Confidentiality Stipulation and [Proposed] Protective Order ("Confidentiality Order"). As reflected in that joint motion, the parties have reached agreement upon all of the provisions of the Confidentiality Order (Orsini Aff. Ex. B) except for paragraph 16, which was proposed by the Xerox Defendants. For the reasons set forth below, the Xerox Defendants respectfully request that the Court adopt their proposals with respect to each of the outstanding issues.

## ARGUMENT

## I.    THE XEROX DEFENDANTS' PROPOSALS CONCERNING THE RULE 26(f) REPORT PROMOTE EFFICIENCY AND COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE.

As set forth in the Rule 26(f) Report, the parties have been unable to reach agreement with respect to three discovery matters:  (1) the timing for the commencement

---

[1] "Orsini Aff." refers to the Affidavit of Kevin J. Orsini submitted herewith.

of depositions (see Orsini Aff. Ex. A ¶ E.8); (2) the number and length of depositions that each side will be permitted to take (see id. ¶ E.18); and (3) the schedule for class certification discovery and briefing (see id. ¶ E.19). Because the Xerox Defendants' proposals promote efficiency and comport with the Federal Rules of Civil Procedure, those proposals should be accepted.

A.    Depositions Should Begin After the Substantial Completion of Defendants' Document Production.

Paragraph E.8 of the Rule 26(f) Report governs the schedule for depositions. (Orsini Aff. Ex. A ¶ E.8.) Plaintiffs propose that depositions should be initiated six months after the date of the Rule 26(f) Report (i.e., May 18, 2006), irrespective of the status of document discovery at that time. (Id.) Defendants propose that, with the exception of non-substantive depositions noticed pursuant to Rule 30(b)(6) or as otherwise agreed to by the parties, depositions should begin only after substantial completion of Defendants' document production. (Id.) That proposal ensures that depositions are taken only after the parties have had a full and fair opportunity to consider all relevant documents.

Courts in the Second Circuit consistently have recognized that depositions should follow document production. See, e.g., ACE Ltd. v. Cigna Corp., No. 00 Civ. 9423 (WK), 2001 U.S. Dist. LEXIS 19090, at *6 (S.D.N.Y. Nov. 20, 2001) ("Unless the parties both agree, no depositions should be taken prior to [one day after the date by which document discovery must be completed]"); Chambers v. Capital Cities, 159 F.R.D. 429, 431 (S.D.N.Y. 1995) (noting that document production should be completed before depositions begin). The reason for this rule is to promote efficiency: "[i]t is desirable in minimizing the cost and expenditure of time of all involved if document production

2

relevant to a particular witness is completed prior to deposition of that witness".

Chambers, 159 F.R.D. at 431.

Plaintiffs' proposal, which could result in the deposition of witnesses before the parties have had an opportunity to produce and review substantially all of the relevant documents, imposes an unfair disadvantage upon Defendants.[2] Without adequate time to collect and review the productions of their co-defendants and non-parties, Defendants cannot reasonably be expected to prepare for depositions of their witnesses. In particular, the Xerox Defendants must be given the necessary time to review KPMG's production to Plaintiffs, which likely will include hundreds of thousands of pages that the Xerox Defendants never have seen. In a case of this magnitude, Defendants must be afforded the opportunity to develop an adequate defense.

Similarly, the Xerox Defendants cannot be expected to take depositions without complete access to all the documents that eventually will be produced. Under Plaintiffs' proposal, Defendants likely would be forced to take certain depositions before they are ready. For example, should Plaintiffs compel the deposition of a KPMG witness that Xerox intended to depose only after receiving all documents relevant to that witness, Xerox would be required to depose that witness at the date and time selected by

_____

[2] While it is impossible to predict the nature and scope of Plaintiffs' forthcoming document requests at this stage of the litigation, it is highly unlikely that Defendants' productions will be completed by May. In fact, Plaintiffs are not permitted to serve document requests upon any Defendant prior to January 1, 2006 (when Defendants' voluntary document production will be complete). (See Orsini Aff. Ex. A ¶¶ E.4 & E.5.) Thus, Plaintiffs' proposal to begin depositions in May--six months after the date of the Rule 26(f) Report--would allow just over four months for Defendants and non-parties to respond to Plaintiffs' document requests (and subpoenas), collect all potentially responsive documents, review those documents for responsiveness, prepare the responsive documents for production, produce those documents to Plaintiffs and review all documents in preparation for depositions. That schedule simply is not realistic.

