Exhibit C

~8917751.txt

1

1  UNITED STATES DISTRICT COURT
2  FOR THE DISTRICT OF CONNECTICUT
3
4
5  - - - - - - - - - - - - - - - - x
6  IN RE XEROX CORPORATION         :  No. 3:99CV2374(AWT)
   SECURITIES LITIGATION           :
7                                  :  HARTFORD, CONNECTICUT
                                   :  JULY 18, 2003
8  - - - - - - - - - - - - - - - - x
9
10
11
                 STATUS CONFERENCE
12
13
14  BEFORE:
15         HON. ALVIN W. THOMPSON, U.S.D.J.
16
17
18
19
20
21
22
23
24
                                Diana Huntington, RMR, CRR
25                              Official Court Reporter

2

1  APPEARANCES:

Page 1

~8917751.txt

2

FOR THE PLAINTIFFS:

3

4          MILBERG WEISS BERSHAD HYNES & LERACH LLP
              One Pennsylvania Plaza, 49th Floor
5             New York, New York 10119-0165
        BY:   MELVIN I. WEISS, ESQ.
6             BRAD N. FRIEDMAN, ESQ.

7          SCHATZ & NOBEL, P.C.
              330 Main Street, 2nd Floor
8             Hartford, Connecticut 06106-1851
        BY:   ANDREW M. SCHATZ, ESQ.
9

           BERNSTEIN LIEBHARD & LIFSHITZ
10            10 East 40th Street
              New York, New York 10016
11      BY:   KEITH M. FLEISCHMAN, ESQ.
              FRANCIS P. KARAM, ESQ.
12

           STULL STULL & BRODY
13            6 East 45th Street
              New York, New York 10017
14      BY:   MARK LEVINE, ESQ.

15

16      FOR THE DEFENDANT XEROX CORPORATION:

17

           CRAVATH, SWAINE & MOORE
18            825 8th Ave., Worldwide Plaza
              New York, New York 10019-7415
19      BY:   EVAN R. CHESLER, ESQ.
              SANDRA C. GOLDSTEIN, ESQ.
20            JOSEPH M. SALAMA, ESQ.
              IAN SHAPIRO, ESQ.

21

22

23

24

25

0

                                                        3

1       FOR THE DEFENDANTS BARRY ROMERIL AND PAUL A. ALLAIRE:

2

           WILMER, CUTLER & PICKERING
3             2445 M. St., NW
              Washington, D.C. 20037-1420
4       BY:   ANDREW VOLLMER, ESQ.
                        Page 2

```
                    ~8917751.txt
               GORDON PEARSON, ESQ.
 5
          DALY & PAVLIS
 6             107 John Street
               Southport, Connecticut 06490
 7        BY:  ALFRED U. PAVLIS, ESQ.

 8

 9   FOR THE DEFENDANT RICHARD THOMAN:

10        DAY BERRY & HOWARD
               One Canterbury Green
11             Stamford, Connecticut 06901
          BY:  TERENCE J. GALLAGHER, III, ESQ.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                        4

```
 1             (3:15 p.m.)

 2        THE COURT:  I guess we'll have people identify

 3   themselves for the record.  The court reporter may, part

 4   way through, interrupt to tell you she's forgotten who you

 5   are.  We'll start with counsel for the plaintiff.

