~8917751.txt

3   yet -- we should say November so we're not disappointing
4   people. But that's still my definition of the fall.
5           MR. FLEISCHMAN: But I would envision -- and I'm
6   speaking out loud, and Mel can stop me -- but let me just
7   say this, I would envision that it's not the defendants who
8   are going to, you know, make a unilateral decision as to
9   who they think is relevant in this case. It would be a
10  process of agreement.
11          MR. CHESLER: What I said was if what we're
12  talking about is the universe we've defined, that's how
13  long it would take us. If they want to expand that
14  universe, well, we'll talk about it, it will take longer.
15  I'm answering your question.
16          MR. WEISS: For my clarification, the original
17  concept that we were talking about was expanding the five
18  to another X number, and that would only have been North
19  America before we started in September? We were talking
20  about starting in September and you had agreed to that.
21  What was your understanding as to what documents you would
22  have produced by then?
23          THE COURT: I'm not sure I understand this
24  question either. You say we were talking about starting in
25  September?

35

1           MR. WEISS: We had an agreement with Xerox. The
2   individual counsel were not part of that discussion.
3           THE COURT: Okay.
4           MR. WEISS: The understanding was that we were
5   going to start with these five people as deponents sometime

Page 31

~8917751.txt

```
 6    in September and they would supply us with X number of
 7    documents prior to that time. And I just want to
 8    understand the difference between what you're now talking
 9    about in terms of changing the scope from what you were
10    going to produce to us before the September start of the
11    depositions that we had previously agreed to.
12            MR. CHESLER: Let me first clarify. Mr. Weiss
13    proposed this change to taking these five depositions in
14    September rather than completing the document discovery.
15    What I said to him at one point was we would agree to that
16    approach subject to agreeing to certain things. The first
17    of the conditions we put on the table which we never agreed
18    upon was one bite of the apple. We agreed to disagree. So
19    we never did get to that.
20            What we had in mind was at that point -- at least
21    what I had in mind, I don't know if my team will tell me
22    that I was wrong -- was only the files of the five people
23    that you were talking about whose files we said we'd put to
24    the front of the cue.
25            I then came back to you in a subsequent
```

                                                                36

```
 1    conversation and said if we can work out a deal to get this
 2    discovery done, we would expand it beyond just those five
 3    and define this broader universe that I'm suggesting to the
 4    judge we would do. That broader universe is what I believe
 5    we will finish, with Sandra's caveat, we will finish by
 6    November, including Europe. But we never got that
 7    resolved. Instead, we went to this motion.
 8            MR. WEISS: I'm sorry, Your Honor.
```

Page 32

~8917751.txt

9    THE COURT: Go ahead.
10   MR. WEISS: What I'm confused about is this.
11   Leaving aside the lack of agreement on the second-bite
12   issue, we had an understanding that we were going to start
13   the depositions in September of these five. And the
14   documents that would be produced by that time would be the
15   documents from those five and X number of people
16   surrounding them.
17   MR. CHESLER: No. No. What I had in mind in the
18   discussion we had about your taking those depositions in
19   September was getting you what I called in that
20   conversation the e-mail boxes of those people. I used that
21   phrase, "e-mail boxes."
22   So what we had in mind was to say, okay, we'll
23   stop what we're doing. We'll go to the electronic files of
24   the people whose depositions they want to take first and
25   we'll put those at the front of the cue and get those done.

37

1    It seemed to me that was certainly doable during the course
2    of the summer if they wanted to take those depositions in
3    September. We never went down that road because we then
4    got our first disagreement, which was over two bites of the
5    apple, and that sort of brought the process to a
6    standstill. But we were not going to be able to collect
7    and produce by September this larger universe of files,
8    which includes some people in Europe.
9    MR. WEISS: Maybe we're getting someplace now.
10   You're now saying that in addition to the five, if we agree
11   on a number of people beyond that so it's not the 150 --

