~8917751.txt

20          MR. CHESLER:  Absolutely.

21          MR. FRIEDMAN:  Your Honor, if I can bring up one

22   point so that we're not accused later of --

23          THE COURT:  I wouldn't say "accused."

24          MR. FRIEDMAN:  This picks up on something

25   Mr. Weiss said.  It is not unusual in a deposition even

☐

51

1    after all the document discovery is complete, once you

2    start your deposition a witness may testify, for example,

3    "No, I didn't see that document but I saw the document to

4    which that document refers," for example.  And then you

5    would say to the defendants, "Has that other document been

6    produced?"  And the answer may be, "Well, no, because that

7    wasn't in the universe we agreed upon."  And you might say

8    at that point, "Well, we'd like to make a request for that

9    document."  Not a big category of documents, not a

10   warehouse of documents or somebody's files, but I wouldn't

11   want to give up forever the right, if a particular document

12   becomes relevant at a deposition, to say if that particular

13   document hasn't been produced, we'd like to see that one.

14          MR. FLEISCHMAN:  Can I follow up with what Brad

15   said very briefly?

16          THE COURT:  Another example?

17          MR. FLEISCHMAN:  No, not another example.

18          THE COURT:  No, that was a good example.

19          MR. FLEISCHMAN:  I assume we're not giving up our

20   rights that we have as plaintiffs' counsel as we take

21   depositions and we discover things that we didn't know, to

22   have very discreet, very focused document requests, a

Page 46

~8917751.txt

23    second document request that -- I assume we're not giving
24    that up, that this is just "here's the documents and now
25    whatever you discover, that's too bad."

                                                        52

1          MR. WEISS:  Just to amplify that, Your Honor,
2     discovery, as you know, is designed not only to get
3     evidence but to get information that leads to discoverable
4     matters.  So I think that's what we're really all talking
5     about.
6          MR. FLEISCHMAN:  Yes.  Brad brings up a very good
7     point.  We certainly would not want to give up that right.
8          MR. CHESLER:  Your Honor, may I respond?
9          I think there's a fundamental difference between
10    the two examples just given.  I think the first example, I
11    understand that there's a particular document and sometimes
12    it comes up as an attachment to a document and the version
13    produced didn't have the attachment on it or the witness
14    says, "I know there was a document I saw the week before
15    that that related to X or Y" and there's a very discreet
16    request and request is made by counsel, "Can you go see if
17    you can find that document because it relates to the
18    witness's testimony."  I wouldn't say that would be off
19    limits.
20          But what I just heard Mr. Fleischman say is we
21    have this right to ask for second or third document
22    requests as a result of testimony that's given at
23    depositions.  That's a horse quite of a different color, I
24    think.  That's another Rule 34 request.  That's another
25    round of discovery.
                          **Page 47**

~8917751.txt

☐

53

1           I could design today a deposition, I could do it
2      in my sleep.  They could give me any witness they want, put
3      them in that seat right now, I will ask him questions that
4      will demonstrate that he will identify categories of
5      documents they haven't produced.  I can do that.  If I go
6      in and structure my depositions as document discovery
7      identification processes, I can gin up another discovery
8      request.  We've just created a loophole that swallows --
9           MR. FLEISCHMAN:  Judge --
10          MR. CHESLER:  Let me finish.
11          MR. FLEISCHMAN:  Okay.
12          MR. CHESLER:  -- the understanding that we had.
13          I want to be absolutely clear.  What we're
14      talking about is getting this document discovery process
15      done.  We've offered to do it in as transparent a way as we
16      can design.  We'll tell them exactly whose files we intend
17      to go get.  If they want us to get others, we'll get those,
18      and we'll then size what that is and we'll define how long
19      it will take us to do.  And if discreet documents come up
20      that couldn't be anticipated that don't happen to fall in
21      that universe, of course they can make those requests.  If
22      this is going to become a deposition program that will
23      create subsequent rounds of requests, that's not --
24          THE COURT:  But they'll also know whose documents
25      they're not getting.

