UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>XEROX CORPORATION, KPMG, LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER and PHILIP FISHBACK,<br><br>    Defendants | 3:00-CV-1621 (AWT)<br>ALL CASES<br><br><br>December 2, 2005 |

**DEFENDANT KPMG LLP's POSITION STATEMENT REGARDING
ENTRY OF PROTECTIVE ORDER AND DISPUTED DISCOVERY MATTERS**

# TABLE OF CONTENTS

**Page**

OVERVIEW..................................................................................1

A.    PROTECTIVE ORDER – PARAGRAPH 16......................................1

B.    RULE 26(f) REPORT...................................................................6

        1.    Paragraph E.8.................................................................6

        2.    Paragraph E.18...............................................................6

        3.    Paragraph E.19...............................................................7

CONCLUSION..............................................................................8

\\\NY - 81416/0041 - 920239 v8

# TABLE OF AUTHORITIES

**Page**

Federal Cases

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000)..................................................................................................2

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*,
731 F.2d 1032 (2d Cir. 1984)................................................................................................5

*In re Horowitz*,
482 F.2d 72 (2d Cir. 1973)....................................................................................................5

*In re John Doe Corp.*,
675 F.2d 482 (2d Cir. 1982)..................................................................................................5

*In re Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993)......................................................................................................5

*Ippoliti v. Town of Ridgefield*,
No. CV990337600S, 2000 WL 1198173 (Conn. Super. Aug. 7, 2000) ................................5

*Medinol, Ltd. v. Boston Scientific Corp.*,
214 F.R.D. 113 (S.D.N.Y. 2002) ..........................................................................................5

*SEC v. KPMG LLP, et al.*,
Civ. No. 03 CV 0671 (DLC) (S.D.N.Y. 2003) .....................................................................3

*PAS Associates v. Twin Labs., Inc.*,
No. CV990174428S, 2001 WL 1659466 (Conn. Super. Dec. 5, 2001)................................5

*U.S. v. Adlman*,
134 F.3d 1194 (2d Cir. 1998)................................................................................................5

*U.S. v. Constr. Prods. Res., Inc.*,
73 F.3d 464 (2d Cir. 1996)....................................................................................................5

Statutes and Rules

Fed. R. Civ. Proc. 30(a)(2)(A) ...................................................................................................7

Fed. R. Civ. Proc. 30(d)(2) ........................................................................................................7

\\\NY - 81416/0041 - 920239 v8

Defendant KPMG LLP ("KPMG"), by its undersigned attorneys, submits this position statement regarding: (i) contested paragraph 16 of the Confidentiality Stipulation and Proposed Protective Order (the "Protective Order"); and (ii) disputed discovery matters in paragraphs E.8, E.18 and E.19 of the Rule 26(f) Report of Parties' Planning Meeting filed on November 18, 2005 (the "Rule 26(f) Report").

## OVERVIEW

All parties involved in this action have worked to formulate a schedule for informal and formal discovery as set forth in the Rule 26(f) Report and to agree to terms for a Protective Order in order to facilitate discovery. Currently, most of the issues with respect to the scheduling and the Protective Order have been resolved among the parties; however, the parties have been unable to reach a final agreement on all terms for the Protective Order and the Rule 26(f) Report. As described below, KPMG has proposed discovery provisions that will efficiently and effectively permit the discovery needed in this action.

### A. PROTECTIVE ORDER – PARAGRAPH 16

Xerox has proposed including paragraph 16 in the Protective Order, while both KPMG and Plaintiffs object to inclusion of this paragraph. Paragraph 16 provides a burdensome and unnecessary procedure that allows a "Non-Producing Party" to designate discovery material produced by *others* in this litigation (parties or non-parties) as privileged or immunized from discovery. The provision allows a Non-Producing Party (without any initial showing) to direct the producing party to demand the return of any designated discovery materials from anyone to whom the materials have been produced (the "receiving party"), without regard for how the producing party had obtained or previously used the discovery materials. The receiving party then must return all copies of the designated materials and/or destroy them. If the receiving

party believes that the privilege claim is unfounded, that party may keep one copy for the sole purpose of filing a motion challenging the designation.

The problem with paragraph 16 is not that it allows Xerox (or any other party) to protect applicable privileges or immunities; KPMG agrees that the parties should be allowed, under the appropriate circumstances, to take reasonable steps to protect privileged materials from discovery. But the procedure set forth in paragraph 16 is burdensome on the producing and receiving parties and, in this case, not necessary for protecting allegedly privileged materials; therefore it should be excluded.

