318 F.3d 148 (2d Cir. 2003); Pilarczyk v. Morrison Knudsen Corp., 965 F. Supp. 311,

319 (N.D.N.Y. 1997) ("[W]here the prior lawsuits specifically concerned the very

misrepresentations alleged in the (present) complaint, then the prior lawsuits constitute

inquiry notice.") (quotation omitted), aff'd, 162 F.3d 1148 (2d Cir. 1998).[7]

Indeed, PPM acknowledges that its claims share the same factual basis as

the 2001 Carlson Complaint by alleging that the statute of limitations was tolled by the

filing of the 2001 Carlson Complaint, under the doctrine of class action (or "American

Pipe") tolling.[8]  (See AC ¶ 274.)  Under the American Pipe tolling doctrine, a class action

complaint tolls the statute of limitations only if "the factual basis of [the class] action was

the same as that asserted" in the subsequent litigation, such that the later litigation

"involve[s] the same evidence, memories, and witnesses as were involved in the initial

putative class action".  Cullen v. Margiotta, 811 F.2d 698, 720 (2d Cir. 1987); see also In

re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d. 188, 219 (E.D.N.Y.

2003) (stating that American Pipe tolling "does not create the potential for unfair surprise

---

[7] Bingham's March 28, 2001, amended complaint (see Orsini Decl. Ex. K) constituted yet another "storm warning" that triggered PPM's duty to investigate its claims.  In his March 2001 amended complaint, Bingham repeated allegations similar to those in his November 2000 complaint (see, e.g., Bingham Am. Compl., Introduction, ¶¶ 10, 13, 19), and made new allegations that explicitly charged that Xerox had violated, among other things, the federal securities laws.  For example, Bingham alleged that he was fired in retaliation for his attempt to ensure that Xerox "complied with applicable federal securities laws and regulations requiring publicly-traded companies" to abide by Generally Accepted Accounting Principles and to "make accurate disclosures of all information that would be material to investor investment decisions".  (Id. ¶ 23.) Similarly, Bingham alleged that he was fired "for his efforts to prevent Xerox from committing a fraud on its shareholders and investors as well as the investing public".  (Id. ¶ 24.)

[8] As discussed below (infra Point III.A), notwithstanding PPM's assertion that the statutes of limitation and repose governing its claims were tolled by the filing of the 2001 Carlson Complaint, PPM does not qualify for American Pipe tolling, as a matter of law, because it filed suit prior to a decision on class certification in Carlson.

or otherwise prejudice a defendant when the later filed actions raise claims concerning 'the same evidence, memories, and witnesses as the subject matter of the original class suit'") (quoting Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 562 (1974) (Blackmun, J., concurring)); Sharpe v. Am. Express Co., 689 F. Supp. 294, 301 (S.D.N.Y. 1988) (recognizing that American Pipe tolling is available only where, inter alia, "the claims made by plaintiff in [the later] action are substantially similar to or encompassed by those alleged in the class complaint"). By PPM's own allegations, therefore, the 2001 Carlson Complaint shares the same "factual basis" as its claims here, and thus placed PPM on inquiry notice of its claims by April 16, 2001.

Third, as alleged in the Amended Complaint, on May 31, 2001, Xerox restated its financial results for 1998, 1999 and 2000. (AC ¶ 7.) According to PPM, that restatement constituted an "admission" by Xerox that its "accounting practices for fiscal years 1998, 1999, and 2000 did not comply with GAAP". (AC ¶ 271.) Moreover, according to PPM, the May 2001 restatement "confirmed Mr. Bingham's main claim that the Company had used aggressive accounting to secretly bolster results in the late 1990's". (AC ¶ 229 (internal quotation marks omitted).) PPM's view of the May 2001 restatement largely follows the June 28 Wall Street Journal article, which claimed that the May 2001 restatement constituted "some vindication" for Bingham because Xerox "acknowledged . . . precisely one of Mr. Bingham's criticisms". (6/28 WSJ article, at 1, Orsini Decl. Ex. I.) The June 28 article also opined that the May 2001 restatement "gave credence to Mr. Bingham's main claim, that [Xerox] had used aggressive accounting to secretly bolster results in the late 1990s". (Id.) Thus, by PPM's own allegations, the May 2001 restatement (and the June 28 Wall Street Journal article discussing it), which

16

concerned financial statements about which PPM now complains, constituted yet another "storm warning" putting it on inquiry notice. See, e.g., De La Fuente, 206 F.R.D. at 382, 385 (ruling that plaintiffs were put on notice inquiry by, inter alia, "accounting restatements", and noting that "plaintiffs have a duty to inquire into the reliability of a defendant's representations where there is information that suggests that there are any material misrepresentations").

