**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RUSSELL CARLSON, *et al.* | : | 3:00-CV-1621 (AWT) |
| v. | : | |
| XEROX CORP., *et al.* | : | ALL CASES |
| | : | |
| MASTER CASE | : | |
| | : | |
| FLORIDA STATE BOARD OF ADMIN., *et al.* | : | 3:02-CV-1303 (AWT) |
| v. | : | |
| XEROX CORP., *et al.* | : | |
| | : | |
| MEMBER CASE | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO XEROX DEFENDANTS'**
**PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

Stuart M. Grant
Megan D. McIntyre
Michael J. Barry (CT 24174)
Sharan Nirmul
GRANT & EISENHOFER, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 722-7100

Lisa Kelly Morgan (CT 02201)
RUBEN JOHNSON & MORGAN, P.C.
249 Pearl Street, Third Floor
Hartford, CT 06103
Tel: (860) 275-6888
Fax: (860) 275-6884

*Attorneys for Plaintiffs Florida State Board*
*of Administration, Teachers' Retirement*
*System of Louisiana, Franklin Mutual*
*Advisers, LLC, and PPM America, Inc.*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND.............................................................................................3

    A.    Xerox's Concealment Of Its Fraud..........................................................4

    B.    Procedural History And Related Prior Proceedings .................................7

ARGUMENT.....................................................................................................................9

I.    PPM'S CLAIMS ARE TIMELY .........................................................................9

    A.    This Court Has Already Decided That Defendants' False
            Reassurances Prevented The Statute Of Limitations From
            Commencing In Early 2001 ......................................................................9

    B.    PPM's Claims Are Timely Under The Extended Limitations
            Period Provided In The Sarbanes-Oxley Act .........................................13

            1.    PPM's Claims Are Subject To The Extended Limitations Period
                     Provided In The Sarbanes-Oxley Act.........................................13

            2.    PPM's Claims Were Not Time Barred As Of The Effective Date
                     Of The Sarbanes-Oxley Act ....................................................15

    C.    Even If The Pre-Sarbanes-Oxley Limitations Period Applies,
            PPM's Claims Are Still Timely...............................................................16

            1.    PPM's Claims Were Brought Within One Year Of The Second
                     Restatement ..............................................................................16

            2.    PPM's Claims Are Tolled Under The Supreme Court's Decision In
                     American Pipe ...........................................................................17

                 (a)    The Goal of Providing Timely Notice Is Met
                           Regardless Of Whether A Plaintiff "Opts Out" Prior
                           To A Decision On Class Certification........................... 20

                 (b)    The Policies That Underlie American Pipe Are Furthered
                           By Tolling Federal Claims Asserted By Plaintiffs Who Opt
                           Out To Pursue State Law Claims Not Asserted In The
                           Class Action................................................................. 21

II.    THE FEDERAL CLAIMS ASSERTED BY FSBA, TRSL AND FRANKLIN
         ARE TIMELY FOR ALL PURCHASES SINCE APRIL 16, 1998 ................................23

III.   PLAINTIFFS HAVE ADEQUATELY "PLED COMPLIANCE" WITH
       SECTION 18'S STATUTE OF REPOSE TO THE EXTENT REQUIRED
       BY THE NOTICE PLEADING STANDARDS OF RULE 8(a) ......................................24

IV.    PLAINTIFFS HAVE ADEQUATELY PLED "CONTROL PERSON" CLAIMS..........27

CONCLUSION ............................................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
No. 02 CIV. 5575 (SWK), 2004 WL 992991 (S.D.N.Y. May 5, 2004)...............28

*Acosta v. Artuz,*
221 F.3d 117 (2d Cir. 2000) ...................................................................................25

*Adams Public School Dist. v. Asbestos Corp., Ltd.,*
7 F.3d 717 (8th Cir. 1993) ....................................................................................20

*In re Adelphia Inc. Sec. Litig.,*
No. 03-MD-1529, 2005 WL. 1679540 (S.D.N.Y. July 18, 2005).............13, 14, 16

*In re Alstom SA Sec. Litig.,*
No. 03 Civ. 6595, 2005 WL. 3534471 (S.D.N.Y. Dec. 22, 2005) ........................13

*American Pipe & Construction Co. v. Utah,*
414 U.S. 538 (1974) ...............................................................................................17

*In re Ames Department Stores, Inc. Note Litig.,*
991 F.2d 968 (2d Cir. 1993) ...................................................................................11

*Barnebey v. E.F. Hutton & Co.,*
715 F. Supp. 1512 (M.D. Fla. 1989)......................................................................19

*Blaz v. Belfur,*
368 F.3d 501 (2004) ...............................................................................................13

*In re Brand Name Prescription Drugs Antitrust Litig.,*
No. 94 C 897, MDL 997, 1998 WL 474146 (N.D. Ill. Aug. 6, 1998).............17, 20

*British American & Eastern Co., Inc. v. Wirth Ltd.,*
592 F.2d 75 (2nd Cir. 1979) ..................................................................................28

*In re Cardiac Devices Qui Tam Litigation,*
221 F.R.D. 318 (D. Conn. 2004) .............................................................................9

*Carlson v. Xerox Corp.,*
392 F. Supp. 2d 267 (D. Conn. 2005)..............................................................passim

*Crown, Cork & Seal Co., Inc. v. Parker,*
462 U.S. 345 (1983) .....................................................................................17, 18, 20

*Cullen v. Margiotta,*
811 F.2d 698 (2nd Cir. 1987) ................................................................................18

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ...............................................................................................17

*In re Electronic Data Systems Corp "ERISA" Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004)......................................................25, 26, 27

*In re Enterprise Mortgage Acceptance Co. Sec. Litig.*,
    391 F.3d 401 (2d Cir. 2004) .................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) ...................................................................20

*Gerber v. MTC Electric Techs. Co.*,
    329 F.3d 297 (2d Cir. 2003) .................................................................................15

*Giant Group, Ltd v. Sands*,
    142 F. Supp. 2d 503 (S.D.N.Y. 2001) ...................................................................13

*In re Global Crossing Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...................................................................13

*In re Global Crossing Ltd., Sec. Litig.*,
    No. 02 Civ. 910(GEL), 2005 WL. 2990646 (S.D.N.Y. Nov. 7, 2005) .....26, 27, 28

*In re IPO Sec. Litig.*,
    241 F. Supp. 2d at 352 .........................................................................................28

*In re Independent Serv. Organization Antitrust Litig.*,
    No. MDL-1021, 1997 U.S. Dist. LEXIS 4496 (D. Kan. Mar. 12, 1997) .............18

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) .............................................................................20

*LC Capital Partners, LP v. Frontier Insurance Group, Inc.*,
    318 F.3d 148 (2d Cir. 2003) .................................................................................11

*Levitt v. Bear Stearns & Co.*,
    340 F.3d 94 (2d Cir. 2003) ...................................................................................10

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) ...........................................................................19

*McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*,
    295 F.3d 380 (3d Cir. 2002) .................................................................................19

*Milman v. Box Hill System Corp.*,
    72 F. Supp. 2d 220 (S.D.N.Y. 1999) .....................................................................11

*In re PCH Associates*,
    949 F.2d 585 (2d Cir. 1991) ...................................................................................9

*In re Pronetlink Sec. Litig.*,
    No. 03 Civ. 2298(RO), 2005 WL. 3358665 (S.D.N.Y. Dec. 8, 2005) ..................16

*Realmonte v. Reeves*,
    169 F.3d 1280 (10th Cir. 1999) .............................................................................17

*R. J. Reynolds Tobacco Co. v. Johns Manville International, Inc.*,
No. Civ. 100CV00673 2001 WL. 823604 (M.D.N.C. Jul. 3, 2001) ..................... 26

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996) .................................................................. 28

*In re Shulman Transport Enterprises, Inc.*,
744 F.2d 293 (2nd Cir 1984) .......................................................... 28, 29

