**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Russell Carlson, et al. ) | 3:00-CV-1621 (AWT) |
| v. ) | |
| Xerox Corp., et al. ) | |
| ) | |
| MASTER CASE ) | |
| ) | |
| Florida State Board of Admin., et al. ) | 3:02-CV-1303 (AWT) |
| v. ) | |
| Xerox Corp., et al. ) | |
| ) | February 28, 2006 |
| MEMBER CASE. ) | |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF XEROX DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000


*Attorneys for Defendant Xerox Corporation*


Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
(203) 968-3000

*Attorney for Xerox Corporation*

DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, CT 06901
Telephone: (203) 977-7300


*Attorneys for Defendants Philip Fishbach,*
*G. Richard Thoman and Anne Mulcahy*


WILMER CUTLER PICKERING HALE
   and DORR LLP
2445 M Street, NW
Washington, DC 20037
(202) 663-6000


DALY & PAVLIS, LLC
107 John Street
Southport, CT 06890
(203) 255-6700

*Attorneys for Defendants Paul A. Allaire,*
*Barry D. Romeril and Gregory Tayler*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

I.   PPM'S FEDERAL CLAIMS ARE BARRED BY THE ONE-YEAR
     STATUTES OF LIMITATION .....................................................................2

     A.  The Court's Opinion Concerned "Actual", Not "Inquiry", Notice ........2

     B.  PPM Was Not Excused From Its Duty to Investigate .........................3

     C.  PPM Failed Properly to Allege That It Investigated Its Claims ...........5

II.  SARBANES-OXLEY DOES NOT APPLY TO PPM'S CLAIMS .............6

III. PLAINTIFFS ARE NOT ENTITLED TO AMERICAN PIPE TOLLING..................6

IV. PLAINTIFFS FAILED ADEQUATELY TO PLEAD COMPLIANCE WITH
     THE LIMITATIONS PERIODS OF SECTION 18. ....................................9

CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Adams Public School Dist. v. Asbestos Corp., 7 F.3d 717 (8th Cir. 1993)........................ 7

Aetna Life Ins. Co. v. Enter. Mortgage Acceptance Co., 391 F.3d 401 (2d
   Cir. 2005) ............................................................................................................... 6

Alaska Elec. Pension Fund v. Citigroup, Inc. (In re Worldcom, Inc. Sec.
   Litig.), No. 02 Civ. 3288 (DLC), 2004 WL 113484 (S.D.N.Y. Jan. 26,
   2004) ...................................................................................................................... 9

Arduini/Messina P'ship v. Natl. Med. Fin. Servs. Corp., 74 F. Supp. 2d
   352 (S.D.N.Y. 1999) .............................................................................................. 4

Carlson v. Xerox Corp., 392 F. Supp. 2d 267 (D. Conn. 2005) .................................... 2, 3

Chinn v. Giant Food, Inc., 100 F. Supp. 2d 331 (D. Md. 2000)........................................ 8

Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)................................................. 6

Fezzani v. Bear, Stearns & Co., 384 F. Supp. 2d 618 (S.D.N.Y. 2004) ........................... 8

Gerber v. MTC  Elec. Techs. Co., 329 F.3d 297 (2d Cir. 2003) ...................................... 6

In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, MDL
   997, 1998 WL 474146 (N.D. Ill. Aug. 6, 1998).......................................... 8, 9

In re Elec. Data Sys. Corp. "ERISA" Litig., 305 F. Supp. 2d 658 (E.D.
   Tex. 2004) ............................................................................................................. 9

In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429
   (S.D.N.Y. 2005) .................................................................................................... 7

In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189 (S.D.N.Y.
   2003) .................................................................................................................. 5, 6

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 289 F. Supp.
   2d 416 (S.D.N.Y. 2003) ................................................................................ 3, 4, 5

Joseph v. Wiles, 223 F.3d 1155 (10th Cir. 2000) ............................................................ 7

LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.3d 148 (2d Cir.
   2003) .................................................................................................................... 3

Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) .................... 8

Realmonte v. Reeves, 169 F.3d 1280 (10th Cir. 1999).......................................................... 7

