# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Russell Carlson, et al. | ) | |
| v. | ) | |
| Xerox Corp., et al. | ) | 3:00-CV-1621 (AWT) |
| | ) | |
| MASTER CASE | ) | |
| | ) | 3:02-CV-1303 (AWT) |
| Florida State Board of Admin., et al. | ) | |
| v. | ) | |
| Xerox Corp., et al. | ) | February 28, 2006 |
| | ) | |
| MEMBER CASE. | ) | |

## COMPENDIUM OF UNREPORTED AUTHORITY CITED IN REPLY MEMORANDUM IN FURTHER SUPPORT OF XEROX DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

## UNREPORTED CASES

Alaska Elec. Pension Fund v. Citigroup, Inc. (In re WorldCom, Inc. Sec. Litig.), No. 02
    Civ. 3288 (DLC), 2004 WL 113484 (S.D.N.Y. Jan. 26, 2004)

In re Brand Name Prescription Drugs Antitrust Litig., No. 94 C 897, MDL 997, 1998 WL
    474146 (N.D. Ill. Aug. 6, 1998)

SLS Investors, L.P. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), No. 02 Civ. 3288
    (DLC), 2004 WL 97654 (S.D.N.Y. Jan. 20, 2004)





Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**



**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
In re WORLDCOM, INC. SECURITIES
LITIGATION
ALASKA ELECTRICAL PENSION FUND,
Plaintiff,
v.
CITIGROUP, INC., et al., Defendants.
ALASKA PERMANENT CAPITAL
MANAGEMENT COMPANY, Plaintiff,
v.
CITIGROUP, INC., et al., Defendants.
LOCALS 302 AND 612 OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS-EMPLOYERS
CONSTRUCTION INDUSTRY RETIREMENT
TRUST, Plaintiff,
v.
Bernard J. EBBERS et al., Defendants.
ALASKA TEAMSTER-EMPLOYER PENSION
TRUST, Plaintiff,
v.
CITIGROUP, INC., et al., Defendants.
DISTRICT NO. 9, I.A. OF M. & A.W. PENSION
TRUST and District No. 9, I.A. of
M. & A.W. Welfare Trust, Plaintiffs,
v.
Bernard J. EBBERS, et al., Defendants.
THE NATIONAL ASBESTOS WORKERS
PENSION FUND, Plaintiff,
v.
Bernard J. EBBERS, et al., Defendants.
**No. 02 Civ.3288(DLC), 03 Civ.8269, 03 Civ.8923,
03 Civ.9168, 03 Civ.9400, 03
Civ.9401.**

Jan. 26, 2004.

**Background:** Investors on whose behalf a law firm
had brought six actions against a telecommunications
company for securities fraud requested the voluntary
dismissal of their actions.

**Holding:** The District Court, Cote, J., held that
voluntary dismissal was warranted to permit the
investors to participate in a class action arising from

the collapse of the company.
 Motions conditionally granted.

West Headnotes

**Federal Civil Procedure** ⟳1700
170Ak1700 Most Cited Cases
Investors whose six individual actions against a
telecommunications company for securities fraud
were barred by limitations would be granted a
voluntary dismissal of the actions to allow them to
participate in a class action arising from the collapse
of the company; the investors generally had not been
unduly vexatious despite the duplicative litigation,
and allowing the investors to join the class suit would
have no adverse effect on the progress of discovery in
that suit, and could reduce the burden of collateral
litigation. Fed. R. Civ. Proc. 41(a)(2).
 William S. Lerach, Darren J. Robbins, Spencer
Burkholz, Michael J. Dowd, Randall Baron, Thomas
E. Egler, Milberg Weiss Bershad Hynes & Lerach
LLP, San Diego, CA, Melvyn I. Weiss, Steven G.
Schulman, Sol Schreiber, Milberg Weiss Bershad
Hynes & Lerach LLP, New York, NY, Patrick J.
Coughlin, Milberg Weiss Bershad Hynes & Lerach
LLP, San Francisco, CA, for Plaintiffs.

 Max W. Berger, John P. Coffey, Steven B. Singer,
Beata Gocyk-Farber, John C. Browne, Jennifer L.
Edlind, Bernstein Litowitz Berger & Grossman LLP,
New York, NY, Leonard Barrack, Gerald J. Rodos,
Jeffrey W. Golan, Mark R. Rosen, Jeffrey A.
Barrack, Pearlette V. Toussant, Barrack Rodos
Bacine, Philadelphia, PA, for Lead Plaintiff in the
Securities Litigation.

 Eliot Lauer, Michael Moscato, Michael Hanin,
Curtis, Mallet-Prevost, Colt & Mosle LLP, New
York, NY, for Defendant Arthur Anderson LLP.

 Jay B. Kasner, Susan L. Saltzstein, Steven J.
Kolleeny, Skadden Arps Slate Meagher & Flom LLP,
New York, NY, for Underwriter Defendants.

 Martin London, Richard A. Rosen, Brad S. Karp,
Eric S. Goldstein, Walter Rieman, Marc Falcone,
Joyce S. Huang, Paul Weiss Rifkind Wharton &
Garrison LLP, New York, NY, Robert McCaw, Peter
K. Vigeland, Wilmer Cutler & Pickering, New York,
NY, for Defendants Citigroup Global Markets, Inc.
f/k/a Salomon Smith Barney, Inc., Citigroup Inc., and

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

Jack Grubman.

*OPINION AND ORDER*

COTE, J.

**\*1** This Document Relates to:

Plaintiffs in six actions ("Plaintiffs" and "Six Actions") filed by Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss") request the voluntary dismissal of their actions in order to participate in the securities class action arising out of the collapse of WorldCom, Inc. ("WorldCom"). On January 20, 2004, the defendants' motions to dismiss the Six Actions in their entirety as barred by the statute of limitations were granted. For the following reasons, the Plaintiffs' requests for a voluntary dismissal are granted, and these actions will be dismissed with prejudice with the following exception. Plaintiffs will be permitted to remain as members of the WorldCom class action without prejudice with respect to any claims brought on behalf of the class. [FN1]

> FN1. The United States Court of Appeals for the Second Circuit is currently considering an interlocutory appeal on a jurisdictional issue certified by this Court. On January 21, the Court of Appeals issued an order requiring the parties in the WorldCom *Securities Litigation* to show cause by January 28 whether "in light of continuing proceedings in the district court, including dismissal of 31 individual actions brought by Milberg Weiss and its denial of Milberg's request to delay the opt out period for the class action, any order from this court should be issued in aid of our jurisdiction over this appeal." In order to give the Court of Appeals an opportunity to consider the submissions of January 28, this Court will not sign any order giving effect to this Opinion, or to the Opinion of January 20, before February 12, 2004. As described below, the Opinion of January 20 granted the motions to dismiss nine Milberg Weiss Actions in their entirety and to dismiss claims, but not the entire action, in the case of twenty-one other Milberg Weiss Actions.

*Background*

The following presents the background to this litigation relevant to the statute of limitations issues that affect these Six Actions and to the pending motions for their voluntary dismissal. On June 25,

2002, WorldCom declared that it would undertake a massive restatement of its financial statements for 2001 and the first quarter of 2002. Beginning with the June 25 announcement, a series of public disclosures revealed, in essence, that WorldCom had misrepresented its financial condition since 1999. *See In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21219049, at \*4 (S.D.N.Y. May 19, 2003) (opinion denying, in large part, motions to dismiss the class action complaint). By late July 2002, WorldCom had filed the largest bankruptcy in United States history.

Even before the June 25 announcement, the first class action alleging WorldCom claims had been filed in this district. The class actions were consolidated by an Order of August 15, 2002. Numerous actions alleging individual, as opposed to class, claims ("Individual Actions") were also filed in venues across the country, many by Milberg Weiss ("Milberg Weiss Actions").

The Judicial Panel on Multi-District Litigation ("MDL Panel") transferred WorldCom litigation pending in other federal district courts, either because it was filed there originally or because it was removed by defendants to federal court, to this Court for pretrial proceedings. This Court's Order of December 23, 2002 found that the Individual Actions and the securities class actions (collectively, *Securities Litigation* ) involve common questions of law and fact, and that consolidation of these actions for pretrial proceedings was necessary. *See In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2002 WL 31867720 (S.D.N.Y. Dec.23, 2002). A Consolidation Order of May 28, 2003, set out the framework for consolidation, and provided that "the requirement that any defendant named and served in an Individual Action must move, answer, or otherwise respond in that action is stayed." *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21242882, at \*2 (S.D.N.Y. May 29, 2003).

**\*2** The first Milberg Weiss Action was filed on July 5, 2002. Each Milberg Weiss Action was filed in a state court and pleaded solely federal securities law claims under the Securities Act of 1933 ("Securities Act"). By the Fall of 2003, Milberg Weiss had filed at least forty-seven Individual Actions on behalf of over one hundred and twenty pension funds, many of them public employee or union pension funds. All of the Milberg Weiss Actions were removed by defendants on the ground that they were related to the WorldCom bankruptcy. While six of the removed Milberg Weiss Actions were remanded before their

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

transfer to this Court by the MDL Panel, the rest were transferred and have been consolidated in the *Securities Litigation* for pre-trial purposes. The Six Actions were each filed more than one year after the June 25, 2002 WorldCom announcement. The first of the Six Actions was filed on June 27, 2003; the last on August 13. [FN2]

> FN2. The Six Actions are the following. (1) Alaska Electrical Pension Fund, 03 Civ. 8269--filed on June 27, 2003.(2) Alaska Permanent Capital Mgt. Co., 03 Civ. 8923--filed on July 23, 2003.(3) Locals 302 and 612 of the Int'l Union of Operating Engineers-Employers Construction Industry Retirement Trust, 03 Civ. 9168--filed on July 28, 2003.(4) Alaska Teamster-Employer Pension Trust, 03 Civ. 9400--filed on August 6, 2003.(5) The National Asbestos Workers Pension Fund, 03 Civ. 9402--filed on August 6, 2003.(6) District No. 9, I.A. of M. & A.W. Pension Trust and District No. 9, I.A. of M. & A.W. Welfare Trust, No. 03 Civ. 9401--filed on August 13, 2003.

On May 19, 2003, the motions to dismiss the class action were largely denied. *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 21219049. An amended consolidated class action complaint was filed on August 1. The class action complaint in the *Securities Litigation* pleads claims under both the Securities Act and the Securities Exchange Act of 1934. By October 14, 2003, virtually all defendants had filed answers to the amended consolidated class action complaint. The motion to certify a class was granted on October 24, 2003. *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 22420467 (S.D.N.Y. Oct.24, 2003).

