UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> XEROX CORPORATION, KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER and PHILIP FISHBACH, <br><br> Defendants. | 3:00-CV-1621 (AWT) <br> ALL CASES <br><br><br><br><br><br><br><br> June 15, 2007 |

**PLAINTIFFS' REVISED POSITION STATEMENT ON PARAGRAPH V.E 19 OF THE RULE 26(f) REPORT OF THE PARTIES' PLANNING MEETING**

Lead Plaintiffs, Dr. Paul Dantzig, Thomas Zambito and the Louisiana State Employees' Retirement System ("LASERS") (collectively, "Plaintiffs"), respectfully request a resolution of the three areas of disagreement remaining from the parties' Rule 26(f) Report of the Parties' Planning Meeting ("Rule 26(f) Report").[1] *See* Docket No. (hereinafter "Dkt.") 269. Plaintiffs are seeking an Order allowing them: (1) to take seventy (70) days of deposition testimony; (2) to take fifteen (15) multi-day depositions; and (3) to measure depositions in half-day increments.

I.     **PROCEDURAL BACKGROUND**

This case has been pending for six and one half years, during which time Xerox restated its historical financial results twice and Plaintiffs filed multiple amended complaints.[2] On

---

[1]     The Defendants in this action are Xerox Corporation ("Xerox"), Paul Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler, and Philip Fishbach (collectively, "Individual Defendants" and, collectively with Xerox, "Xerox Defendants"), and KPMG LLP ("KPMG" and, collectively with Xerox Defendants, "Defendants").

[2]     The operative complaint is Plaintiffs' Third Consolidated Amended Complaint, which was filed on September 11, 2002 ("TCAC"). *See* Dkt. 143.

November 21, 2005, after the Court denied each Defendant's motion to dismiss, *see* Dkt. 218, the parties filed a Rule 26(f) Report. *See* Dkt. 269. As set forth in the Rule 26(f) Report, the parties' areas of disagreement were: (i) the number of depositions that each side is entitled to take; (ii) how to define a deposition; (iii) the date by which deposition programs may commence; and (iv) the briefing schedule for Class Certification.[3] On December 2, 2005, the parties filed Position Statements setting forth their respective positions on the unresolved issues.[4] *See* Dkts. 285, 288 & 289.

On January 30, 2006, the Court held a telephonic status conference during which the parties informed the Court of their agreement to proceed with discovery on an informal basis and to table all disputes in the Rule 26(f) Report until that process had run its course. *See* Dkt. 322. On February 3, 2006, the Court issued an Electronic Order approving the Rule 26(f) Report, with the exception of Subparagraphs 8 (timing of depositions), 18 (class proceedings) and 19 (number and length of fact witness depositions) of Section V.E., and directing the parties to bring to the Court's attention any issues that they were unable to resolve. *See* Dkt. 319. Consistent with the parties' request, the Court also ruled that fact discovery must be completed by November 21, 2007. Plaintiffs intend to comply with that deadline.

---

[3] Although the parties also had a dispute regarding a particular provision in the proposed Confidentiality Stipulation and Protective Order, as set forth in the Joint Motion for Entry of a Confidentiality Order, *see* Dkt. 270, the Court resolved that dispute in Plaintiffs' favor. *See* Dkt. 310.

[4] With respect to the issues that remain unresolved, Plaintiffs' position here differs from their original Position Statement in one material respect: the number of deposition days requested. As discussed herein, Plaintiffs are currently seeking seventy (70) days of deposition testimony, whereas Plaintiffs sought only fifty (50) days of deposition before they had the benefit of reviewing the documents and deposition transcripts from Defendants' prior litigation with the United States Securities & Exchange Commission ("SEC"). With that exception, Plaintiffs incorporate by reference Plaintiffs' Position Statement. For the Court's convenience, however, Plaintiffs have briefly reiterated here their arguments on each outstanding dispute.