3

Plaintiffs--regardless of when Xerox actually receives all of the documents. That is both inefficient and fundamentally unfair.

Moreover, Plaintiffs' proposal to begin depositions before the parties have had an opportunity to review substantially all relevant documents is unfair because it significantly increases the chance that Plaintiffs will request that a witness be deposed more than once. Requiring Defendants "to produce the same witnesses on two separate occasions, would result in undesirable, piecemeal discovery. This is both an inefficient and costly means of pursuing discovery". Carpenter Tech. Corp. v. Armco, Inc., CIV. A. No. 90-0740, 1990 WL 61180, at *4 (E.D. Pa. May 8, 1990) (postponing depositions to allow time for the parties to complete their review of all relevant document productions). Indeed, that very concern led this Court to reject a nearly identical proposal by plaintiffs in another Xerox proceeding to begin depositions prior to the substantial completion of document production: "I don't think we would have wound up with an agreement among the parties that you'll sort of get to take depositions and then maybe other documents will come up or will be discovered, and then you'll get to come and ask the judge to allow further deposition. . . . I am very negative on the idea of the plaintiffs having the chance for a second deposition." In re Xerox Sec. Litig., No. 3:99-CV-2374 (AWT) (Tr. of 7/18/03 Status Conference at 35, Orsini Aff. Ex. C.) For the same reasons, the Court should reject Plaintiffs' proposal here.

4

B.     The Number and Length of Depositions Should be Determined in Accordance With the Federal Rules of Civil Procedure.

Paragraph E.19 of the Rule 26(f) Report governs the number and length of depositions. (See Orsini Aff. Ex. A ¶ E.19.) Plaintiffs propose that each side may take "up to 50 days of depositions of fact witnesses" and that "each deposition day shall be measured in one-half day increments" so that "depositions may last more than one day, but, to the extent they do so, will count as an additional deposition day or part thereof". (Id.) As demonstrated below, Plaintiffs' proposal is contrary to the Federal Rules of Civil Procedure, which expressly define the number and length of depositions. Following the Federal Rules, Defendants propose that, regardless of the number of depositions (a number that Defendants have offered to negotiate and propose herein should be 25 (infra n.3)), "each deposition shall be limited to one day of seven hours unless the parties agree or leave is granted by the Court". (Id.)

First, with respect to the number of depositions, Fed. R. Civ. P. 30(a)(2)(A) provides: "[a] party must obtain leave of court . . . if, without the written stipulation of the parties, a proposed deposition would result in more than ten depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by third-party defendants". This provision was added to the Federal Rules in 1993 to "emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case". Fed. R. Civ. P. 30 Advisory Committee's Notes. Parties are required to "demonstrate a need to exceed the presumptive limit on the number of depositions". Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst, Inc., No. 02 Civ. 1334 (SAS), 2002 WL 1822738, at *2 (S.D.N.Y. Aug. 8, 2002) (refusing to grant depositions in excess of those provided for by Rule 30).

5

Plaintiffs' proposal is flatly contrary to Federal Rule 30. Although Defendants have offered to permit a reasonable number of depositions in excess of the 10 provided by the Federal Rules, Plaintiffs have refused to discuss such a number. Instead, Plaintiffs have insisted, without offering any rationale, that they are entitled to take 50 days of depositions. Indeed, because Plaintiffs propose that depositions would be measured in half-day increments, the total number of deponents could well exceed 50.[3] Plaintiffs' only argument in support of their proposal has been to claim--without any explanation--that the Federal Rules of Civil Procedure should not apply to this case. That is wrong as a matter of law. See Fed. R. Civ. P. 1 ("These rules govern the procedure in the United States district courts in all suits of a civil nature") (emphasis added); Fed. R. Civ. P. 30 (limiting each side to ten depositions); see also Nat'l Union, 2002 WL 1822738, at *2 (reaffirming the applicability of Rule 30's presumptive limits despite plaintiff's argument that the complexity of the case warranted a departure). Plaintiffs have not articulated any support for their request to abandon the Federal Rules at the outset of discovery in this litigation.