 6        MR. WEISS:  Thank you, Your Honor.  Melvin Weiss

 7   W-e-i-s-s, Milberg, Weiss, Bershad, Hynes & Lerach.  I'm
```
                              Page 3

~8917751.txt

8   here with my partner Brad Friedman.
9       MR. FLEISCHMAN: Keith Fleischman for plaintiffs,
10  Bernstein, Liebhard & Lifshitz. And I'm here with my
11  partner Frank Karam.
12      MR. LEVINE: Mark Levine for plaintiffs from
13  Stull, Stull & Brody.
14      MR. SCHATZ: Andrew Schatz, Schatz & Nobel, for
15  plaintiffs.
16      MR. VOLLMER: Andrew Vollmer of Wilmer, Culter &
17  Pickering. I'm here with my colleague Gordon Pearson. We
18  represent Defendants Paul Allaire and Barry Romeril.
19      MR. PAVLIS: Alfred Pavlis from Daly & Pavlis
20  representing Defendants Paul Allaire and Barry Romeril.
21      MR. GOLDBERG: Thomas Goldberg from Day, Berry &
22  Howard for Defendant Thoman.
23      MS. GOLDSTEIN: Sandra Goldstein, Cravath, Swaine
24  & Moore, for Defendant Xerox.
25      MR. CHESLER: And Evan Chesler from Cravath,

5

1   Swaine & Moore for Xerox.
2       MR. SALAMA: Joe Salama, Cravath, for Xerox.
3       MR. SHAPIRO: Ian Shapiro, Cravath, for Xerox.
4       THE COURT: Maybe I will give you all the benefit
5   of my thinking, having read your papers, and that might
6   help focus our discussion.
7       My reaction to the papers I've read is that we
8   had the parties or counsel sit down and work out a
9   discovery plan. We have a proposal that we have these
10  depositions of these five key witnesses taken in September.

Page 4

~8917751.txt

11    If at the beginning of the discussion about the discovery
12    plan that had been proposed, I think I would have liked the
13    idea a lot because it seemed to me that that would be a way
14    to sort of, you know, potentially get right to the
15    important questions first. I like the idea of deposing the
16    five key witnesses first, but I think I have to recognize
17    the fact that we are part way down the path under a
18    particular plan that had been developed, as I understand
19    it, with an understanding that the depositions would be
20    taken at the end of discovery. If there is a way that we
21    can make a transition from one way of proceeding to the
22    other in a way that's orderly and fair, I would be pleased
23    about that. And the question I have is: How will we go
24    about doing that? That's what's in the back of my mind as
25    we start the discussion. If you'd like to start somewhere

0

6

1    else, let me know. But that's sort of my not-so-hidden
2    agenda in terms of the conference.
3             MR. CHESLER: May I, Your Honor?
4             THE COURT: Yes.
5             MR. CHESLER: Let me throw out a suggestion. I
6    think there is a way to try to achieve the goal
7    Your Honor's described, and that is if we streamlined the
8    remainder of the document discovery process, for example --
9    and we've had some discussions along these lines, although
10    for the reasons we described in our papers we never got to
11    the end of that discussion. If we, for example, took the
12    individuals whose depositions the plaintiffs want to take
13    and a discreet set of others -- and we've tried to do that

Page 5

~8917751.txt

```
14    on our own to identify who that discreet set of other
15    people would be and it's a relatively confined universe --
16    we think the process of completing the document discovery
17    would be over much sooner than it otherwise might be.  And
18    the depositions could then be taken.  Now, they may not be
19    taken in September, but they would be taken not that long,
20    we believe, after September.  In other words, we think we
21    could finish the remaining discovery of documents including
22    Europe this fall, and then they could take their
23    depositions, as opposed to changing mid-course with a lot
24    of documents left to do and having the issues that have
25    been talked about in the papers.
```

                                                                7