Page 33

~8917751.txt

12    MR. CHESLER: Whatever the number is.
13    MR. WEISS: Whatever that number is, let's say
14 it's 25 people. If we reduce this sphere of documents to
15 only the top five and X number beyond them and not force
16 you to have to go all over the world looking for 300 or
17 whatever people and what's in their files and close the
18 document production to that sphere of people, we can get
19 this thing done much more quickly.
20    MR. CHESLER: That's what we've been saying, yes.
21    And what I've said, just to be clear is, if the
22 universe that we're talking about is the universe we've
23 defined over the last several weeks in an effort to try to
24 do that, we believe that will be done by November. To the
25 extent the plaintiffs say that isn't quite the right

38

1 universe, we want to broaden it, I don't know how much
2 they'll broaden it and how much time that will take.
3    THE COURT: Let me ask, because I don't want to
4 lose sight of this, what's the process for the counsel for
5 individual persons getting documents? Are there documents
6 you already have? If so, what percentage?
7    MR. CHESLER: From the company?
8    THE COURT: Well, documents that they're going to
9 be deposed about.
10    MR. VOLLMER: We have not, I don't believe,
11 started a process of receiving that flow of documents yet
12 from the company that are being produced in this case, Your
13 Honor. We haven't had that discussion with counsel for
14 Xerox.

Page 34

~8917751.txt

15    MR. GOLDBERG: I believe that we have had some
16  discussions and some access to documents, so we're not far
17  along in our review process, but the problem has not been
18  with Cravath. They've certainly made stuff available to
19  us. It's just that we've had, since we got the deposition
20  notice, started figuring out what the heck to do we do now.
21    MR. WEISS: Your Honor --
22    THE COURT: Let me tell you how I'm thinking
23  about this. It seems to me we're really talking about sort
24  of shifting course in the middle of things here. I think
25  what I'm trying to conceptualize is how would things have

39

1   gone if this had been the plan at the beginning.
2     MR. CHESLER: That thought has rumbled through
3   our minds.
4     THE COURT: Where would we have wound up? And
5   then if there's a way that we can get on that track, how do
6   we get there?
7     But I don't think we would have wound up with an
8   agreement among the parties that you'll sort of get to take
9   depositions and then maybe other documents will come up or
10  will be discovered, and then you'll get to come and ask the
11  judge to allow further deposition.
12    And, I mean, I am very negative on the idea of
13  the plaintiffs having the chance for a second deposition.
14  But I think defense counsel are rightly concerned that the
15  situation will present itself where I will just conclude
16  that, as adamant as I may be right now about not allowing a
17  second deposition, I don't want to do something that just

Page 35

~8917751.txt

18    appears unreasonable. And that's the risk that defense
19    counsel take. Because, at least I try not appear to be
20    totally unreasonable. And also from a perspective of
21    management trial, if it's something that's going to make it
22    much harder for me to manage the trial if I don't allow the
23    second deposition, then I'm going to allow the second
24    deposition.
25         So to the extent that defense counsel have

40

1     expressed concern about the fact that that's a possibility
2     notwithstanding my strong statements that I'm not at all a
3     fan of having a second deposition, they are right to be
4     concerned, I think. Because it is not unusual that
5     something will happen that you just didn't anticipate. And
6     that will work to the detriment of the defendants in this
7     case.
8         So I am taking that into consideration, in case
9     you're concerned about that.
10        I think Mr. Vollmer's papers discuss the fact
11    that we have the governmental inquiry. And in candor, I
12    should tell you that I'm not prepared to place significant
13    weight on that factor based on the cases I've read and what
14    I understand to be the present situation, which basically
15    is that there's a governmental inquiry and that's all I
16    know. So if there's something that I'm missing there, I
17    wanted to give you the opportunity to educate me.
18        MR. VOLLMER: I appreciate that, Your Honor.
19        I would ask that you attribute some weight to it.
20    We think it's simply another factor that is a reason for

Page 36

~8917751.txt

21　postponing these five depositions, but we put it third in
22　our papers or fourth, we put it at the end. We viewed the
23　other factors as more weighty ourselves, but we ask you to
24　bear it in mind.
25　　　　THE COURT: Okay.