☐

54

~8917751.txt

1          MR. CHESLER:  Absolutely.  They sat with us and
2      created the process of these org charts that was the
3      marching order that we were down until now.  They know what
4      we were going to get and they know therefore by subtraction
5      what they're not going to get under this defined universe.
6          MR. WEISS:  Your Honor, let me give you an
7      example of what happened in a big case that I was involved
8      in.  We had a big accounting firm as a defendant.  And we
9      didn't know that a branch of that accounting firm had
10     created a task force to go around the country and examine
11     their field offices at the time we were making our document
12     requests.  During the course of the testimony it came out
13     that a task force had been formed in Chicago to go out and
14     review the auditing techniques of the various branch
15     offices.  At that point we were able to make a discreet
16     document request for anything that that task force
17     produced.  And we got a task force review report that blew
18     the case wide open.  Now, we had no way at the preliminary
19     stage of the case when we're making those requests to even
20     know that that existed.  So I think, you know, during the
21     course of discovery, that's what discovery is about, to
22     discover things like that.  And if it comes about, it's not
23     something like what Brad was talking about, it's a
24     different category of information.  And it would be very
25     difficult for us to surrender the right to go after that

0

55

1      document if it existed.
2          MR. CHESLER:  Well --
                              Page 49

~8917751.txt

3          THE COURT:  We're either going to streamline
4     discovery or we're not.
5          MR. CHESLER:  Exactly.  That's exactly what I was
6     about to say.  If we're going to construct this unusual
7     process, then we all have to live or die by that process.
8     We can't have, for one purpose, have us sailing down a
9     river that's got us doing this innovative out-of-the-box
10    approach and then say, "But I've got traditional rights I
11    don't want to give up."  Then let's do it the old-fashioned
12    way and we'll be back here in any number of months and all
13    the documents will be done and then we can talk about a
14    deposition program.  But we can't have this hybrid
15    neither-fish-nor-foul process that they're talking about,
16    Your Honor.  It's not fair.
17         MR. FRIEDMAN:  Your Honor, I think there's a
18    disconnect between what Mr. Chesler is talking about and
19    what Mr. Weiss is talking about.
20              If we put somebody in the chair and do a
21    deposition that is fairly obviously designed to create all
22    sorts of additional categories of documents that have to be
23    produced, that's going to be fairly obvious.  And if we
24    were to have the temerity to make an application for more
25    documents or to ask for those documents and we came before

D

                                                              56

1     Your Honor, it's going to be fairly obvious fairly quickly.
2              On the other hand, if what we do is say is, look,
3     there is one very discreet category of documents, perhaps
4     not one document but a discreet category like a set from a
5     task force and nothing else, that's what we're looking for,
                          Page 50

~8917751.txt
6    something like that, I think Your Honor's going to be able

7    to rule on that request, if it's necessary to go for a

8    ruling, at that time in context when we know what the

9    request is and how the information developed.  I don't

10    think that we need to prejudge every possibility now and

11    say, you know, we now know what will happen no matter what

12    possibilities unfold.

13            THE COURT:  As I understand it, before we got on

14    to the discussion of taking these five depositions in

15    September, the defendants were willing to go through and

16    produce everything that was on the --

17            MR. FLEISCHMAN:  The negotiation.

18            THE COURT:  Whatever you're calling it.

19            MR. CHESLER:  The org chart.  That was what the

20    plaintiffs wanted and that's what we --

21            MR. FLEISCHMAN:  No, no. It was negotiated.

22            THE COURT:  But as part of that negotiation there

23    had been no giving up of a right to come back and apply to

24    the court for additional production or additional discovery

25    of materials.  But what you're seeking to do now is to

0

57

1    streamline things.  And that changes things.  So I think

2    you either go with the original plan and you keep all the

3    rights you had before, or you agree on a way to streamline

4    it.  One or the other.

5            MR. FLEISCHMAN:  Can we consult?

6            THE COURT:  I think you can consult here.  You

7    can -- I'll leave the room, you all can stay here as long

8    as you like.

**Page 51**

~8917751.txt

9        We'll go off the record.

10              (Brief recess.)

11        THE COURT:  We've had our caucus?

12        MR. WEISS:  Well, Your Honor, I think it would

13  probably be close to malpractice if we gave up the ability

14  to follow a trail that developed in a deposition that could

15  be the key evidence in the case.  So as hard as it is for

16  us to accept the consequence, I think we have to stay with

17  the original plan and go the full route and just ask the

18  Court to exercise his case management discretion and set a

19  timetable that we can live with so that we at least have

20  some definite dates and know what we're confronting.

21        THE COURT:  What's your current timetable?

22        MR. WEISS:  They haven't given us one.  That's

23  one of the problems that led us to where we were.