The mechanics of paragraph 16 are objectionable because, without the consent of the other parties, Xerox is effectively asking for and receiving a protective order for documents that have already been provided to third parties. Moreover, Xerox is asking that the burden be placed on the producing party and the receiving parties to comply with and overcome Xerox's unilateral designation. Similar to the procedure established for seeking a protective order under the Federal Rules, the burden should rest in the first instance on Xerox to show that some privilege is applicable. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (generally, when asserting a privilege the burden rests with the party asserting the privilege – whether attorney-client or attorney work-product – to establish each of the essential elements of the privilege).

Unless and until Xerox shows that under the circumstances the designated materials are protected and that justice requires that the documents be returned and/or destroyed, the producing and receiving parties should not be required to take any action, especially action that would delay production of discovery materials and result in needless motion practice. This is

particularly true here, since Xerox will be asking for protection for materials that have been in KPMG's or another third party's possession for years.

Generally, the discovery materials that KPMG will be producing in this litigation fall into two categories: (1) its audit work paper files and related documents for KPMG's audits of Xerox's financial statements, including documents provided to KPMG by Xerox to assist in KPMG's audit work; and (2) documents produced by or to KPMG in connection with an SEC investigation into Xerox matters and an action by the SEC entitled *Securities and Exchange Commission v. KPMG LLP, et al.*, Civ. No. 03 CV 0671 (DLC) (S.D.N.Y. 2003).[1]

Specifically, with respect to the documents provided to KPMG for its audits and KPMG's 1997-2000 work-paper files (which include over 273,000 pages), Xerox knew and *intended* that KPMG would rely on those documents during the audit process. At no time, including the present, has Xerox taken steps to protect that material or even to request that the documents be returned for any reason (including because some may contain protected or privileged information). Nevertheless, years later, Xerox wants the ability to simply unilaterally designate materials produced in this litigation as privileged.[2] The burden at this point, if Xerox subsequently determines that some produced materials are protected, should be on Xerox; not on KPMG and not on the receiving party.[3]

---

[1]   KPMG received documents from the SEC in the SEC action, including documents that the SEC had obtained during its investigation of Xerox matters.

[2]   Notably, KPMG's situation is markedly different from the case of a former officer or director of Xerox who might possess documents that could potentially be privileged. If Xerox is concerned about such circumstances, there are more narrowly tailored ways to assert and protect its privilege without requiring the overwrought procedure proposed in paragraph 16.

[3]   Seemingly, paragraph 16 will allow Xerox to direct KPMG to retrieve all copies of any discovery materials that Xerox *now* (after several years in the possession of third parties) deems privileged or protected. This would cause significant hardship to KPMG because most of these materials have previously been produced in other litigations. For KPMG to have to undertake this task simply because Xerox, without making any threshold showing, claims that a privilege applies would unfair, burdensome and impractical. This is an undertaking KPMG should not have to incur absent some showing by Xerox that the documents should be protected from disclosure.

\\\NY - 81416/0041 - 920239 v8

This is not a situation where a party inadvertently produces documents that may be protected and demands the return of documents that *they* have just recently produced. Instead, by including paragraph 16, Xerox wants to allow a non-producing party to exercise control over and designate materials produced by another – documents provided to KPMG and third parties by Xerox, which have been in the third party's possession for years. When providing these materials, Xerox knew what it was providing; if it believed that some privilege applied, Xerox should have taken steps *at that time* to preserve its rights.

Furthermore, including paragraph 16 could substantially delay discovery in this action. By requiring the receiving parties to return or destroy all designated materials and requiring them to make a motion to de-designate the materials (which, as discussed below, are not likely protected), it could severely hamper the discovery process. The better procedure in weighing the hardship of which party should bear the burden in the first instance, would be to require a non-producing party (Xerox) to first make the required showing that some protection is warranted. Only after this showing has been made, and upheld by the Court, should the parties be required to undertake the task of retrieving these materials and returning or destroying all copies.

Paragraph 16 is also unnecessary because Xerox is not likely to succeed on any claim for privilege for the documents in KPMG's possession, in any event. For example, the documents used in KPMG's audits of Xerox's financial statements between 1997-2000 were created for a business purpose relating to Xerox's financial reporting required by the Federal securities laws and are not protected from disclosure. With respect to documents produced as part of the SEC investigation and/or litigation, it is hard to imagine that Xerox could have any legitimate claim of protection.