Accordingly, by June 28, 2001, (at the latest) there was ample public information--even beyond the February 6, 2001, Wall Street Journal "exposé", which PPM admits put it on inquiry notice--to put a reasonable investor on notice of the "general fraudulent scheme" alleged in the Amended Complaint. See White, 2004 WL 1698628, at *5. PPM was therefore on inquiry notice by no later than June 28, 2001, (and more likely before).

D.    PPM Has Not Alleged That It Exercised "Reasonable Diligence".

For PPM to delay the start of the limitations period beyond February 6, 2001, (or June 28, 2001, at the very latest), when inquiry notice was triggered, it must allege that it exercised "reasonable diligence" in investigating its claims, see, e.g., Dodds, 12 F.3d at 350, and that it "discovered facts during [its] investigation 'essential to [its] claims'", In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MD 1529 (LMM), 2005 WL 1679540, at *5 (S.D.N.Y. July 18, 2005) (quoting Levitt v. Bear Stearns & Co., 340 F.3d 94, 103 (2d Cir. 2003)). PPM has failed to allege either.

First, PPM does not allege that it undertook an investigation. The "Tolling Allegations" in the Amended Complaint (which are identical to those made in the Original Complaint, when PPM was not a party) do not say anything about any

17

investigation.  (See AC ¶¶ 271-74.)  In fact, the only mention of an investigation of any

kind is in the introductory paragraph of the Amended Complaint, where the plaintiffs

state that their "information and belief are based upon, among other things, their

investigation" (AC, introductory paragraph)--the same allegation of "investigation"

contained in the Original Complaint (OC, introductory paragraph).  Moreover, the

introductory paragraphs of both the Original Complaint and the Amended Complaint

identify the very same Wall Street Journal articles.  Because PPM was not a party to the

Original Complaint, it is impossible to determine what investigation (if any) PPM

undertook once it was on inquiry notice.  Indeed, the Amended Complaint simply does

not allege facts sufficient to permit the Court to determine:  (a) whether PPM in fact

conducted any investigation; (b) when any such investigation began; (c) whether any

such investigation was reasonably diligent; or (d) when any such investigation should

have uncovered the relevant facts underlying the fraud.

     Second, PPM has not alleged, as it must, that during its investigation it

discovered facts "essential to its claims", nor has it identified any such essential facts.

See In re Adelphia, 2005 WL 1679540, at *5.  As such, the bald allegations of

"investigation" in the Amended Complaint are insufficient to toll the statute of

limitations.  See Giant Group, Ltd. v. Sands, 142 F. Supp. 2d 503, 509 (S.D.N.Y. 2001)

("[I]t is well established that 'conclusory arguments as to reasonable diligence, both in

the context of inquiry notice and fraudulent concealment, must fail.'") (quoting Pilarczyk,

965 F. Supp. at 319 & n.7).  Therefore, PPM is charged with knowledge of the facts

underlying its claims as of the date the duty of inquiry arose, i.e., February 6, 2001, (or

June 28, 2001, at the very latest).  <u>See, e.g.</u>, <u>Dodds</u>, 12 F.3d at 350 (noting that

"knowledge will be imputed to the investor who does not make such an inquiry").

*   *   *

For all of these reasons, the one-year statute of limitations expired on

February 5, 2002, one year after PPM was put on inquiry notice of the alleged fraud.

Alternatively, even if PPM somehow was not on inquiry notice until June 28, 2001, the

statute of limitations expired no later than June 27, 2002.  In either event, PPM's

Section 10(b) and Section 18 claims, which were not brought until October 3, 2002, are

time-barred, and must be dismissed.