*Siebert v. Nives*,
871 F. Supp. 110 (D. Conn. 1994)........................................................ 11

*Stichting Pensioenfonds ABP v. Qwest*,
No. 04-RB-0238, 2005 U.S. Dist. LEXIS 9036 (D. Colo. May 28, 2005)........... 13

*Tosti v. City of Los Angeles*,
754 F.2d 1485 (9th Cir. 1985) ............................................................ 18

*Twombly v. Bell Atlantic Corp*,
425 F.3d 99 (2d Cir. 2005) ................................................................ 26

*In re WorldCom Inc. Sec. Litig.*,
294 F. Supp. 2d 431 .............................................................. 11, 22, 28

*In re WorldCom Inc. Sec. Litig.*,
No. 02-CV- 3288, 2004 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 26, 2004)........... 23

*Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385 (1982) ........................................................................ 25

## STATUTES

15 U.S.C. § 78aa.................................................................................... 25

15 U.S.C. § 78r(c)................................................................................. 24

28 U.S.C. § 1658(b)......................................................................... 13, 24

Fed. R. Civ. P. 8(a) ........................................................................ 26, 28

Fl. Stat. 517.301 .................................................................................. 23

La. R.S. 51:712 .................................................................................... 23

## PRELIMINARY STATEMENT

This Court has already denied the defendants' motions to dismiss in the related class action, *Carlson v. Xerox Corporation*, 3:00 CV 1621 (AWT) in all respects. Among the bases for that decision was the Court's finding that the events of February and June 2001 were insufficient to trigger the commencement of the statute of limitations for federal securities claims relating to Xerox's accounting fraud. In total disregard for that decision, the Xerox Defendants seek to dismiss the claims by plaintiff PPM America, Inc. ("PPM") in this opt-out action on the very same grounds: *i.e.*, that those claims are time-barred because the statute of limitations on those claims began to run in either February or June 2001. The Xerox Defendants also seek a partial dismissal of the federal claims asserted by plaintiffs Florida State Board of Administration ("FSBA"), Teachers' Retirement System of Louisiana ("TRSL") and Franklin Mutual Advisers ("Franklin"), insofar as they arise out of purchases of Xerox securities prior to January 4, 1999. Finally, the Xerox Defendants have moved to dismiss all of the plaintiffs' Section 18 and Section 20(a) claims on the grounds that they have failed to plead compliance with the pertinent statute of repose for Section 18, and on the grounds that the Section 20(a) claims are untimely and fail to allege Xerox's status as a "control person." The Xerox Defendants' motion should be denied in its entirety.[1]

PPM's claims against the Xerox Defendants are timely. Those claims were first asserted on October 3, 2002, when PPM joined the Amended Complaint filed by FSBA, TRSL, and Franklin. Because those claims were first brought *after* the effective date of the Sarbanes-Oxley Act, the Act's extended two- and five-year statutes of limitations and repose apply. Even the

---

[1] To the extent that KPMG's motion to dismiss adopts arguments made by the Xerox Defendants, KPMG's motion to dismiss should be denied for the same reasons.

Xerox Defendants do not dispute that PPM's claims are timely under the Sarbanes-Oxley Act's extended limitations periods.

Significantly, PPM's claims are timely even if the pre-Sarbanes-Oxley Act one-year statute of limitations applies, for several reasons. First, PPM was not on "constructive notice" of those claims until April 2002, at the earliest. It was not until that date that investors had any reason to know, or could possibly have discovered, that Xerox and the Xerox Defendants had committed the far-reaching, massive fraud that was later detailed in the June 28, 2002 restatement. Indeed, until April 2002, the Xerox Defendants were engaged in a massive cover-up, emphatically denying any and all suggestions that there was any fraud at Xerox, beyond the limited issues that were disclosed in connection with the prior restatement in 2001. Second, even if the statute of limitations would otherwise have begun to run more than one year before PPM's claims were brought, that statute was tolled by the filing of the *Carlson* class action, under the *American Pipe* doctrine.

Similarly, *American Pipe* tolling applies to the claims asserted by FSBA, TRSL and Franklin, and therefore those plaintiffs' federal claims are timely for all purchases since April 16, 1998 – i.e., within three years before the filing of the class action.

Defendants' motion to dismiss plaintiffs' Section 18 claims should also be denied. Compliance with the statute of limitations need not be pleaded in the complaint, but even if there were such a pleading requirement, plaintiffs have met it. PPM alleges that it purchased Xerox securities "from 1998 through 2000," and plaintiffs FSBA, TRSL and Franklin allege that they purchased such securities "from 1997 through 2000." Although these time periods may be broader than the statutes of repose applicable to these claims, plaintiffs' allegations are sufficient

2

under the pertinent notice pleading standard to allege that purchases were made within the repose period, and plaintiffs can provide details of those purchases during discovery.

Finally, plaintiffs have adequately pled "control person" claims under Section 20(a). Because the Xerox Defendants' argument that the Section 20(a) claims are time-barred is merely an outgrowth of their argument that plaintiffs' underlying Section 10(b) claims are time-barred, that argument must be rejected for the reasons discussed above. Further, the Amended Complaint alleges that each of the individual defendants acted as agents of Xerox and committed primary violations of the securities laws. Under traditional principles of agency, Xerox controlled the conduct of its agents as a matter of law, and thus may be held liable as a "control person" under Section 20(a).

For these reasons, as more fully set forth herein, the Xerox Defendants' motion to dismiss should be denied.

## **FACTUAL BACKGROUND**

This Court has already examined the underlying facts of this case, as set forth in its decision denying the motions to dismiss in the related class action litigation, *Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 270-79 (D. Conn. 2005) (hereafter "*Carlson*"). Although the Court did not address the merits of these plaintiffs' claims in *Carlson*, it assumed for purposes of that decision that the allegations of the class action complaint, as supplemented by the factual allegations in plaintiffs' complaint in this case, were true. *See id.* at 270. Based on those facts, the Court rejected one of the very arguments made by the Xerox Defendants here: that plaintiffs had constructive notice of their claims, such that the statute of limitations began to run, on February 6, 2001.

3

This case involves a massive fraud which was willfully concealed through lies and deception until June 28, 2002, when Xerox was forced to file a second restatement of its financial results for the fiscal years 1997 through 2000 (the "Second Restatement"). ¶ 9.[2] As this Court has recognized, during the period from June 16, 2000 to June 28, 2002, when Xerox filed the Second Restatement, the details of Xerox's improper accounting actions only "gradually came to light." *Carlson*, 392 F. Supp. 2d at 274. Indeed, the events leading up to the Second Restatement reveal the desperate efforts by Xerox to mask the enormous scope and nature of its accounting fraud from the public.

### A.    Xerox's Concealment Of Its Fraud

On June 16, 2000, Xerox announced that it would fail to meet its earnings estimates, in part, because of an "unexpected" discovery of bad debts in its Mexican subsidiary, Xerox Mexico, which would decrease its earnings per share by $0.05 to $0.06. ¶¶ 189-90. Following this announcement, Xerox announced that the SEC had started an investigation into Xerox's accounting and that Xerox's management was cooperating fully with the SEC investigation. *Id.*; ¶ 192. However, the defendants downplayed the situation by assuring investors that whatever problems had occurred in Mexico were isolated events attributable to rogue executives in the Mexico operations, and by claiming that Xerox had undertaken an extensive review of its operations in other countries. ¶¶ 193, 195; *Carlson*, 392 F. Supp. 2d at 274.