Shah v. Meeker, 435 F.3d 244 (2d Cir. 2006) ............................................................... 3, 5

Slavin v. Morgan Stanley & Co., 791 F. Supp. 327 (D. Mass. 1992) ................................ 4

SLS Investors, L.P. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), No. 02
    Civ. 3288 (DLC), 2004 WL 97654 (S.D.N.Y. Jan. 20, 2004) ...................................... 8

State of Alaska Dept. of Revenue v. Ebbers (In re WorldCom, Inc. Sec.
    Litig.), 294 F. Supp. 2d 431 (S.D.N.Y. 2003)............................................................. 7

Wigand v. Flo-Tek, Inc., 609 F.2d 1028 (2d Cir. 1979)................................................... 10

Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553 (6th Cir. 2005)........................... 8

**Statutes**

28 U.S.C. § 1658(b) ...................................................................................................... 9

Fed. R. Civ. P. 23 ...................................................................................................... 7, 8

**PRELIMINARY STATEMENT**

Nothing in Plaintiffs' Memorandum in Opposition to Xerox Defendants'

Partial Motion to Dismiss the Amended Complaint ("Pls.' Mem.") changes the

underlying facts or the well-established pleading standards upon which this motion is

based (and should be granted). For example, PPM America, Inc. ("PPM") makes a

number of arguments in an attempt to save its time-barred claims. In making these

arguments, however, PPM (1) misreads the Court's opinion in <u>Carlson</u> by conflating

"actual" notice with "inquiry" notice (<u>see</u> Point I.A), (2) ignores the numerous and

detailed "storm warnings" that put it on inquiry notice as of February 6, 2001 (or June 28,

2001, at the very latest) (<u>see</u> Point I.B), and (3) relies on allegations in the Amended

Complaint that either are incomplete or do not exist (<u>see</u> Point I.C). Therefore, PPM's

federal claims expired prior to the effective date of Sarbanes-Oxley, and PPM cannot rely

on the Act's extended limitations periods to save its claims. (<u>See</u> Point II.)

In addition, knowing they are not entitled to <u>American Pipe</u> tolling under

settled-law, Plaintiffs (PPM, Florida State Board of Administration ("FSBA"), Teachers'

Retirement System of Louisiana ("TRSL") and Franklin Mutual Advisers, LLC

("Franklin")) ask the Court to toll their claims based on policy. However, not only do

Plaintiffs set forth inapplicable policy considerations, but their desired result would

undermine the actual policies upon which <u>American Pipe</u> tolling is based. (<u>See</u> Point III.)

Further, regarding their failure adequately to plead compliance with Section 18's statutes

of limitation and repose, Plaintiffs essentially ask this Court to ignore relevant precedent

and base its decision on a new rule of pleading. While the new rule would not change the

outcome here, Plaintiffs give no reason why the Court should depart from existing

precedent. (<u>See</u> Point IV.)

### I.    PPM'S FEDERAL CLAIMS ARE BARRED BY THE ONE-YEAR STATUTES OF LIMITATION

As explained in the Memorandum in Support of Xerox Defendants' Partial Motion to Dismiss the Amended Complaint ("Defs.' Mem."), sufficient "storm warnings" existed as of February 6, 2001 (or June 28, 2001, at the very latest) to put PPM on inquiry notice of the probability that it allegedly had been defrauded.  (See Defs.' Mem. 9-17.)  PPM does not dispute that the noted press reports and events were indeed "storm warnings".  Nor does PPM dispute that the "storm warnings" disclosed the alleged "general fraudulent scheme" of which it complains.  Instead, PPM contends that it was excused from its duty to investigate because Xerox denied the allegations that had been made against it (see Pls.' Mem. 9-12) and that this Court determined as much in denying KPMG's motion to dismiss in Carlson (see Pls.' Mem. 1, 3-4, 9).  PPM's arguments are without merit.

### A.    The Court's Opinion Concerned "Actual", Not "Inquiry", Notice.

PPM contends that, in denying KPMG's motion to dismiss in Carlson, this Court determined that "the events of February and June 2001 were insufficient to trigger the commencement of the statute of limitations".  (Pls.' Mem. 1; see also id. at 9.)  PPM is mistaken.