A Clarification Order of November 5, provided that "for purposes of Rule 41(a) only, defendants are deemed to have filed an answer in each Individual Action as of the date the Individual Action arrives on this Court's docket." *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 22508508 (S.D.N.Y. Nov.5, 2003). Parties were given until November 21 to object to the Clarification Order. None of the Milberg Weiss Actions made any objection. The objections that were made were denied. *In re WorldCom, Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 23095478 (S.D.N.Y. Dec.1, 2003).

At a conference on September 12, defendants gave notice of an intent to bring, in two tranches, motions to dismiss claims common to many Individual Actions. Among the grounds they identified was the contention that some Securities Act claims were barred by the applicable statute of limitations and would not be able to rely on *American Pipe* tolling. *See American Pipe & Construc. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). At a conference on September 22, the Court proposed and the parties agreed that the defendants would initially address their motions to dismiss to one or two of the complaints among the Individual Actions. The plaintiffs in those actions would oppose the motions and the plaintiffs in other Individual Actions would be permitted to file a single, joint amicus brief in opposition. An Order of September 22 provided that when a decision on the motion to dismiss was issued, the parties in the other Individual Actions in which the same legal issue arose would be given an opportunity to show cause "why the decision does not apply to those actions." ("September 22 Order"). *See In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2004 WL 77879, at *3 (S.D.N.Y. Jan.20, 2004) (describing procedure for motion practice).

**\*3** The first motion to dismiss, filed on October 3, included a motion addressed to a single, representative Milberg Weiss Action, an action which has been described as the MW Alaska Action. It sought dismissal of certain claims on the ground, *inter alia,* that they were barred by the statute of limitations contained in the Securities Act.

On October 29, the Lead Plaintiff in the WorldCom securities class action advised the Court that it had reason to believe that Milberg Weiss was soliciting absent class members with misleading statements about the *Securities Litigation.* It submitted solicitation materials from Milberg Weiss in support of its accusation. At a hearing held on November 13, the Court gave its preliminary observations and findings based on the submissions received from Milberg Weiss and Lead Plaintiff. Of particular pertinence to the instant motion are the following:

> Every investor has a right to bring an individual action if it chooses to do so. Every investor will have the right to opt out of the certified class action.
> Milberg Weiss has engaged in an active campaign to encourage penion funds not to participate in the class action and instead to file Individual Actions with Milberg Weiss as their counsel....Milberg Weiss has targeted a relatively sophisticated audience with important and serious fiduciary duties to its membership and beneficiaries....There

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

is no reason to believe that the funds that have filed Individual Actions have done so with any but the best of intentions to obtain the maximum recovery for their constituency....[B]ehind the lawyers and the pension fund officers stand the many individual state, local, public and private employees whose lost retirement savings and benefits the funds seek to recover....

The communications with Milberg Weiss have resulted in some confusion and misunderstanding of the options available to putative class members....Milberg Weiss does not appear to have presented a forthright description of the advantages and disadvantages of both the individual action and class action options....*The potential statute of limitations impediments to bringing certain of the more recently filed Individual Actions do not appear to have been described. This could be a very serious problem for a litigant who chooses to opt out of the class,* only to learn that the Individual Action it had filed was barred by the statute of limitations and it had lost all right to recovery. This very issue in now *sub judice....*

See In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288(DLC), 2003 WL 22701241, at *6-7 (S.D.N.Y. Nov.17, 2003) (describing hearing and the findings) (emphasis supplied).

Milberg Weiss made no objection at the hearing to any of the findings and endorsed the Court's solution, [FN3] which was to send a separate, curative notice to all plaintiffs who had filed Individual Actions, in addition to the notice to be provided to all class members to advise them of their right to opt out of the WorldCom securities class action (respectively "Individual Action Notice" and "Class Notice"). [FN4] At the hearing held on November 13, Milberg Weiss advised the Court that it would immediately send a copy of the transcript of the hearing to each of its clients.

> FN3. Mr. William S. Lerach represented Milberg Weiss at the hearing.

> FN4. The Court rejected the requests by Lead Plaintiff to order Milberg Weiss to produce information related to its solicitation efforts, including communications and the names of class members contacted, to order Milberg Weiss not to disseminate material without first obtaining the consent of Lead Counsel for the class or the Court, and to order Milberg Weiss not to initiate oral discussions with any member of the certified class who had

not already retained it. See *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22701241, at *9.

**\*4** A November 21 Opinion resolved the October 3 motions to dismiss claims in the MW Alaska Action based, *inter alia*, on the statute of limitations that applies to Securities Act claims. *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22738546 (S.D.N.Y. Nov.21, 2003) ("November 21 Opinion"). The November 21 Opinion held that the statute of limitations contained within the Securities Act governed the Section 11 Securities Act claim. That limitations period is a one year/three year regimen. The Opinion also held that "[t]here can be no doubt that at least as of WorldCom's announcement on June 25, 2002--that it would have to restate its publicly reported financial results for 2001 and the first quarter of 2002 by $3.8 billion-- plaintiffs were on inquiry notice of their" Securities Act claims. *Id.* at *14. The November 21 Opinion rejected the argument that an action that files independently of the class before a determination on class certification could benefit from *American Pipe* tolling. *Id.* at *15.

During the period that followed the November 13 hearing, the Court and counsel drafted the notices. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22852660 (S.D.N.Y. Dec. 2, 2003) (circulating Court's redraft of notices based on parties' submissions). On December 11, 2003, the Court approved the two notices. The Individual Action Notice was mailed on December 12, and the Class Notice was mailed and posted on December 15.

The Class Notice advised all WorldCom investors that the period to opt out of the securities class action ends on February 20, 2004. It also advised them that fact discovery was scheduled to close on June 18, 2004, and the class action trial was to begin January 10, 2005.

The Individual Action Notice provided complainants with important information to help them make an informed choice as to whether to opt out of the class action. It identified one important issue for their consideration as the "timeliness" of their action. The Individual Action Notice described the rulings in the November 21 Opinion, the fact that based on those rulings, defendants were filing motions to dismiss with prejudice some or all of the claims brought in many Individual Actions, and that the opposition to these motions was due December 23. It further advised, "[i]f the claims are dismissed with prejudice, then the defendants take the position that the

Not Reported in F.Supp.2d                                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

plaintiffs in these Individual WorldCom Actions will lose forever their right to recover for any WorldCom losses covered by the dismissed claims." The Individual Action Notice also stated that the November 21 Opinion had explained that "there is 'no authority' that would support the refiling of claims, for instance after the certification of a class action, where those claims have been dismissed on the ground that they were barred by the statute of limitations."

 The Individual Action Notice added that the Lead Plaintiff in the class action takes the position that if a plaintiff requests a dismissal of their action, then the Court can

    **\*5** exercise its discretion to condition the dismissal on an agreement that the dismissal is with prejudice to the refiling of the Individual WorldCom Action, but without prejudice to the plaintiff participating as a Class member....The defendants have indicated that they will oppose any such conditional or voluntary dismissal....No motion has been made by any Individual WorldCom Plaintiff whose claims may be subject to dismissal or by any other party before the Court and, as a result, the Court has made no determination in this regard.

 Pursuant to the Scheduling Order of September 22, plaintiffs in other Individual Actions, including the Six Actions, were given an opportunity to show why the November 21 Opinion did not require the dismissal of some or all of their Securities Act claims as a result of motions to dismiss that the defendants filed against their actions on or about December 2. Through the December 2 motions to dismiss, the defendants sought the dismissal of the Six Actions in their entirety.  [FN5] The Plaintiffs served their opposition to the motion to dismiss on December 22. Their opposition did not raise the issue of the voluntary dismissal of their lawsuits.  [FN6] The opposition presented on behalf of the Milberg Weiss Actions did, however, present new arguments not made in opposition to the motion to dismiss the MW Alaska Action or in the motion for reconsideration addressed to the November 21 Opinion. On January 20, 2004, those new arguments were rejected and the motions to dismiss with prejudice various Securities Act claims in twenty-six Individuals Actions and nine Milberg Weiss Actions in their entirety, including the Six Actions, were granted.  [FN7] *See, e.g., In re WorldCom, Inc. Sec. Litig.,* 2004 WL 77879 ("January 20 Opinion").

    FN5. The December 2 motions, as amended,

were filed against thirty-six Individual Actions, thirty-one of which were Milberg Weiss Actions. The motions sought the dismissal of nine actions in their entirety, each of which was a Milberg Weiss Action.

    FN6. While Milberg Weiss objected to the December 2 motions as premature with respect to two recently transferred cases, it did not make that argument regarding any of the Six Actions. *See In re Worldcom, Inc. Sec. Litig.,* 2004 WL 77879, at \*5.

    FN7. The Court reserved decision on one action, 03 Civ. 9824, to give the parties an opportunity to address the plaintiff's recently amended complaint.

 Meanwhile, between January 9 and January 13, the Plaintiffs filed motions seeking voluntary dismissal of their actions on the condition that they will not opt out of the class action. The motions were fully submitted on January 23. The Lead Plaintiff in the class action submitted a brief in support of allowing the movants to dismiss their Individual Actions and to remain members of the class pursuant to Rule 41(a)(2), Fed.R.Civ.P. [FN8] Arthur Anderson, the Underwriter Defendants  [FN9] and the Salomon Smith Barney Defendants oppose the motions.

    FN8. The Lead Plaintiff opposes any motion to dismiss the actions pursuant to Rule 41(a)(1), Fed.R.Civ.P.

    FN9. This Opinion adopts the names for groups of defendants from the Opinion of May 19, 2003. *See In re WorldCom, Inc. Sec. Litig.,* 2003 WL 21219049.

### *Discussion*

 Each of the Plaintiffs in the Six Actions requests that it be permitted pursuant to Rule 41(a)(2), [FN10] Fed.R.Civ.P., to dismiss its Individual Action without prejudice "on the condition that it be permitted to remain a member of the [WorldCom] class for all claims asserted in that case."  [FN11] "Once a defendant has answered a complaint a plaintiff may no longer dismiss his suit as a matter of right." *D'Alto v. Dahon California, Inc.,* 100 F.3d 281, 283 (2d Cir.1996). Rule 41(a)(2), Fed. R. Civ. P., provides that except where parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). "It is within the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

district court's sound discretion to deny a Rule 41(a)(2) motion to dismiss." *Catanzano v. Wing,* 277 F.3d 99, 109 (2d Cir.2001) (citing *Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (2d Cir.1990)).