2

Pursuant to the parties' informal discovery agreement, over the next fifteen (15) months, Plaintiffs' counsel reviewed millions of pages of documents that had been produced during the SEC's investigation and litigation against Defendants.

Since March 2007, the parties have engaged in extensive meet-and-confer discussions and exchanged numerous letters in an attempt to resolve the remaining disputes from the Rule 26(f) Report. As a result of those negotiations, the parties resolved their disputes with respect to Subparagraphs 8 and 18 of the Rule 26(f) Report and have filed herewith a joint Supplemental Report and Stipulation Regarding the Rule 26(f) Report on the Parties' Planning Meeting to reflect those resolutions.

## II. ARGUMENT

### Plaintiffs' Position on the Number, Length and Definition of Depositions Is Eminently Justifiable in this Complex Securities Class Action

Plaintiffs have alleged a widespread and complex securities fraud that lasted for nearly four years and implicated five annual reporting periods. Informed by their review of Defendants' document production, Plaintiffs have become aware of numerous individuals who possess information that is highly relevant to their claims and/or Defendants' defenses. Plaintiffs thus believe that their revised proposal of allowing Plaintiffs seventy (70) "deposition days," measured in half-day increments and including the right to take fifteen (15) multi-day depositions, is the most appropriate means of preparing this multi-faceted case for trial. Indeed, as KPMG set forth in its original Position Statement, the SEC took ***146 days*** of deposition testimony – much of it multiple days per witness – during its investigation and litigation against KPMG and Xerox. Importantly, the SEC action did not address many of the issues present in

this case. Bearing that in mind, Defendants cannot credibly claim that Plaintiffs' request for less than half that many days of testimony is in any way inappropriate.[5]

A.  **Plaintiffs' Request For Seventy (70) Deposition Days Is Manifestly Reasonable**

Although Rule 30(a)(2) of the Federal Rules of Civil Procedure presumptively limits the number of depositions to ten, this Court unquestionably has the discretion to permit additional depositions. *See* Fed. R. Civ. P. 26(b)(2)(A) ("By order, the court may alter the limits in these rules on the number of depositions . . . under Rule 30."); *see also* Committee Notes, Fed. R. Civ. P. 26(b)(2), 1993 Amendments ("The limits can be modified by court order or agreement in an individual action . . . ."). A motion to exceed the presumptive deposition limit is ripe once discovery has commenced and must include a "particularized showing of why the discovery is necessary." *See General Elec. Co. v. Indemnity Ins. Co.*, No. 3:06-CV-232, 2006 WL 1525970, at *2 (D. Conn. May 25, 2006).[6]

When confronted with similarly complex cases, courts regularly permit both sides to conduct many more depositions than Rule 26(b)(2) initially contemplates. Most recently, the court in the *Fannie Mae* case allowed ***140 days of deposition*** testimony, with leave to seek additional depositions. *See In re Federal National Mortgage Ass'n Sec., Derivative and ERISA*

---

[5] Notably, the SEC conducted as many days of deposition as it did despite the fact that the government had no obligation to prove loss causation, which Plaintiffs must show in this case.

[6] On its facts, *General Electric* is distinguishable from this case. In *General Electric*, the Court found the motion for additional depositions to be premature because the moving party had not even commenced discovery. *Id.* at 2. Nor had it identified the prospective witnesses or specified the testimony sought from them. *Id.* In contrast, Plaintiffs here have been reviewing discovery materials for *more than 1 ½ years*, having already analyzed more than *3 million pages of documents* and *nearly 150 days of SEC deposition testimony*. As a result, Plaintiffs in this case have identified specific individuals necessary to depose and provided this Court with a detailed analysis of their knowledge and its relevance to Plaintiffs' claims. *See infra.* Moreover, the instant litigation involves complexities not present in *General Electric*. *Id.* at 1 (adopting discovery plan proposed by General Electric in an insurance dispute, noting General Electric's argument that insurer overstated complexity of case). As discussed herein, the numerous accounting machinations alleged to have occurred on a worldwide basis at Xerox over five annual reporting periods are unquestionably complex. Accordingly, unlike the Court in *General Electric*, this Court clearly has the information necessary to determine whether Plaintiffs' request is reasonable under the circumstances presented in the case at bar.