---

[3] Plaintiffs' proposal not only is unreasonable, it is unnecessary. There is absolutely no reason to believe that anywhere near that number of depositions will be required in this case. As explained to Plaintiffs when the parties conferred, in the litigation brought by the Securities and Exchange Commission ("SEC") against KPMG and certain current and former KPMG partners involving allegations similar to Plaintiffs' ("SEC v. KPMG"), each side deposed approximately 20 fact witnesses. And, during its investigation into Xerox's accounting practices, the SEC obtained testimony from fewer than 40 witnesses--many of whom provided little or no relevant testimony, as evidenced by the fact that the SEC deposed only half that number of witnesses in its enforcement action. Indeed, the existence of the SEC investigation and SEC v. KPMG transcripts (all of which are to be produced to Plaintiffs by December 19, 2005) should serve to streamline discovery by helping the parties determine which witnesses need (and do not need) to be deposed. As a result, the Xerox Defendants propose that a reasonable number of depositions in this litigation would be 25 per side, 15 more than presumptively permitted by the Federal Rules.

Second, with respect to the length of depositions, Rule 30(d)(2) provides: "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." Accord, Sec. Ins. Co. of Hartford v. Trustmark Ins. Co., 218 F.R.D. 29, 32 (D. Conn. 2003). This provision was adopted to promote judicial efficiency based on the fact that the "Committee ha[d] been informed that overlong depositions can result in undue costs and delays in some circumstances". Fed. R. Civ. P. 30 Advisory Committee's Notes.

Plaintiffs' proposal, which puts no time limit on depositions at all, is an unwarranted departure from the text and history of the Federal Rules, and would result in the very abuses that the Federal Rules were amended to prevent. For example, under Plaintiffs' proposal, Plaintiffs would be able to depose one witness in half-day increments spread out over an extended period of time, inconveniencing both the witness and the other parties. Plaintiffs also would be permitted to depose one witness for a nearly unlimited amount of time--regardless of need. It is for exactly these reasons that the Federal Rules and courts within the Second Circuit permit depositions to extend beyond seven hours only upon stipulation of the parties or a showing of good cause.[4] See, e.g., Fed. R. Civ. P. 30 Advisory Committee's Notes ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."); New Colt Holding Corp. v. RJG Holdings of Fla., Inc., No.

---

[4] Again, the fact that Plaintiffs will have the transcripts of all testimony from the SEC investigation and SEC v. KPMG before the commencement of depositions in this case ensures that, in almost every instance, the prescribed limitation of seven hours will be more than adequate. Many of the witnesses that Plaintiffs will seek to depose provided testimony both during the investigation and during SEC v. KPMG. As a result, Plaintiffs already will have at least two days of testimony for those witnesses that they will be able to use to formulate efficient and targeted examinations.

Civ. 302CV173PCD, 2003 WL 22326978, at *1 (D. Conn. Mar. 27, 2003) (granting

extensions only because a substantial portion of the questioning had been done by a co-

defendant with interests not aligned with those of the moving defendant); LaPlante v.

Estano, 226 F.R.D. 439, 440 (D. Conn. 2005) (granting extension only because plaintiff

had been uncooperative and unilaterally had curtailed the initial deposition).