```
1              THE COURT:  Does that contemplate that discovery
2    that the plaintiffs originally had been seeking would not
3    be produced, or does it contemplate it would be produced
4    later?
5              MR. CHESLER:  What it contemplates is a subset of
6    the files we would otherwise have to go get, which would
7    relate to a certain discreet set of people.  It would be
8    the people whose depositions they wish to take plus other
9    people, who are, frankly, the people we think are the ones
10    who are most likely to have documents that are relevant
11    here and who are, we think, the right set of people who we
12    should be going after in that instance.  That would be the
13    balance of the discovery, which would shorten this process.
14              THE COURT:  So there would be no other discovery.
15              MR. CHESLER:  Right, right.  That's what I'm
16    suggesting as a way of transitioning.
```
Page 6

~8917751.txt

17  Because if I may say one other thing -- I know
18  Mr. Weiss wants to speak -- if we had been left to our own
19  devices, the way this is normally done and in virtually
20  every case I've dealt with over the past 27, 28 years, if
21  you receive document requests from the other side, you make
22  a good faith effort to identify where the documents are
23  likely to be. You do the things lawyers normally do to
24  talk to your clients and understand where the documents are
25  likely to be. You go collect those files. And you review

8

1  them and produce whatever is responsive and not privileged.
2  Do you get every piece of paper that will may exist within
3  the company that could conceivably be relevant? Probably
4  not. That's probably never the case. But you make a good
5  faith effort to go to the right places and get the
6  documents that are most likely to be responsive. That's
7  not what happened here.
8  What happened here was we went through a very
9  intricate process of going through organization charts and
10  identifying a very substantial universe of people. We can
11  give you the statistics. We've had to interview hundreds
12  of people. It's not enough to go find the person who is
13  sitting in that job today; you have to find the person who
14  sat at that desk before and then speak to all the
15  assistants and secretaries who maintained the files.
16  That's made this an enormous process. So we didn't do it
17  the way we would normally do it.
18  What I'm suggesting is if we can now narrow that
19  process that remains, we can get to the depositions much

~8917751.txt

20  sooner.
21      We, at least from Xerox's perspective, are not
22  trying to tell the plaintiffs what sequence to operate in
23  in terms of which deponents to take first, so we could
24  streamline the process and they can take depositions.
25      THE COURT: How would you describe or

9

1  characterize the documents that the plaintiffs would not be
2  getting under what you call streamlined discovery process?
3      MR. CHESLER: They would not be getting whatever
4  documents would be in the files of the people -- and we
5  identify who files we were going to so there would be no
6  secret, it would be completely transparent to the
7  plaintiffs. They would not be getting the files of the
8  people who will be eliminated from that list that we will
9  otherwise go and pursue over the coming months in this
10 streamlined process.
11     So we would say, "Here are the people that remain
12 whose files we're in fact getting, both domestically and
13 Europe, and here are the people whose files we're not going
14 to get." And anybody in that second category would be
15 files they wouldn't be getting. How many discreet
16 documents at the end of the day that would amount to? I
17 don't know. How many would be of real consequence? I
18 don't know. We suspect not many because we think we would
19 be going after the right people.
20     THE COURT: Now, if the plaintiffs believe that
21 they want to get the documents in the files of the people
22 who you've identified as the people whose files you would

Page 8

~8917751.txt

23  not examine in connection with your streamlined discovery
24  approach, what would be your objection to that?
25          MR. CHESLER: Wouldn't be. We're doing that

10

1   anyway. We're back to where we are in the papers. We're
2   saying then we're not changing course in fact. We wouldn't
3   be doing this mid-course correction, if you will. You want
4   to wait until we get all that done? We'll do that. We're
5   doing it as fast as we can.
6          THE COURT: What I hear you saying, in substance,
7   then, is that you'll have all the discovery completed
8   before depositions are taken.
9          MR. CHESLER: Yes, as the plaintiffs had
10  heretofore indicated they were going to do until recently.
11  But all I'm suggesting is a way of accommodating their
12  current desire to do this, with our point of view, is to
13  simply narrow what's left to be done so we don't have a
14  two-bite-at-the-apple problem, we don't have the issues
15  that have been raised in the papers, and they can get to
16  the depositions they want to get to sooner and they take
17  them in the sequence in which they want to take.
18          THE COURT: If I were to decide that we would
19  have the streamlined discovery approach followed but there
20  were certain things that the plaintiffs want that were not
21  included under that approach, what would be the prejudice
22  to the defendant?
23          MR. CHESLER: If -- let me just make sure I
24  understand the question. We go to the plaintiffs and we
25  say, "This is the box of files we're still going to go

Page 9

~8917751.txt

11

1    pursue and give to you." They say, "Well, there's this
2    other piece we think you should add to the box." We'd say,
3    "Okay, whatever additional time it takes to do that, we'll
4    do that. But we're not saying it has to be this set and
5    nobody else. We've come up with a universe that is what we
6    think is the right universe and we'll streamline this." If
7    they look at this and say, "No, there are others outside of
8    that we want you to get," we'll do that. It just adds to
9    the time, that's all.
10           THE COURT: You don't want the five key witnesses
11   deposed until you've completed that universe?
12           MR. CHESLER: Right.
13           THE COURT: What you've defined, and then to the
14   extent it gets expanded.
15           MR. CHESLER: They can expand it.
16           What we don't want to have is this
17   two-bite-at-the-apple problem. Mr. Weiss and I have