41

1　　　　MR. LEVINE: Your Honor, even if that were a
2　factor, that wouldn't apply to Mr. Fishbach and
3　Mr. Marchibroda.
4　　　　THE COURT: All right.
5　　　　MR. WEISS: Your Honor, respecting your views, I
6　think it might be possible for us to work on Mr. Chesler's
7　suggestion and reduce the scope to maybe X number of people
8　surrounding the five so that they can narrow their
9　investigation and complete it more quickly. And I'm
10　talking about universal examination overseas as well as
11　domestic. So if we can have a little time to get to
12　Mr. Chesler a list of the names who we think are relevant
13　and instead of 300 names, reduce it to 30, let's say. And
14　target sometime at the end of November to complete that
15　document production, then we can get started with these
16　depositions before the end of the year.
17　　　　MR. VOLLMER: May I add one further factor that I
18　would like to ask to be considered is that we also think
19　about a stage of lower-level managers' depositions that we
20　identify as a small group, as a sample group at a minimum,
21　whose depositions would occur before the top five already
22　identified. So that we finish document production, we take
23　a few, we can streamline every facet of this, in my view,

Page 37

~8917751.txt

24  select a few of the mid-level, lower-level managers, and
25  then we move to depositions of my clients and the others

42

1   who have been identified so far.
2           THE COURT: I understand your desire for that.
3   Let me hear from other counsel.
4           Other counsel have any views on that?
5           MR. WEISS: I do.
6           THE COURT: Why don't I hear from defense
7   counsel.
8           MR. CHESLER: Let me see if I can guess what your
9   position is.
10          MR. WEISS: Actually, I was going to be creative.
11          MR. CHESLER: You're always creative.
12          A couple of things, Your Honor.
13          First, so we're clear, the universe -- I'm not on
14  the issue yet of the sequence of depositions, I want to go
15  back to something Mr. Weiss said. The universe of people's
16  files that we have in mind for this streamlined version
17  is -- don't hold me to the exact number, but it's something
18  like 20. It's the five people they've identified and about
19  15 other people. So I want to be clear when I've given you
20  my estimates today, I've said -- and I want to be sure
21  we're all clear -- if we're doing what we believe are that
22  remaining universe, I've given my best estimate how long
23  that will take. If we're talking about more or their 30
24  are a largely different set from our 20, I don't want to be
25  back here in a few weeks having a debate about why the

Page 38

~8917751.txt

43

1    dates are different or why it's taking longer or anything
2    else. I want to be clear what each of us is talking about.
3    We've made a good faith effort to say if we're going to
4    have a universe beyond those five people, where would we
5    going to go? Who are the people it makes sense to go to?
6    We've identified that universe, and we'll share that with
7    the plaintiffs, and we hopefully come to an agreement what
8    the universe now will be and we'll promptly tell them what
9    the size of that effort is and how long it will take.
10            THE COURT: My expectation is that the first
11   thing that will happen is we'll have a definition of the
12   universe, of what documents will be produced. Once that
13   has been defined, then you will tell me what the deadline
14   will be.
15            MR. CHESLER: Fine. That's great.
16            THE COURT: Then we will talk about who gets
17   deposed and in what order, although we can pretty much talk
18   about that now as far as I'm concerned. But did you have a
19   view on that?
20            MR. CHESLER: Yes, I do.
21            THE COURT: Does it matter --
22            MR. CHESLER: I do.
23            THE COURT: -- from your perspective?
24            MR. CHESLER: As a trial lawyer -- and I hope
25   Mr. Weiss will agree that every once in a while he thinks