24        MR. FLEISCHMAN:  Maybe we can get that now.

25        MR. CHESLER:  Just so we're clear about that, we

◻

58

1   tried to at least allude to some of that history, I want to

2   be sure we're clear about that.  What happened here was we

3   said we'll go off and find and produce documents responsive

4   to your request.  If you have any objections, we'll

5   litigate it, but we'll go off and do it and produce

6   whatever we produce.  And the discussion led to:  How do we

7   know we're going to get everything?  And the inability to

8   agree on the "how do you know you're going to get

9   everything" question, which is never the case, in my humble

10  experience, led us not to us inventing this idea of an

11  organizational chart approach and imposing it on the

**Page 52**

~8917751.txt

12    plaintiffs, but the plaintiffs insisting that that had to
13    be a surrogate for the normal procedure that would have
14    been followed. So we did negotiate. But what we
15    negotiated was how many boxes on organization charts were
16    the files we were going to be the files we were going to
17    have to search, not the idea that we were going to use this
18    organizational chart. That's not the way I've done it in
19    any other case. Maybe I've done it once or twice, but it
20    certainly is not the rule; it's the exception.
21         So what we have been doing now for months is
22    going around the country and doing all of these interviews
23    and collecting documents on this box-by-box process on an
24    organizational chart basis. We do not know how long it
25    will take us principally because I don't know how many

☐

59

1    documents are sitting over in Europe that we have yet to
2    identify and find, or how long it will take to retrieve
3    them, or how long it will take to retrieve bits and pieces
4    from electronic files. And the process of doing this
5    archival discovery of electronic files in the United States
6    is very time-consuming and we're talking about an enormous
7    universe of documents. So I don't know how long it will
8    take.
9         We did try to come today prepared, and I have
10    said how long we think it would take if we were dealing
11    with this reduced universe. If the plaintiffs don't want
12    to proceed that way, so be it. We only went down that road
13    because of the suggestion that they change the course and
14    take depositions up front.

**Page 53**

~8917751.txt

15          So I don't have a date now.  I know what I know,

16    which is we're in the midstream of doing this.  We have

17    been making telephone calls to Europe.  We don't have an

18    understanding yet of how much is over there and how long it

19    will take.  And we have a lot of people at apparently half

20    a dozen or so locations, 30 people, to get hard copy from

21    in the United States plus a very large universe of

22    electronic files yet to be reviewed.  And we're doing it as

23    fast as we can.

24          THE COURT:  Sounds like the most appropriate

25    approach is for me to continue to have monthly conferences

                                                        60

1    with you all.  That way we can talk about what's been done.

2    And if you sense not enough has been done, you can point

3    that out to me.

4          MR. WEISS:  I love Evan for a lot of reasons

5    including we went to the same law school, apparently we

6    were brought up in the same borough, but you know -- and

7    we've even co-defended the same client.

8          MR. CHESLER:  That's true.

9          MR. WEISS:  We have to have a deadline.  And they

10    have to put in the resources to get it done.  That's what

11    litigation is about, especially big litigation.  And, you

12    know, the fact that they haven't even sent anybody over to

13    Europe to start accumulating documents, I mean we've got to

14    get to --

15          MR. CHESLER:  Your Honor, we agreed -- Mr. Weiss

16    wasn't in these specific conversations, others in the room

17    were -- we specifically agreed to a location-by-location

**Page 54**

~8917751.txt
18    procedure that put Europe behind the United States.  There

19    was no secret about that, it was all discussed and agreed

20    to.

21            THE COURT:  Why don't I let you all sit down and

22    talk about what you think are reasonable benchmarks.

23            MR. FLEISCHMAN:  That would be fine.

24            THE COURT:  And let me know what they are and

25    we'll see how we're doing in our periodic conferences.

<br>

61

1            MR. WEISS:  And we can use the date we set

2    previously with the Court to come back.  And by then maybe

3    we can get --

4            MR. FLEISCHMAN:  That was the 28th of August in

5    person, 2 p.m., here.

6            THE COURT:  Yes.  We can do it in person or, if

7    you're concerned about the weather, we can do it

8    telephonically.  We were talking about the fact that you

9    seem to be losing your sky there.  Not that I'm trying to

10    rush you out of here.

11            MR. VOLLMER:  Your Honor, the September dates, do

12    we have relief from the September deposition dates?

13            THE COURT:  You do.

14            MR. VOLLMER:  Thank you.

15            MR. KARAM:  What about Mr. Fishbach?

16            THE COURT:  We have motions for protective

17    orders.  They're moot?

18            MR. VOLLMER:  We were asked to change the style

19    of them to opposition to motions to compel.

20            MR. GOLDBERG:  Our filings were motions for

Page 55

~8917751.txt

21    protective order.  I take it they're granted to the extent

22    that the depositions won't go forward pending further

23    notice?