\\\NY - 81416/0041 - 920239 v8

Even if Xerox could somehow meet the thresholds and show that some documents KPMG will produce were at one time covered by the attorney-client privilege or the work-product protection,[4] any claim of protection would fail at this stage. Xerox waived any applicable privileges by disclosing these materials to KPMG and to other third parties (including the SEC during its investigation). Voluntary disclosures of otherwise privileged materials to third parties automatically vitiates the attorney-client privilege. *See In re John Doe Corp.*, 675 F.2d 482, 488-89 (2d Cir. 1982). Similarly, the attorney work-product protection also requires that protected materials be maintained in confidence.[5] *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (explaining that the "waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties"). Xerox's previous disclosure of these materials waives any protection that might have applied, especially after the passage of so much time without any effort to assert privilege status and to seek their return.

Accordingly, paragraph 16 of the Protective Order is not needed because there are no circumstances where Xerox could prevail on its claim for protection with respect to the materials in KPMG's possession. Thus, that paragraph should be excluded from the Protective Order.

---

[4] In order for the attorney client privilege to apply *Xerox* is required to show that the discovery materials include: "(1) a communication between a client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *U.S. v. Constr. Prods. Res., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The attorney-client privilege does not protect communications between a lawyer and his client concerning business advice. *See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984). The privilege is also lost if the confidentiality is not intended or is not maintained. *See In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973). Work-product protection gives limited protection to documents prepared in anticipation of litigation. A document only falls within this category where the document "was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation . . . ." *U.S. v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). The "because of" formulation "withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Id.* at 1202. The necessary motivation for creating the document must have been for litigation purposes. *See PAS Associates v. Twin Labs., Inc.*, No. CV990174428S, 2001 WL 1659466, *5 (Conn. Super. Dec. 5, 2001).

[5] Although disclosure among litigation allies will not waive the protection, disclosure to KPMG in its capacity as the outside auditor will. *See Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115-117 (S.D.N.Y. 2002) (attorney work-product protection waived by disclosure to company's outside external auditors because interest of external auditor are "not necessarily united with those" of the company, but are "independent of them"); *see also, Ippoliti v. Town of Ridgefield*, No. CV990337600S, 2000 WL 1198173, *5 (Conn. Super. Aug. 7, 2000).

B. **RULE 26(F) REPORT**

There are three issues relating to the Rule 26(f) report where the Plaintiffs and Defendants have been unable to reach an agreement.

1. **Paragraph E.8**

Paragraph E.8 relates to the initiation of fact discovery depositions. Plaintiffs' proposal sets the date to begin depositions at six months following the filing of the Rule 26(f) Report, *regardless* of where the parties are in the document discovery process. Defendants proposed delaying the initiation of substantive fact depositions until the Defendants' document production is substantially completed, unless agreed otherwise by the parties.

Defendants' position was proposed and is designed to avoid duplicative or inefficient discovery efforts. Setting a firm date for deposition could potentially allow substantive fact depositions to begin prematurely, *i.e.*, while substantial document discovery is outstanding. Although recognizing the Plaintiffs' desire to move the discovery process along, it would not make sense to allow Plaintiffs to begin taking substantive depositions before most of the relevant documents in this case have been produced. Thus, in the interests of efficiency, KPMG requests that the Court adopt the version of paragraph E.8 proposed by Defendants.

2. **Paragraph E.18**

Plaintiffs' proposed paragraph E.18 sets a date, May 5, 2005, by which Defendants Opposition to Plaintiffs' Motion for Class Certification is due. Defendants suggest that submission of opposition papers occur 30 days after the final depositions relating to the class certification issue – which is a common sense approach to scheduling.

Defendants' proposal reflects the reality that discovery on this issue cannot begin until after Plaintiffs' class certification papers are filed. Thus, at this stage, it is not possible to

\\\NY - 81416/0041 - 920239 v8

-7-

accurately predict the timing or volume of the discovery needed from Plaintiffs, including the scope and timing of document production and depositions. Moreover, although not setting a particular date, the procedure proposed by Defendants puts the burden on Plaintiffs to complete its document production and produce its witnesses on this issue in a timely fashion – which will ensure timely briefing on the issue. Finally, setting a date now, without knowing the extent of discovery needed on this important issue could prejudice Defendants' ability to adequately contest the issue. Thus, we request that the Court adopt Defendants' proposal for paragraph E.18.