> E.    <u>PPM's Section 18 Claim Must Be Dismissed Because PPM Has Failed
>        Adequately To Plead Adherence To The One-Year Statute of Limitations.</u>

To state a claim under Section 18, plaintiffs must affirmatively plead

compliance with the one-year statute of limitations set forth in Section 18(c).  <u>See</u>

<u>Jacobson v. Peat, Marwick, Mitchell & Co.</u>, 445 F. Supp. 518, 525-26 (S.D.N.Y. 1977)

(recognizing that "[w]hen Congress creates a new right of action by statute and in that

same statute expressly limits the time in which a suit to enforce it may be brought,

compliance with the period of limitations must be affirmatively pleaded"); <u>cf.</u> <u>In re Chaus</u>

<u>Sec. Litig.</u>, 801 F. Supp. 1257, 1265 (S.D.N.Y. 1992) (noting that a plaintiff must plead

compliance with one-year and three-year prongs of statute of limitations to state claim

under sections 11 and 12(a)(2) of the 1933 Act, for which the statute of limitations is

likewise set forth in the creating statute); <u>Epstein v. Haas Sec. Corp.</u>, 731 F. Supp. 1166,

1180 (S.D.N.Y. 1990) (recognizing, in section 12 context, that "[w]here the statute that

creates the cause of action also contains a limitations period, a plaintiff must

19

affirmatively plead compliance with the statute of limitations"). To meet this pleading requirement, a plaintiff must allege "the date on which he learned of the misrepresentations relied upon", the reasons why the fraud was not discovered earlier, and "the diligent efforts which [the] plaintiff undertook in making or seeking such discovery". See In re Chaus, 801 F. Supp. at 1265; Epstein, 731 F. Supp. at 1181; Jacobson, 445 F. Supp. at 526.

Here, PPM has failed to plead any of these required facts. PPM does not allege the date on which it learned of the misrepresentations relied upon for its claims, the reasons why the alleged fraud was not discovered earlier, or any diligent efforts it undertook in making or seeking such discovery. Therefore, PPM has failed to plead compliance with the one-year statute of limitations. For that reason alone, PPM's Section 18 claim must be dismissed. See In re Chaus, 801 F. Supp. at 1265; Epstein, 731 F. Supp. at 1181; Jacobson, 445 F. Supp. at 526.

## II.    SECTION 10(b) AND SECTION 18 CLAIMS FOR PURCHASES BEFORE JANUARY 4, 1999, (FOR FSBA, TRSL AND FRANKLIN) AND BEFORE OCTOBER 3, 1999, (FOR PPM) ARE BARRED BY THE THREE-YEAR STATUTES OF REPOSE

In the Amended Complaint, the plaintiffs generally allege that they purchased (on their own behalf, or on the behalf of funds or trading accounts that they managed) Xerox common stock from either "1997 through 2000" (FSBA, TRSL and Franklin) or "1998 through 2000" (PPM). (AC ¶¶ 15, 18, 21, 23.) Any claims arising out of purchases from at least half of this "purchase period" fall outside of the applicable three-year periods of repose. For that reason, as shown below, the Section 10(b) and Section 18 claims asserted by FSBA, TRSL and Franklin arising out of any purchases

20

made prior to January 4, 1999, must be dismissed with prejudice. Similarly, the Section 10(b) and Section 18 claims asserted by PPM arising out of any purchases made prior to October 3, 1999, also must be dismissed with prejudice.

A.    Section 10(b) Claims For Violations Before January 4, 1999, (For FSBA, TRSL And Franklin) And Before October 3, 1999, (For PPM) Fall Outside Of The Period Of Repose And Must Be Dismissed.

The plaintiffs' Section 10(b) claims are governed by a three-year repose period. See Lampf, 501 U.S. at 363. To be timely, such claims must be brought within three years after the alleged violation. Id. at 364.