Later during the summer of 2000, unbeknownst to the public, Xerox sent several executives to certain Xerox offices around the world, including its offices in Mexico. ¶ 200; *Carlson*, 392 F. Supp. 2d at 275. James. F. Bingham ("Bingham"), an assistant treasurer, prepared a report to Xerox executives which outlined significant accounting and reporting irregularities in Xerox's worldwide operations, not just limited to Xerox Mexico. *Id.* Bingham

---

[2] All references to the Amended Complaint in this action appear as "¶ __".

was told by his superiors to conceal this information but he refused. ¶¶ 200-201; *Carlson*, 392 F. Supp. 2d at 275. After he made a second presentation detailing these widespread manipulations within the Company to other Xerox executives, he was fired for insubordination and disruptive behavior. *Id.*

On October 24, 2000, Xerox issued a press release announcing its results for the third quarter of 2000, and stating that it had been forced to take a $41 million after-tax charge for the problems in its Mexico division. ¶ 202. Again, Xerox reassured investors by stating that it did not anticipate any further related charges, and by reiterating that the problems in its Mexico operations were isolated. ¶ 202.

On February 1, 2001, Xerox publicly announced the results of its internal investigation into Xerox Mexico and attributed the problems there to a small group of senior executives who had colluded to violate Xerox's accounting policies and procedures. ¶ 206; *Carlson*, 392 F. Supp. 2d at 276. The Company stated that it had reviewed its worldwide operations and the problems at Xerox Mexico were unique. ¶¶ 206, 208. *Carlson*, 392 F. Supp. 2d at 276.

On February 6, 2001, following the Company's statement regarding its internal investigation of its Mexico operations, the *Wall Street Journal* published an article reporting Bingham's allegations about the widespread accounting problems at Xerox, which contradicted Xerox's statements that its accounting and internal control problems were localized within its Mexico operations. ¶¶ 212-214. In the very same article, the Xerox Defendants denied Bingham's allegations and denied any wrongdoing. The *Wall Street Journal* quoted Defendant Tayler: "'We took a look at the issues he raised,' Mr. Tayler says. 'We believe they are factually without merit.' Xerox, Mr. Tayler adds, is 'quite comfortable with our reporting in terms of generally accepted accounting principles.'" ¶ 217; *Carlson*, 392 F. Supp. 2d at 276.

5

Xerox further downplayed the *Wall Street Journal* report by characterizing Bingham as a disgruntled ex-employee who had been fired for cause. *Carlson*, 392 F. Supp. 2d at 276.

On May 31, 2001, Xerox filed a restatement of its financial statements to correct the accounting problems it had identified in its Mexico operations ("First Restatement"). ¶ 227. The net effect of the First Restatement was to reduce Xerox's reported pre-tax income by $140 million over the period 1998 through 2000. *Carlson*, 392 F. Supp. 2d at 277. In connection with the First Restatement, Xerox stated that it had completed a review of its worldwide internal controls and had determined that the issues identified at Xerox Mexico were not found at any other major unit. *See id.*

On June 28, 2001, the *Wall Street Journal* published a second article about Xerox's accounting problems and noted that, consistent with some of Bingham's allegations, the First Restatement had demonstrated that Xerox had used "aggressive accounting to secretly bolster results in the late 1990's." Xerox, however, maintained that the First Restatement "effectively rebutted Bingham's allegations because KPMG and an investigation by the Board of Directors had found only one of Bingham's charges to have some merit." *Carlson*, 392 F. Supp. 2d at 278. As this Court recognized in Carlson, "The First Restatement and the statements by Xerox left investors relieved and thus negated any negative effect which may have accompanied the disclosure of limited violations of GAAP by Xerox." *Id.*

On January 7, 2002, Xerox disclosed that it had been advised by the SEC that Xerox's accounting methodology for sales-type leases did not comply with GAAP. *Carlson*, 392 F. Supp. 2d at 278. Xerox denied the SEC's claims and declared in a conference call with analysts that it stood by its accounting, and that its financial statements were represented fairly in accordance with GAAP. *Id.*

On April 11, 2002, Xerox's lies finally began to unravel. On that day, the SEC filed a complaint ("SEC Complaint") and announced that Xerox had agreed to settle with the SEC for $10 million, then the largest fine ever paid by a company, and restate its financial results for each of the years 1997 through 2000. ¶ 230. The SEC stated that the size of the fine reflected, in part, a sanction for Xerox's failure to cooperate in the investigation. *Carlson*, 392 F. Supp. 2d at 278-79.

The SEC Complaint, and the subsequent Second Restatement of Xerox's financial results filed on June 28, 2002, revealed a gargantuan accounting debacle at Xerox that the Company had effectively concealed from the public through its denials and false assurances. In the Second Restatement, Xerox reversed *$1.9 billion* in revenue from prior years, of which $1.3 billion was reflected in the years 1997 to 2001. As this Court has previously recognized, the Second Restatement completely eclipsed the First Restatement in the scope of the accounting issues identified and the scale of the correction of Xerox's prior financial statements. *See Carlson*, 392 F. Supp. 2d at 279.

**B.    Procedural History And Related Prior Proceedings**

On April 16, 2001, the lead plaintiffs in the class action filed a consolidated amended complaint based, in part, on the allegations contained in the February 6, 2001 *Wall Street Journal* article. The lead plaintiffs thereafter amended their complaint to include allegations relating to the Second Restatement, and to assert claims on behalf of those who purchased Xerox securities between February 17, 1998 and June 28, 2002, the date of the Second Restatement.

In an effort to limit its liability, KPMG moved to dismiss the claims in the class action to the extent they arose out of purchases made after February 6, 2002, on the grounds that those claims were time-barred. Specifically, KPMG argued that the one-year statute of limitations applicable to those claims was triggered by the February 6, 2001 *Wall Street Journal* article. In a

decision issued on July 13, 2005, this Court rejected that argument, holding that KPMG had failed to demonstrate that the class plaintiffs had "constructive notice" of their claims as of February 6, 2001, in light of the Xerox' Defendants statements after that date indicating that the scope of the fraud was limited to that disclosed in the First Restatement, and that Xerox was cooperating fully with the SEC – none of which was true. *Carlson*, 392 F. Supp. 2d at 292.

Meanwhile, on January 4, 2002, the TRSL, FSBA, and Franklin – members of the putative class in the class action – filed a complaint against Xerox and certain of its officers and directors based on the information that was then available to the public (*i.e.*, the First Restatement and the allegations of John Bingham as reported in the press). Their complaint included state law claims which were not included in the class action, as well as federal claims similar to those asserted in the class action.

On October 3, 2002, after substantial additional information had been released (including in the SEC Complaint and the Second Restatement) which revealed the scale and scope of the fraud to be exponentially greater than previously disclosed, TRSL, FSBA, and Franklin filed an Amended Complaint which expanded the scope of their claims and allegations to include these new facts. PPM commenced its action against Xerox by joining in the Amended Complaint of TRSL, FSBA, and Franklin. It is this Amended Complaint that the Xerox Defendants seek to dismiss in part.[3]

---

[3]    The Xerox Defendants do not seek the complete dismissal of *any* of the claims asserted by FSBA, TRSL and Franklin, and do not challenge the state law claims asserted by PPM. Thus, the Xerox Defendants do not challenge the sufficiency of the allegations for purposes of the following Counts of the Amended Complaint: Count I (to the extent it asserts a claim under Section 18 by FSBA, TRSL and Franklin, subject to the Xerox Defendants' argument that the allegations must be supplemented to specifically "plead compliance" with a three year statute of repose); Count III (to the extent it asserts a claim under Section 10(b) by FSBA, TRSL and Franklin); Count V (to the extent it asserts a claim by FSBA, TRSL and Franklin against any of the Individual Defendants for "control person" liability under Section 20(a)); Count VI (in its entirety); Count VII (in its entirety); Count VIII (in its entirety); and Count X (in its entirety).