In its motion to dismiss, KPMG argued that the claims of plaintiffs who purchased Xerox securities after February 6, 2002, were time-barred because such plaintiffs had "actual" notice of their claims by February 6, 2001.  That KPMG's motion was so limited was noted by the Court:

> "KPMG presents a very narrow argument in its moving papers.  It contends that the front-page story in The Wall Street Journal on February 6, 2001, which set forth Bingham's allegations, gave the plaintiffs actual notice of their claims.  The court limits its analysis to that argument only."

2

Carlson v. Xerox Corp., 392 F. Supp. 2d 267, 291 (D. Conn. 2005) (emphasis added).

Here, the Court is presented with a much different issue: whether PPM

was on "inquiry" notice as of February 6, 2001 (or June 28, 2001, at the very latest). (See

Defs.' Mem. 9-17.) This Court quite explicitly did not rule on that issue. See Carlson,

392 F. Supp. 2d at 292 ("The court is not determining at this time the date on which the

plaintiffs had 'inquiry notice' because it was not directly addressed in the briefing.").[1]

B.    PPM Was Not Excused From Its Duty to Investigate.

PPM contends that it was excused from its duty to investigate its claims

until April 11, 2002, because Xerox made a number of comments essentially denying the

allegations that had been made against it. (See Pls.' Mem. 10-12.) These comments,

however, did not prevent PPM's duty of inquiry from arising. In light of the numerous,

detailed and severe charges that repeatedly and publicly had been leveled against Xerox

(see Defs.' Mem. 9-17), it was not reasonable for PPM to believe that it should do

nothing to investigate its potential claims. See LC Capital Partners, LP v. Frontier Ins.

Group, Inc., 318 F.3d 148, 155 (2d Cir. 2003) (holding reassuring statements are simply a

factor to be examined when evaluating whether the circumstances suggest that the duty of

inquiry arose and are relevant only to the extent that reliance on them would have been

reasonable); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 289 F. Supp.

2d 416, 425 (S.D.N.Y. 2003) (defendants' "denials of wrongdoing were not

contemporaneous explanations for the myriad articles that served to put plaintiffs on

---

[1] While the Court's analysis did include a discussion regarding "constructive" notice, that discussion is inapplicable here because PPM failed properly to allege that it investigated its claims. (See Defs.' Mem. 17-19); infra at Section I.C. Therefore, the statutes of limitation began to run on the date of "inquiry" notice, and the issue of "constructive" notice (i.e., when a reasonably diligent investor, after being put on inquiry notice, should have discovered its claims) is irrelevant. See Shah v. Meeker, 435 F.3d 244, 249, 251 (2d Cir. 2006).

3

inquiry notice").[2]  Moreover, PPM simply could not have believed, as it contends, that

the First Restatement "confirmed Mr. Bingham's main claim that Xerox had used

'aggressive accounting to secretly bolster results in the late 1990's'" (AC ¶ 229), while at

the same time reasonably believing that certain claimed "words of comfort" belied

Bingham's other allegations and the many other "storm warnings" before it.[3]

       That the various "storm warnings" did not cover each and every detail of

the alleged fraud did not relieve PPM of its duty to inquire.[4]  (See Defs.' Mem. 8-9.)  The

relevant inquiry remains "whether plaintiffs had notice of facts sufficient to impose upon

them a duty to inquire further into the matter".  Arduini/Messina P'ship v. Nat'l Med.

Fin. Servs. Corp., 74 F. Supp. 2d 352, 359 (S.D.N.Y. 1999).  On that account, it is clear

that sufficient "storm warnings" existed as of Feb. 6, 2001 (or June 28, 2001, at the very

latest), to give PPM such a duty.  (See Defs.' Mem. 9-17.)