> FN10. In the alternative, Plaintiffs request that the Court reconsider its November 5 Order and permit them to withdraw their actions voluntarily pursuant to Rule 41(a)(1)(i), Fed.R.Civ.P., in order to permit them to participate in the class action. Because their application pursuant to Rule 41(a)(2) is granted, it is unnecessary to reach this complicated, and hotly contested alternative ground for the same relief.

> FN11. In connection with the drafting of the Individual Action Notice, Milberg Weiss took the position that a plaintiff who had filed an Individual Action did not also need to opt out of the class in order to be allowed to continue with its Individual Action. In the Plaintiffs' submissions in support of the motion for a voluntary dismissal, Milberg Weiss now agrees that unless a plaintiff explicitly opts out of the class on or before February 20, 2004, a plaintiff will "forfeit its individual action."

*\*6* "A district court may allow a plaintiff to dismiss an action if the defendant will not be prejudiced thereby." *Correspondent Services Corp. v. First Equities Corp. of Florida,* 338 F.3d 119, 126 (2d Cir.2003) (citation omitted). *D'Alto* observed that

> "Starting a litigation all over again does not constitute legal prejudice. However ... [there is] an exception to the rule; namely when the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree."

*D'Alto,* 100 F.3d at 283 (citing *Jones v. Securities & Exchange Commission,* 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015 (1936)). Among the factors relevant to a court's decision are

> [1] the plaintiff's diligence in bringing the motion; [2] any 'undue vexatiousness' on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

*Catanzano,* 900 F.2d at 109-110 (citing *Zagano,* 900 F.2d at 14).

### Diligence in bring the motion

Whether the Plaintiffs have been diligent in bringing their motions to dismiss their actions voluntarily depends on the point at which one starts the analysis. Their counsel have been on notice of the defendants' intent to raise the statute of limitations bar since September 2003. The defendants gave notice in a September 12 conference of their intent to move to dismiss Individual Actions based on the statute of limitations. The motion was made on October 3 and fully described the defendants' theory. The motion brought against the test case--a Milberg Weiss Action whose complaint is indistinguishable from the Plaintiffs' complaints in every material aspect--was granted on November 21. The motions to dismiss the Six Actions in their entirety were made on December 2. The Plaintiffs opposed these motions on December 22. At no point during those three months, including in their opposition to the motions to dismiss, did the Plaintiffs seek to dismiss their actions voluntarily.

On the other hand, the Six Actions were transferred by the MDL Panel at various points throughout the Fall. Moreover, the curative, Individual Action Notice was not mailed until December 12. This notice allowed the Court to explain the implications of the statute of limitations litigation directly to each plaintiff who had filed an Individual Action. [FN12] The Plaintiffs brought their motions to dismiss their actions voluntarily between January 9 and January 13.

> FN12. The Liaison Counsel for the Individual Actions in the *Securities Litigation* mailed the Individual Action Notice directly to each such plaintiff.

### Undue Vexatiousness by Plaintiffs

With the possible exception of the new arguments presented in opposition to the December 2 motions to dismiss, [FN13] the Plaintiffs have not been unduly vexatious. As previously noted by this Court, there is "no reason to believe that the funds that have filed Individual Actions have done so with any but the best of intentions to obtain the maximum recovery for their constituency." *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 22701241, at *6.

> FN13. Because the Plaintiffs had failed to follow the procedure incorporated in the September 22 Order, the defendants urged that the Court treat the new arguments in the

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

Plaintiffs' opposition to the motions to dismiss as an untimely motion for reconsideration, and reject them without discussion. Because of the importance of the issues to the parties, and to assist the Plaintiffs in making informed decisions about their legal options, the Court addressed the new arguments on the merits and as promptly as it could. *See In re WorldCom Sec. Litig.,* 2004 WL 77879, at *6.

**\*7** The defendants contend that the Plaintiffs have been unduly vexatious because they have participated with the other Milberg Weiss Actions in a coordinated *"de facto* class action". *See In re WorldCom Sec. Litig.,* 2003 WL 22701241, at *6. The defendants recite that this campaign has resulted in a significant expenditure of the parties' resources, duplicative litigation, and waste. While it is true that the burden on the parties  [FN14] and the court system from this strategy of conducting a parallel, quasi class action has been enormous, that is an entirely separate issue from the filing, and now dismissal, of a time-barred lawsuit. The law protects the right of investors to opt out of securities class actions and to pursue their own independent lawsuits. So long as a lawsuit otherwise conforms to the requirements of the law, it cannot be labeled vexatious simply because it is duplicative litigation.

> FN14. The burden on the defendants is obvious. It has resulted in the expenditure of significant resources that may ultimately diminish the amount of funds available for distribution to investors. Many of the defendants are insured through "wasting" insurance policies that require the deduction of attorney's fees spent in defense of litigation. There has also been a significant burden on Lead Counsel for the class, who has had to correct misinformation provided to class members. Its efforts on behalf of absent class members have included its identification of the voluntary dismissal strategy and an excellent brief in support of the Plaintiffs' application to dismiss their lawsuits voluntarily.

### Progress in the Suit

The WorldCom *Securities Litigation* is in the midst of fact discovery; fact discovery is due to close on June 18, 2004. Settlement discussions have been ongoing since last Winter, but to date no settlement agreement has been announced. [FN15] Discovery on

behalf of the class is being conducted by Lead Counsel for the Class. The Individual Actions are participating fully in the discovery process through a consolidation order and with the assistance of a Liaison Counsel. *See In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 21219037 (S.D.N.Y. May 22, 2003) (explaining the reasons for the consolidation of all the *Securities Litigation* actions for pretrial proceedings). Allowing plaintiffs who have filed Individual Actions to join the class action will have no adverse effect on the progress of discovery in the *Securities Litigation.*

> FN15. At the Court's invitation, the Honorable Robert W. Sweet and the Honorable Michael Dolinger are supervising settlement discussions.

The opt out period for the class action does not expire until February 20, 2004. After that date, it will be clearer to all which parties have finally decided to pursue Individual Actions, and the potential size of the class. That information can be expected to facilitate the ongoing settlement discussions, to permit all parties to focus their efforts more effectively on the litigation, and to assist in the management of the litigation. A motion by Plaintiffs to dismiss their Individual Actions before the close of the opt out period is helpful in this regard and timely.

### Duplicative Expense of Relitigation

Permitting the Plaintiffs to remain full participating members of the class action will not result in any duplicative expense of relitigation. Indeed, permitting such participation may reduce the burden of collateral litigation. For instance, by remaining in the class action, the Plaintiffs are foregoing their right to appeal the January 20 dismissal of their actions.

### Plaintiffs' Explanation of the Need to Dismiss

The Plaintiffs' reason for requesting a voluntary dismissal of their actions is readily apparent. The applicable statute of limitations presents an insurmountable barrier to the maintenance of the Six Actions. This barrier, which would exist whether their actions were remanded to state court or whether they remain in federal court, prevents them from obtaining any recovery for their losses from WorldCom investments.

### Public Policy Considerations

**\*8** In addition to the *Zagano* factors, it is appropriate in this case to consider issues of public policy. The defendants urge that the Court deny this application for a conditioned voluntary dismissal because to do

Not Reported in F.Supp.2d                                                                                  Page 8
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

so would "fatally undermine the rationale of the *American Pipe* tolling doctrine". The defendants contend that plaintiffs will be encouraged to file preemptive suits, knowing that they can opt out of any adverse decisions in their individual cases and simply join the class without any penalty, and with great cost to the defendants and the court system. They assert that the motions are not brought in good faith since the Plaintiffs waited to see if the Court would rule in the defendants' favor on the first tranche of the motions to dismiss. Among the authorities that defendants cite to support their argument that plaintiffs cannot participate in a class action after they have filed time-barred claims are *In re Heritage Bond Litig.,* 289 F.Supp.2d 1132, 1150, 1154 (C.D.Cal.2003); *In re Brand Name Prescription Drugs Antitrust Litig.,* Nos. 94 C 897, MDL 997, 1998 WL 474146, at *8 (N.D.Ill. Aug.6, 1998); and *Patterson v. Alaska Airlines, Inc.,* 756 F.Supp. 476, 478 (W.D.Wa.1990).

The defendants' argument has force. It is a particularly compelling argument in the context of these Six Actions. The statute of limitations barrier at issue here should have been readily apparent to each of the Plaintiffs when they filed their lawsuits. Even if they thought that the law was unsettled, it is difficult to understand how, as fiduciaries, the Plaintiffs could run the risk of losing all right to pursue recovery for their participants and beneficiaries when there were alternatives readily available to them that did not present that risk. They could simply have waited to see whether it was in their interest to join the class action, and if they concluded that it was not, they could have opted out of the class action and filed their own individual action. A suit filed after a decision has been made on class certification can take advantage of *American Pipe* tolling, and their claims would not have been vulnerable to dismissal simply because they were filed more than a year after June 25, 2002.

As noted, however, each of the Plaintiffs is a fund with many participants who depend upon the fund to guard and preserve assets intended for their benefit. To the extent that the Plaintiffs lost assets invested in WorldCom securities through violations of the federal securities laws, there is a strong public interest in favor of allowing them and those to whom they owe a fiduciary duty to participate in any recovery that may be received through the *Securities Litigation.* Innocent beneficiaries should not suffer because of flawed legal advice. The penalty imposed upon them by filing untimely lawsuits is, in effect, the loss of the opportunity to pursue an Individual Action. As this Court has stated repeatedly, investors have the right to bring individual actions and to opt out of a certified class action. This is a "bedrock truth." *In re WorldCom Sec. Litig.,* 2003 WL 22701241, at *6. With the filing of their motions for voluntary dismissal, Plaintiffs acknowledge that they are giving up that right.

*Timing of January 20 Opinion*

**\*9** Plaintiffs complain that this Court issued the January 20 Opinion on the statute of limitations issues before reaching their motions for a voluntary dismissal. [FN16] The Plaintiffs are six of the thirty-six actions affected by the December 2 motions to dismiss. It is essential that each of those actions have as much guidance as quickly as possible about the fate of their cases. Milberg Weiss' opposition to the December 2 motions raised new arguments that it had not made in its opposition to the October 3 motions to dismiss the representative Milberg Weiss Action. To the extent that it believed that those new arguments deserved serious consideration and could affect the outcome of that motion practice, it was critical that each of their affected clients have an analysis of those arguments in order to assist them in making a better informed decision about what course to follow, including whether to seek to remain in the class by moving voluntarily to dismiss their action, or to continue with their Individual Action and opt out of the class . [FN17] Simply put, deferring a decision on the December 2 motions would have left each of the actions subject to those motions with less information as they faced the February 20 opt out deadline.