*Litig. ("In re Fannie Mae")*, MDL 1668 (D.D.C. Dec. 12, 2006), Order Establishing Expert Discovery and Deposition Protocol, at ¶5, attached as Exhibit 1. Similarly, in *In re Initial Public Offering Sec. Litig. ("In re IPO")*, 21 MC 92 (S.D.N.Y. Nov. 3, 2005), the parties each were permitted ***280 depositions***. *See Id.*, Second Amended Order Establishing Deposition Protocol, at ¶6, attached as Exhibit 2. Many other courts have reached similar conclusions in complex class action cases. *See, e.g., In re Genesisintermedia, Inc. Sec. Litig.*, 03-3471 (D. Minn. Mar. 3, 2004), Pretrial Scheduling Order, at p.2 (permitting each side ***50 depositions***), attached as Exhibit 3; *In re Rhythms Sec. Litig.*, Civ: 02-K-35 (D. Colo. May 12, 2004), Stipulated Scheduling and Discovery Order, at p.13 (permitting each side ***40 depositions***), attached as Exhibit 4; *In re Priceline.com, Inc. Sec., Litig.*, 3:00CV01884 (D. Conn. Nov. 2, 2004), Order, at ¶5 (permitting each side ***35 depositions***, including experts, in case alleging nine-month class period and focusing on single accounting issue), attached as Exhibit 5.[7]

Tacitly agreeing with the reasoning of those cases, Defendants concede that the Rule 26(b)(2) limitation is unworkable in this case. *See* Letter from Defendants' counsel to Plaintiffs' counsel dated 6/1/07, at 3, attached as Exhibit 7 (proposing forty (40) depositions per side). Yet considering the extensive and complex allegations here, Defendants' have woefully underestimated the number of depositions that are necessary for full discovery.[8] As alleged in

---

[7] *See also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063, 1094 (D. Ariz. 1990) ("***More than 300 depositions*** of fact and expert witnesses were taken.") (emphasis added), *vacated and remanded on other grounds*, 19 F.3d 1291 (9th Cir. 1994); *Spicer v. Chicago Bd. Options Exch.*, 844 F. Supp. 1226, 1237 (N.D. Ill. 1993) (noting that ***76 depositions*** taken); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) (noting that more than ***75 depositions*** taken); *New England Health Care Employees Pension Fund v. Fruit of the Loom*, No. 1:98-CV-99-M (W.D. Ky. Dec. 10, 2001), Amended Scheduling Order, at ¶6 (allowing each side ***75 depositions***), attached as Exhibit 6.

[8] Highlighting the unreasonableness of Defendants' proposal, Defendants consented to twenty-one (21) depositions in an earlier securities fraud class action pending against Xerox (and not KPMG), *In re Xerox Securities Litig.*, 3:99-2374 (D. Conn. Nov. 19, 2001) ("*Xerox I*"), despite the fact that *Xerox I* concerns fewer defendants and pertains to only a fraction of the issues and time period implicated in this case. *See* Rule 26(f) Report of Parties Planning Meeting, at p.4, attached as Exhibit 8.

the 191-page TCAC, during a four-year period encompassing five annual reporting periods (1997-2002), Defendants used many unique accounting machinations in violation of generally accepted accounting principles ("GAAP") to overstate Xerox's worldwide revenue by at least $6.4 billion and its pre-tax profits by at least $1.411 billion. Further evidencing that complexity, Defendants' actions prompted: (i) an investigation by the law firm of Akin, Gump, Strauss, Hauer & Feld into Xerox Mexico's accounting irregularities; (ii) an investigation by PricewaterhouseCoopers ("PwC") and the law firm of Skadden, Arps, Slate, Meager & Flom LLP ("Skadden"); (iii) an investigation by a different team of accountants from PwC and the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss"); and (iv) yet another PwC and Skadden study performed at Xerox's request and aimed at demonstrating that Xerox's accounting did not materially misrepresent its publicly reported financial results. Ultimately, Defendants' conduct resulted in Xerox having to file two separate restatements of the Company's financial results (one in May 2001; the other in June 2002).