     C.    <u>Defendants Should Not Be Required to Oppose Class Certification Prior to
the Substantial Completion of Class Discovery.</u>

     Paragraph 18 of the Rule 26(f) Report addresses the schedule for class

certification discovery and briefing. (<u>See</u> Orsini Aff. Ex. A ¶ 18.) Plaintiffs propose

fixed dates for briefing of the class certification issue, without any regard to the status of

class discovery. (<u>Id.</u>) Defendants propose that Defendants' opposition be due thirty days

after the final deposition on class certification issues to ensure that class discovery be

substantially complete before their opposition to Plaintiffs' motion for class certification

is due. (<u>Id.</u>) As set forth below, Defendants' position is more reasonable and, in fact,

puts the briefing schedule in Plaintiffs' control. By contrast, Plaintiffs' proposal

improperly puts the risk of any delay by Plaintiffs on Defendants.

     Discovery is necessary to allow Defendants adequately to address the

issue of class certification. In order to obtain class certification, Plaintiffs must

demonstrate four elements identified in Rule 23(a): (1) numerosity; (2) commonality; (3)

typicality; and (4) adequacy. <u>See</u> Fed. R. Civ. P. 23(a). The Advisory Committee's

Notes accompanying Rule 23 recognize that "[t]ime may be needed to gather information

necessary to make the certification decision". The Second Circuit has held that failure to

allow adequate discovery where there are "substantial factual issues relevant to

certification of the class, makes it impossible for the party seeking discovery to make an

adequate presentation either in its memoranda of law or at the hearing on the motion if one is held". <u>Chateau De Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.</u>, 586 F.2d 962, 966 (2d Cir. 1978) (reversing lower court's decision to certify the class because defendants had not had the opportunity to take adequate discovery); <u>accord</u>, <u>Nat'l Org. For Women v. Sperry Rand Corp.</u>, 88 F.R.D. 272, 277 (D. Conn. 1980).  As a result, requiring Defendants to oppose class certification prior to the substantial completion of class discovery would present significant due process concerns, both for absentee plaintiffs and Defendants.  <u>Cf.</u> <u>Masters v. Wilhelmina Model Agency, Inc.</u>, No. 02 Civ. 4911(HB)(HBP), 2003 WL 21089073, at *2-3 (S.D.N.Y. May 13, 2003) (recognizing that consideration of class certification without the benefit of an opposition "would be considerably more difficult and would increase the risk of an incorrect resolution, to the potential detriment of absentee class members"); <u>McKernan v. United Techs. Corp.</u>, 120 F.R.D. 452, 455 (D. Conn. 1988) (holding that certification of class without proper demonstration of Rule 23(a)'s requirements would not provide defendants with a guarantee of any res judicata effect).

       Defendants share Plaintiffs' desire promptly to resolve the issue of class certification.  Indeed, Defendants' proposal will result in the completion of class certification briefing within the time proposed by Plaintiffs as long as Plaintiffs respond to class discovery requests in a timely fashion.  Plaintiffs' proposal, which would require Plaintiffs to file their Motion for Class Certification by January 5, 2006, and Defendants to file their Opposition by May 5, 2006, allows defendants 17 weeks to take class discovery and draft their oppositions.  (<u>See</u> Orsini Aff. Ex. A ¶ 18.)  Assuming Plaintiffs produce documents expeditiously and make proposed class representatives available for

depositions in a timely fashion, there is no reason why Defendants would not be able to

file their oppositions by the date Plaintiffs propose. However, should Plaintiffs'

document production or depositions be delayed, Defendants' oppositions also must be

delayed. To require otherwise places the risk of delay by Plaintiffs on Defendants and

would force Defendants to oppose class certification before they have had the opportunity

to complete the necessary discovery.[5] There simply is no basis to force Defendants to

oppose class certification without the benefit of extensive class discovery. See Chateau

De Ville Productions, 586 F.2d at 966.