18   discussed this. I understand his position. He's saying,
19   "I'm not willing to agree that I won't come back and ask."
20   As we've said in our papers, we're not suggesting the Court
21   won't soundly exercise discretion. But this is not a
22   situation where there's always the chance there will be a
23   document on the other side of the hill and always an option
24   of the discovering party coming to the Court saying, "You
25   know what? I didn't know about that document. I have good

12

~8917751.txt

1  cause. Let me now resume the deposition."
2      We know with certainly that such documents
3  exist --
4      THE COURT: Let me tell you my assumption is that
5  that could certainly happen. And that the response would
6  be, well, as I think plaintiff has said in the papers,
7  that's a risk we're willing to take. That's the way I read
8  the papers. It's a risk that the plaintiff is taking. I
9  don't see there as being a two-bite-at-the-apple issue
10 here.
11     MR. VOLLMER: That's not how I understand it,
12 Your Honor. I represent two of the individual defendants
13 and if I may interject --
14     THE COURT: I'm not speaking for the way the
15 plaintiff is characterizing it. I'm speaking for the way
16 I'm looking at it.
17     MR. VOLLMER: What I just urge us to keep in mind
18 is, as a very practical matter, we're likely to see a
19 request for second depositions of our clients. And I
20 understand you're indicating a strong disinclination at
21 that stage to grant it, but my concern is that we will be
22 faced with strong arguments based on evidence produced,
23 including other depositions. Mr. Chesler hasn't addressed
24 other depositions, he's addressed documents. And we also
25 have to worry about managers and third-parties who are

0

13

1  going to be deposed who might produce information that
2  leads the plaintiffs to seek a second deposition later on.

Page 11

~8917751.txt

3  So I face, in my view, a very serious risk. And
4  I appreciate your comments, but I'm very worry about where
5  we'll be in X months after we've done document production
6  and done the depositions on my clients and then maybe some
7  depositions and document discovery later on.
8         MR. CHESLER: Your Honor, may I say one other
9  thing?
10        THE COURT: Yes.
11        MR. CHESLER: The reason I'm suggesting this
12  alternative approach in response to your point is not just
13  the two-bite argument. There's one other point. And that
14  is: By making sure whatever the universe of the documents
15  is -- we suggest a narrowed universe -- but whatever the
16  universe is, that that be looked at and produced before the
17  depositions start. We're trying to avoid the other issue,
18  which is, we also want to be sure we've seen the universe
19  of documents which the plaintiffs are ultimately going to
20  get so the witnesses are prepared. These are events that
21  happened a long time ago. These people don't even work for
22  Xerox anymore. People's recollections fade, as Mr. Weiss's
23  papers say, that's right, although if they faded I suspect
24  they pretty much faded by now. We also want to know what
25  that universe it.

                                                          14

1         So I don't want to be in a position where we know
2  we're looking for other documents and they're documents
3  that we didn't even know about when the witnesses were
4  prepared.
5         The way we've tried to come up with to

Page 12

~8917751.txt

6   accommodate the competing interests here is shrink that
7   universe to something other than it is now, albeit
8   transparent to the plaintiffs, then conduct depositions.
9   So we have no longer a two-bite problem and we have no
10  longer a prejudice problem in terms of not knowing what the
11  universe of documents there will be, if you will, in the
12  case.
13              THE COURT:  Let me hear from other defense
14  counsel first.
15              Is there's anything you want to add or elaborate
16  on based on the observations I've made?
17              MR. GOLDBERG:  I think our points have been
18  adequately addressed.
19              THE COURT:  Okay.
20              MR. VOLLMER:  The only other point I wanted to
21  add was to mention the need for other depositions as well
22  and my suggestion that we try to define a small group of
23  other depositions, lower-level people, again, before the
24  five senior former executives are taken.
25              THE COURT:  In your view, why should the

0

                                                            15

1   plaintiffs be required to wait to take the depositions of
2   the five senior people until the depositions of those
3   lower-level people are taken?
4              MR. VOLLMER:  For three reasons, Your Honor.
5              First, it allows the defendants as well as the
6   plaintiffs to prepare in a more orderly, coherent way.  It
7   is the logical course, that's what we suggest in our
8   papers.

Page 13

~8917751.txt

```
 9              Second, it does further reduce the risk that
10   there would be an attempt to take a second deposition
11   notwithstanding strong admonition that you've already
12   mentioned.
13              And third, as we do mention, it would allow
14   further time to pass on the other governmental inquiry that
15   is active at the moment and it would allow us to reevaluate
16   the position at that time.
17              THE COURT:  Why is it more orderly from the
18   plaintiffs' perspective to take the depositions of the
19   lower-level people first?
20              MR. VOLLMER:  I think I would have two reasons
21   for that.
22              First, they've not explained how taking the five
23   senior -- the former senior executives in fact would
24   streamline this case.  In fact, not only haven't they
25   addressed that, I'm dubious about that.
```

                                                                16

```
 1              But second, this case is about what happened in
 2   some restructurings at Xerox, as I know you know.  And the
 3   complaint emphasizes that it's about the flow of
 4   information from mid- and lower-level managers up to the
 5   top decision-makers on accounting and disclosure issues,
 6   and what decisions they made about public disclosure and
 7   what information did they have when.  The way that is a
 8   sensible way to collect information on that subject is to
 9   talk to the people who are on the front lines of the
10   restructuring, find out what information they provided
11   either in paper or written form or orally to the senior
```

Page 14