44

1    of me as a trial lawyer -- I don't feel comfortable telling

~8917751.txt

2   Mr. Weiss who he should depose and the sequence in which he
3   should take depositions. I wouldn't want him to do that
4   for me and I don't feel comfortable doing it for him.
5        There is no question, however, that tactical
6   advantages trade sides across the table depending upon
7   those decisions and sometimes there is a negotiation that
8   leads to the sequence that is not necessarily the sequence
9   that one side would have chosen if they were left without
10   any fettering on their choices. So there's no question
11   there's a disadvantage to my client, Xerox, having to deal
12   in the first instance with five people who don't work for
13   Xerox or with whom they don't have control over, who are
14   represented by separate counsel, who were once very
15   important people in the company, whose statements will
16   matter in ways we all understand that senior people's
17   statements matter to juries more than less senior people's
18   statements matter, and I would very much like to have the
19   benefit of, if you will, learning the case as lawyers only
20   can learn cases through the deposition process, by hearing
21   questions that are asked of witnesses at depositions and
22   how they answer before those witnesses are deposed.
23        And I also point out, although I know Your
24   Honor's not given giving it much weight and it's not
25   appropriate to give it too much weight, that the tendency

45

1   of the government investigations can lead to complications
2   in those depositions that I, from Xerox's perspective, want
3   to avoid.
4        So is there a tactical advantage to Mr. Weiss's

Page 40

~8917751.txt

5   position? Of course there is. That's why he chose it.
6   And there's a corresponding tactical disadvantage to my
7   position for having chosen. So in that sense, I absolutely
8   have a preference that I would like to have him take some
9   other depositions first so I that have the benefits that
10  that choice would make. But I don't purport to have the
11  power to control it.
12          MR. WEISS: In the shorthand, I think what
13  Mr. Chesler is saying is if a lawyer knows that, and his
14  client knows, his client knows that Jim Jones is going to
15  testify in a particular way -- Jim Jones, being some other
16  witness -- it's going to be harder for his client to
17  testify in a particular way because he knows that Jim Jones
18  is already on the record that way. Whereas if I get the
19  client I want first, meaning one of the defendants, and I
20  get that client to testify and then Jim Jones later
21  contradicts him, I have an advantage doing that. And I'm
22  entitled to get his unrefreshed his recollection or his
23  uneducated testimony based upon what somebody else
24  testified to. That's any entitlement.
25          Now, the suggestion I was going to make is this.

46

1   Frequently what we do is we decide -- the plaintiff really
2   has the burden of proof, so the plaintiff is likely to want
3   to have many more witnesses deposed than a defendant. But
4   the defendant may want witnesses that he or she wants
5   deposed. So we alternate in some way. The plaintiff picks
6   two deponents, the defendant picks one, and we do it in
7   that order.

Page 41

~8917751.txt

8        THE COURT: You said plaintiff two, defendant
9   one? I just wanted to make sure I didn't mishear you.
10       MR. CHESLER: You heard it right.
11       MR. WEISS: That's because we have the burden of
12  proof, Your Honor. If they say they have as many witnesses
13  as we do, I don't mind alternating.
14       THE COURT: Should I tell you how I do jury
15  selection when I do peremptory strikes? I do plaintiff
16  one, defense two, then plaintiff two.
17       MR. WEISS: I don't care what order. Whatever
18  Your Honor feels comfortable with. What I'm suggesting is
19  that we can have alternating designations.
20       MR. FLEISCHMAN: Your Honor, just for the
21  plaintiffs, I'm not sure my --
22       THE COURT: You're overruling Mr. Weiss?
23       MR. FLEISCHMAN: Yeah, just for this. Very
24  respectfully, I think that tactically -- and it is I think
25  our right and I think Mr. Chesler said it right before he

                                                          47

1   started giving his caveats as to why as representing Xerox
2   he'd like it to go another way, I think that if all the
3   documents are produced and they've all had a chance to look
4   at the documents, I think it's our entitlement and our
5   right, plaintiffs' right, to chose, based on scheduling,
6   what depositions we want to take and in what order. And
7   that goes a lot towards our strategic consideration as to
8   how we're going to best get the truth from the various
9   deponents and how we're going to let the information
10  develop in our case. I would not want to compromise that