24           THE COURT:  It's a matter of semantics.  We'll

25    say granted, how's that?

 

62

1           MR. CHESLER:  If anybody is keeping score.

2           THE COURT:  So the 28th at 2:00 is what we have

3    down.

4           MR. FLEISCHMAN:  Yes.  And we will attempt to get

5    together with them early next week and really try to hash

6    through these various benchmarks.

7           MR. CHESLER:  Your Honor, you're not away that

8    day?

9           THE COURT:  August 28th.

10           MR. CHESLER:  Oh, you were talking about July.

11           MR. VOLLMER:  Does that relief extend -- there

12    are two nonparties, Fishbach and Marchibroda.  They are not

13    my clients.  But does the relief from the September

14    deposition dates apply to them?

15           THE COURT:  Yes.

16           What I'd like to do is I'd like to know that you

17    all have met next week.  I'd like to know if there are

18    issues.

19           MR. FLEISCHMAN:  Could we submit a joint report

20    to you?

21           THE COURT:  Yes.

22           MR. FLEISCHMAN:  We'll do that.

23           THE COURT:  If there are any issues, I'd like to

Page 56

~8917751.txt
24    resolve them and have things under way instead of waiting
25    until the 28th of August.

                                                    63

1              I do have a motion to compel filed by Xerox.
2              MR. FLEISCHMAN:  We're responding to that right
3    now.
4              THE COURT:  I'd like to have that resolved by the
5    28th of August.  I think we'll give you a shortened
6    schedule.
7              MR. FRIEDMAN:  It does work out.
8              THE COURT:  It may be one that I look at and
9    decide on the papers unless you all want to be heard.
10             MR. CHESLER:  If you look at the papers and want
11   to hear from us, maybe we can do that by telephone before.
12             THE COURT:  Good.  I think you all will be
13   hitchhiking back.
14             MR. CHESLER:  Is there a particular corner to
15   stand on?
16             THE COURT:  I would head towards the south end of
17   Hartford if I were you.
18             MR. WEISS:  Thank you, Your Honor.
19                    (Proceedings adjourned at 4:40 p.m.)
20
21
22
23
24
25

                        Page 57

~8917751.txt

C E R T I F I C A T E


       I, Diana Huntington, RMR, CRR, Official Court
Reporter for the United States District Court for the
District of Connecticut, do hereby certify that the
foregoing pages are a true and accurate transcription of my
shorthand notes taken in the aforementioned matter to the
best of my skill and ability.


                            **DIANA HUNTINGTON, RMR, CRR**
                            **Official Court Reporter**
                            **450 Main Street, Rm. 225**
                            **Hartford, Connecticut 06103**
                            **(860) 547-0580**


**Page 58**

CERTIFICATION

THIS IS TO CERTIFY THAT a copy of the AFFIDAVIT OF KEVIN J. ORSINI, sworn to December 2, 2005, was sent by Federal Express courier service, postage prepaid, this 2nd day of December 2005, to:

Glen DeValerio, Esq.
Jeffrey C. Block, Esq.
Leslie R. Stern, Esq.
Berman DeValerio Pease Tabacco
    Burt & Pucillo
One Liberty Square
Boston, MA 02109

Andrew M. Schatz, Esq.
Jeffrey S. Nobel, Esq.
Justin S. Kudler, Esq.
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103-3290

J. Daniel Sagarin, Esq.
David A. Slossberg, Esq.
Hurwitz, Sagarin & Slossberg, LLC
147 N. Broad Street
P.O. Box 112
Milford, CT 06460

Melvyn I. Weiss, Esq.
Brad Friedman, Esq.
Beth Kaswan, Esq.
Milberg Weiss Bershad
    & Schulman LLP
One Pennsylvania Plaza, 49th Fl.
New York, NY 10119-0165

Jay W. Eisenhofer, Esq.
Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer, P.A.
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

W. Sidney Davis, Esq.
George A. Salter, Esq.
M. Gavan Montague, Esq.
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022

Stuart J. Baskin, Esq.
Tammy P. Bieber, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

Thomas J. Murphy, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street, Suite 910
Hartford, CT 06103

Dennis J. Johnson, Esq.
Jacob B. Perkinson, Esq.
Johnson & Perkinson
1690 Williston Road
South Burlington, VT 05403

Lisa Kelly Morgan, Esq.
Ruben, Johnson & Morgan, P.C.
249 Pearl Street
Hartford, CT 06103

Kevin J. Orsini