3. **Paragraph E.19**

Paragraph E.19 deals with the number of days allotted for each party to take depositions of fact witnesses. Plaintiffs have proposed 50 days of depositions, with the ability to continue any deposition beyond one seven hour day, which is contrary to the presumed limit on the length and number or depositions under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(d)(2) (unless stipulated or authorized by the Court "a deposition is limited to one day of seven hours."); Fed R. Civ P. 30(a)(2)(A) ("[a] party must obtain leave of court . . . if, . . . a proposed deposition would result in more than ten depositions being taken under this rule . . .").

While Defendants recognize that this is a complicated case and that Plaintiffs may need some additional number of depositions beyond those authorized under the Federal Rules, the number of depositions proposed by Plaintiffs is clearly excessive and burdensome. This is especially true, in light of the fact that there have already been 41 depositions covering 79 days of testimony in the SEC Xerox investigation and 49 depositions covering 67 days of testimony in the SEC/KPMG litigation. The transcripts and exhibits for these depositions will be made available to Plaintiffs in the next few weeks and should eliminate the need for any multiple day depositions in this litigation.

Defendants are prepared to, within reason, agree that the parties should have the ability to take more than the 10 depositions per side provided in the Rules, but the 50 depositions per side proposed by Plaintiffs and allowing additional days is unduly burdensome and should not be allowed. Accordingly, KPMG requests that the Court adopt Defendants proposed paragraph E.19.

## CONCLUSION

For the foregoing reasons, KPMG respectfully requests that the Court enter the Protective Order submitted without paragraph 16 and that the Court adopt the version of paragraphs E.8, E.18 and E.19 in the Rule 26(f) Report proposed by the Defendants.

Respectfully submitted,

By: _____
Thomas J. Murphy (ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
Telephone: (860) 278-5555
Facsimile: (860) 524-0012
tmurphy@cemlaw.com

*Attorneys for Defendant KPMG LLP*

OF COUNSEL

    Stuart J. Baskin (ct25986)
    Tai H. Park (ct25826)
    Tammy P. Bieber (ct22089)
    Seth M. Kean (ct24587)
    Panagiotis Katsambas (ct25719)
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
seth.kean@shearman.com

      W. Sidney Davis  (*pro hac vice* pending)
      George A. Salter  (*pro hac vice* pending)
Hogan & Hartson L.L.P.
875 Third Avenue
New York, New York  10022
Telephone:  (212) 918-3000
Facsimile:  (212) 918-3100
gasalter@hhlaw.com

## CERTIFICATION

I hereby certify that a true copy of the foregoing Defendant KPMG LLP's Position Statement Regarding Entry of Protective Order and Disputed Discovery Matters was mailed, postage prepaid, this 2nd day of December, 2005, to:

Glen DeValerio (CT 22582)
Jeffrey C. Block (CT 22583)
Berman DeValerio Pease
    Tabacco Burt & Pucillo
One Liberty Square
Boston, Massachusetts 02109
(617) 542-8300

Melvyn I. Weiss (CT 04080)
Brad N. Friedman (CT 24910)
Beth Kaswan (CT 21415)
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119-0165
(212) 294-5300

Andrew M. Schatz (CT 00603)
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street
Hartford, Connecticut 06103
(860) 493-6292

J. Daniel Sagarin (CT 00603)
Hurwitz & Sagarin, LLC
147 North Broad Street
Milford, Connecticut 06460
(203) 877-8000

Geoffrey C. Jarvis
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801
(302) 622-7000

Evan R. Chesler (CT 03177)
Sandra C. Goldstein (CT 24019)
Karin A. DeMasi (phv 0584)
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eight Avenue
New York, New York 10019
(212) 474-1000

Thomas D. Goldberg (CT 04386)
Terrence J. Gallagher (CT 22415)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901
(203) 977-7300

Andrew N. Vollmer (CT 04386)
Heather A. Jones (CT 22415)
Wilmer Cutler Pickering Hale and Dorr LLP
2445 "M" Street, N.W.
Washington, DC 20037
(202) 663-6000

Stuart J. Baskin (CT 25986)
Tammy P. Bieber (CT 22089)
Seth M. Kean (CT 24587)
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000

_____
Thomas J. Murphy