Section 10(b) claims accrue when a materially misleading statement or omission is made in connection with the purchase or sale of a security. See, e.g., Isanaka v. Spectrum Techs. USA Inc., 131 F. Supp. 2d 353, 357 (N.D.N.Y. 2001) (noting that "a claimant has 'no more than three years after the occurrence' of the conduct inducing the Plaintiff to make its securities purchase to file a section 10(b) or Rule 10b-5 claim") (quoting Ceres Partners v. GEL Assocs., 918 F.2d 349, 359 (2d Cir. 1990)). A violation of Section 10(b) and Rule 10b-5 can take place "before and up to the time when the sale of securities take[s] place, but not after the investment is made". Id. at 358 (finding that "once plaintiff made his investment with Defendants in reliance upon these statements, the statute of limitations . . . began to run and any statements made thereafter by Defendants are inapplicable to this Court's statute of limitations analysis") (internal quotation marks omitted). Thus, the Section 10(b) claims of FSBA, TRSL and Franklin for purchases made before January 4, 1999, if any (or all), and the Section 10(b) claims by PPM for purchases made before October 3, 1999, if any (or all), are barred by the three-year statute of repose and must be dismissed with prejudice. See, e.g., In re

21

Adelphia, 2005 WL 1679540, at *7 (dismissing claims with respect to transactions occurring more than three years before suit); Fezzani v. Bear, Stearns & Co., 384 F. Supp. 2d 618, 631 (S.D.N.Y. 2004) (ruling that Section 10(b) claims may not "be brought more than three years after the sale or public offering from which those claims arise"); Stamm v. Corp. of Lloyd's, No. 96 CIV. 5158 (SAS), 1997 WL 438773, at *4 (S.D.N.Y. Aug. 4, 1997) (ruling that no Section 10(b) claims "may be brought more than three years after the sale or public offering from which those claims arise", notwithstanding allegation of defendants' continuing fraudulent conduct), aff'd, 153 F.3d 30 (2d Cir. 1998).

B.  Section 18 Claims For Purchases Before January 4, 1999, (For FSBA, TRSL And Franklin) And Before October 3, 1999, (For PPM) Fall Outside Of The Period Of Repose And Must Be Dismissed.

Section 18 claims are governed by a three-year period of repose, which begins to run at the "purchase or sale of securities". See 15 U.S.C. § 78r(c); Jacobson, 445 F. Supp. at 527; see also WM High Yield Fund v. O'Hanlon, No. Civ. A. 04-3423, 2005 WL 1017811, at *11 (E.D. Pa. Apr. 29, 2005); Linder Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 53 (D. Mass. 1995).  Because FSBA, TRSL and Franklin first asserted claims under Section 18 when they filed the Original Complaint on January 4, 2002, any Section 18 claims for purchases made by these plaintiffs before January 4, 1999, are outside of the period of repose, and must be dismissed with prejudice.  Similarly, because PPM first asserted claims under Section 18 in the Amended Complaint on October 3, 2002, any Section 18 claims for PPM purchases made before October 3, 1999, are outside of the period of repose, and also must be dismissed with prejudice.

22

C.    The Plaintiffs' Section 18 Claims Must Be Dismissed Because They Have
Failed Adequately To Plead Adherence To The Three-Year Statute Of
Repose.

As with the statute of limitations (see supra Point I.E), plaintiffs bear the

burden of pleading compliance with the three-year statute of repose set forth in

Section 18(c). See, e.g., Jacobson, 445 F. Supp. at 525-26. To meet this requirement, a

plaintiff must "specify those purchases or sales" that took place within three years of the

filing of the complaint. Id. at 527; cf. In re Adelphia, 2005 WL 1278544, at *19 ("In

order to plead compliance with the three-year statute of limitations governing § 12(a)(2)

and § 10(b) claims, plaintiffs must 'plead with specificity the date of purchase of the

securities at issue.'") (citation omitted).

FSBA, TRSL and Franklin have failed to "specify" which (if any) of their

alleged purchases during the period from "1997 through 2000" took place within the

three-year period prior to the January 4, 2002, filing of the Original Complaint. PPM's

alleged purchase period of 1998 through 2000 suffers from the same defect; it fails to

specify which (if any) of its alleged purchases took place within the three-year period

prior to the October 3, 2002, filing of the Amended Complaint. As such, it is impossible

to determine, based on the plaintiffs' allegations, whether any (or, indeed, all) of the

claimed purchases took place outside of the repose period, and are now time-barred. The

plaintiffs' Section 18 claims must, therefore, be dismissed. See, e.g., Jacobson, 445