## ARGUMENT

### I.    PPM'S CLAIMS ARE TIMELY

#### A.    This Court Has Already Decided That Defendants' False Reassurances Prevented The Statute Of Limitations From Commencing In Early 2001

The Xerox Defendants argue that the triggering event for the running of the statute of limitations on PPM's claims is the publication of the February 6, 2001 *Wall Street Journal* article, which reported Bingham's allegations, or at the latest, the June 28, 2001 *Wall Street Journal* article after Xerox's First Restatement, which purportedly gave further credence to Bingham's allegations. However, that argument has already been considered and rejected by this very Court. In Carlson, the Court held that the February 6, 2001 article did *not* trigger the commencement of the statute of limitations on investors' claims, because investors were "relieved" by the Xerox Defendants' subsequent statements – which were disclosed in the June 28, 2001 article -- that the First Restatement "effectively rebutted Bingham's allegations" and that Xerox was cooperating with the SEC. *Carlson*, 392 F. Supp.2d at 292. The Xerox Defendants' attempt to reargue this issue should be summarily rejected as merely an attempt to reargue issues already decided by the Court. *See In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ( "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation"); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 362-63 (D. Conn. 2004) (noting that "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice").

Even if the Court were to consider the merits of the defendants' arguments, it should deny the Xerox Defendants' motion to dismiss for the same reasons it denied KPMG's motion in the class action. As the Court noted in Carlson, the Second Circuit has established a two-part

test to determine when the statute of limitations for a securities fraud claim is triggered. 392 F.

Supp.2d at 291. The inquiry "turns on *when,* after obtaining inquiry notice … [a plaintiff], in the

exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud . .

." *Id.* (quoting *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000)). More particularly:

> First, a court must determine when a reasonable investor could learn of facts
> sufficient to indicate the probability that he has been defrauded, a circumstance
> known as "inquiry notice." Assuming a duty to inquire develops, then a court
> must take the second step of assessing when, 'in the exercise of reasonable
> diligence, [a plaintiff] should have discovered the facts underlying the alleged
> fraud....' The statute of limitations then begins to run from that moment of
> constructive notice.

*Id.* (quoting *In re Complete Management Inc. Sec. Litig.,* 153 F. Supp. 2d 314 (S.D.N.Y. 2001)).

*See also Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003) (statute of limitations

does not begin to run until the plaintiff "obtains actual knowledge of the facts giving rise to the

action or notice of the facts, which in the exercise of reasonable diligence, would have led to

actual knowledge.") This Court noted, furthermore, that the statute of limitations does not begin

to run until a plaintiff has constructive notice of "facts sufficient to allege scienter, i.e., facts

stated with particularity and giving rise to a strong inference that the defendant acted with the

required state of mind." *Id.* (citing *Rothman*, 220 F.3d at 96).

Applying those standards to the facts of this case, the Court held in *Carlson* that investors

should not be charged with constructive notice of their securities fraud claims against the

defendants in February 2001, because:

> the requirement is that the reasonable investor learn of facts sufficient to indicate
> the *probability* that the investor has been defrauded, and the Complaint alleges
> that a February 8, 2001 analyst's report concluded that the allegations of
> accounting irregularities warranted investor scrutiny and further analysis, and it
> further alleges that investors were relieved following the First Restatement and
> statements by the Xerox Defendants about how it effectively rebutted Bingham's
> allegations and about how Xerox was continuing to cooperate with the SEC.

10

*Id.* at 292 (emphasis in original). The Court's analysis and holding necessarily also mean that investors should not be charged with constructive notice as of June 28, 2001 (the alternative date suggested by the Xerox Defendants), since that was the date of the statements referenced in the Court's opinion about how the First Restatement rebutted Bingham's allegations.

Thus, this Court has already recognized that as of June 28, 2001, the defendants' false reassurances and denials of widespread wrongdoing negated any finding of "constructive notice" for purposes of a motion to dismiss. *Id.* at 278 ("the First Restatement and the statements by Xerox left investors relieved and thus negated any negative effect which may have accompanied the disclose of limited violations of GAAP by Xerox."). Indeed, courts have widely held that such positive reassurances by management negate notice inquiry. *See, e.g., LC Capital Partners, LP v. Frontier Ins. Group, Inc.,* 318 F.3d 148, 155 (2d Cir. 2003) ("[t]here are occasions when, despite the presence of some ominous indicators, investors may not be considered to have been placed on inquiry notice because the warning signs are accompanied by reliable words of comfort from management"); *In re Ames Dept. Stores, Inc. Note Litig.*, 991 F.2d 968, 981 (2d Cir. 1993) (numerous positive public statements by defendant corporation delayed the commencement of the statute of limitations); *In re WorldCom Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 445 (S.D.N.Y. 2003) ("In some cases, despite the presence of storm warnings, investors are not placed on inquiry notice 'because the warning signs are accompanied by reliable words of comfort from management.'" (citations omitted)); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 229 (S.D.N.Y. 1999) (refusing to conclude as a matter of law that disclosure of offset on demand for company's products was a sufficient "storm warning" when disclosure also announced an increase in demand); *Siebert v. Nives*, 871 F. Supp. 110, 114-15 (D. Conn. 1994) (annual report did not trigger statute of limitations because it "contained statements intended to

give shareholders comfort" about the company's finances and "contain[ed] other reassurances that would serve to calm shareholders' suspicions that something might be 'amiss'").

The Xerox Defendants' reassurances and words of comfort continued well beyond June 28, 2001, and into 2002. For example, on January 7, 2002, Xerox announced that it had been advised by the SEC that its accounting methodology for sales-type leases did not comply with GAAP. *See Carlson*, 392 F. Supp.2d at 278. However, Xerox stated that it disagreed with the SEC's assessment, that its financial results were presented fairly in accordance with GAAP, and that there was no difference between the results of its methodology and that of the SEC. *Id.* Thus, even then, plaintiffs had no reason to suspect that there was any fraud at Xerox beyond what had already been disclosed and corrected in the First Restatement.

It was not until April 11, 2002 that the massive scale of Xerox's fraudulent accounting practices and the efforts it had undertaken to conceal this Company-wide fraud finally began to come out, and it was not until the publication of the Second Restatement on June 28, 2002 that the details of that fraud were revealed. While the First Restatement reported that Xerox's pre-tax profits for 1997-1999 were overstated by $140 million (*id.* at 277), the Second Restatement disclosed that Xerox had overstated its pre-tax profit over the same period by more than $1.9 billion, a more than ten-fold disparity, over and above the disclosures in the First Restatement. *Id* at 279. Thus, the statute of limitations on PPM's claims in this case was not triggered until April 11, 2002 at the earliest, because until then any indication of possible fraud at Xerox was swiftly negated by false words of comfort from the Xerox Defendants, and therefore plaintiffs had no constructive notice (or even inquiry notice) of any fraud beyond what had already been corrected in the First Restatement.[4]

---

[4]      Even if this Court were to conclude that inquiry notice arose at an earlier time, PPM has sufficiently pled that it undertook an investigation so as to toll the running of the statute of limitations for the period in which a

**B.    PPM's Claims Are Timely Under The Extended Limitations Period Provided In The Sarbanes-Oxley Act**

      **1.    PPM's Claims Are Subject To The Extended Limitations Period Provided In The Sarbanes-Oxley Act**

The Sarbanes-Oxley Act was enacted on July 30, 2002 and provided that the statute of limitations for any securities fraud claim "commenced on or after July 30, 2002" would be extended from one year after the discovery of the facts constituting the violation and three years after the violation to the earlier of two years after the discovery of the facts or five years after the violation. 28 U.S.C. § 1658(b); *see also In re Enter. Mortgage Acceptance Co. Sec. Litig.*, 391 F.3d 401, 410 (2d Cir. 2004) (Sarbanes-Oxley "[b]y its terms, applies to . . .'proceedings . . . that are commenced on or after the date of enactment . . . [July 30, 2002]'") (quoting 28 U.S.C. § 1658).   The Sarbanes-Oxley Act extended the applicable statute of limitations not only for Section 10(b) claims, but for Section 18 claims as well. *In re Adelphia Inc. Sec. Litig.*, No. 03-MD-1529 (LMM), 2005 WL 1679540, at *4 (S.D.N.Y. July 18, 2005).[5]   Because PPM commenced its action in October 2002, its Section 10(b) claims are subject to Sarbanes-Oxley's extended statute of limitations.