       Furthermore, "a plaintiff's duty to inquire is not dissipated merely because

of a defendant's later refusal to acknowledge or own up to the alleged fraud".  In re

Merrill Lynch, 289 F. Supp. 2d at 425.  Accordingly, Xerox's post-inquiry notice

comments regarding the allegations that had been made against it were incapable of

---

[2] Thus, for example, while the Xerox Defendants disputed Bingham's claims as detailed in the February 6, 2001, Wall Street Journal article (and continue to do so today), PPM was not relieved of its duty to inquire into the validity of those claims. See Slavin v. Morgan Stanley & Co., 791 F. Supp. 327, 331 (D. Mass. 1992) (defendant's "denial of wrongdoing should not have deterred this plaintiff from pursuing its inquiry into the matter where the plaintiff was on inquiry notice that it had been defrauded").

[3] PPM's argument is also inconsistent with the actions of the Carlson plaintiffs who filed their class action only two months after Bingham's claims were first published in the Wall Street Journal on Feb. 6, 2001, as well as those of its fellow plaintiffs who were careful to file the Original Complaint within one year of that date. (See Defs.' Mem. 10 n.5, 13-14.)

[4] Accordingly, it is not sufficient merely to point to the fact that the Second Restatement involved a larger absolute dollar amount than the First Restatement.  (See Pls.' Mem. 12.)

reversing PPM's duty of inquiry.  Stated otherwise, the comments made after the date of

inquiry notice relate only to the question of "constructive" notice, i.e., when a reasonably

diligent investor, after being put on inquiry notice, should have discovered the alleged

fraud.  Therefore, because PPM failed adequately to allege that it conducted an

investigation (see infra Section I.C), the issue of "constructive" notice never arises, and

Xerox's post-inquiry notice comments are irrelevant.  See In re Merrill Lynch, 289 F.

Supp. 2d at 424, 426 n.17; see also Shah, 435 F.3d at 249.

> C.    PPM Failed Properly to Allege That It Investigated Its Claims.

PPM contends that it sufficiently pled that it undertook an investigation

because the introductory paragraph of the Amended Complaint contains a passing

reference to an "investigation".  (See Pls.' Mem. 12 n.4.)  This "allegation" is insufficient

as a matter of law because (1) the duplicative nature of the Original and Amended

Complaints makes it impossible to determine what, if any, investigation PPM (as opposed

to the other plaintiffs) conducted (and whether such investigation took place within one

year of the date of inquiry notice) (see Defs.' Mem. 17-18), and (2) PPM failed to allege,

as it must, that it discovered facts "essential to its claims" (see id. at 18).  In addition,

PPM's claim that prior to April 11, 2002, it "had no reason to suspect that there was any

fraud at Xerox beyond what had already been disclosed and corrected in the First

Restatement" (see Pls.' Mem. 12) indicates that it did not undertake an investigation until

after the statute of limitations had expired.[5]

---

[5] Because "[i]nquiry notice is tantamount to actual discovery" when a plaintiff "shuts his eyes to the facts
which call for investigation", PPM's claims are untimely.  In re Global Crossing, Ltd. Sec. Litig., 313 F.
Supp. 2d 189, 202 (S.D.N.Y. 2003) (internal quotation omitted).  Moreover, PPM cannot rely on Global
Crossing to excuse its failure adequately to plead that it undertook an investigation.  (See Pls.' Mem. 13
n.4.)  There, plaintiffs were not required specifically to plead that they conducted an investigation because

## II.    SARBANES-OXLEY DOES NOT APPLY TO PPM'S CLAIMS

PPM concedes that the extended limitations and repose periods found in Sarbanes-Oxley (the "Act") do not apply if its claims were time-barred as of July 30, 2002, the effective date of the Act. (See Pls.' Mem. 13, 15-16; Defs.' Mem. 28-30.) As demonstrated above, PPM's claims were time-barred by February 6, 2002 (or June 28, 2002, at the very latest). Accordingly, the Act is not applicable to PPM's claims.[6]

## III.    PLAINTIFFS ARE NOT ENTITLED TO AMERICAN PIPE TOLLING

As noted in Xerox Defendants' Memorandum, courts uniformly have held that the benefits of American Pipe tolling do not extend to plaintiffs who file individual actions before a decision on class certification has been rendered. (See Defs.' Mem. 24-26.) Indeed, Plaintiffs admit that "A number of district court cases (and one decision from the Sixth Circuit in dicta) have held that a plaintiff who opts-out to file an individual action prior to a decision on class certification loses the benefits afforded by American Pipe." (Pls.' Mem. 22 n.9).[7] Instead, Plaintiffs argue that the rule against American Pipe

---

the existence of an investigation was abundantly clear from the record. Id. at 203. That is not the case here. PPM not only failed to allege that it conducted an investigation, but the existence of a timely investigation cannot be gleaned from the record. (See Defs.' Mem. 17-19.) Therefore, because PPM "shut its eyes" and "waited a year after being put on inquiry notice to take action", Global Crossing, 313 F. Supp. 2d at 203, its failure adequately to plead that it undertook an investigation is dispositive.