> FN16. As already described above, Plaintiffs' counsel has had notice since September of the defendants' intention to move to dismiss Securities Act claims as time-barred, and the Plaintiffs did not even raise the issue of a voluntary dismissal in response to the December 2 motions to dismiss their actions. Their first motion for voluntary dismissal was not filed until January 9.

> FN17. On December 16, 2003, the Court certified an interlocutory appeal of a legal issue central to the denial of the Plaintiffs' remand motions. *See In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ. 3288(DLC), 2003 WL 22953644 (S.D.N.Y. Dec.16, 2003). The Court of Appeals for the Second Circuit has accepted the appeal. Regardless of the forum in which the Individual Actions are

Not Reported in F.Supp.2d                                                          Page 9
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

litigated, however, the statue of limitations bar will remain the same.

 In sum, weighing each of the factors described above, and considering them as a whole, the Plaintiffs have shown that their application for the voluntary dismissal of their actions in order to permit them to be full participants in the WorldCom class action should be granted.  [FN18] The judgments to be entered in defendants' favor pursuant to the January 20 Opinion, therefore, shall be entered with prejudice for all purposes except allowing Plaintiffs to remain members of the WorldCom class action and participate fully in any recovery obtained by the class.

> FN18. The defendants request an award of fees and costs, including those connected to the transfer and consolidation efforts, in the event that the Court permits the Plaintiffs to remain in the class action without prejudice to any of the claims being pursued by the class. The request is denied.

*Conclusion*

 The motions by plaintiffs in 03 Civ. 8269, 03 Civ. 8923, 03 Civ. 9168, 03 Civ. 9400, 03 Civ. 9401, and 03 Civ. 9402 to dismiss their actions voluntarily is granted with the condition that they not opt out of the class or seek in any way to continue their Individual Actions.  [FN19] No order giving effect to the decisions of January 20 will be executed before February 12, 2004.  [FN20]

> FN19. An Order is being issued today to allow any plaintiff who has filed an Individual Action in the *Securities Litigation,* and whose action or claims are subject to dismissal in accordance with the November 21 and January 20 Opinions, to participate fully in any class action recovery so long as the plaintiff files a motion to dismiss their action voluntarily by February 20, 2004, the date the opt out period for the class action ends.

> FN20. At a conference on January 22, 2004, the Court advised the parties that it was addressing the motions for voluntary dismissal and requested that counsel for the Underwriter Defendants prepare judgments and orders for the Individual Actions subject to the November 21 and January 20 Opinions that would permit their full participation in the class action. Those

proposed judgments and orders were submitted on January 23, 2004.

 SO ORDERED:

 Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2973886 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion Concerning Class Representation and Creation of Subclasses (Feb. 24, 2004)

• 2004 WL 2973917 (Trial Pleading) Reply Brief in Support of Certain Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of Their Amended Complaints to Their Original Timely Filed Complaints (Feb. 24, 2004)

• 2004 WL 368780 (Trial Motion, Memorandum and Affidavit) The Worldcom Directors' Opposition to Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of their Amended Complaints to their Original Timely-Filed Complaints (Feb. 17, 2004)

• 2003 WL 23474908 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)

• 2003 WL 23671666 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)

• 2003 WL 23951686 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the Worldcom Directors (Dec. 15, 2003)

• 2003 WL 23474886 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)

• 2003 WL 23671658 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)

• 2003 WL 23671651 (Trial Pleading) Corrected First Amended Class Action Complaint of Lead Plaintiff

Not Reported in F.Supp.2d                                                          Page 10
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

Alan G. Hevesi, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fu nd, on Behalf of Purchasers and Acquirers of All Worldcom, Inc. Publicly Traded Securities (Dec. 01, 2003)

• 2003 WL 23474903 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23671607 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23474870 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474877 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474879 (Trial Pleading) Answer of Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474880 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474881 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474882 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)

• 2003 WL 23474883 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474884 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474885 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474909 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474910 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474911 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671611 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671613 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671616 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671618 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)

• 2003 WL 23671620 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671623 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671625 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 11
Not Reported in F.Supp.2d, 2004 WL 113484 (S.D.N.Y.), Fed. Sec. L. Rep. P 92,672
**(Cite as: 2004 WL 113484 (S.D.N.Y.))**

• 2003 WL 23671628 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671632 (Trial Pleading) Answer of Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671637 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671643 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671646 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
In re: BRAND NAME PRESCRIPTION DRUGS
ANTITRUST LITIGATION
**No. 94 C 897, MDL 997.**

Aug. 6, 1998.

*MEMORANDUM OPINION AND ORDER*

KOCORAS, J.

**\*1** This Document Relates To: ALL CASES FILED
BY INDIVIDUAL PLAINTIFFS

This matter is before the Court on the Manufacturer
Defendants' and Wholesaler Defendants' motions for
partial summary judgment on the Individual
Plaintiffs' Sherman Act claims. For the following
reasons, the Wholesaler Defendants' motion is
granted-in-part, while the Manufacturer Defendants'
motion is denied.

BACKGROUND

The Individual Plaintiffs consist of thousands of
independent pharmacies, drug store chains, and
grocery store chains who have chosen to opt out of
the nationwide class action ("the Class case") to
pursue their own individual claims under Section 1 of
the Sherman Act, 15 U.S.C. § 1. The Individual and
Class Plaintiffs each assert a conspiracy among brand
name prescription drug manufacturers to fix the
prices for such drugs through their use of a "two-
tiered" pricing system. Though both the Class
Plaintiffs and the Individual Plaintiffs originally
named the Manufacturer Defendants as defendants in
their Sherman Act claims, these plaintiff groups
diverged in their treatment of the Wholesalers. The
Class Plaintiffs named the Wholesalers as defendants
in their original complaint; conversely, the Individual
Plaintiffs merely identified the Wholesalers as co-
conspirators but did not name them as defendants in
their complaints.

On October 2, 1997, certain Individual Plaintiffs filed
a Motion for Leave to Add Wholesaler
Defendants to assert their Sherman Act claims
against six wholesalers ("the Wholesaler

Defendants"); AmeriSource Corporation; Bergen
Brunswig Corporation; Bindley Western Industries,
Inc.; Cardinal Health, Inc.; McKesson Corporation;
and Whitmire Distribution Corporation. The
Individual Plaintiffs did not seek to join another
Wholesaler, FoxMeyer, because FoxMeyer had filed
for bankruptcy in August 1996. Since that time,
however, Wholesaler Defendant McKesson has
executed an Asset Purchase Agreement in which
FoxMeyer sold substantially all of its assets to
McKesson. In an opinion dated November 20, 1997,
this Court granted the Individual Plaintiffs' motion
for leave to join the Wholesaler Defendants.

In their amended complaints, the Individual Plaintiffs
seek damages against the Wholesaler Defendants for
the time period from October 1989 through the
present (or the time of trial). The Individual Plaintiffs
also seek damages for the same time period for
purchases of brand name drugs from Wholesalers
other than the Wholesaler Defendants. These damage
claims now sought by the Individual Plaintiffs are
essentially identical to the claims asserted by the
class action complaint originally filed by the Class
Plaintiffs on November 4, 1993. All of the cases were
consolidated in this Court by the Multidistrict Panel
on February 4, 1994. The class was ultimately
certified by this Court, though all of the Individual
Plaintiffs opted out of the class by the opt-out
deadline of March 10, 1995.

The Wholesaler and Manufacturer Defendants have
now filed the present motions for partial summary
judgment, seeking a limitation on certain damage
claims asserted by the Individual Plaintiffs.
Specifically, the Defendants seek summary judgment
on the following claims: (1) damages accruing from
purchases through the Wholesaler Defendants that
were consummated prior to October 2, 1993; and (2)
damages for purchases made from non-Defendant
Wholesalers. Before addressing the merits of these
motions, it is first necessary to set forth the
appropriate standard of review.

LEGAL STANDARD

**\*2** Summary judgment is appropriate when the
record, viewed in a light most favorable to the
nonmoving party, reveals that there is no genuine
issue as to any material fact and that the moving

Not Reported in F.Supp.                                                                                                Page 2
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a motion has been filed for summary judgment, the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; the nonmovant must go beyond the pleadings and support its contentions with proper documentary evidence. *See Id.*

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Id* at 322. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Id* at 323. Applying these principles, we turn to the merits of the motions presently before us.

## DISCUSSION

The Wholesaler and Manufacturer Defendants have each filed motions seeking partial summary judgment on the Individual Plaintiffs' Sherman Act claims. Primarily, the Defendants ask the Court to limit the Individual Plaintiffs' potential claims to cover only those purchases of brand name prescription drugs made within the 4-year statutory limitations period. The genesis of these motions is found in this Court's recent decision, dated November 20, 1997, to allow the Individual Plaintiffs leave to amend their complaints to add the Wholesalers as defendants in this action. *See In re Brand Name Prescription Drugs Antitrust Litig.,* 177 F.R.D. 414 (N.D.Ill.1997). In this opinion, the Court expressly reserved judgment on the issue of whether this amendment would "relate back" for purposes of delineating the time period for which damages would be recoverable. *Id.* at 423. Accepting our invitation to revisit this issue in appropriate detail, the Wholesaler and Manufacturer Defendants have now filed the instant motions.

The effective filing date of these claims is critical to the determination of the period for which the Individual Plaintiffs can recover damages. The Supreme Court has recently reaffirmed that damages

resulting from an antitrust conspiracy can only be recovered for those acts which were committed within the limitations period. *See Klehr v. A.O. Smith Corp.,* 521U.S. 179, ---- - ----, 117 S.Ct. 1984, 1990-91, 138 L.Ed.2d 373 (1997) (explaining that in a continuing price fixing conspiracy, a plaintiff cannot recover for sales which were made to it outside the limitations period). Applying this rule to the instant case, the Individual Plaintiffs can only recover overcharge damages for those sales which were consummated within the four years preceding the filing of their lawsuits. For the direct purchaser claims against the Manufacturer Defendants, the relevant cut-off date for these purchases is four years before the filing of the original complaints in 1993 and 1994. However, for the indirect purchaser claims against the Manufacturer Defendants, and for the claims against the newly-added Wholesaler Defendants, it is necessary to consider the effective date of the Wholesalers' joinder and the legal effect that this joinder should have on the scope of the Individual Plaintiffs' potential recovery. That, in a nutshell, is the impetus for the present motions.

**\*3** To answer these questions, however, several legal issues must be considered. The first is whether the amended complaint, and its joinder of the Wholesaler Defendants, "relates back" to the filing of the original complaint. If it does not relate back, we must next consider whether the limitations period was tolled during the pendency of the class action complaint for purposes of establishing an earlier filing date. Depending on how these issues play out, the question of whether the various indirect purchaser claims can be maintained against the Manufacturer Defendants must finally be considered. The Court will address each of these issues in turn.