      Plaintiffs' task of marshalling evidence is further complicated by the fact that knowledge of Defendants' fraud is widely disbursed among many individuals. Beyond the six individual defendants, numerous senior Xerox executives – both at the Company's Stamford, Connecticut corporate headquarters and at operating units throughout the world – possess significant knowledge concerning Plaintiffs' allegations. Many other individuals possess important, but less extensive, knowledge of Defendants' fraudulent conduct. The web of knowledgeable outside auditors is equally complex: KPMG audited Xerox's financial statements first at the operating unit level through its foreign affiliates (*e.g.*, KPMG UK audited Xerox Europe, KPMG Brazil audited Xerox Brazil and KPMG Mexico audited Xerox Mexico), which, in turn, were audited by KPMG's corporate headquarters in Stamford. Moreover, KPMG frequently shuffled

personnel assigned to the Xerox audit during the Class Period. Indeed, KPMG Stamford's Lead Xerox Engagement Partner for the 1997 audit, the 1998-1999 audits, and the 2000 audit were all different individuals. Finally, prior to the Second Restatement, Xerox dismissed KPMG as its auditor and replaced it with PwC, thereby making important the knowledge of the PwC personnel involved in both Xerox's 2001 audit and the Second Restatement.

It is thus clear that Plaintiffs need testimony from numerous fact witnesses. At a bare minimum, Plaintiffs must be allowed to depose those individuals who were directly involved in the original accounting for, and subsequent investigation and restatement of, the various non-GAAP manipulations detailed in the TCAC. That task alone will require Plaintiffs to depose executives and officials at Xerox's corporate offices and operating units over four continents, as well as the partners and auditors at KPMG corporate and affiliate offices who audited Xerox's Class Period financial statements. Plaintiffs also need to depose those individuals who were directly involved in the investigation and subsequent restatement of Xerox's fraudulent financial statements. Finally, as demonstrated above, deposition testimony is necessary from various third parties implicated by Defendants' fraudulent conduct.

Plaintiffs nevertheless realize that their request for additional depositions must be accompanied with a particularized showing as to why the discovery is necessary. Plaintiffs have thus undertaken an extensive evaluation of the documentary materials Defendants provided in informal discovery proceedings in an effort to identify those individuals and entities that are truly necessary to prove their case. As part of that process, Plaintiffs analyzed deposition transcripts of sixty-six (66) SEC witnesses totaling nearly 150 days of deposition testimony. In addition, Plaintiffs reviewed more than three million pages of documents. Armed with knowledge from that analysis, Plaintiffs culled out a list of potential deponents, strictly limiting inclusion to the

eighty-five (85) individuals who clearly possess significant knowledge of the factual circumstances surrounding Plaintiffs' allegations. *See* Table of Potential Deponents, attached as Exhibit 9.[9] Indeed, the attached table erases all doubt as to the importance of each individual's testimony by further providing a detailed explanation of his/her exact title and the areas of highly relevant information that each possesses.[10] *Id.*

Defendants no doubt will argue that additional depositions are unnecessary because the SEC has already deposed many of the potential deponents that Plaintiffs have identified, and thus Plaintiffs either do not need "discovery depositions" of those witnesses, or at most need only to ask a few pointed questions. This Court should summarily reject that argument on several grounds. First, the TCAC addresses matters beyond those with which the SEC was concerned. For example, nothing in the SEC litigation focused on the irregularities at Xerox's Mexican subsidiary or the rampant contract churning at Xerox's Latin American operating units – two issues that play a prominent role in Plaintiffs' case. Second, the SEC transcripts present