## II.    THE XEROX DEFENDANTS RESPECTFULLY SUBMIT THAT PARAGRAPH 16 SHOULD BE INCLUDED IN THE CONFIDENTIALITY ORDER.

The parties' only point of disagreement with respect to the Confidentiality

Order is whether paragraph 16 should be included therein. Paragraph 16 enables a party

to assert its own privileges or immunities from discovery with respect to materials that

have been produced by another party or a non-party. (See Orsini Aff. Ex. B ¶ 16

---

[5] During the Rule 26(f) Conference, Plaintiffs argued that a fixed schedule for class proceedings is necessary because of the protracted class proceedings in In re Xerox Sec. Litig., No. 3:99-CV-2374 (AWT). However, any delay in the class proceedings in that action has been caused by the plaintiffs, not by the defendants. The plaintiffs in In re Xerox did not file their motion for class certification until more than three years after they commenced the action. Until that motion for class certification was filed, defendants could not even contemplate taking class discovery as no one had been proposed as a class representative. Moreover, once defendants served document requests after submission of plaintiffs' motion, the plaintiffs refused to produce responsive documents. When the Court ultimately compelled the production of such documents, one of the proposed class representatives chose to withdraw from the litigation rather than satisfy its discovery obligations. Thereafter, a second withdrew rather than comply with defendants' second document request. Two of the remaining three proposed class representatives subsequently withdrew when they realized that they had not purchased stock during the proposed class period. Now, two additional putative class members have moved to intervene and substitute as class representatives. Thus, any "delay" in In re Xerox has resulted from plaintiffs' own actions and delay. Indeed, far from supporting Plaintiffs' proposal, the experience in In re Xerox demonstrates exactly why Defendants should not be required to oppose class certification based on a fixed schedule.

10

(providing the full text of ¶ 16).)  For example, if KPMG were to produce a document that reflected information subject to Xerox's work product protection, Xerox could, pursuant to paragraph 16, demand that KPMG secure the return of the protected document from all parties.[6]  Any disagreement among the parties with respect to Xerox's assertion of the work product doctrine in that scenario would be resolved in exactly the same manner by which the parties have agreed to resolve disputes concerning claims of inadvertent production.  (Id. ¶¶ 15 & 16.)  Plaintiffs and defendant KPMG object to the inclusion of this provision within the Confidentiality Order.

Paragraph 16 is necessary to ensure that a party to this litigation is provided with the opportunity to assert its own privileges or immunities from discovery with respect to its own information, and that such information is afforded the proper protection.  Specifically, if Xerox concludes that a document produced by another party contains Xerox privileged information, Xerox must be in a position to have that privilege protected during the pendency of motion practice should there be a disagreement with respect to Xerox's privilege assertion.  Paragraph 16 is even more necessary in this litigation than in most.  First, Plaintiffs have asserted claims against both the Xerox Defendants and KPMG, Xerox's former independent auditor.  As a result, KPMG necessarily will produce a large volume of materials in this litigation that contain or

_____

[6] The Xerox Defendants are not seeking the ability to claim another party or non-party's privileges or immunities from discovery through paragraph 16.  Thus, paragraph 16 would not allow Xerox, for example, to assert that a document produced by KPMG was subject to one of KPMG's privileges or immunities from discovery.  Nor are the Xerox Defendants seeking the right to review another party or a non-party's proposed production prior to production.  Through paragraph 16, the Xerox Defendants simply are seeking a mechanism that will provide them with a clearly-articulated, efficient recourse in the event that another party or a non-party produces a document that is subject to any of the Xerox Defendants' privileges or immunities from discovery.

11

reflect Xerox information. Included within that Xerox information could be some material that is subject to Xerox's attorney-client privilege, work product protection or any other privilege or immunity from discovery belonging to Xerox. Second, Plaintiffs' allegations of GAAP violations inevitably will require the production of materials by Xerox's current independent auditor, PricewaterhouseCoopers ("PwC"). As with KPMG's production, any production by PwC necessarily will include documents that contain or reflect Xerox information, and could include material that is subject to one of Xerox's privileges or immunities from discovery.