Page 42

~8917751.txt

11  situation at all right now. I think that we should have
12  the right to choose who we want to take, when we want to
13  take them, assuming they're available.
14       MR. WEISS: We have a right to take who we want
15  to take and they have a right to take who they want to
16  take.
17       MR. FLEISCHMAN: Absolutely.
18       MR. CHESLER: And I assume there will be, as
19  there usually is, limits on the number. So when they
20  decide that who they want to take and in what order, that's
21  against an absolute total. So it's not "I'll just keep
22  rolling these out as I feel like it"; there's an end to the
23  process and they know what that end is and there's some
24  finite number.
25       THE COURT: Well, by the time we get to the end

0

48

1   of the -- by the time we've identified what the deadline
2   for finishing production will be, will we know whose
3   depositions will be taken?
4        MR. FLEISCHMAN: I think we would try to
5   negotiate a deposition schedule, yes.
6        THE COURT: And then I'll have to resolve the
7   disagreement, which is fine.
8        MR. WEISS: There's always new names that pop up
9   in discovery because -- I mean, that's what discovery is
10  all about.
11       MR. CHESLER: We're back on that other river
12  again.
13       THE COURT: By the time we get to the discovery,

Page 43

~8917751.txt

```
14   we'll know.
15           MR. WEISS:  Certainly we'll make a best effort.
16           MR. FLEISCHMAN:  Yes, Your Honor.
17           THE COURT:  I just don't want to delay, after
18   discovery ends, commencing depositions.  I want to keep
19   things rolling.  And if we're getting on towards the fall,
20   right now at least I'm told I'll be on trial for the first
21   half of the year.
22           MR. FLEISCHMAN:  Your Honor, when I was an
23   assistant in this district, I've never seen a judge, quite
24   frankly, as busy as you with trials.  I don't know what has
25   happened between now and years ago --
```

                                                                49

```
1            THE COURT:  I'm trying to investigate our system.
2    I did have four trials back-to-back.
3            MR. FLEISCHMAN:  Never, when I was in this
4    district, did I see that.
5            MR. VOLLMER:  Your Honor, may I ask a clarifying
6    question?
7            THE COURT:  We have not discussed the issue that
8    you wanted to talk about in terms of whether you depose
9    lower-level people first, but I think that would be part of
10   the discussion at that point.
11           MR. VOLLMER:  That's my understanding.
12           THE COURT:  I want that to happen quickly and I
13   want to be involved quickly so I can make sure this is
14   under way and proceeding before I disappear into the
15   Cendent case.
16           MR. VOLLMER:  With my colleagues.
```
Page 44

~8917751.txt

| | |
|---|---|
| 17 | THE COURT: Yes, I'm having a wonderful time with |
| 18 | them. I have 120 motions. |
| 19 | MR. VOLLMER: I'm sure all thoughtful. |
| 20 | THE COURT: Absolutely. |
| 21 | MR. VOLLMER: Just a clarifying question. Am I |
| 22 | right in understanding after Xerox defines the universe, |
| 23 | that's the universe of Xerox documents to be produced in |
| 24 | this case, there are not going to be subsequent requests |
| 25 | and productions from Xerox Corporation? |

50

| | |
|---|---|
| 1 | THE COURT: That's my understanding. |
| 2 | And I would like to have that done -- I'll let |
| 3 | you all stay here tonight and do it if you like. So you |
| 4 | can at least call me on Monday or Tuesday and tell me |
| 5 | you've defined it and then we can talk about the -- |
| 6 | MR. FLEISCHMAN: We need to go back, Your Honor. |
| 7 | THE COURT: I didn't mean you had to finalize it. |
| 8 | But I'd like you to at least have a clear understanding as |
| 9 | to what you're going to do once you leave the room and then |
| 10 | you leave with an action plan you're going to implement. |
| 11 | When we're talking about defining that universe, |
| 12 | we're talking about the plaintiffs and Xerox. I'd like to |
| 13 | make sure we keep counsel for the individual defendants in |
| 14 | the loop -- |
| 15 | MR. CHESLER: Absolutely. |
| 16 | THE COURT: -- at every stage -- |
| 17 | MR. VOLLMER: Thank you. |
| 18 | THE COURT: -- so we don't have any |
| 19 | inefficiencies bringing them up to speed. |

Page 45