F. Supp. at 527 (dismissing claims and instructing that any "amended complaint must . . .

specify those purchases or sales, if any, which were made by plaintiff" within the three-

year repose period); cf. In re Adelphia, 2005 WL 1278544, at *19 (dismissing Section 12

and Section 10(b) claims, and instructing plaintiffs to include in any amended complaint

23

"a schedule demonstrating the dates of purchase" in order to establish compliance with the three-year limitations period for those claims); In re Chaus, 801 F. Supp. at 1265 ("Failure to plead compliance with the statute of limitations [for Section 11 and 12 claims] requires dismissal without prejudice to replead.").[9]

### III.  THE PLAINTIFFS' CLAIMS ARE NOT SAVED BY AMERICAN PIPE TOLLING, RELATION BACK PURSUANT TO RULE 15(c), OR THE EXTENDED PERIODS OF LIMITATION AND REPOSE OF SARBANES-OXLEY

The plaintiffs' time-barred federal claims are not saved by any of (a) the doctrine of class action (or "American Pipe") tolling, (b) relation back pursuant to Fed. R. Civ. P. 15(c), or (c) the limited extension of the statutes of limitation and repose enacted by the Sarbanes-Oxley Act.

### A.    American Pipe Tolling Does Not Save Plaintiffs' Time-Barred Claims.

In the Amended Complaint (as in the Original Complaint), the plaintiffs allege that their "claims have been tolled since the filing of [the 2001 Carlson Complaint]". (AC ¶ 274.) This allegation apparently seeks to invoke the doctrine of

---

[9] If the plaintiffs are permitted to attempt to replead their claims, they should be required to include "a schedule demonstrating the dates of purchase", as was required in the In re Adelphia case. See 2005 WL 1278544, at *19. Such a schedule should also identify the person or legal entity making the purchase, and the person or legal entity from which the purchase was made. This will help establish whether or not the plaintiffs can properly allege claims under the Florida and Louisiana blue sky statutes, both of which require a showing of privity. See, e.g., Rousseff v. E.F. Hutton Co., 867 F.2d 1281, 1285 (11th Cir. 1989) (noting that "[b]uyer/seller privity is required" to recover under Florida's blue sky law); Autin v. Martin, 576 So. 2d 72, 73 (La. Ct. App. 1991) (upholding trial court dismissal of Louisiana blue sky claim because it found that defendants "were not 'sellers' of securities to plaintiffs"). It will also help establish whether the named plaintiffs, as opposed to the funds or accounts which they manage, purchased the securities at issue, which is relevant to whether these plaintiffs have standing to assert their claims. See, e.g., Dabit v. Merrill Lynch, 395 F.3d 25, 37 (2d Cir. 2005) (noting that "private litigants may only bring an action under Rule 10b-5 when they are themselves the purchasers or sellers of the securities in question").

class action, or American Pipe, tolling.  This tolling doctrine developed out of a concern that failing to toll statutes of limitation and repose for putative class members while class certification was pending would force such putative class members to bring separate suits, or seek to intervene early in a case, to protect against the chance that class certification might ultimately be denied, and that the applicable statutes of limitation would have run in the meantime.  See Fezzani, 384 F. Supp. 2d at 632.  Tolling the statutes of limitation and repose until a decision on class certification avoids the need for plaintiffs to file protective suits or early motions to intervene.  By avoiding such "multiplicity of activity", such tolling furthers the goals of "efficiency and economy of litigation which is a principal purpose of the procedure" established by Rule 23.  Am. Pipe, 414 U.S. at 551.

Courts considering the American Pipe tolling doctrine have recognized uniformly, however, that such tolling does not apply where (as here) a plaintiff "chooses to file an action independently of the class before a determination on class certification".  State of Alaska Dept. of Revenue v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 294 F. Supp. 2d 431, 451 (S.D.N.Y. 2003); see also, e.g., Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 567-69 (6th Cir. 2005) (recognizing that "this limitation on class action tolling has taken hold in a number of district courts, with no courts rejecting it, and is not a new proposition"); Calvello v. Elec. Data Sys., No. 00CV800, 2004 WL 941809, at *4 (W.D.N.Y. Apr. 15, 2004) ("By filing her present action while the issue of class certification was open . . . plaintiff in effect waived the toll that the pending class certification created under American Pipe."), aff'd, 2004 WL 2202660 (W.D.N.Y. Sep. 28, 2004), aff'd, 2005 WL 2464172 (2d Cir. Oct. 4, 2005); Rahr v. Grant Thornton