---

reasonable investor, acting with diligence, could have discovered Xerox's fraud. Indeed, the Amended Complaint specifically pleads that PPM's claims are based on, among other things, its own *investigation*.   (Amended Complaint, at 1). Contrary to the Xerox Defendants' argument, there is no requirement that PPM plead with any more detail the fact of its investigation to satisfy the requirement of pleading that it undertook an inquiry. *See In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 202-03 (S.D.N.Y. 2003) (court may infer that plaintiff conducted investigation from the extensive detail of the allegations made in the complaint). Xerox's reliance on the decision in *Giant Group, Ltd v. Sands*, 142 F. Supp. 2d 503, 509 (S.D.N.Y. 2001) is misplaced because it holds simply that conclusory arguments regarding when an investor reasonably should have discovered the facts are insufficient. *Id.* at 509.

[5]    The application of Sarbanes-Oxley to Section 18 claims reflects an acknowledgment that "§ 18 targets the precise dangers that are the focus of § 10(b) and the intent motivating [both] sections is the same – to deter fraud and manipulative practices in the securities markets and to ensure full disclosure of information material to investment decisions.'" *Stichting Pensioenfonds ABP v. Qwest*, Civ. No. 04-RB-0238, 2005 U.S. Dist. LEXIS 9036 (D. Colo. May 28, 2005), quoting *Musick, Peeter & Garrett v. Employers Ins. Of Wausau*, 508 U.S. 286, 296 (1993)) (applying Sarbanes-Oxley to Section 18 claims); *Blaz v. Belfur*, 368 F.3d 501, 503-04 (2004) (noting that Sarbanes-Oxley has extended § 18's statute of repose from three to five years); *but see In re Alstom SA Sec. Litig.*, No. 03 Civ. 6595, 2005 WL 3534471, *13 (S.D.N.Y. Dec. 22, 2005) (declining to extend Sarbanes-Oxley to Section 18 claims).

Relying principally on *Adelphia*, Xerox offers the extraordinary argument that PPM's action did not commence on October 3, 2002 for the purposes of Sarbanes-Oxley, but instead was commenced on January 4, 2002, when the TRSL Complaint was filed. Xerox then immediately reverses itself and argues, without a hint of irony, that PPM's claims are time-barred under the one-year/three year statute of limitations because the action was commenced on October 3, 2002, more than one year after inquiry notice, and does not relate back to the filing of the TRSL Complaint. Xerox simply can't have it both ways. Either (a) PPM commenced its action on October 3, 2002, in which case the extended limitations period of Sarbanes-Oxley would apply, or (b) PPM should be deemed to have commenced its claims when the original complaint was filed on January 4, 2002, in which case its claims would be timely under the one year/three year statute.

Xerox's reliance on *Adelphia* is entirely misplaced. In *Adelphia*, the lead plaintiff in a securities action filed its consolidated class action complaint prior to the passage of Sarbanes-Oxley and then filed an amended consolidated complaint in December 2003 which added a second lead plaintiff. 2005 WL 1278544, at *6. That second lead plaintiff had, however, been a member of the class when the original complaint was filed, and thus – unlike PPM – was not asserting its claims for the first time. In responding to the defendants' motions to dismiss which argued that the timeliness of the claims raised in the class action was subject to the one-year pre-Sarbanes-Oxley statute of limitations, the lead plaintiffs argued that their action should be considered commenced when the second lead plaintiff joined the action. *Id.* In addition, the lead plaintiffs argued that their substantive claims had changed between the filing of the first consolidated complaint and second consolidated complaint. *Id.* The court rejected this analysis and held that the class action was commenced by the filing of the original consolidated class

action complaint and the addition of a second lead plaintiff did not serve to commence a new

action for purposes of the statute of limitations. *Id.*[6]

Unlike the lead plaintiffs in the *Adelphia* class action, PPM is a distinct and discrete

plaintiff which asserted claims against Xerox for the first time in October 2002. Unlike the lead

plaintiff in *Adelphia*, PPM's interests were not represented in this action by the plaintiffs that

filed the original complaint. Rather, PPM's claims were asserted for the first time on October 3,

2002. Even the defendants do not deny that, if PPM had filed a separate action rather than

joining the action previously filed by FSBA, TRSL, and Franklin, PPM's action would constitute

a new "proceeding" subject to the extended limitations periods of the Sarbanes Oxley Act. Thus,

the defendants' argument boils down to form over substance. PPM should not be penalized for

choosing *not* to file duplicative litigation, and instead joining an existing action in the interest of

judicial economy. Because PPM asserted its individual claims for the first time on October 3,

2002, after the effective date of the Sarbanes Oxley Act, those claims are subject to a two

year/five year statute of limitations and repose.

### 2.    PPM's Claims Were Not Time Barred As Of The Effective Date Of The Sarbanes-Oxley Act

In an effort to deny PPM the benefit of the Sarbanes-Oxley Act's extended limitations

period, the Xerox Defendants argue that PPM's claims were already time barred when the Act

took effect, and cannot be revived by the Act. This argument fails because PPM's claims were

not time-barred when the Act took effect on July 30, 2002.

As discussed above, the Xerox Defendants deliberately concealed from the investing

public the true extent of their fraudulent conduct until the Company filed its Second Restatement

---

[6]    The case of *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297 (2d Cir. 2003) is distinguishable, because in that case the court was interpreting language of the Private Securities Litigation Reform Act ("PSLRA"), not the language in the Sarbanes Oxley Act which is at issue here.

on June 28, 2002. *Supra* Sec. I, A. The earliest that the statute of limitations could possibly have been triggered was April 11, 2002. Therefore, at the time the Act took effect, on July 30, 2002, fewer than four months of the limitations period had elapsed. Accordingly, PPM's claims based on the massive fraud at Xerox disclosed in the Second Restatement certainly was not time barred as of the effective date of the Sarbanes-Oxley Act. *In re Pronetlink Sec. Litig.*, No. 03 Civ. 2298(RO), 2005 WL 3358665, *2 (S.D.N.Y. Dec. 8, 2005) (noting that "any 10(b)/Rule 10b-5 claim that was 'live'-within its first year-on this date had its limitations period extended to two years from the date of discovery or five years from the violation. The question of whether the present action was timely filed therefore depends on whether the cause of action was live when Sarbanes-Oxley was enacted.") (internal citations omitted)

### C. Even If The Pre-Sarbanes-Oxley Limitations Period Applies, PPM's Claims Are Still Timely

#### 1. PPM's Claims Were Brought Within One Year Of The Second Restatement

The claims asserted in the Amended Complaint charge the Xerox Defendants with systemic fraud well beyond the limited disclosures they provided in connection with the First Restatement. *See* ¶¶ 9-10. Thus, even if Sarbanes-Oxley does not apply to PPM's claims, the simple fact is that PPM commenced its action just over three months after Xerox finally came clean about the true extent of its fraud, and just six months after the investing public first could have had an inkling that Xerox's First Restatement was just another effort to conceal its massive fraud.

As discussed above, the *earliest* time at which Xerox's public investors could have had any reason to believe that Xerox was lying about the true extent of its fraudulent accounting practices was April 11, 2002, when the Company announced the filing of the SEC Complaint, that Xerox agreed to pay $10 million to settle the SEC's claims, and that Xerox would be filing

16

yet another restatement. ¶¶ 8-10. Prior to that date, every suggestion that Xerox's accounting problems exceeded the limited scope of the First Restatement had been swiftly met with emphatic denials of wrongdoing and assurances that the Company's financial statements were represented fairly in accordance with GAAP. ¶¶ 3-4. Even applying a one-year statute of limitations, therefore, PPM's claims, commenced in October of 2002, are timely.