[6] PPM contends that it "commenced" a new "proceeding" when it joined the other plaintiffs to file the Amended Complaint. (See Pls.' Mem. 14.) However, because PPM's claims were time-barred prior to the effective date of the Act, this issue is irrelevant. (See Defs.' Mem. 29) (citing Aetna Life Ins. Co. v. Enter. Mortgage Acceptance Co., 391 F.3d 401, 410 (2d Cir. 2005)). In any event, PPM's contention is without merit. First, PPM cites no authority in support of its contention. Second, the Second Circuit has held that the filing of a new amended complaint, even if it adds new plaintiffs, does not constitute the commencement of a new action. See Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 310 (2d Cir. 2003) (plaintiffs added to case through amended complaint filed after the effective date of Section 108 of the Private Securities Litigation Reform Act were not covered by its provisions). (See also Defs.' Mem. 29-30.)

[7] The other cases Plaintiffs cite are not to the contrary. See Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983) (considering plaintiffs' right to file individual claims after a denial of class certification);

tolling should not apply in this instance because of policy considerations.  (See Pls.'
Mem. 19.)

First, Plaintiffs contend that the application of American Pipe should not
turn on when they filed their individual actions because the Xerox Defendants received
notice of adverse claims when Carlson was filed (thereby negating any prejudice to
them).  (See Pls.' Mem. 20-21.)  Not only is this contention contrary to a large body of
settled law (as noted above), it also ignores the policies that actually underlie Fed. R. Civ.
P. 23 and American Pipe.  The rule limiting tolling to actions filed after a decision on
class certification is premised on the doctrine's aim to minimize expense and conserve
judicial resources.  (See Defs.' Mem. 25-26.)  By withholding the benefit of American
Pipe until after class certification, plaintiffs are given an incentive to remain in the class
until they are in a better position to determine whether they need to opt out, thereby
reducing the amount of duplicative litigation.  See State of Alaska Dept. of Revenue v.
Ebbers (In re WorldCom, Inc. Sec. Litig.), 294 F. Supp. 2d 431, 451-52 (S.D.N.Y. 2003).

Second, Plaintiffs contend that judicial efficiency will be disserved if
American Pipe tolling is not applied to plaintiffs who wish to pursue state law claims not
pled in the class action.  (See Pls.' Mem. 21-23.)  However, the rule against American
Pipe tolling does not change simply because a plaintiff "opts out" to pursue state law

---

Realmonte v. Reeves, 169 F.3d 1280, 1284 (10th Cir. 1999) (holding that tolling applies to plaintiffs who
opt out after class certification is granted); Adams Public School Dist. v. Asbestos Corp., 7 F.3d 717 (8th
Cir. 1993) (plaintiff who opted out after the class had been certified was entitled to tolling).  Neither Joseph
v. Wiles, 223 F.3d 1155 (10th Cir. 2000) nor In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d
429 (S.D.N.Y. 2005) contemplated or discussed the issue of whether a plaintiff who files an individual
action prior to a decision on class certification may receive the benefit of American Pipe tolling.  Moreover,
both arose under distinguishable factual circumstances.  See Joseph, 223 F.3d at 1157 (plaintiff who filed
claim only after the court had considered the class certification issue and indicated during a hearing its
reluctance to certify the class was entitled to tolling); In re Flag Telecom, 352 F. Supp. 2d at 455-56
(plaintiff who joined the proposed class action after it had been dismissed was entitled to tolling).

claims not asserted in the class action. See SLS Investors, L.P. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), No. 02 Civ. 3288 (DLC), 2004 WL 97654, at *1 (S.D.N.Y. Jan. 20, 2004) (rejecting plaintiffs' argument that tolling should apply to action filed before class certification because it included state law claims not asserted in the class action); see also Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553, 554, 559, 568-69 (6th Cir. 2005) (refusing to apply tolling to individual action filed before class certification even though it included state law claims not asserted in the federal class action); Fezzani v. Bear, Stearns & Co., 384 F. Supp. 2d 618, 629, 632-33 (S.D.N.Y. 2004) (same).