## I. Relation Back

The first question raised in the Defendants' motions is whether the joinder of the Wholesaler Defendants should relate back to the filing of the original complaints in 1993 and 1994. When an amendment serves to add claims against additional parties, Federal Rule of Civil Procedure 15(c)(3) governs the relation back question. Rule 15(c)(3) provides that where an amendment "changes the party or the naming of the party against whom a claim is asserted," the amended claims are allowed to relate back to the date of the original pleading only if, *inter alia,* the party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                      Page 3
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

party." Fed.R.Civ.P. 15(c)(3).

There is no real dispute over whether the Wholesaler Defendants had knowledge of the pendency of this action from the beginning-clearly they did. Nor is there any question that the Individual Plaintiffs knew full well who the Wholesalers were and deliberately chose not to name them as defendants in their original complaints. What is hotly contested, however, is whether the initial omission of the Wholesaler Defendants from the Individual Plaintiffs' cases must have been the product of some sort of mistake in order to qualify for relation back under Rule 15(c)(3). The Defendants assert that, in the absence of any such mistake, relation back is not proper.

The Seventh Circuit has strictly read the language of Rule 15(c)(3) to require "a misnomer of defendant"; in other words, claims against a new party relate back only "where there has been an error made concerning the identity of the proper party." *Wood v. Woracheck,* 618 F.2d 1225, 1230 (7 th Cir.1980); *see also Worthington v. Wilson,* 8 F.3d 1253, 1256 (7 th Cir.1993) (relation back not allowed where failure to name the putative defendants was not due to a mistake about their proper names); *Hill v. Shelander,* 924 F.2d 1370, 1374 n. 2 (7 th Cir.1991) (Rule 15(c) "comprehends a situation where the original complaint sues the correct party but identifies him by a technically incorrect name"). Thus, where the plaintiff has knowledge of, but initially fails to join, an omitted defendant, the amended complaint does not relate back when that defendant is later joined. *See Norton v. International Harvester Co.,* 627 F.2d 18, 22-23 (7 th Cir.1980); *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 773-74 (N.D.Ill.1993). In fact, this rule has been applied to deny relation back in a case, remarkably similar to the instant situation, where the later-joined defendant had been identified in the original complaint, but only as a co-conspirator. *Havoco of America, Ltd. v. Hilco, Inc.,* 750 F.Supp. 946 (N.D.Ill.1990), *aff'd,* 971 F.2d 1332 (7 th Cir.1992). The Defendants assert, therefore, that the Individual Plaintiffs prior identification of the Wholesalers as co-conspirators conclusively establishes that no mistake was ever made and that relation back is not appropriate.

**\*4** The Individual Plaintiffs, in response, dispute whether Rule 15(c)(3) has been so strictly construed by the Seventh Circuit. In support of a more liberal interpretation of the rule, Plaintiffs cite the case of *Woods v. Indiana University-Purdue University at Indianapolis,* 996 F.2d 880 (7 th Cir.1993), which

held that Rule 15(c) *expressly* contemplates the prospect of the retrospective application of an amended complaint to a defendant who was *not* named originally but who was added only later, when the plaintiff or plaintiff's attorney realized that the defendant should have been named at the outset. And that of course includes (indeed it would far more commonly involve) a defendant who was not named at all to begin with ... rather than a defendant who was named at the beginning but was originally sued in the wrong capacity.

*Id.* at 888. Likewise, in *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548 (7 th Cir.1996), the Seventh Circuit indicated that joinder of completely new parties-not simply those that were originally misnamed-could be related back under the federal rules. *Id.* at 561 (court would allow relation back where the plaintiff mistakenly sued the Sheriff's Department rather than the individual officers against whom his claims could only be brought). Thus, the Individual Plaintiffs argue that Rule 15(c) applies beyond the context of mere misnomer to situations involving legal mistakes such as is present in the instant case.

Defendants contend that *Woods* and *Donald,* rather than overruling the general rule requiring a misnomer, have merely carved out an exception for cases involving governmental entities. In these cases, the plaintiffs had made mistakes in determining the proper defendants in their suits against the government. The Seventh Circuit found that such mistakes were within the purview of Rule 15(c)(3), and thus permitted relation back of the claims against defendants who were only properly named after the statute of limitations had run. *See Donald,* 95 F.3d at 561; *Woods,* 996 F.2d at 888. The Defendants assert that, because there are clearly no governmental defendants implicated in this case, the exception exemplified by the *Donald* and *Woods* cases is inapplicable.

Though it is somewhat difficult to reconcile this prior precedent, a very recent decision from the Seventh Circuit sheds some needed light on this issue. In *Baskin v. City of Des Plaines,* 138 F.3d 701 (7 th Cir.1998), the court reaffirmed the rule of *Wood* and *Worthington* requiring a " 'mistake in the identification of the proper party.' " *Id.* at 704 (*quoting Wood,* 618 F.2d at 1230). Rejecting the plaintiff's argument for a broader construction of Rule 15(c)(3), the court distinguished *Donald* on the basis that it involved a pro se plaintiff who had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 4
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

mistakenly sued the Sheriff's Department when his only cause of action was against the individual jail personnel. *Id* . at 704 fn. 1. Without a similar mistake to excuse his belated amendment of the proper defendant, the *Baskin* plaintiff was not allowed to take advantage of the relation back rules. *Id.* at 704.

**\*5** This Seventh Circuit precedent makes clear that the Individual Plaintiffs cannot enjoy the benefits of Rule 15(c)(3) to allow relation back of their claims against the Wholesaler Defendants. Though there has been some conflicting dicta on this point over the years, a common theme has emerged from this Circuit's analysis of Rule 15(c)(3)-the need for some sort of "mistake" as to the proper defendant's identity. This mistake may involve a simple factual misnomer, *e.g.* *Diaz v. Shallbetter,* 984 F.2d 850, 854 (7 [th] Cir.1993) (amendment which seeks to change name of defendant from "John Shullbetter" to "Dennis Shallbetter" is covered by Rule 15(c)), or it may consist of a plaintiff's legal misconception as whether to sue an individual or institutional governmental defendant, *e.g. Donald,* 95 F.3d at 560; Woods, 996 F.2d at 886-87. In all of these cases where the Seventh Circuit has permitted relation back under Rule 15(c)(3), however, the plaintiff has always made some type of mistake in suing the proper defendants.

The Individual Plaintiffs made no such mistake in this case. Represented by sophisticated, able and learned counsel, the Individual Plaintiffs *deliberately chose* not to originally sue the Wholesaler Defendants for whatever reason. They did not misname the Wholesalers in their original complaints, nor did they mistakenly sue the wrong party by virtue of some legal misconception. Any miscalculation the Individual Plaintiffs may have made with regard to *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), and its effect on their indirect purchaser claims, simply cannot be shoehorned into Rule 15(c)(3)'s "mistake" requirement. Thus, the amendment of the Wholesaler Defendants does not relate back to filing of the original complaint, and therefore any damages which depend on this amendment are to be defined by the date of this amendment.

## II Tolling of Limitations Period

The Individual Plaintiffs alternatively argue that the statute of limitations period should be tolled to permit damages from before the four years leading up to the 1997 amendment. The Individual Plaintiffs advance

two theories for tolling the limitations period in this case: (1) equitable tolling, and (2) class action tolling. The Defendants dispute that these tolling doctrines apply to the facts of this case.

Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." *Singletary v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7 [th] Cir.1993); *Donald,* 95 F.3d at 561. The touchstone of this doctrine is "reasonable diligence"-the plaintiff must demonstrate that he exercised all reasonable diligence to sue the proper party within the limitations period. *Singletary,* 9 F.3d at 1241-43. If a plaintiff demonstrates such diligence, and could not have sued previously, tolling of the statute may be appropriate. In determining whether equitable tolling is appropriate, courts have considered several factors which weigh in favor of applying the doctrine. *See Donald,* 95 F.3d at 562.

**\*6** One such factor that has been found to justify equitable tolling is when a " 'court has led the plaintiff to believe that she had done everything required of her." ' *Donald,* 95 F.3d at 562 (*quoting Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). Citing this factor, the Individual Plaintiffs contend that they have relied on the Seventh Circuit's decision in *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478, 481 (7 [th] Cir.1980), and this Court's prior rulings in 1994 and 1996, in previously deciding not to name the Wholesalers as defendants in their cases. Arguing that these opinions led them to believe that the Wholesalers need not be joined, the Individual Plaintiffs assert that they have been reasonably diligent in pursuing their claims and thus should receive the benefits of the equitable tolling doctrine.

The Defendants disagree, arguing that the Individual Plaintiffs have not satisfied the requirements for equitable tolling. Though agreeing that this doctrine focuses on the diligence of the plaintiff, the Defendants point out that, regardless of any diligence, a plaintiff must also show he was *"unable* to sue [the proper defendants] before." *Singletary,* 9 F.3d at 1241 (emphasis added). Though the Individual Plaintiffs may have had a reasonable reason for not suing the Wholesalers in the first instance, the Defendants contend that nothing affected the Individual Plaintiffs' *ability* to include the Wholesalers as defendants. Since the omission of the Wholesalers Defendants from the original complaint was merely the product of a strategic

Not Reported in F.Supp.                                                                                          Page 5
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

choice by the Individual Plaintiffs, the Defendants argue that they cannot avoid the consequences of this choice by invoking the doctrine of equitable tolling.

The Court agrees. The standard for equitable tolling clearly requires that the plaintiff be prevented in some way from proceeding with its claim, and the Individual Plaintiffs have offered no excuse for their failure to join the Wholesaler Defendants sooner. The Individual Plaintiffs have always (or at least should have) understood that their indirect purchaser claims, without the joinder of the Wholesalers as defendants, stood on arguably tenuous footing because of *Illinois Brick* and its progeny. *Cf. In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1163 (5 th Cir.1979) (holding that direct sellers must be joined as defendants in order to avoid an *Illinois Brick* bar); *and Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478 (7 th Cir.1980) (arguably holding that *Illinois Brick* does not bar recovery when an intermediary is alleged to be a co-conspirator). Though they ultimately placed their reliance on *Fontana,* and this Court validated this reliance in our prior opinions, the Individual Plaintiffs proceeded down this path at their own potential peril. This Court allowed the recent joinder of the Wholesaler Defendants to the Individual cases, but we are not amenable to employing an equitable doctrine to bail the Individual Plaintiffs out of the consequences of their prior strategic decision. Thus, the Court finds it inappropriate to invoke the doctrine of equitable tolling in this case.