---

[9] It should be noted that Plaintiffs identified the eighty-five (85) potential deponents on the attached table solely to exemplify the widespread nature of the key factual knowledge in this case. It is not intended, nor should it be considered, to be a list of requested depositions. Although we included only those individuals with substantial knowledge of Plaintiffs' claims, we believe that many more individuals excluded from the list (including more than 100 people interviewed by the various Akin Gump and PwC investigators) also possess knowledge highly relevant to Plaintiffs' claims. Accordingly, Plaintiffs reserve the right to seek deposition testimony from any individual with knowledge relevant to their claims, irrespective of whether that individual is listed on the attached table, so long as such designations either fit into the requested seventy (70) deposition days or upon good cause shown for the need for such depositions in separate moving papers. As Plaintiffs' deposition program proceeds, other individuals with critical knowledge of the Plaintiffs' allegations undoubtedly may need to be deposed.

[10] In an effort to narrow this dispute, Plaintiffs provided Defendants with a copy of the attached table. *See* Letter from Plaintiffs' counsel to Defendants' counsel dated 3/8/07, at p.2, attached as Exhibit 10. Yet rather than addressing Plaintiffs' sincere effort to justify in writing the basis for increasing their deposition day request, Defendants ignored the effort altogether, telling Plaintiffs, in effect, to take it up with the Court. *See* Letter from Defendants' counsel to Plaintiffs' counsel dated 3/12/07, at p.2, attached as Exhibit 11. Remarkably, Plaintiffs challenged Defendants on two subsequent occasions to provide feedback as to why any of the witnesses on the attached table were not reasonable deposition targets. *See* Letter from Plaintiffs' counsel to Defendants' counsel dated 5/10/07, at p.2, attached as Exhibit 12; Letter from Plaintiffs' counsel to Defendants' counsel dated 5/25/07, at p.1, attached as Exhibit 13. Defendants all but ignored Plaintiffs' repeated requests, waiting nearly three months to say only that they were continuing to "work" on a response. *See* Exhibit 7, at p.3. As of the date of this filing, Plaintiffs still have not received any substantive response whatsoever from Defendants.

potential admissibility issues.[11] For example, the SEC had no obligation to follow the Federal Rules of Evidence during its investigatory depositions, creating a risk that much of the testimony may be inadmissible because the questions are objectionable. Therefore, both substantively and procedurally, the SEC depositions must be seen for what they are: a potentially useful tool to guide deposition questioning that allows Plaintiffs to request as *few* as seventy (70) deposition days, but one that is inadequate to substitute for eliciting complete and admissible testimony.[12]

For all of the foregoing reasons, this Court should grant Plaintiffs' conservative proposal for seventy (70) days of deposition testimony.

**B.     Allowing Multi-Day Depositions is a Common Practice in Complex Securities Cases**

Identical to the judicial discretion allowed with respect to the number of depositions, Fed. R. Civ. P. 26(b)(2)(A) permits the Court to allow multi-day depositions. *See* Fed. R. Civ. P. 26(b)(2) ("By order, the court may alter the limits in these rules on . . . the length of depositions under Rule 30."); *see also* Committee Notes, Fed. R. Civ. P. 26(b)(2), 1993 Amendments ("The limits can be modified by court order or agreement in an individual action . . . ."). Indeed, the Court is obligated to grant such a request "if [it] is 'consistent with Rule 26(b)(2)' and the extension is 'needed for a fair examination of the deponent.'" *See General Elec.*, 2006 WL 1525970, at *2 (quoting Fed. R. Civ. P. 30(d)(2) ("The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent . . . .")).

---

[11]     Admissibility issues take on heightened importance here where many anticipated witnesses are beyond trial subpoena power, forcing Plaintiffs to treat their depositions as trial testimony.