KPMG has informed us that they want to be in a position to use any Xerox documents that they possess as part of their defense. KPMG also has taken the position that materials definitionally lose their privilege or work product protection once provided to an auditor. That is not the law. With respect to the attorney-client privilege, the Second Circuit has held that "[i]nformation provided to an accountant by a client at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation". United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989); accord, United States v. Kovel, 296 F.2d 918 (2d Cir. 1961). Courts within the Second Circuit also have held that disclosure of work product to a third party, such as an independent auditor, constitutes waiver "only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information". Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (rejecting a blanket rule of waiver of the work product doctrine with respect to materials shared with an auditor); see also Gramm v. Horsehead Indus., Inc., No. 87 Civ. 5122 (MJL), 1990 WL 142404 (S.D.N.Y. Jan. 25, 1990) (same). Thus, it is

12

possible that certain documents that may be produced by KPMG (or PwC) in this litigation will contain Xerox privileged information that legally is protected from discovery. The only dispute now before the Court is how Xerox will be permitted to obtain the proper protection for any such documents should they be produced.

## CONCLUSION

For the foregoing reasons, the Xerox Defendants respectfully request that the Court adopt their positions with respect to the disputed issues in the Rule 26(f) Report and grant the parties' Joint Motion for Entry of the Confidentiality Order, and include within that Confidentiality Order the Xerox Defendants' proposed paragraph 16.

CRAVATH, SWAINE & MOORE LLP,

by _____
Evan R. Chesler (ct 03177)
Sandra C. Goldstein (ct 24019)
Karin A. DeMasi (phv0584)
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Attorneys for Defendant
Xerox Corporation

13

DAY, BERRY & HOWARD LLP,

by _Thomas D. Goldberg /KO_

Thomas D. Goldberg (ct 04386)
A member of the Firm
Terence J. Gallagher (ct 22415)

875 Third Avenue
New York, NY 10022
(212) 829-3600

- and -

One Canterbury Green
Stamford, CT 06901
(203) 977-7300

Attorneys for Defendants
Anne Mulcahy, G. Richard Thoman
and Philip Fishbach

WILMER CUTLER PICKERING HALE and
DORR LLP,

by _Andrew N. Vollmer /KO_

Andrew N. Vollmer (ct 23728)
A member of the Firm
Heather A. Jones (ct 24194)

2445 M Street, NW
Washington, DC 20037
(202) 663-6000

Alfred U. Pavlis (ct 08603)
DALY & PAVLIS, LLC
107 John Street
Southport, CT 06490
(203) 255-6700

Attorneys for Defendants Paul A.
Allaire, Barry D. Romeril and
Gregory Tayler

14

Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
(203) 968-3000
Attorney for Xerox Corporation

15

CERTIFICATION

THIS IS TO CERTIFY THAT a copy of the XEROX DEFENDANTS'
POSITION STATEMENT REGARDING THE RULE 26(f) REPORT AND THE
CONFIDENTIALITY ORDER was sent by Federal Express courier service, postage prepaid,
this 2nd day of December 2005, to:

Glen DeValerio, Esq.
Jeffrey C. Block, Esq.
Leslie R. Stern, Esq.
Berman DeValerio Pease Tabacco
    Burt & Pucillo
One Liberty Square
Boston, MA 02109

Andrew M. Schatz, Esq.
Jeffrey S. Nobel, Esq.
Justin S. Kudler, Esq.
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103-3290

J. Daniel Sagarin, Esq.
David A. Slossberg, Esq.
Hurwitz, Sagarin & Slossberg, LLC
147 N. Broad Street
P.O. Box 112
Milford, CT 06460

Melvyn I. Weiss, Esq.
Brad Friedman, Esq.
Beth Kaswan, Esq.
Milberg Weiss Bershad
    & Schulman LLP
One Pennsylvania Plaza, 49th Fl.
New York, NY 10119-0165

Jay W. Eisenhofer, Esq.
Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer, P.A.
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

W. Sidney Davis, Esq.
George A. Salter, Esq.
M. Gavan Montague, Esq.
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022

Stuart J. Baskin, Esq.
Tammy P. Bieber, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Thomas J. Murphy, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street, Suite 910
Hartford, CT 06103

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Lisa Kelly Morgan, Esq.
Ruben, Johnson & Morgan, P.C.
249 Pearl Street
Hartford, CT 06103

Kevin J. Orsini