25

LLP, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000) (finding that the pending class action "did not toll the statute of limitations" where plaintiff filed a separate suit before a decision on class certification). The reasoning of these cases is straightforward and persuasive: "Tolling the statute of limitations for those individuals who file separate suits before class certification is determined does nothing to promote judicial efficiency", which is the principal goal of the American Pipe tolling doctrine. Fezzani, 384 F. Supp. 2d at 632; see also Wyser-Pratte, 413 F.3d at 569 ("The purposes of American Pipe tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided."); Ebbers, 294 F. Supp. 2d at 451 ("Applying the tolling doctrine to separate actions filed prior to class certification would create the very inefficiency that American Pipe sought to prevent.").

Class certification has yet to be decided (or the plaintiffs' motion even filed) in the Carlson action. Therefore, the plaintiffs, who did not wait for a class certification decision before filing suit, cannot benefit from American Pipe tolling. Accordingly, their claims must stand on their own for the purpose of evaluating timeliness, and the statutes of limitation and repose governing their claims must be measured from the dates that they filed their complaints (January 4, 2002, for FSBA, TRSL and Franklin, and October 3, 2002, for PPM). To hold otherwise impermissibly would allow the plaintiffs "the benefits of the American Pipe doctrine free of the concomitant burden; that is, [the plaintiffs] here could rely on the class action plaintiffs without having to put their faith in the class representatives to adjudicate their rights". Fezzani, 384 F. Supp. 2d at 632-33.

B.    PPM's Claims Do Not Relate Back To The Original Complaint.

Nor can PPM rely on the concept of "relation back" to support the timeliness of its claims. Federal Rule of Civil Procedure 15(c)(3) permits the claims of a new plaintiff to "relate back" to the filing date of an earlier complaint only if, among other things, "the defendant knew or should have known that, but for a mistake concerning the new plaintiff's identity, the action would have been brought on that party's behalf". Levy v. U. S. Gen. Accounting Office, No. 97 Civ. 4016 (MBM), 1998 WL 193191, at *5 (S.D.N.Y. Apr. 22, 1998), aff'd, 175 F.3d 254 (2d Cir. 1999) (per curiam); see also Kahn v. Chase Manhattan Bank, No. 90 Civ. 2824 (LMM), 1995 WL 491067, at *3 (S.D.N.Y. Aug. 17, 1995) ("When a court determines whether to allow relation back of claims of additional plaintiffs, the court must focus on . . . the existence of mistake in the original pleading."); Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp., No. 91 Civ. 2050 (LLS), 1992 WL 204374, at *8 (S.D.N.Y. Aug. 11, 1992) (noting that Rule 15(c)(3) "is not satisfied with respect to [the new plaintiffs] because the failure to name them within the statutory period was not due to a mistake concerning the identity of the proper party") (internal quotation marks omitted); Morin v. Trupin, 778 F. Supp. 711, 735 (S.D.N.Y. 1991) ("Rule 15(c) stands as a remedial device for adding or substituting a party who 'but for a mistake concerning the identity of the proper party' would have been named originally"; thus, the claims of the new plaintiffs did not relate back because "[t]here has been no suggestion that [they] were omitted as

27

the proper plaintiffs in the original . . . complaint by mistake.") (quoting Fed. R. Civ. P. 15(c)) (emphasis in original).[10]

Here, there is no allegation that PPM was not named as a plaintiff in the Original Complaint because of any "mistake" of identity. Therefore, the claims asserted by PPM for the first time in the Amended Complaint do not relate back to the January 4, 2002, Original Complaint, to which it was not a party. See, e.g., Levy, 175 F.3d at 255 (affirming dismissal of claims by new plaintiffs because plaintiffs had not met "mistake" requirement of Rule 15(c)(3), thus new plaintiffs' claims could not relate back to original complaint). Accordingly, the operative date for purposes of statute of limitations analysis with respect to PPM's claims is October 3, 2002, the date the Amended Complaint was filed. As shown above, PPM's Section 10(b) and Section 18 claims were time-barred by that date, and must be dismissed. (See, e.g., supra Point I.D.)