### 2. PPM's Claims Are Tolled Under The Supreme Court's Decision In *American Pipe*

Even if the Court were to find that a one-year statute of limitations applies *and* that it would have otherwise started to run before October 3, 2001, PPM's claims are timely because the statute of limitations was tolled by the filing of the class action on April 16, 2001, and PPM is thus entitled to assert claims based on purchases as early as April 16, 1998, even applying the limitations period in effect prior to the effective date of the Sarbanes-Oxley Act.

In *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974), the Supreme Court held that commencement of a class action tolls the running of the statute of limitations for all class members who, upon denial of certification, make timely motions to intervene. 414 U.S. at 554. In *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345 (1983), the Supreme Court extended *American Pipe* to apply to class members seeking to bring individual actions after denial of class certification, and to those electing to opt-out in order to file individual claims. 462 U.S. at 353-54. *American Pipe* and its progeny have made clear that an absent member of a class action is protected from the running of the statute of limitations until either (i) class certification is denied or (ii) the member opts out of the class. *American Pipe*, 414 U.S. 538; *Crown, Cork & Seal Co.*, 462 U.S. 345; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); *Realmonte v. Reeves*, 169 F.3d 1280 (10th Cir. 1999); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, MDL 997, 1998 WL 474146 (N.D. Ill., Aug. 6, 1998).

Further, tolling under *American Pipe* applies not only to claims asserted in the class action, but also to claims arising out of the same operative facts, even if not pled in the class action. *See Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., concurring) (individual suit should "'concern the same evidence, memories and witnesses as the subject matter of the original suit,' so that 'the defendant will not be prejudiced'" (quoting *American Pipe*, 414 U.S. at 562)); *Cullen v. Margiotta*, 811 F.2d 698, 721 (2nd Cir. 1987) ("[W]e do not regard the fact that the [class] action was premised on different legal theories as a reason not to apply *American Pipe* tolling to save the claims of class members who were not named plaintiffs in the [class] action. . . [B]ecause the asserted factual basis of the [class action] claims was the same as that of the claims asserted here . . . the running of the statute on the claims of the absent class members . . . was thereby tolled."); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) (individual action need not be identical in all respects to class action for *American Pipe* to apply); *In re Indep. Serv. Org. Antitrust Litig.*, Civ. No. MDL-1021, 1997 U.S Dist. LEXIS 4496, *15 (D. Kan. Mar. 12, 1997) (claims seeking different remedies but based on the same set of facts are tolled under *American Pipe*) ("*In re ISO Antitrust*").

PPM's Section 18 claims arise from the very same accounting issues that form the basis for the claims in the pending class action.[7] *See Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 271-73 (D. Conn. 2005) (discussing Xerox's fraudulent accounting practices).  Given that the Section 18 claims are premised on the identical core allegations as the fraud allegations in the class action, arise under the same statutory framework as the federal securities claims in the class action, and even share elements of the class action's Section 10(b) and Rule 10b-5 claims, tolling is appropriate because these claims are "sufficiently similar to give defendant ample notice of plaintiff's individual claims." *In re ISO Antitrust*, 1997 U.S Dist. LEXIS 4496 at *16.  Thus,

---

[7]    The Xerox Defendants have not asserted that any of PPM's state law claims are untimely.

even if Sarbanes-Oxley does not apply to PPM's claims, and even if the Court finds that the statute of limitations was triggered more than a year before its claims were filed, under *American Pipe*, PPM may assert Section 10(b) and Section 18 claims based on purchases as early as April 16, 1998, which is three years prior to the filing of the original complaint in *Carlson*. *See also In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 351 (E.D. Pa. 2004) ("For tolling to apply, claims do not have to be identical but only substantially similar to those brought in the original class action."); *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended where as here the individual claims involve the same 'evidence, memories, and witnesses' as are involved in the putative class action," even if the legal theories are not identical) (citation omitted)

   *American Pipe* also applies even in the absence of a decision on class certification in the *Carlson* litigation.  The policies behind the *American Pipe* tolling doctrine are twofold: "First, class actions are 'designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions.' If the claims of unnamed plaintiffs were not tolled, claimants would have an incentive to file claims themselves to protect their causes of action, 'precisely the multiplicity of activity which Rule 23 was designed to avoid.' . . . Second, the Court in *American Pipe* held that the tolling rule is consistent with the twin functions of statutes of limitations--providing defendants with timely notice and avoiding stale claims--because the action is tolled only by timely service of the class complaint on the defendants by the named plaintiffs." *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 384-85 (3d Cir. 2002) (internal citations omitted).  Both of these goals are furthered by applying *American Pipe* to toll plaintiffs' claims.

(a)     **The Goal of Providing Timely Notice Is Met Regardless Of Whether A Plaintiff "Opts Out" Prior To A Decision On Class Certification**

To the extent the statute of limitations is meant to provide a defendant with notice of adverse claims at a time when the defendant can still marshal evidence and witnesses relevant to the claim, *Crown, Cork & Seal Co.,* 462 U.S. at 352-3, application of *American Pipe* should not be affected by *when* the shareholder chooses to file an individual action. Once a class action is filed within the limitations period, the defendant has received the necessary notice and will not be prejudiced if an individual action is subsequently filed. *Id.* at 352 ("these ends are met when a class action is commenced").[8] This is true whether the individual action is filed before or after a decision on class certification. Indeed, in *Joseph v. Wiles*, 223 F.3d 1155, 1168 (10th Cir. 2000), the Court of Appeals for the Tenth Circuit held that *American Pipe* applied to toll the claims of a putative class member who opted-out before a class was certified. *Id.* at 1167 n.9 & 1168 (noting that "when the defendant filed his action, there was no definitive determination with regard to class certification" and "Defendants' potential liability should not be extinguished simply because the district court left the class certification issue unresolved. Consequently, we conclude that *American Pipe* tolling applies to the statute of repose governing [plaintiff's] action"); *accord Adams Public School Dist. v. Asbestos Corp., Ltd.*, 7 F.3d 717, 718-19 (8th Cir. 1993) (applying *American Pipe* to toll claims of school district during pendency of class action without regard to whether class certification was addressed).

This interpretation is in accord with the recent decision in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp.2d 429 (S.D.N.Y. 2005), in which the court held that *American Pipe* applied to toll claims of putative class members even though the class claim was dismissed

---

[8]     At least one court has observed that "no Supreme Court case has held that plaintiffs filing individual lawsuits should be necessarily precluded from having a statute tolled for their claims." *Brand Name*, 1998 WL 474146 at *8.

because the named plaintiff lacked standing and the issue of class certification was never even addressed. *Id.* at 456. Because *American Pipe* tolls claims of putative class members where the issue of class certification is never addressed or decided, it makes no logical sense to deny the protections afforded by *American Pipe* to putative class members who wish to opt out to pursue individual claims simply because the lead plaintiff in the class action did not yet file a motion for class certification.

> **(b)   The Policies That Underlie *American Pipe* Are Furthered By Tolling Federal Claims Asserted By Plaintiffs Who Opt Out To Pursue State Law Claims Not Asserted In The Class Action**

The Xerox Defendants incorrectly contend that the goal of judicial efficiency is disserved by application of *American Pipe* tolling to plaintiffs who file individual actions before a decision on class certification. That argument ignores the fact that, in this case, PPM *had to* file an individual action in order to ensure that its state law claims, which were not asserted in the class action, were preserved.