In support of their proposed exception, Plaintiffs contend that they had to file their individual claims when they did to avoid the risk of forfeiting their state claims. However, a better option was available to Plaintiffs: they could have filed all of their claims on time. By doing so, Plaintiffs could have avoided the procedural problems they now blame on the Xerox Defendants. (See Pls.' Mem. 22-23.) Furthermore, if the proposed exception were adopted, the benefits of American Pipe could be secured simply by appending state law claims to an individual action. This would render meaningless the well-settled rule against applying American Pipe tolling to individual claims filed before class certification and would undermine, rather than serve, the efficiency rationale of American Pipe and Fed. R. Civ. P. 23.[8]

---

[8] Plaintiffs request that any dismissal of their claims be without prejudice so that they may rejoin the putative Carlson class action. (See Pls.' Mem. 23 n.10.) Plaintiffs' request is based on their assertion that, at the time they filed their action, there supposedly was no precedent establishing the inapplicability of American Pipe to their claims. (Id.) However, a plethora of such cases existed at the time, including one cited in Plaintiffs' own brief. See, e.g., Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450, 514 (S.D.N.Y. 2001) (plaintiffs who filed individual actions before class certification were not entitled to American Pipe tolling); Chinn v. Giant Food, Inc., 100 F. Supp. 2d 331, 335 (D. Md. 2000) (same); In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, MDL 997, 1998 WL 474146, at *8 (N.D.

Therefore, PPM's federal claims are barred by the one-year statutes of

limitation (<u>see</u> Defs.' Mem. 15 n.8), and Plaintiffs' federal claims arising from purchases

before January 4, 1999 (for FSBA, TRSL and Franklin) and before October 3, 1999 (for

PPM) are barred by the three-year statutes of repose (<u>see</u> Defs.' Mem. 20-22).

## IV.    PLAINTIFFS FAILED ADEQUATELY TO PLEAD COMPLIANCE WITH THE LIMITATIONS PERIODS OF SECTION 18

Plaintiffs contend that they need only plead compliance with statutes of

limitation and repose where compliance therewith is a prerequisite of jurisdiction.  (<u>See</u>

Pls.' Mem. 25.)  Claiming that compliance with the statutes of limitation and repose is

not a jurisdictional prerequisite to bringing a Section 18 claim, Plaintiffs assert that they

were not required affirmatively to plead such compliance here.  (<u>See</u> <u>id.</u>)  Plaintiffs'

contention is without merit.  The duty to plead compliance with the limitations and

repose periods does not depend upon whether they are jurisdictional in nature.  Instead,

courts have held that plaintiffs must plead adherence to Section 18's statutes of

limitations and repose because they constitute essential elements of the cause of action.[9]

(<u>See</u> Defs.' Mem. 19-20, 23-24.)  Moreover, even if the duty to plead compliance turned

---

Ill. Aug. 6, 1998) (same).  Moreover, the case Plaintiffs cite as precedent for their request expressly
conditioned plaintiffs' re-entry to the class on the forfeiture of their ability to opt out and reassert their
time-barred claims.  <u>See</u> <u>Alaska Elec. Pension Fund v. Citigroup, Inc. (In re Worldcom, Inc. Sec. Litig.)</u>,
No. 02 Civ. 3288 (DLC), 2004 WL 113484, at *9 (S.D.N.Y. Jan. 26, 2004).