**\*7** In a final attempt to salvage as much of their damage claims as possible, the Individual Plaintiffs alternatively seek to invoke the doctrine of class action tolling. This doctrine works to suspend the limitations clock for putative class members upon the filing of a class action complaint, preserving for each that portion of the limitations period that remained at the time the class action was filed. *See Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). After a statute has been tolled, the limitations clock then resumes ticking again only after the court makes a class certification decision and the class member "opts out" of the class. *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1488-89 (9 th Cir.1985). The Individual Plaintiffs thus contend that the filing of the initial class action on November 4, 1993, which included the same claims now asserted against the Wholesalers in this case, served to toll the statute of limitations for these claims until the opt-out deadline of March 10, 1995. Assuming that class

action tolling is appropriate, the potential period of damage recovery against the Wholesaler Defendants (and other related claims) would be expanded by 488 days-back to June 2, 1992 from October 2, 1993 (based on the amendment date of October 2, 1997).

The Defendants, however, argue that class action tolling cannot be invoked in this case. The purpose of the class action tolling doctrine, the Defendants assert, is to preserve the claims of putative class members while class action status is pending. *See Crown, Cork & Seal,* 462 U.S. at 350-51. Tolling the statute of limitations avoids the necessity of each individual class member having to file his own claim in order to avoid the risk of being shut out if a class is not certified. In this case, however, many of the Individual Plaintiffs filed their claims *prior to* any determination of class action status and prior to opting out of the class. The Defendants contend that these Plaintiffs, who filed the type of duplicative claims which the tolling rule seeks to avoid, cannot now turn around and enjoy the benefits of class action tolling. In fact, many courts have refused to apply the class action tolling rule for plaintiffs who choose to opt out of a putative class. *See, e.g., Pulley v. Burlington Northern, Inc.,* 568 F.Supp. 1177, 1179 (D.Minn.1983) ( "while a class action tolls the statute of limitations for all claims within the class action, it does not toll the limitations period for individual actions brought by members of the class while the class still exists"); *Chemco, Inc. v. Stone, McGuire & Benjamin,* 1992 WL 188417, at *2 (N.D.Ill. July 29, 1992) (where class certification has not been denied, applying tolling doctrine would create "the problem of a needless multiplicity of suits that *American Pipe* and *Crown, Cork & Seal Co.* strove to avoid").

**\*8** If nothing else, this case certainly presents a novel circumstance for application of the class action tolling rule. Many of the Individual Plaintiffs did file their own individual lawsuits prior to the certification of the class, and thus arguably burdened the court system with needless duplicative paper. Furthermore, this is not the typical case in which the plaintiffs are reliant on a tolling of the limitations period in order to preserve their claims; instead, the Individual Plaintiffs seek to employ the tolling doctrine merely to preserve a longer period of time for purposes of calculating damages. To our knowledge, no court has been previously presented with such an application of the class action tolling doctrine.

From one perspective, several considerations augur in favor of allowing class action tolling in this case. For one, the Supreme Court has painted with a broad

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 6
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

brush in defining the class action tolling doctrine: "The commencement of a class action suspends the applicable statute of limitations as to *all asserted members of the class* that would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal*, 462 U.S. at 353 (*quoting* *American Pipe*, 414 U.S. at 554) (emphasis added). The Supreme Court has explained that the class action tolling rule "is a generous one ... preserv[ing] for class members a range of options pending a decision on class certification." *Crown, Cork & Seal*, 462 U.S. at 354 (concurring opinion). In addition, the doctrine has been made available to eventual class members and opt-out plaintiffs alike, *see* *id* at 352, and no Supreme Court case has held that plaintiffs filing individual lawsuits should be necessarily precluded from having a statute tolled for their claims.

However, though class action tolling is a broad rule, and could arguably apply in a case such as this, the Court feels strongly that it should not be invoked in this case. The Individual Plaintiffs made a conscious decision early on to pursue their claims on an entirely separate, though essentially parallel, track from that of the Class case. These Plaintiffs filed their own lawsuits and disavowed class status. They also chose, in contrast to the Class Plaintiffs, not to include the Wholesalers as defendants in their original complaints. In this Court's mind, it would be inequitable to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a group-the Class and its putative members-which they have disavowed being a part of from the beginning. In fact, class action tolling has been denied in such situations where a plaintiff "wants his cake and to eat it, too." *Stutz v. Minnesota Mining Mfg. Co.*, 947 F.Supp. 399, 403 (S.D.Ind.1996) (further explaining that the class action tolling rule should not be applied "when a plaintiff attempts to manipulate the rule in a way that frustrates its underlying purpose"). Thus, the Court finds that the class action tolling rule should not be extended to apply to the facts of this case.

**\*9** The Court holds that neither equitable nor class action tolling is appropriate in this case. Therefore, for those claims against the Wholesaler Defendants (and any others which depend on the Wholesaler Defendants being joined), the relevant damages period only dates back to October 2, 1993.

III *Illinois Brick* and Co-conspirator Intermediaries

The final issue on this motion, one that has proven to

be a recurring point of contention in this case, deals with the effect of the *Illinois Brick* indirect purchaser bar on the Individual Plaintiffs' claims against the Manufacturer Defendants. The Supreme Court in *Illinois Brick* held that an indirect purchaser-a party that is at least one step removed on the distribution chain from the alleged conspirators-cannot seek antitrust damages for illegal overcharges that are passed on to them through intermediaries in the distribution chain who purchased directly from the conspirators. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Thus, in order for the Plaintiffs to avoid an *Illinois Brick* bar with regards to their indirect purchaser claims against the Manufacturer Defendants, the Wholesalers must have been part of the alleged conspiracy. The big question, however, is whether the Wholesalers must be formally named as defendants, or if merely identifying the Wholesalers as co-conspirators is enough to overcome the rule of *Illinois Brick*.

In granting the Individual Plaintiffs leave to amend their complaints to join some of the Wholesalers as defendants, this issue has already been rendered moot in large part. However, since the Court has now held that this amendment does not relate back to the filing date of the initial complaints, those damage claims accruing before October 2, 1993 are still governed by the original pleadings. In their original complaints, the Individual Plaintiffs did *not* name the Wholesalers as defendants, but did identify them as co-conspirators in the alleged price-fixing conspiracy. In addition, those indirect purchaser claims which are predicated on purchases from non-Defendant Wholesalers are also dependent on the resolution of this issue. The issue, as we have stated, is whether identifying these intermediaries as co-conspirators is enough in light of *Illinois Brick'* s bar on indirect purchaser claims.

This Court has answered this question before. The Court previously agreed with the Individual Plaintiffs that, in order to avoid the *Illinois Brick* bar, it was sufficient that the intermediaries in the distribution chain-the Wholesalers-be identified in the complaint as co-conspirators. *See* *In re Brand Name Prescription Drugs Antitrust Litigation*, 867 F.Supp. 1338, 1344-45 (N.D.Ill.1994). Since this prior holding, however, the Seventh Circuit has weighed in with its opinion as to the effect of *Illinois Brick* on the antitrust claims in this MDL proceeding. Unfortunately, the Seventh Circuit's analysis was written from the perspective of the Class case, in which the Wholesalers have been defendants from

Not Reported in F.Supp.                                                                        Page 7
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

the outset, and did not directly address the question of whether the Wholesalers need be named as defendants. Nevertheless, Judge Posner's opinion did shed some new light on this issue, and thus it is necessary to reconsider our prior holdings on this point.

**\*10** With regards to *Illinois Brick* and the indirect purchaser claims, the Court of Appeals had the following to say:

The indirect-purchaser issue (with which we begin) is separate from the issue of the wholesalers' participation in the manufacturers' alleged conspiracy. It is true that if we reversed the judge's ruling on the latter issue and so reinstated the wholesalers as defendants, and if the plaintiffs went on to obtain a judgment against the wholesalers and manufacturers, any indirect-purchaser defense would go by the board, since the pharmacies would then be direct purchasers from the conspirators. *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478, 481 (7 [th] Cir.1980); *Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1212-13 (9 [th] Cir.1984); see also *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1163 (5 [th] Cir.1979) (requiring that the direct sellers, here the wholesalers, be joined as defendants-but that requirement is satisfied).

*In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599, 604-05 (7 [th] Cir.1997). The Seventh Circuit decided to reinstate the Wholesalers as defendants in the Class case, though making clear that their complicity in the conspiracy was necessary in order for the Plaintiffs to recover from the Manufacturer Defendants for purchases made through the Wholesalers. With respect to the Class case, it was unnecessary for the court to decide whether the Wholesalers' involvement must be as named defendants, or merely as co-conspirators not joined to the case.

Predictably, the Individual Plaintiffs and the Defendants read the Seventh Circuit's opinion to support their polar-opposite positions in this case. Relying on the Seventh Circuit's tangential discussion of the issue, the parties now argue how they believe the court would rule if directly presented with the question of whether it recognizes a co-conspirator exception to *Illinois Brick.* The parties' respective interpretations as to how the tea leaves read are as follows.

The Manufacturer Defendants assert that the Seventh Circuit's opinion conclusively establishes that the Plaintiffs' indirect purchaser overcharge claims are

barred by *Illinois Brick* unless two prerequisites are satisfied: (1) the direct sellers (the Wholesalers) must be joined as defendants, and (2) the Plaintiffs must obtain a judgment against the Wholesalers and Manufacturers. The Manufacturer Defendants place great reliance on the Seventh Circuit's citation with approval to the Fifth Circuit's decision in *In re Beef* and its requirement that co-conspirator intermediaries be joined as defendants in order to avoid an *Illinois Brick* bar to indirect purchaser claims. *See In re Beef,* 600 F.2d at 1163. This citation to *In re Beef* confirms, according to the Defendants, that the Seventh Circuit has always subscribed to the rule requiring direct purchaser intermediaries be formally joined as defendants.

**\*11** The Manufacturer Defendants detect no inconsistency in the Court of Appeals' preceding citation to *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478 (7 [th] Cir.1980). In *Fontana,* the Seventh Circuit opined that they were "not satisfied that the *Illinois Brick* rule directly applies in circumstances where the manufacturer and the intermediary are both alleged to be co-conspirators in a common illegal engagement resulting in intended injury to the buyer." *Id.* at 481. The Defendants argue, however, that the *Fontana* court did not rely on this reason for finding the *Illinois Brick* bar inapplicable to the indirect purchaser claims in that case. Instead, the Defendants claim the *Fontana* court based its decision on the fact that the plaintiff was seeking damages as "a competitor, not a customer," and because the plaintiff's claim was not for an overcharge passed through the chain of distribution but was rather for a combination of anticompetitive acts which destroyed the plaintiff's business. *See id* at 481. In fact, other courts have subscribed to this interpretation of *Fontana,* refusing to read *Fontana* to create a co-conspirator exception to *Illinois Brick*'s rule prohibiting indirect purchaser recovery. *See Link v. Mercedes-Benz of North America, Inc.,* 788 F.2d 918, 931 n. 11 (3d Cir.1986).