[12]     Plaintiffs are certainly willing to concede that the SEC deposition transcripts will help focus the parties' attention on some of the areas of knowledge a particular witness may possess. Rather than eliminating the need for a deposition altogether, however, the transcripts may simply reduce the time necessary to determine the full scope of the individual's knowledge. Conversely, however, Plaintiffs are also mindful of the likelihood that some previously deposed witnesses may profess to a lack of recollection on certain issues. In those instances, Plaintiffs anticipate the need to refer to prior deposition testimony frequently to refresh the respective deponent's recollection. That process is likely to be very time consuming. Therefore, on balance, it is extremely difficult to predict how useful the prior deposition testimony ultimately will prove to be.

In complex cases like this one, multi-day depositions are virtually always needed to elicit complete testimony from key witnesses. In fact, exceeding the seven-hour limit is so commonplace in such cases that courts typically address the issue at the scheduling stage, permitting the parties from the outset to take an appropriate number of multi-day depositions. *See, e.g., In re Fannie Mae*, MDL No. 1668 (D.D.C. Dec. 12, 2006), Exhibit 1, at ¶¶5-6 (allowing an unlimited number of multi-day depositions); *In re IPO,* 21 MC 92 (S.D.N.Y. Nov. 3, 2005), Exhibit 2, at ¶6 (allowing parties to conduct 28 depositions of 25 hours of direct (not cross) testimony, 42 depositions of 18.75 hours of direct testimony; and 140 depositions of 12.50 hours of direct testimony); *United States v. Philip Morris, Inc.*, 2001 U.S. Dist. LEXIS 12603, at *36-37 (D.D.C. Mar. 27, 2001) (allowing up to 50 depositions to exceed one day/seven-hour limit).

As the attached Table demonstrates, there are multiple witnesses in this case whose relevant knowledge simply cannot be probed in one seven-hour day, no matter how cooperative the witness. Indeed, in the case of the individual defendants, KPMG's engagement partners, PwC's chief auditors, and several senior Xerox executives, their knowledge spans most or all of the class period and pertains to several aspects – if not all – of the alleged fraud. *See Table of Potential Deponents,* Exhibit 9 (detailing areas of knowledge possessed by potential deponents). A seven-hour limitation would unjustifiably impede Plaintiffs' ability to elicit complete testimony from those witnesses, as Plaintiffs would be forced to proceed hurriedly through relevant topics without the assurance that the Court would permit a second day of testimony. Additionally, some deponents will assuredly be hostile to Plaintiffs' position. Those individuals clearly will be motivated to employ endless delay tactics to limit the amount of meaningful testimony that can be had in seven hours – knowing they will not have to return to face

additional questioning. As a result, limiting *all* depositions to seven hours will severely prejudice Plaintiffs and will run counter to the letter and spirit of the Federal Rules, which are expressly designed to guarantee a fair examination of deponents. *See* Fed. R. Civ. P. 30(d)(2).

Defendants may argue that Rule 30 contains an "exhaustion" requirement forcing a party to complete the allotted seven hours of deposition prior to seeking additional time. Rule 30, however, "does not require that available time limits be exhausted before a party may move for relief." *See Schmidt v. Levi Strauss & Co.*, No. C04-01026, 2006 WL 2192054, at *2 (N. D. Cal. Aug. 1, 2006).[13] In this complex case it is easy to see why there is no such requirement: Due to the sheer number of deponents with extensive factual knowledge of Plaintiffs' allegations, the parties would be appearing before the Court on a weekly (and sometimes daily) basis to argue for additional deposition time.[14] Without a doubt, the better practice is for the Court to make one ruling, in advance, that protects the right of parties to obtain complete discovery without allowing them to elicit duplicative or unnecessary testimony. In that respect, Plaintiffs have provided this Court with all of the information necessary to make an immediate ruling allowing them to take the limited number of multi-day depositions that they are requesting.

C.  **Measuring Depositions in Half-Day Increments is an Efficient Method of Obtaining Evidence from Many Individuals with Discrete Areas of Knowledge**

To increase the efficiency of deposition programs in complex cases, courts have no difficulty dividing traditional seven-hour depositions into hourly increments as a means of obtaining the necessary testimony from a greater number of individuals in fewer deposition days. *See In re Worldcom, Inc. Sec. Litig.*, 2003 WL 23416532, at *1 (S.D.N.Y. Nov. 14, 2003)

---

[13] Although the *General Electric* case references an exhaustion requirement under some circumstances, as shown above, that case is entirely distinguishable on its facts.