C.      Sarbanes-Oxley's Limited Extension Of The Statutes Of Limitation And Repose Does Not Apply To PPM's Time-Barred Claims.

In 2002, Congress enacted the Public Company Accounting Reform and Investor Protection Act of 2002, commonly called the Sarbanes-Oxley Act. See Pub. L. No. 107-204, 116 Stat. 745 (2002) codified in part at 28 U.S.C. § 1658(b) (hereinafter "Sarbanes-Oxley"). Section 804 of Sarbanes-Oxley extended the statutes of limitation

---

[10] Although by its terms Rule 15(c)(3) applies only to new defendants ("the party against whom a claim is asserted"), the advisory committee's notes make clear that the same test is to be applied to amendments adding new plaintiffs. See Fed. R. Civ. P. 15(c) advisory committee's note, reprinted in 39 F.R.D. 69, 83-84 ("The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."). In addition, the Second Circuit has recognized that the "mistake" requirement of Rule 15(c)(3)(B) is applicable to any amendment adding new plaintiffs. See Levy, 175 F.3d at 255.

and repose for actions involving a "claim of fraud" to two years from discovery and five

years from the violation.  See id. at § 804, 116 Stat. at 801.  This limited extension does

not salvage PPM's time-barred claims for at least two reasons.

 First, the Second Circuit recently confirmed that the Sarbanes-Oxley

extended limitations and repose periods do not apply retroactively to revive claims that

were stale as of Sarbanes-Oxley's July 30, 2002, enactment date.  See Aetna Life Ins.

Co. v. Enter. Mortgage Acceptance Co. (In re Enter. Mortgage Acceptance Co. Sec.

Litig.), 391 F.3d 401, 411 (2d Cir. 2005).  Because PPM was on inquiry notice of its

claims by February 6, 2001, (or June 28, 2001, at the very latest), its claims expired by

February 5, 2002, (or June 27, 2002, at the very latest)--prior to the July 30, 2002

enactment date of Sarbanes-Oxley.  Accordingly, because Sarbanes-Oxley did not

"revive" PPM's stale claims, they are time-barred and must be dismissed.[11]

 Second, in enacting Sarbanes-Oxley, Congress made clear that the

extended limitations and repose periods established by the Act would apply only to

"proceedings" that were "commenced on or after" Sarbanes-Oxley's enactment date of

July 30, 2002.  See Sarbanes-Oxley, § 804(b).  However, "the filing of an amended

complaint does not constitute the commencement of a new proceeding for the purposes of

Sarbanes-Oxley".  In re Adelphia, 2005 WL 1278544, at *5; see also Newby v. Enron

Corp. (In re Enron Corp. Sec. Derivative & "ERISA" Litig.), No. MDL-1446, Civ. A.

H-01-3624, 2004 WL 405886, at *13, *16 n.42 (S.D. Tex. Feb. 25, 2004) (refusing to

---

 [11] Similarly, even if PPM's claims were not barred by the one-year statute of
limitations, any claims related to purchases before July 30, 1999, expired prior to the
effective date of Sarbanes-Oxley, and are now time-barred under the three-year period of
repose.

apply Sarbanes-Oxley to new claims asserted in an amended complaint filed after the enactment date, because to permit "a plaintiff to file a new second suit or a new claim or add a new party in order to circumvent a statute of limitations and expand his legal rights, especially where the clear language of the statute reflects Congress' intent not to permit such expansion, as here, would create legal chaos"). Therefore, claims asserted in an amended complaint are subject to the Sarbanes-Oxley limitations and repose periods only if the original complaint (which "commenced" the proceeding) was filed after Sarbanes-Oxley's enactment date.

Here, PPM first asserted claims in the October 3, 2002, Amended Complaint. This "proceeding" was "commenced", however, when the Original Complaint was filed on January 4, 2002--prior to the enactment date of Sarbanes-Oxley. Because the filing of the Amended Complaint did not commence a new proceeding, the statutes of limitation and repose set forth in Lampf rather than the ones established by Sarbanes-Oxley must be used to evaluate the timeliness of claims asserted by all plaintiffs--including PPM. See Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 310 (2d Cir. 2003) ("In the absence of any indication to the contrary, we doubt that Congress intended that courts would apply different sets of substantive and procedural rules to groups of plaintiffs asserting identical claims in a single action, depending on when those plaintiffs were added to the complaint.").