The defense bar typically takes the position that the pendency of a class action does not toll the running of the statutes of limitations and repose on claims not asserted in the class action. Plaintiffs believe that position is incorrect, for the reasons discussed above with respect to the application of *American Pipe* to PPM's Section 18 claims. However, because the issue is not entirely free from doubt, plaintiffs risked losing the opportunity to assert their state law claims if they did not assert them in this individual action. Moreover, waiting until the issue of class certification was addressed in *Carlson* was not a viable option, because oftentimes – as is demonstrated in this case – a class action will remain pending for years before the issue of class certification is decided. Indeed, Rule 23(c)(1)(A) was amended in 2003 to replace the requirement that class certification be addressed "as soon as practicable after commencement of an action" with a less restrictive requirement that it be addressed "at an early practicable time,"

to reflect a recognition that discovery may be appropriate before the issue of class certification can be considered. This leaves putative class members who wish to pursue claims that were not asserted in the class action with two options: (1) they could elect to remain part of the class, and risk forfeiting whatever claims they may have against defendants not named in the class action or based on rights not asserted by the class, or (2) they could opt out and pursue all of their individual claims together.

The goal of *American Pipe* to promote judicial efficiency is *furthered* by applying tolling to "opt out" claims where, as here, an individual class member files a lawsuit to pursue claims against defendants or based on issues that were *not* asserted in the class action. Indeed, denying tolling in such a situation would actually run contrary to the policies behind *American Pipe* because a plaintiff, faced with a statute of limitations or repose running against defendants not named in or claims not asserted in the class action, would be forced to file litigation on the non-class claims while the class action is pending, then file duplicative litigation when the issue of class certification is decided, and then move to consolidate the cases. Such a result would actually promote the kind of duplicative litigation that *American Pipe* was designed to avoid.[9]

In this case, each of the plaintiffs has asserted claims under state law that were not asserted by the lead plaintiffs in *Carlson*. *See* Count VI (by FSBA asserting claim under Florida

---

[9] A number of district court cases (and one decision from the Sixth Circuit in dicta) have held that a plaintiff who opts-out to file an individual action prior to a decision on class certification loses the benefits afforded by *American Pipe*. The rationale of these cases, however, is based on the promotion of judicial economy to prevent duplicative litigation, and has no application where a plaintiff opts out in order to pursue non-class claims, and asserts individual claims similar to those advanced in the class action in order to *prevent* duplicative litigation. For example, *In re WorldCom Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 451 (S.D.N.Y. 2003) the court refused to allow a group of 147 opt-out plaintiffs to benefit from the *American Pipe* tolling doctrine in the absence of a decision on class certification because to do so would violate the underlying policies of *American Pipe* of promoting judicial efficiency and discouraging unnecessary litigation and protective filings. *WorldCom*, 294 F. Supp. 2d at 452. The situation in *WorldCom* presented an egregious example of duplicative litigation, and application of *American Pipe* to individual claims asserting identical claims as those in the class action would not promote judicial efficiency. However, the concerns of the Court in *WorldCom* have no application where the plaintiff seeks to pursue state law claims not asserted in the class action.

Securities Investors Protection Act, Fl. Stat. 517.301); Count VII (by TRSL asserting claim under Louisiana Securities Act, La. R.S. 51:712); Count VIII (by all plaintiffs asserting claim for common law fraud); Count IX (by FSBA, TRSL and Franklin asserting claim for common law fraud); and Count X (by all plaintiffs asserting claim for negligent misrepresentation). Although each of these claims arises from the same nucleus of operative facts as the federal claims asserted in the class action, there is a risk – and the defendants will surely argue – that none of these claims would have the benefit of tolling under *American Pipe*. Thus, plaintiffs had to bring these claims to avoid losing them. Though plaintiffs could have asserted only their state law claims and then filed substantially similar litigation to assert their federal claims someday in the future after the issue of class certification is addressed in *Carlson*, they determined that joining all of their individual claims in a single litigation was more consistent with the interests of judicial economy that underlie the *American Pipe* tolling doctrine. Accordingly, plaintiffs respectfully submit that *American Pipe* should apply to toll their federal claims.[10]

## II.    THE FEDERAL CLAIMS ASSERTED BY FSBA, TRSL AND FRANKLIN ARE TIMELY FOR ALL PURCHASES SINCE APRIL 16, 1998

The Xerox Defendants' do not contend that the federal claims asserted by FSBA, TRSL and Franklin are untimely, but seek to limit such claims to purchases subsequent to January 4, 1999. As discussed above, the statutes of limitations and repose on PPM's claims were tolled under *American Pipe* by the filing of the *Carlson* complaint. The same is true of the claims by

---

[10]    In the event the Court disagrees and determines that the *American Pipe* doctrine does not apply here, Plaintiffs respectfully request that any dismissal be without prejudice. At the time Plaintiffs commenced their claims, there was no precedent establishing that a class member who opts out prior to a decision on class certification loses the protection of *American Pipe*. Accordingly, it would be unjust to penalize Plaintiffs for relying on the precedent that did exist in believing that *American Pipe* would apply. Thus, Plaintiffs respectfully request that if the Court were to dismiss Plaintiffs' claims as untimely, Plaintiffs be permitted to rejoin the class and reassert these claims following a decision on certification of the pending class action. *See In re WorldCom Inc. Sec. Litig.*, No. 02-cv-3288, 2004 U.S. Dist. LEXIS 949, at *30 (S.D.N.Y. Jan. 26, 2004) (permitting plaintiffs who opted out of class action prior to class certification in mistaken belief that *American Pipe* applied to toll limitations period to voluntarily dismiss claims and rejoin class)

the other plaintiffs, which were first filed on January 4, 2002. Therefore, the three-year statue of

repose which applies to those plaintiffs' claims was tolled as of April 16, 2001, when the class

action was filed, and those plaintiffs' claims are timely with respect to all purchases since April

16, 1998.

### III.  PLAINTIFFS HAVE ADEQUATELY "PLED COMPLIANCE" WITH SECTION 18'S STATUTE OF REPOSE TO THE EXTENT REQUIRED BY THE NOTICE PLEADING STANDARDS OF RULE 8(a)

The Amended Complaint alleges that FSBA, TRSL and Franklin purchased substantial

shares of Xerox common stock "from 1997 through 2000," and incurred losses as those shares

suffered a significant decline in value.  ¶¶ 15, 18, 21.  PPM alleges that it purchased Xerox

common stock "from 1998 through 2000," and also incurred losses as the price of the

Company's stock collapsed.  ¶ 23.  The Xerox Defendants argue that these allegations are not

sufficient for purposes of pleading "compliance" with the applicable statutes of repose.

The Section 18 claims asserted by FSBA, TRSL and Franklin, commenced prior to the

effective date of the Sarbanes-Oxley Act, were required to be "brought within one year after the

discovery of the facts constituting the cause of action and within three years after such cause of

action accrued." 15 U.S.C. § 78r(c). As discussed above, PPM's Section 18 claims are governed

by the Sarbanes-Oxley Act, which extended limitations period to two years, and the statute of

repose to five years. 28 U.S.C. § 1658 (2004). The fact that FSBA, TRSL and Franklin allege

purchases during a period that extends more than three years prior to the date they filed their

original Complaint is not fatal to their claims. Plaintiffs included allegations regarding earlier

purchases because those purchases are relevant to certain of plaintiffs' state law claims, which

carry longer limitations periods.

24

There is no affirmative requirement that plaintiffs "plead compliance" with the applicable statute of limitations or repose at all. The Second Circuit has held that "[w]here a statute of limitation is not jurisdictional ... it is considered an affirmative defense" and "compliance therewith need not be pleaded in the petition." *Acosta v. Artuz*, 221 F.3d 117, 121-22 (2d Cir. 2000). The repose period for Section 18 claims is not jurisdictional, as evidenced by the fact that it does not appear (and is not referenced) in the section of the federal securities laws which grants jurisdiction to the district courts, *see* 15 U.S.C. § 78aa, and the fact that the repose provision "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982) (time limit for filing claims with the EEOC was not "jurisdictional" where it was not mentioned in the provision granting jurisdiction to the district courts and where the time limit provision itself was not couched in jurisdictional terms).