[9] Plaintiffs contend that the court in <u>In re Electronic Data Systems Corp. "ERISA" Litig.</u>, 305 F. Supp. 2d
658 (E.D. Tex. 2004), "flatly rejected the existence of any requirement to plead compliance with the
limitations period for federal securities claims".  (Pls.' Mem. 25.)  Plaintiffs are mistaken.  The court in
<u>Electronic Data Systems</u> merely held that notice pleading will suffice where the cause of action contains no
elements of fraud.  305 F. Supp. 2d at 677.  Moreover, the court was careful to note that where the cause of
action <u>does</u> contain elements of fraud, plaintiffs affirmatively must plead compliance with the limitations
periods.  <u>Id.</u>  In light of the above, Plaintiffs' reliance on <u>Electronic Data Systems</u> is confusing, since
Plaintiffs necessarily asserted that their Section 18 claims contain elements of fraud when they argued that
they were subject to the extended limitations period of Sarbanes-Oxley (<u>see</u> Pls.' Mem. 13, 24), which, by
its very terms, applies only to claims of "fraud, deceit, manipulation, or contrivance", 28 U.S.C. § 1658(b).

on the jurisdictional nature of the limitations periods, the Second Circuit has held, in the

analogous Section 12(2) context, that compliance with the statute of limitations is a

prerequisite of jurisdiction.  See Wigand v. Flo-Tek, Inc., 609 F.2d 1028, 1033 n.5 (2d

Cir. 1979).

## CONCLUSION

For these reasons, the Xerox Defendants respectfully request that the

Court: (1) dismiss PPM's federal claims in their entirety, or alternatively that the Court

dismiss the federal claims of PPM for any purchases that took place before October 3,

1999; (2) dismiss the federal claims of FSBA, TRSL and Franklin for any purchases that

took place before January 4, 1999; and (3) dismiss all of Plaintiffs' Section 18 claims in

their entirety.  In addition, Xerox respectfully requests that the Court dismiss Plaintiffs'

Section 20(a) claims in their entirety as to Xerox.  (See Defs.' Mem. 30-31.)

Respectfully submitted,

DEFENDANT XEROX CORPORATION

By
    /s/  Sandra C. Goldstein
    Evan R. Chesler (ct 03177)
    Sandra C. Goldstein (ct 24019)
    Karin A. DeMasi (phv0584)
    Members of the Firm

    CRAVATH, SWAINE & MOORE
    LLP
    Worldwide Plaza
       825 Eighth Avenue
          New York, NY 10019
             (212) 474-1000

DEFENDANTS PHILIP FISHBACH, G.
RICHARD THOMAN AND ANNE
MULCAHY

By
/s/ Thomas D. Goldberg / RJ
Thomas D. Goldberg (ct 04386)
DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

DEFENDANTS PAUL A. ALLAIRE,
BARRY D. ROMERIL AND GREGORY
TAYLER

By
/s/ Andrew N. Vollmer / RJ
Andrew N. Vollmer (ct 23728)
Heather A. Jones (ct 24194)
WILMER CUTLER PICKERING
HALE and DORR LLP
2445 M Street, NW
Washington, DC 20037
(202) 663-6000

Alfred U. Pavlis (ct 08603)
DALY & PAVLIS, LLC
107 John Street
Southport, CT 06890
(203) 255-6700

Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
(203) 968-3000
Attorney for Xerox Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2006, a copy of the foregoing Reply Memorandum in Further Support of Xerox Defendants' Partial Motion to Dismiss the Amended Complaint and the accompanying Compendium of Unreported Authority Cited therein were filed electronically and served by mail on those parties listed below unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system as indicated on the Notice of Electronic Filing or by mail to those parties listed below unable to accept electronic filing.  Parties may access this filing through the court's CM/ECF system.


Jay W. Eisenhofer, Esq.                         Lisa Kelly Morgan, Esq.
Geoffrey C. Jarvis, Esq.                        Ruben, Johnson & Morgan, P.C.
Grant & Eisenhofer, P.A.                        249 Pearl Street
1201 N. Market Street, Suite 2100               Hartford, CT 06103
Wilmington, DE 19801


/s/ Sandra C. Goldstein
Sandra C. Goldstein (ct 24019)

Cravath, Swaine & Moore LLP
Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         Phone: (212) 474-1000
            Fax: (212) 474-3700
               Email: sgoldstein@cravath.com