The Individual Plaintiffs, on the other hand, place a much different spin on the Seventh Circuit's citation to *Fontana.* The direct citation to *Fontana,* Plaintiffs explain, indicates this Circuit's continuing adherence to the rule allowing indirect purchaser claims where the intermediaries are merely identified as co-conspirators but not joined as defendants. This interpretation is bolstered by the Seventh Circuit's subsequent citation to *Arizona v. Shamrock Foods Co.,* 729 F.2d 1208 (9 [th] Cir.1984), which similarly held that *Illinois Brick* was inapplicable in a case where the plaintiffs alleged that the intermediaries

Not Reported in F.Supp.                                                                                                           Page 8
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

were co-conspirators but did not name them as defendants. Id. at 1212-13. Thus, the Individual Plaintiffs read the Seventh Circuit's string of citations as affirming the co-conspirator exception created by *Fontana* and *Shamrock Foods.*

The Individual Plaintiffs interpret the Seventh Circuit's subsequent direction to "see also" *In re Beef* as merely identifying an inter-circuit conflict and to note that, with respect to the Class case, this more rigorous requirement was nevertheless satisfied. At worst, the Plaintiffs contend, it was not clear what Judge Posner meant to imply with his citation to *In re Beef;* in such a situation involving ambiguous dictum, a lower court should not interpret that dictum as overruling prior Circuit precedent. *See, e.g., United States v. Crawley,* 837 F.2d 291, 292-93 (7 th Cir.1988) (providing several reasons why dictum in prior cases should be given little or no weight). If Judge Posner wanted to dispel any notion that *Fontana* recognized a co-conspirator exception to *Illinois Brick,* the Plaintiffs argue, he certainly would not have done it by attaching a direction to "see also" *In re Beef* at the end of a string cite. Thus, the Individual Plaintiffs contend that the Seventh Circuit's opinion changes nothing, and that this Court should stand by our prior pronouncements recognizing the inapplicability of *Illinois Brick* as long as the Wholesalers are identified as co-conspirators.

**\*12** Before solving this riddle, the Court must first note that this analysis is relevant to two separate subsets of damage claims against the Manufacturer Defendants in this case. First, the Individual Plaintiffs seek damages for pre-October 2, 1993 purchases made through the Wholesaler Defendants. As previously explained, the recent joinder of the Wholesaler Defendants does not relate back to the original complaints, and this leaves the pre-1993 claims with the Wholesalers only implicated as co-conspirators and not named defendants. Second, the Individual Plaintiffs have also asserted indirect purchaser claims for purchases made through non-Defendant Wholesalers. These Wholesalers were originally identified as co-conspirators, but were not joined as defendants by the amended complaints. Thus, the entirety of these non-Defendant Wholesaler indirect purchaser claims also rest on the Court's resolution of the co-conspirator exception issue. Since the Court finds the considerations attendant to each of these subsets of indirect purchaser claims to be somewhat different, we will analyze them separately.

A. Pre-1993 purchases from Defendant Wholesalers

The first group of claims which are affected by this co-conspirator exception question are the Individual Plaintiffs' purchases made through the Wholesaler Defendants before October 2, 1993. These claims are unique in that the intermediary Wholesalers, though not officially defendants for the relevant time period, have since been joined to this action. It is this unique aspect of these claims which, the Court believes, conclusively dictates that *Illinois Brick* should not bar their recovery.

In refusing to recognize a co-conspirator exception to *Illinois Brick,* the *In re Beef* court based its decision on a consideration of the policies underlying the *Illinois Brick* bar on indirect purchaser claims. *See In re Beef,* 600 F.2d at 1163. Absent joinder of the intermediaries, the court feared, there could be "inconsistent adjudications on the issue of the existence of a vertical conspiracy [which would] leave[ ] the defendants subject to the risk of multiple liability that the *Illinois Brick* Court found unacceptable." *Id.* Since non-defendant intermediaries would not be bound by any judgment as to the conspiracy, the *In re Beef* court rejected any exception to *Illinois Brick* where "the alleged co-conspirator middlemen are not named as parties defendant." *Id.*

In this case, of course, the Wholesaler Defendants have now been joined as defendants, albeit for a later time period than the claims that are at issue. As a result, the Wholesaler Defendants will be bound by and unable to relitigate the facts found by the jury in the present case. If the Wholesaler Defendants are found to have been members of a vertical conspiracy with the Manufacturers, they will be collaterally estopped from later pressing their own antitrust claims against the Manufacturers in a subsequent proceeding. Conversely, if the Wholesaler Defendants are exonerated at trial, they will not have to face any other Sherman Act claims deriving from the same conduct. Thus, because the Wholesaler Defendants are now parties to this litigation, the considerations underlying the decision in *In re Beef* are no longer germane to this subset of indirect purchaser claims.

**\*13** Therefore, even if this Circuit were to adopt the *In re Beef* rule, the Court believes that this rule would not bar recovery for those pre-1993 claims which involved purchases from the Wholesaler Defendants. The sum and substance of the *In re Beef* rule is to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 9
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

require that co-conspirator middlemen be parties to the proceeding that will adjudge the existence of any conspiracy. For the pre-1993 claims, this requirement is satisfied. The Wholesaler Defendants will have a full and fair opportunity to litigate their involvement in the alleged price-fixing conspiracy, and will be bound by any judgment reached in this case. The fact that the Manufacturer Defendants may be forced to pay damages for a longer period time than the Wholesaler Defendants is, in this Court's opinion, irrelevant to the application of the *In re Beef* rule.

In summary, the Court believes that the joinder of the Wholesaler Defendants conclusively eliminates any of the risks or concerns which underlie the rule of *In re Beef,* and therefore we find this rule inapplicable for those claims which implicate intermediaries which are parties to this case. Thus, the Court holds that *Illinois Brick* does not bar those claims against the Manufacturer Defendants which derive from purchases made from Defendant Wholesalers prior to October 2, 1993 (but within the original limitations period).

B. All purchases from non-Defendant Wholesalers

The second subset of claims-those involving purchases from non-Defendant Wholesalers-presents a much tougher case. These Wholesalers have never been parties, nor has their joinder been sought, at any time during this case. Thus, the rule of *In re Beef* would squarely dictate that these claims are barred by *Illinois Brick.* It is necessary to determine, therefore, whether the Seventh Circuit now subscribes to the holding of *In re Beef,* or whether it continues to recognize a co-conspirator exception as seemingly set forth in *Fontana.*

Though the precedent lacks consistent clarity, this Court continues to read the relevant Seventh Circuit precedent to recognize a co-conspirator exception to the general rule prohibiting indirect purchaser claims. This exception allows an antitrust plaintiff to avoid the strictures of *Illinois Brick* by identifying an intermediary as a co-conspirator, though it does not further require that the intermediary also be formally named as a defendant. As applied to this case, this exception would permit the Individual Plaintiffs to recover damages for purchases made through any of the Wholesalers (who were all identified as co-conspirators), whether or not these Wholesalers were named as defendants. This was our holding prior to the Seventh Circuit's recent opinion in this case, and this is still our holding today.

Though Judge Posner's oblique references to this issue are not definitive either way, this Court reads the language of his opinion to recognize a co-conspirator exception to *Illinois Brick.* Upon dissecting the relevant passage of the Seventh Circuit's opinion, several clues suggest this interpretation. First of all, Judge Posner explained that if the Wholesalers were brought back in to the Class case, and judgment was rendered finding the Wholesalers and Manufacturers to have participated in the alleged conspiracy, "any indirect-purchaser defense would go by the board, since the pharmacies would then be direct purchasers from the *conspirators." In re Brand Name,* 123 F.3d at 604 (emphasis added). Though this choice of words may have been inadvertent, the court's decision to use the word "conspirators" rather than "defendants" could be construed as tacitly endorsing a co-conspirator exception to *Illinois Brick.* Since the Wholesalers have always been identified as co-conspirators by the Individual Plaintiffs, these Plaintiffs were "direct purchasers from the conspirators" if their claims are proven out at trial.

**\*14** Even more indicative of this interpretation, however, are those cases that the court chose to cite in support of this statement. As direct support for the proposition, Judge Posner cited to *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478 (7 [th] Cir.1980), and to *Arizona v. Shamrock Foods Co.,* 729 F.2d 1208 (9 [th] Cir.1984). Among the several appellate decisions involving *Illinois Brick* and a possible co-conspirator exception, these two cases are recognized (though there is admittedly some disagreement as to the validity of this recognition) as being the leading Circuit authority in support of a co-conspirator exception to *Illinois Brick. See Link v. Mercedes-Benz of North America, Inc.,* 788 F.2d 918, 931 fn. 11 (3d Cir.1986) (recognizing that *Fontana* and *Shamrock Foods* have been cited in support of a co-conspirator exception, though finding that each could be distinguished on separate grounds). The citation to *Fontana,* the only prior precedent on the issue from this Circuit, is to be expected. However, the court's decision to also cite *Shamrock Foods,* as opposed to other decisions that have squarely rejected any co-conspirator exception to *Illinois Brick* and have required that co-conspirator intermediaries be named as defendants, *see Link,* 788 F.2d 918; *Austin v. Blue Cross & Blue Shield of Alabama,* 903 F.2d 1385, 1392 (11 [th] Cir.1990); *In re Midwest Milk Monopolization Litigation,* 730 F.2d 528, 532 (8 [th] Cir.1984), is a telling indicator of the Seventh Circuit's position on this issue. The decision to cite

Not Reported in F.Supp.                                                                                                              Page 10
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

the two cases on this far end of continuum, rather than the many others which clearly stand against this proposition, persuades this Court that our prior recognition of a co-conspirator exception is still viable.

The Seventh Circuit's final citation to *In re Beef,* a case which is clearly in the camp with *Link* and the others in rejecting such an exception, seems to be best explained as a recognition of conflicting authority. The court could have cited *In re Beef* as direct support for the court's statement, but instead chose to isolate this citation with a "see also" introductory signal. The isolation of *In re Beef* from *Fontana* and *Shamrock Foods* would seem to imply that the Seventh Circuit reads these cases to stand for something different than *In re Beef.* Taking this inference a step further, this grouping of the citations insinuates that the court agrees with the Individual Plaintiffs' view that *Fontana* and *Shamrock Foods* allow a plaintiff to proceed with indirect purchaser claims where the intermediary in the distribution chain is identified as a co-conspirator. In subsequently citing *In re Beef,* the Seventh Circuit noted that, with regard to the Class case, the more stringent requirement of naming the intermediaries as defendants was also satisfied.