[14] Indeed, given Defendants' position that *none* of the depositions needs to exceed seven hours, Plaintiffs have no reason to believe that Defendants would be likely to resolve any such disputes without Court intervention. *See* Exhibit 7, at 3. As a result, forcing the parties to address the issue on a case-by-case basis is virtually guaranteed to waste judicial resources.

(permitting 60 deposition days to be divided into half-day increments); *United States v. Philip Morris, Inc.*, 2001 U.S. Dist. LEXIS 12603, at *35 (D.D.C. 2001) (dividing depositions into hourly increments and allowing 1,000 hours of deposition to be conducted as necessary). This complex class action is precisely the type of case for which that creative discovery method was designed. In addition to the many individuals with comprehensive knowledge of Defendants' fraud, there are an equal or greater number of witnesses with discrete, but no less critical, knowledge highly relevant to Plaintiffs' allegations. *See* Table of Deponents, Exhibit 9. The very best way to obtain complete, non-duplicative testimony from those individuals without needlessly increasing the number of necessary deposition days is to allow Plaintiffs to have the flexibility of taking shorter, targeted depositions.

Defendants are likely to argue that, since half-day depositions conceivably will double the number of allowed depositions, Plaintiffs should agree to their counterproposal of combining the practice with a reduction in the number of deposition days that Plaintiffs are seeking. That position, however, is completely disingenuous. As Defendants know, rather than doubling the number of depositions, the practical effect of using half-day depositions is merely to allow Plaintiffs' to depose the few individuals with substantial knowledge of certain isolated aspects of Plaintiffs' allegations. Moreover, Defendants are fully cognizant that Plaintiffs intend to take several multi-day depositions, which clearly will cancel out any reduction in deposition days resulting from the limited number of half-day depositions that Plaintiffs will take. Accordingly, it is nothing but a red herring for Defendants to suggest that the practice of measuring depositions in half-day increments will somehow minimize the number of deposition days that Plaintiffs will need. Either way, Plaintiffs will need at least seventy (70) deposition days.

Measuring them in half-day increments is simply an efficient means to achieve complete discovery without markedly increasing the number of deposition days needed to get there.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court adopt their proposals for resolving the remaining disputes with respect to the parties' Rule 26(f) Report.

DATED:  June 15, 2007

PLAINTIFFS,
By their attorneys,

/s/ Bryan A. Wood
Glen DeValerio (CT 22582)
Leslie R. Stern (phv0743)
Bryan A. Wood (phv0742)
**Berman DeValerio Pease Tabacco Burt & Pucillo**
One Liberty Square
Boston, Massachusetts 02109
Tel: (617) 542-8300
Fax: (617) 542-1194
Email: bwood@bermanesq.com

Dennis J. Johnson (CT 22090)
Jacob B. Perkinson (CT 22091)
James F. Conway, III (phv0744)
**Johnson & Perkinson**
1690 Williston Road
P.O. Box 2305
South Burlington, Vermont 05403
Phone: (802) 862-0030

Melvyn I. Weiss (CT 04080)
Brad N. Friedman (CT 24910)
**Milberg Weiss & Bershad LLP**
One Pennsylvania Plaza, 49th Floor
New York, New York 10119-0165
(212) 594-5300

**Co-Lead Counsel**

Andrew M. Schatz (CT 00603)
**Schatz Nobel Izard, P.C.**
One Corporate Center
20 Church Street
Hartford, CT 06103
(860) 493-6292

J. Daniel Sagarin (CT 04289)
**Hurtwitz & Sagarin, LLC**
147 N. Broad Street
Milford, Connecticut 06460
(203) 877-8000

**Co-Liaison Counsel**