## IV.    THE PLAINTIFFS' SECTION 20(a) CLAIMS ALSO MUST BE DISMISSED

The plaintiffs also have asserted claims pursuant to Section 20(a) of the 1934 Act. Section 20(a) provides for control person liability for violations of, inter alia,

Sections 10 and 18 of the 1934 Act.  See 15 U.S.C. § 78t(a).  "Because Section 20 merely creates a derivative liability for violations of other sections of the Act, claims under Section 20 are governed by the limitations periods for those other sections."  Dodds, 12 F.3d at 350 n.2.  Therefore, the plaintiffs' claims under Section 20(a) are untimely and must be dismissed to the same extent as the underlying Section 10(b) and Section 18 claims.

In addition, the plaintiffs have named Xerox as a defendant in their Section 20(a) claim.  (See AC, Count V.)  The Amended Complaint, however, fails to allege facts supporting an inference that Xerox was a "control person" of any primary violator of the 1934 Act.  For that reason, the Section 20(a) claim should be dismissed in its entirety as to Xerox.  See, e.g., In re Deutsche Telekom AG Sec. Litig., No. 00 CIV 9475 SHS, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002) (dismissing Section 20 claims because "actual control over the primary violator is required and plaintiffs' allegations fail[ed] to allege facts supporting an inference of actual control").

## CONCLUSION

For the foregoing reasons, the Xerox Defendants respectfully request that the Court:  (1) dismiss PPM's federal claims in their entirety, or alternatively that the Court dismiss the federal claims of PPM for any purchases that took place before October 3, 1999; (2) dismiss the federal claims of FSBA, TRSL and Franklin for any purchases that took place before January 4, 1999; and (3) dismiss all of the plaintiffs' Section 18 claims in their entirety.  In addition, Xerox respectfully requests that the Court dismiss the plaintiffs' Section 20(a) claims in their entirety as to Xerox.

Respectfully submitted,

DEFENDANT XEROX CORPORATION

By

Evan R. Chesler (ct 03177)
Sandra C. Goldstein (ct 24019)
Karin A. DeMasi (phv0584)
Members of the Firm

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

DEFENDANTS PHILIP FISHBACH, G.
RICHARD THOMAN AND ANNE
MULCAHY

By     _Thomas Goldberg_

Thomas D. Goldberg (ct 04386)
Terence J. Gallagher (ct 22415)
DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

DEFENDANTS PAUL A. ALLAIRE,
BARRY D. ROMERIL AND GREGORY
TAYLER

By     _Andrew Vollmer_

Andrew N. Vollmer (ct 23728)
Heather A. Jones (ct 24194)
WILMER CUTLER PICKERING
    HALE and DORR LLP
2445 M Street, NW
Washington, DC 20037
(202) 663-6000

Alfred U. Pavlis (ct 08603)
DALY & PAVLIS, LLC
107 John Street
Southport, CT 06490
(203) 255-6700

Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
(203) 968-3000
Attorney for Xerox Corporation

CERTIFICATION

THIS IS TO CERTIFY THAT a true and correct copy of the
Memorandum in Support of Xerox Defendants' Partial Motion to Dismiss the Amended
Complaint was sent by Federal Express courier service, postage prepaid, this 9th day of
December 2005, to:


Jay W. Eisenhofer, Esq.
Geoffrey C. Jarvis, Esq.
Grant & Eisenhofer, P.A.
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Stuart J. Baskin, Esq.
Tammy P. Bieber, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022

W. Sidney Davis, Jr., Esq.
George A. Salter, Esq.
M. Gavan Montague, Esq.
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022

Lisa Kelly Morgan, Esq.
Ruben, Johnson & Morgan, P.C.
249 Pearl Street
Hartford, CT 06103


Thomas J. Murphy, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street, Suite 910
Hartford, CT 06103


*Elizabeth Lasorte*
Elizabeth M. Lasorte