In *In re Electronic Data Systems Corp "ERISA" Litig.*, 305 F. Supp. 2d 658 (E.D. Tex. 2004), the court flatly rejected the existence of any requirement to plead compliance with the limitations period for federal securities claims, finding decisions to the contrary unpersuasive and uninformed. *Id.* at 677. Applying the notice pleading standards of Rule 8(a) to the applicable statute of repose, the court held that a plaintiff must simply allege sufficient facts to give the defendants notice of the nature of its claims:

> Rule 8(a) does not require plaintiffs to plead every element that they must ultimately prove simply because plaintiffs carry the burden of proof. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999) (holding that a pleading may give proper "fair notice" even where only the title of the theory is pled); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory...."); *Abdoh v. City of Chicago*, 930 F.Supp. 311, 313 (N.D.Ill.1996). There is no clause in §§ 77e, 77k, 77l, or 77m which shows legislative intent to require plaintiffs to plead facts "because compliance with Section 13 [15 U.S.C. § 77m] is an essential element of the rights created under Sections 11 and 12(2) [15 U.S.C. §§ 77k and 77l(a)(2)]." The

correct rule is that a plaintiff's complaint must give fair notice under Federal Rule of Civil Procedure 8(a) unless Rule 9(b) requires factual allegations of fraud. Thus, because §§ 77k and 77l(a)(2) contain inherent fraud elements, plaintiffs must plead compliance with those elements pursuant to Rule 9(b). However, because § 77l(a)(1) contains no fraud element, Rule 9(b) does not apply and a plaintiff's complaint must only provide a short and plain statement of the claim sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Therefore, even assuming that the statute of limitations is an essential element of Plaintiffs' claim under the Securities Act, the Court rejects the argument that Plaintiffs failed to state a claim upon which relief can be granted simply because they did not affirmatively plead compliance with the statute of limitations. Plaintiffs' claim under § 77l(a)(1) gives Defendants fair notice.

*Id.* at 677. *Accord R.J. Reynolds Tobacco Co. v. Johns Manville Int'l, Inc.*, No. Civ. 100CV00673, 2001 WL 823604, *4 (M.D.N.C. Jul. 3, 2001) (under North Carolina state securities statute, plaintiff was not required to plead compliance with statute of repose).

The holding in *Electronic Data Systems* is consistent with the Second Circuit's recent decision in *Twombly v. Bell Atlantic Corp*, 425 F.3d 99 (2d Cir. 2005). In *Twombly*, the Second Circuit reiterated that where the notice pleading standard of Rule 8(a) applies, judicially mandated pleading standards requiring particularity beyond a "short and plain statement" of the claim are improper. 425 F.3d 99 at 111 ("If a pleaded conspiracy is implausible on the basis of the facts as pleaded--if the allegations amount to no more than 'unlikely speculations'--the complaint will be dismissed. But short of the extremes of 'bare bones' and 'implausibility,' a complaint in an antitrust case need only contain the 'short and plain statement of the claim showing that the pleader is entitled to relief' that Rule 8(a) requires."). According to one court, the Second Circuit's recent decision in *Twombly* made clear that "where Rule 8(a)'s pleading standard governs, dismissal is improper as long as the complaint furnishes adequate notice of the basis of the plaintiff's claim ... and 'relief could be granted under [some] set of facts consistent with the allegations.'" *In re Global Crossing Ltd., Sec. Litig.*, No. 02 Civ. 910(GEL), 2005 WL

2990646 (S.D.N.Y. Nov. 7, 2005) (citing *Twombly*, and quoting *Swierkewicz v. Sorema N.A.*, 534 U.S. 506, 512-14 (2002)).

Even if there were some obligation to plead compliance with the statute of repose, plaintiffs have done so. FSBA, TRSL and Franklin aver that they purchased Xerox stock "from 1997 through 2000." ¶¶ 15, 18, 21. This allegation, coupled with the fact that these plaintiffs filed their original Complaint on January 4, 2001, is more than sufficient to satisfy any requirement that Plaintiffs plead that they purchased Xerox stock within three years before filing their action. Likewise, PPM's allegations that it purchased Xerox stock "from 1998 through 2000" is sufficient to plead that it purchased stock within five years (or even three years) before filing its claims in October of 2002. *Electronic Data Systems*, 305 F. Supp. 2d at 679 ("Reading Plaintiffs' Complaint with all deference, as the Court must, the Court does not find that Plaintiffs can prove no set of facts which would place them within the three-year period.").[11]

## IV.    PLAINTIFFS HAVE ADEQUATELY PLED "CONTROL PERSON" CLAIMS

The Xerox Defendants make two perfunctory arguments in an effort to dismiss Plaintiffs' claims for control person liability under Section 20(a). First, they argue that because Plaintiffs' underlying Section 10(b) and Section 18 claims are time barred, Plaintiffs' Section 20(a) claims must fail as well. Second, they argue that the Amended Complaint fails to allege any facts supporting an inference that Xerox was a "control person" of any primary violator. Their arguments are misplaced.

Regarding their first argument, Plaintiffs' underlying claims under Section 10(b) and Section 18 are timely for the reasons set forth above, and therefore the Section 20(a) claims are likewise timely.

---

[11]    As the Xerox Defendants acknowledge, in the event the Court finds that plaintiffs did not adequately plead compliance with the statute of repose, the appropriate remedy is to allow plaintiffs to replead.

Regarding the latter argument, the Xerox Defendants are simply incorrect. It is well settled that the element of control for purposes of stating a claim under Section 20(a) may be established by showing "that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1471-72 (2d Cir. 1996). "Other means include business relationships . . . [or] the power to influence and control the activities of another." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK), 2004 WL 992991 at *29 (S.D.N.Y. May 5, 2004). Moreover, "control," for purposes of stating a claim under Section 20(a) need not be pled with particularity, but is instead governed by the lenient pleading requirements of Fed. R. Civ. P. 8(a). *See In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003) ("[n]aked allegations of control ... will typically suffice to put a defendant on notice of the claims against her"); *In re WorldCom,* 294 F. Supp. 2d at 415 (same).

In this case, the Amended Complaint alleges specifically that each of the Individual Defendants, who committed primary violations of the securities laws, served as employees and agents of Xerox. ¶¶ 25-34. These allegations of agency are more than sufficient for purposes of pleading that Xerox, as the principal, was a "control person" of its agents. *See In re Global Crossing*, 2005 WL 2990646 at *8 ("[E]ven if the specific facts alleged by plaintiffs, taken alone, would not be enough to establish actual control . . ., dismissal is improper as long as it is at least plausible that plaintiff could *develop* some set of facts that would pass muster."); *see also British American & Eastern Co., Inc. v. Wirth Ltd.*, 592 F.2d 75, 80 (2nd Cir. 1979) ("An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds him."); *In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2nd Cir 1984) ("'Agency is the fiduciary relation which results from the

manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' . . . An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control." (internal citations omitted)).

## **CONCLUSION**

For the foregoing reasons, the Xerox Defendants' Partial Motion to Dismiss the Amended Complaint should be Denied.

Respectfully submitted,

Dated: January 31, 2006

Lisa Kelly Morgan (CT 02201)
RUBEN JOHNSON & MORGAN, P.C.
249 Pearl Street, Third Floor
Hartford, CT 06103
Tel: (860) 275-6888
Fax: (860) 275-6884
Email: lisa.kelly.morgan@rjmlaw.com

Stuart M. Grant
Megan D. McIntyre
Michael J. Barry (CT 24174)
Sharan Nirmul
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 722-7100

*Attorneys for Plaintiffs Florida State Board of Administration, Teachers' Retirement System of Louisiana, Franklin Mutual Advisers, LLC, and PPM America, Inc.*

## CERTIFICATION OF SERVICE

I hereby certify that on January 31, 2006, a copy of the foregoing Memorandum of Law In Opposition to the Xerox Defendants' Partial Motion to Dismiss the Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of these filings will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access these filings through the court's CM/ECF System.

Lisa Kelly Morgan, Esq.
Ruben, Johnson & Morgan, P.C.