Admittedly, the Seventh Circuit's opinion does not provide much to go on with respect to resolving this issue which is unique to the Individual cases. But, based on the direction that has been given to us, this Court believes that the Seventh Circuit has endorsed, and continues to recognize, a co-conspirator exception to *Illinois Brick.* The effect of this ruling is to allow the indirect purchaser claims against the Manufacturer Defendants to go forward, without regard to whether a specific purchase was made from a Wholesaler who is a defendant or not. Nothing the Court of Appeals has said would indicate that this position is in error, and thus summary judgment for these claims is denied.

### IV Summary

**\*15** The Wholesaler Defendants' motion for partial summary judgment is granted-in-part, while the Manufacturer Defendants' motion is denied. The Individual Plaintiffs' damage claims will be limited as follows. The Court finds that the recent amendment joining the Wholesaler Defendants does not relate back to the date of the original complaints, and the Individual Plaintiffs cannot take advantage of any tolling rules to preserve more of their claims in this case. The result of these conclusions is that the claims against the Wholesaler Defendants will cover a period back to October 2, 1993. The Manufacturer Defendants, as a result of our recognition of a co-conspirator exception to *Illinois Brick,* still face damage claims dating back to four years preceding the filing of the original complaints.

### CONCLUSION

For the foregoing reasons, the Wholesaler Defendants' motion is granted-in-part, while the Manufacturer Defendants' motion is denied.

N.D.Ill.,1998.
In re Brand Name Prescription Drugs Antitrust Litigation
Not Reported in F.Supp., 1998 WL 474146 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 97654 (S.D.N.Y.),   Fed. Sec. L. Rep. P 92,671
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

United States District Court,S.D. New York.
In re WORLDCOM, INC. SECURITIES
LITIGATION
SLS INVESTORS, L.P., et al., Plaintiff,
v.
Bernard J. EBBERS, et al., Defendants.
**No. 02 Civ. 3288(DLC), 03 Civ. 7826.**

Jan. 20, 2004.

**Background:** Investors filed securities fraud action
against company and its officers.

**Holding:** On defendants' motion to dismiss, the
District Court, Cote, J., held that *American Pipe*
doctrine did not toll statute of limitations.

Motion granted.

West Headnotes

**Limitation of Actions 241 🗝️126.5**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(H) Commencement of Proceeding;
Relation Back
            241k126.5 k. Class Actions, Matters
Peculiar To. Most Cited Cases
*American Pipe* doctrine did not toll Securities Act's
statute of limitations for plaintiffs who filed original
complaint before class was certified, even if
complaint contained state law claim, and amended
complaint was filed on same day as decision
certifying class.

William C. Rand, Law Office of William Coudert
Rand, New York, NY, for Plaintiffs.
David Wertheimer, Lyndon Tretter, Hogan &
Hartson, New York, NY, for Defendant Bernard J.
Ebbers.
R. David Kaufman, M. Patrick McDowell, Brunini
Grantham Grower & Hewes PLLC, Jackson, MS, for
Defendant Bernard J. Ebbers, of counsel.
Paul Curnin, David Elbaum, Simpson Thacher &
Bartlett LLP, New York, NY, for Director

Defendants.
Eliot Lauer, Michael Moscato, Michael Hanin,
Curtis, Mallet-Prevost, Colt & Mosle LLP, New
York, NY, for Defendant Arthur Anderson LLP.
Jay B. Kasner, Susan L. Saltzstein, Steven J.
Kolleeny, Skadden Arps Slate Meagher & Flom LLP,
New York, NY, for Underwriter Defendants.
Martin London, Richard A. Rosen, Brad S. Karp,
Eric S. Goldstein, Walter Rieman, Marc Falcone,
Joyce S. Huang, Paul Weiss Rifkind Wharton &
Garrison LLP, New York, NY, Robert McCaw, Peter
K. Vigeland, Wilmer Cutler & Pickering, New York,
NY, for Defendants Citigroup Global, Markets, Inc.
f/k/a Salomon Smith, Barney, Inc., Citigroup Inc.,
and Jack Grubman.

*MEMORANDUM OPINION AND ORDER*

COTE, J.
**\*1** This Document Relates to:

On October 3, 2003, SLS Investors, L.P., SLS
Offshore Fund, Ltd., and GS SLS Portfolio,
LLC (collectively "SLS") filed an action arising out of the
collapse of WorldCom, Inc. alleging claims pursuant
to the Securities Act of 1933 ("Securities Act") as
well as other federal and state law claims. SLS
amended its action on October 24, 2003. On that
same day, a class was certified in the WorldCom
*Securities Litigation. See In re WorldCom, Inc.
Securities Litig.,* No. 02 Civ. 3288(DLC), 2003 WL
22420467 (S.D.N.Y. Oct.24, 2003) ("Certification
Decision").

The defendants have moved to dismiss all of the
Securities Act claims based on the rulings contained
in *In re WorldCom, Inc. Sec. Litig.,* No. 02 Civ.
3288(DLC), 2003 WL 22738546 (S.D.N.Y. Nov.21,
2003) ("November 21 Opinion"). The November 21
Opinion held, *inter alia,* that the one year/three
statute of limitations applied to the Securities Act
claims in the individual action addressed in that
opinion, and that *American Pipe* tolling was not
available to individual actions filed before there was
a decision on class certification. SLS has been
required to show why the November 21 Opinion does
not require the motions to dismiss its Securities Act
claims to be granted.

In addition to preserving its right to contend that the
November 21 Opinion was wrongly decided, SLS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 2
Not Reported in F.Supp.2d, 2004 WL 97654 (S.D.N.Y.),  Fed. Sec. L. Rep. P 92,671
**(Cite as: Not Reported in F.Supp.2d)**

first argues that *American Pipe* tolling should apply to its action since its pleading included state law claims that are not being pursued in the class action. SLS cites no law to support this exception to the principles described in the November 21 Opinion. The relation-back doctrine may permit otherwise time-barred claims to be added to a complaint, but the *American Pipe* tolling doctrine does not.

The *American Pipe* tolling doctrine is designed to discourage the filing a lawsuits pending a decision on the motion for class certification. As a consequence, any lawsuit or amendment of a pleading filed before that decision must be timely, based on the governing statute of limitations or other applicable principles of law. *American Pipe* tolling is not available simply because a federal claim is joined with a state law claim.

SLS next contends that its entire amended pleading is timely since it was filed on the same day as the decision certifying a class in the WorldCom *Securities Litigation.* It contends that, "at a minimum," *American Pipe* tolling should permit it to sue the defendants who were named for the first time in the amended pleading. [FN1] SLS filed its action before the decision on certification. As a result, *American Pipe* tolling is unavailable to the entire action, including to its amended pleading.

> **FN1.** SLS does not contend that it was aware of or relied upon the Certification Decision when it filed its amended pleading. As it turns out, the amendment was filed approximately one and a half hours before the Certification Decision was filed.

*Conclusion*

The motions to dismiss the Securities Act claims in this action are granted.

SO ORDERED:

S.D.N.Y.,2004.
In re WorldCom, Inc. Securities Litigation
Not Reported in F.Supp.2d, 2004 WL 97654 (S.D.N.Y.),  Fed. Sec. L. Rep. P 92,671

Briefs and Other Related Documents (Back to top)

• 2004 WL 2973886 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion Concerning Class Representation and

Creation of Subclasses (Feb. 24, 2004)

• 2004 WL 2973917 (Trial Pleading) Reply Brief in Support of Certain Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of Their Amended Complaints to Their Original Timely Filed Complaints (Feb. 24, 2004)

• 2004 WL 368780 (Trial Motion, Memorandum and Affidavit) The Worldcom Directors' Opposition to Plaintiffs' Motion to Reconsider the Court's January 20, 2004 Opinion Regarding Relation Back of their Amended Complaints to their Original Timely-Filed Complaints (Feb. 17, 2004)

• 2003 WL 23474908 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)

• 2003 WL 23671666 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Dec. 15, 2003)

• 2003 WL 23951686 (Trial Pleading) Answer to Corrected First Amended Class Action Complaint and Affirmative Defenses of the Worldcom Directors (Dec. 15, 2003)

• 2003 WL 23474886 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)

• 2003 WL 23671658 (Trial Pleading) Defendant Bernard J. Ebbers' Answer to the Corrected First Amended Class Action Complaint (Dec. 12, 2003)

• 2003 WL 23671651 (Trial Pleading) Corrected First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fu nd, on Behalf of Purchasers and Acquirers of All Worldcom, Inc. Publicly Traded Securities (Dec. 01, 2003)

• 2003 WL 23474903 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23671607 (Trial Pleading) Amended Answer of Defendant Bernard J. Ebbers (Oct. 15, 2003)

• 2003 WL 23474870 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474877 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474879 (Trial Pleading) Answer of

Not Reported in F.Supp.2d                                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 97654 (S.D.N.Y.),  Fed. Sec. L. Rep. P 92,671
**(Cite as: Not Reported in F.Supp.2d)**

Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474880 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474881 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474882 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)

• 2003 WL 23474883 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474884 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474885 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474909 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474910 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23474911 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671611 (Trial Pleading) Answer of Defendant Credit Suisse First Boston Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671613 (Trial Pleading) Answer of Defendant Blaylock & Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671616 (Trial Pleading) Answer of Defendant BNP Paribas Securities Corp. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671618 (Trial Pleading) Answer to First Amended Class Action Complaint and Affirmative Defenses of the WorldCom Directors (Oct. 14, 2003)

• 2003 WL 23671620 (Trial Pleading) Answer of Defendant Tokyo-Mitsubishi International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671623 (Trial Pleading) Answer of Defendant Lehman Brothers Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671625 (Trial Pleading) Answer of Defendant Utendahl Capital Partners, L.P. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671628 (Trial Pleading) Answer of Defendant UBS Warburg LLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671632 (Trial Pleading) Answer of Defendant ABN/AMRO Inc. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671637 (Trial Pleading) Answer of Defendant Westdeutsche Landesbank Girozentrale to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671643 (Trial Pleading) Answer of Defendant J.P. Morgan Chase & Co. to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

• 2003 WL 23671646 (Trial Pleading) Answer of Defendant Mizuho International PLC to First Amended Class Action Complaint of Lead Plaintiff Alan G. Hevesi (Oct. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.