EXHIBIT 10

# JOHNSON & PERKINSON
## ATTORNEYS AT LAW
1690 WILLISTON ROAD
P.O. BOX 2305
SOUTH BURLINGTON, VERMONT 05403
www.jpclasslaw.com

DENNIS J. JOHNSON
ALSO ADMITTED TO PA AND DC*

JACOB B. PERKINSON
ALSO ADMITTED TO ME

*INACTIVE

JAMES F. CONWAY, III
ALSO ADMITTED TO MA

EBEN F. DUVAL

REBECCA K. FAY

TELEPHONE (802) 862-0030
TELECOPIER (802) 862-0060
E-MAIL email@jpclasslaw.com

March 8, 2007

## *VIA FACSIMILE & U.S. MAIL*

Sandra C. Goldstein, Esq.
Cravath, Swaine & Moore
Worldwide Plaza, 825 8th Ave.
New York, NY 10019

W. Sidney Davis, Jr., Esq.
Hogan & Hartson, LLP
875 Third Ave.
New York, NY 10022

Thomas D. Goldberg, Esq.
Day Pitney LLP
One Canterbury Green
Stamford, Connecticut 06901

John Valentine, Esq.
Wilmer Cutler Pickering Hale And Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Re:    *Carlson v. Xerox Corp., et. al.,* 3:00CV1621 (AWT)

Dear Counsel:

I am writing on behalf of Plaintiffs' Co-Lead Counsel in an effort to resolve the outstanding issues in the parties' Rule 26(f) Report. In particular, Plaintiffs would like Defendants to consent to the minimum number of deposition days to which Plaintiffs are entitled, as well as the schedule for class certification briefing.

Plaintiffs believe that we will need at least 70 deposition days of testimony, and would like Defendants' consent to this number, *without prejudice* to Plaintiffs' right to seek additional deposition days for cause shown. Plaintiffs further propose that each deposition day be defined as two, four-hour segments. While Plaintiffs anticipate that most depositions will be for one full day, Plaintiffs likely will need to depose some witnesses for more than one day, and some for only half a day. We do not expect any depositions to be more than three days. Our notices of deposition will provide Defendants with a non-binding, good-faith estimate on timing with respect to each witness, but the actual deduction from our total days must be based on the total time the witness actually is on the record (whether more or less than what is in the notice).

JOHNSON & PERKINSON
ATTORNEYS AT LAW

Ltr. to Goldstein, Davis, Goldberg & Valentine
March 8, 2007
Page 2 of 2

In an effort to demonstrate the reasonableness of our proposed number of deposition days, enclosed without prejudice in any respect is a non-exhaustive list of those individuals whom we have identified to date as appropriate, likely deponents, together with a general description of at least some of the relevant information we believe each individual possesses. Undoubtedly, there are additional likely witnesses whose identities and/or importance Plaintiffs will only learn as a result of their deposition program,[1] and, as stated above, some of the depositions will last more than a full day.

As to class certification proceedings, Plaintiffs propose that Defendants' Opposition to Plaintiffs' Motion be due by July 18, 2007, and that Plaintiffs' Reply Brief be due by August 17, 2007.

As we would like to avoid unnecessary motion practice, please let us know by Monday, March 12, 2007, whether the above proposals are acceptable. If they are not, please propose by March 12th no fewer than three potential dates within the next 10 business days for a meet and confer.

Sincerely,

Dennis J. Johnson

DJJ:rgj

cc:    Glen DeValerio Esq. *(via email w/ enc.)*
       Leslie R. Stern, Esq. *(via email w/ enc.)*
       Bryan A. Wood, Esq. *(via email w/ enc.)*
       Brad N. Friedman, Esq. *(via email w/ enc.)*
       Ted J. Swiecichowski Esq. *(via email w/ enc.)*

---

[1] For example, the list of interviewees for the Kelly Team in early 2001 contains 32 people not included in our list, while Akin Gump apparently interviewed 78 people not included in our list. Some or all of these individuals ultimately may need to be deposed, but we have not included them on our list at this time.

**Exhibit 1**

**TABLE OF POTENTIAL DEPONENTS**

*Carlson, et al. v. Xerox Corporation, et al., No. 3:00-CV-1621 (AWT)*

| Deponent | Position | Relevant Testimony |
|---|---|---|
| *Individual Defendants* | | |
| 1. Gregory Tayler | Director of Accounting Policy (3/97-4/99); Treasurer, Global Capital Markets (5/99-3/00); President and Controller (4/2000 - )[1] | The SEC deposed Tayler for five (5) days in the government's case against Xerox and KPMG. Tayler has relevant knowledge concerning Xerox's use of non-GAAP accounting actions in Japan and Europe, including ROE, Margin Normalization (including retroactive adjustments) and PAS/EPS transactions, as well as Xerox's improper use of reserves to bolster earnings. Tayler also has extensive knowledge concerning the circumstances surrounding the preparation of Xerox's public filings, and Xerox whistleblower James Bingham's allegations of accounting fraud. |
| 2. Philip Fishbach | Controller | The SEC deposed Fishbach for five (5) days in the government's case against Xerox and KPMG. Fishbach has relevant knowledge concerning Xerox's use of non-GAAP accounting actions, including Margin Normalization, PAS/EPS transactions, as well as Xerox's misuse of reserves such as the Rank Reserve and restructuring reserves. Fishbach also has information concerning the disparity between ROE interest rates and commercial reality, the gap between actual and reported results, and improper sales-type lease accounting in Latin America. |
| 3. Barry Romeril | CFO | The SEC deposed Romeril for four (4) days in the government's case against Xerox and KPMG. Romeril has relevant knowledge concerning Xerox's use of non-GAAP accounting actions, including ROE, Margin Normalization and PAS/EPS transactions, as well as the improper creation and/or drawing down |

[1] Director of Accounting Policy (3/1997 – 4/1999); Treasurer Global Capital Markets (5/1999 – 3/2000).

1

| Deponent | Position | Relevant Testimony |
|---|---|---|
| | | of the Rank Reserve, restructuring and other cushion reserves. Romeril also has relevant knowledge concerning contract churning, price uplifts and lease extensions in Latin America. Romeril also has relevant knowledge concerning Xerox's tracking of the gap between Xerox's actual and reported results, KPMG's removal of Lead Audit Engagement Partner Ron Safran after the 1999 audit, Xerox whistleblower James Bingham's allegations of accounting fraud, PwC's Special Investigations, the SEC's investigation into Xerox's financial reporting, and Xerox's 1st Restatement. |
| 4. G. Richard Thoman | CEO | The SEC deposed Thoman for two (2) days in the government's case against Xerox and KPMG. Thoman has relevant knowledge concerning KPMG's removal of Safran as Lead Audit Engagement Partner after the 1999 audit and the circumstances surrounding his own termination as CEO. Thoman also has knowledge concerning Xerox's use of non-GAAP accounting actions, such as ROE, Margin Normalization and PAS/EPS transactions. |
| 5. Paul Allaire | Chairman of the Board | The SEC deposed Allaire for two (2) days in the government's case against Xerox and KPMG. Allaire has relevant knowledge concerning Xerox's Audit Committee's investigation of fraudulent accounting at XMEX, as well as knowledge of Xerox's use of non-GAAP accounting actions, such as ROE and Margin Normalization. |
| 6. Anne Mulcahy | CEO | Mulcahy did not testify before the SEC in the government's case against Xerox and KPMG. Mulcahy has relevant knowledge concerning Xerox's 2nd Restatement and related between Xerox and the SEC. Mulcahy also has knowledge of Xerox's use of non-GAAP accounting actions, such as ROE and Margin Normalization. |

| Deponent | Position | Relevant Testimony |
|---|---|---|
| *Xerox Corporate (Stamford)* | | |
| 7. James Bingham | Assistant Treasurer | The SEC deposed Bingham for six (6) days in the government's case against Xerox and KPMG. Bingham has extensive knowledge concerning the subject of his whistleblower allegations, including Xerox's use of non-GAAP accounting actions, such as ROE and PAS/EPS transactions, as well as Xerox's misuse of the Rank Reserve and inappropriate sales-type lease accounting at XBRA. |
| 8. Daniel Marchibroda | Assistant Corporate Controller | The SEC deposed Marchibroda for five (5) days in the government's case against Xerox and KPMG. Marchibroda has relevant knowledge concerning Xerox's use of non-GAAP accounting actions, such as Margin Normalization (including retroactive adjustments), ROE, retroactive residual value adjustments, as well as Xerox's misuse of the Rank Reserve and other residual value adjustments. Marchibroda also has relevant knowledge of improper sales-type lease accounting in XBRA related to price uplifts and lease extensions. |
| 8. Gary Kabureck | Assistant Corporate Controller | The SEC deposed Kabureck for five (5) days in the government's case against Xerox and KPMG. Kabureck has extensive knowledge concerning Xerox's use of non-GAAP accounting actions, such as Margin Normalization and ROE, PAS/EPS transactions, as well as Xerox's misuse of cushion reserves. Kabureck also has information concerning the existence of fair value surrogates for equipment in bundled leases, Safran's termination after the 1999 audit, and the 2nd Restatement. |
| 9. Joseph Mancini | Director, Corporate Financial Planning & Analysis 1/99-3/00 | The SEC deposed Mancini for three (3) days in the government's case against Xerox and KPMG. Mancini has relevant knowledge concerning the structure and operation of Xerox's financial planning groups, as well as senior management's tracking of non-GAAP accounting actions (including ROE, Margin Normalization, retroactive residual value uplifts and PAS/EPS transactions), and the misuse of |

3

| Deponent | Position | Relevant Testimony |
|---|---|---|
| | | cushion reserves. |
| 10. William Buehler | President of ISO | The SEC deposed Buehler for two (2) days in the government's case against Xerox and KPMG. Buehler has relevant knowledge concerning the quarterly closing process throughout the class period, including the use of non-GAAP accounting actions used to "close the gap" between actual and expected results, including ROE, Margin Normalization and PAS/EPS transactions. Buehler also has relevant information concerning the negative impact of prior non-GAAP accounting actions that resulted in Xerox's failure to meet earnings expectations in Q3 and Q4 of 1999. |
| 11. Kevin Colburn | Director of Accounting Policy (5/99-7/00); Director, Worldwide Audit (7/00-11/01); VP and Controller (11/01 – present)[2] | The SEC deposed Colburn for two (2) days in the government's case against Xerox and KPMG. Colburn has relevant knowledge concerning the financial impact of Xerox's use of non-GAAP accounting actions, including Margin Normalization, ROE and PAS/EPS transactions. Colburn also has knowledge concerning Xerox's misuse of the XConnect, Rank and restructuring reserves and improper sales-type lease accounting related to price uplifts and lease extensions at XBRA. Colburn also has relevant information concerning the circumstances surrounding Xerox's response to whistleblower James Bingham's allegations of fraud. |
| 12. Thomas Theobald | Chairman of Xerox's Audit Committee | The SEC deposed Theobald for two (2) days in the government's case against Xerox and KPMG. Theobald has relevant knowledge concerning the role of Xerox's Audit Committee with respect to the preparation, review and filing of Xerox's financial statements, the termination of Safran as Lead Audit Engagement Partner after the 1999 audit and the Audit Committee's discussions with KPMG and management concerning KPMG's 2000 audit. Theobald also has knowledge concerning the circumstances surrounding |

[2] Manager of Accounting Policy (1/1996 – 5/1999).

4

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 13. Independent Member of Xerox's Board of Directors | | whistleblower James Bingham's allegations of fraud at Xerox, KPMG's refusal to approve Xerox's 2000 financials, PwC's Special Investigations, the 1st Restatement, Xerox's replacement of KPMG by PwC, and Xerox's decision to file the 2nd Restatement. |
| | | Plaintiffs anticipate deposing an independent member of Xerox's Board of Directors. Independent directors possess significant, unbiased knowledge concerning the circumstances surrounding Xerox Board of Directors meetings, as well as any and all communications made with between the Board, on the one hand, and Xerox's management, KPMG, independent investigators, or governmental authorities, on the other hand, concerning Xerox's accounting and financial reporting. |
| 14. Jorge Canizares | Director of International Treasury | The SEC deposed Canizares for one (1) day in the government's case against Xerox and KPMG. Canizares has relevant knowledge concerning the Heller factoring transaction and other factoring transactions in the U.S. |
| 15. Ann Pettrone | Manager of Funding, International Treasury (10/98-8/00) | The SEC deposed Pettrone for one (1) day in the government's case against Xerox and KPMG. Pettrone has relevant knowledge concerning the Heller factoring transaction and senior management's knowledge of the financial condition of XMEX. |
| 16. Thomas Dolan | President of XBS before 1/1999; President of NASG after 1/1999 | Dolan did not testify before the SEC in the government's case against Xerox and KPMG. Dolan has relevant knowledge regarding improper sales-type lease accounting at XBS related to the failure of XBS leases to meet FAS 13's 75% test. Dolan also has relevant information concerning lax internal controls at XBS, and Xerox's non-GAAP accounting adjustments, such as ROE and PAS/EPS transactions. |

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 17. A. Barry Rand | Executive VP, Worldwide Operations | Rand did not testify before the SEC in the government's case against Xerox and KPMG. Rand has relevant knowledge concerning senior management's practice of dispatching senior executive to local offices to identify non-GAAP accounting actions necessary to meet earnings targets. |
| 18. Peter Gallagher | Director of Accounting Policy and Control | Gallagher did not testify before the SEC in the government's case against Xerox and KPMG. Gallagher has relevant knowledge concerning XBRA and XMEX internal control failures prior to the 1st Restatement, as well as the circumstances surrounding Xerox's decision not to restate in the months prior to the 1st Restatement. |
| 19. Leslie Varon | Director of Investor Relations | Varon did not testify before the SEC in the government's case against Xerox and KPMG. Varon has relevant knowledge concerning Xerox's financial reporting process and related communications with industry analysts and shareholders. |
| 20. Hector Motroni | Senior Vice President and Chief Staff Officer | Motroni did not testify before the SEC in the government's case against KPMG and Xerox. Motroni has significant information concerning the allegations of fraud made by Xerox whistleblower James Bingham, as well as the circumstances surrounding Bingham's termination. |
| 21. Charles Hall | Director of Internal Audit | Hall did not testify before the SEC in the government's case against Xerox and KPMG. Hall has significant knowledge concerning Xerox's audits of XMEX leading up to the 1st Restatement, including information concerning XMEX's bad debt and obsolete inventory reserves. |

6

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 22. Russell Okasako | VP of Taxes | Okasako did not testify before the SEC in the government's case against Xerox and KPMG. Okasako has relevant knowledge concerning his analysis of the purported tax liabilities forming the putative basis for establishment of the Rank Reserve. |
| *KPMG Corporate* | | |
| 23. Ronald Safran | Lead Audit Engagement Partner (1998-1999) | The SEC deposed Safran for six (6) days in the government's case against Xerox and KPMG. Safran has relevant knowledge concerning KPMG's 1998 and 1999 Xerox audit approach and procedures, particularly with respect to KPMG's knowledge of Xerox's use of non-GAAP accounting manipulations, including Margin Normalization, ROE, PAS/EPS transactions, as well as Xerox's misuse of reserve accounting. In addition, Safran has information concerning KPMG's knowledge of Xerox's inappropriate sales-type lease accounting in Latin America and at XBS. Safran also has relevant knowledge of: (1) KPMG's awareness of whistleblower James Bingham's allegations of fraud; (2) his own removal from the Xerox engagement after the 1999 audit. |
| 24. Michael Conway | Co-Lead Audit Engagement Partner (2000) | The SEC deposed Conway for four (4) days in the government's case against Xerox and KPMG. Conway has relevant knowledge concerning KPMG's 2000 Xerox audit approach and procedures, including the "additional" procedures allegedly undertaken as a result of Xerox whistleblower James Bingham's allegations of fraud. Conway also has relevant information concerning Thomas Yoho's "in-depth" investigation of the matter, the circumstances surrounding KPMG's approval of the Xerox's 1st Restatement, and Safran's removal from the Xerox audit team after the 1999 audit. Conway also has relevant knowledge concerning KPMG's knowledge of Xerox's use of non-GAAP accounting actions, including Margin Normalization, ROE, retroactive residual value uplifts and improper draw downs of the Rank Reserve, as well as improper sales-type lease accounting in XBRA related to price increases and lease extensions. Conway has |

7

| **Deponent** | **Position** | **Relevant Testimony** |
|---|---|---|
| | | further knowledge concerning Xerox's lax internal controls, improper "tone at the top" and KPMG's termination as Xerox's outside auditor. |
| 25. Paul Knopp | Co-Lead Audit Engagement Partner (2000) | The SEC deposed Knopp for three (3) days in the government's case against Xerox and KPMG. Knopp has relevant knowledge concerning KPMG's 1998-2000 Xerox audit approach and procedures, including KPMG's knowledge of the various non-GAAP accounting manipulations that Xerox used during those periods, such as Margin Normalization, ROE, PAS/EPS transactions, and retroactive residual value uplifts. Knopp has further knowledge concerning the additional procedures KPMG allegedly implemented as a result of Xerox whistleblower James Bingham's allegations of fraud, including Akin Gump's Special Investigation into XMEX and KPMG Partner Thomas Yoho's "in-depth" review of the issue. In addition, Knopp also has relevant knowledge concerning KPMG's approval of Xerox's 1st Restatement and Saffan's removal from the Xerox audit team after the 1999 audit. |
| 26. Anthony Dolanski | Lead Audit Engagement Partner (1997) | The SEC deposed Dolanski for three (3) days in the government's case against Xerox and KPMG. Dolanski has relevant knowledge concerning KPMG's 1997 Xerox audit approach and procedures. In addition, Dolanski has knowledge of KPMG's involvement in the improper creation and draw down of the Rank Reserve. Dolanski also has knowledge concerning KPMG's awareness of the non-GAAP accounting manipulations that Xerox used during 1997, such as Margin Normalization, ROE, retroactive residual value uplifts, as well as the improper drawing down of cushion reserves. Dolanski also has knowledge concerning KPMG's knowledge of Xerox's inappropriate sales-type lease accounting related to price uplifts and lease extensions. |
| | | The SEC deposed Egan for (3) days in the government's case against Xerox and KPMG. Egan has relevant knowledge concerning KPMG's testing during the 1997-1999 Xerox audits, particularly with respect to Margin Normalization, ROE, |

8

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 27. Tim Egan | Senior Manager before 7/99; Partner after 7/99 | retroactive residual value uplifts, PAS/EPS transactions and inappropriate charges made against the Rank and other cushion reserves. Egan also has relevant knowledge concerning KPMG's disagreements with Xerox concerning those and other accounting actions, undue time pressure issues placed on KPMG related to quarter's end methodology refinements, KPMG's SAS 61 communications with Xerox's Audit Committee, and the circumstances surrounding Safran's removal as Lead Audit Engagement Partner after the 1999 audit. |
| 28. Joseph Boyle | Relationship Partner | The SEC deposed Boyle for two (2) days in the government's case against Xerox and KPMG. Boyle has relevant knowledge concerning Safran's removal as Lead Audit Engagement Partner after the 1999 audit. In addition, Boyle has information concerning KPMG's knowledge of accounting irregularities in XMEX, James Bingham's allegations of fraud, the Special Investigations conducted by PwC's Dooley and Kelly teams, and KPMG's 2000 communications with Xerox's Audit Committee. |
| 29. Thomas Yoho | Concurring Review Partner | The SEC deposed Yoho for two (2) days in the government's case against Xerox and KPMG. Yoho has relevant knowledge concerning KPMG's 2000 Xerox audit approach and procedures, particularly the scope, substance and results of his so-called "in-depth" review of the 2000 audit, as well as the circumstances surrounding KPMG's approval of Xerox's 1st Restatement. Yoho also has relevant knowledge concerning Xerox's use of non-GAAP accounting actions, including Margin Normalization and ROE. |
| 30. Leslie Coolidge | Partner | The SEC deposed Coolidge for one (1) day in the government's case against Xerox and KPMG. Coolidge has significant knowledge concerning her work as a senior member of Thomas Yoho's "in-depth" review team responsible for Xerox Corporate, including information about her analysis of the 2000 audit, which differed from Yoho's reported conclusions. |

9

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 31. Derek Barnes | Partner | Barnes did not testify before the SEC in the government's case against Xerox and KPMG. Barnes has significant knowledge concerning his work as a senior member of Thomas Yoho's "in-depth" review team responsible for XBRA, including information about his analysis of the 2000 audit, which differed from Yoho's reported conclusions. |
| 32. James Katsihtis | Manager | The SEC deposed Katsihtis for one (1) day in the government's case against Xerox and KPMG. Katsihtis has relevant knowledge concerning the creation and improper takedown of purchase accounting reserves, including the Rank and XConnect reserves. Katsihtis also has relevant knowledge concerning KPMG's awareness of Xerox's use of non-GAAP accounting adjustments, including ROE and Margin Normalization, PAS/EPS transactions, as well as Xerox's improper sales-type lease accounting related to lease extensions and price uplifts in Latin America. |
| 33. David Schlissel | Senior Manager | The SEC deposed Schlissel for three (3) days in the government's case against Xerox and KPMG. Schlissel has knowledge concerning Xerox's use of various non-GAAP accounting manipulations, including margin normalization and ROE and PAS/EPS transactions. In particular, Schlissel has significant knowledge concerning the existence of fair value surrogates at Xerox and the accounting irregularities at XMEX. |
| *Xerox US/NASG (Rochester)* | | |
| 34. Thomas Ammer | Manager of Financial Accounting | The SEC deposed Ammer for three (3) days in the government's case against Xerox and KPMG. Ammer has extensive knowledge concerning senior management's creation, maintenance and take down of the various restructuring and cushion reserves, Xerox's schedules of non-operational items, undisclosed factoring transactions, and Xerox Rochester's quarterly and year-end closing |

| Deponent | Position | Relevant Testimony |
|---|---|---|
| | | process. |
| 35. Richard Lill | VP, NAF Financing Business; Controller, XCS | The SEC deposed Lill for one (1) day in the government's case against Xerox and KPMG. Lill has extensive knowledge concerning the mechanics of ROE and the circumstances surrounding senior management's development of a justification for ROE. |
| 36. Patrick Fulford | VP of Finance | Fulford did not testify before the SEC in the government's case against Xerox and KPMG. Fulford has significant knowledge concerning Xerox's quarterly closing process and improper charges taken against Xerox's 1993 and 1998 restructuring reserves. |
| *KPMG US/NASG* | | |
| 37. Timothy White | Senior Manager before mid-98; Partner after mid- '98 | The SEC deposed White for three (3) days in the government's case against Xerox and KPMG. White has knowledge concerning KPMG's audit procedures during the 2000 Xerox audit, including KPMG's knowledge of the various accounting manipulations Xerox relied upon to meet earnings expectations, such as ROE, Margin Normalization, PAS/EPS transactions, retroactive residual value uplifts, as well as Xerox's improper sales-type lease accounting.  In addition, White has knowledge concerning KPMG's awareness of the allegations made by Xerox whistleblower James Bingham, the accounting irregularities at XMEX, KPMG's subsequent review of Xerox internal audit's findings, and the PwC Special Investigations. |
| 38. Chris McWilton | Audit Partner | McWilton did not testify before the SEC in the government's case against Xerox and KPMG. McWilton has extensive knowledge concerning his conclusions (ultimately ignored by KPMG) that Xerox's ROE methodology and PAS/EPS |

11

| Deponent | Position | Relevant Testimony |
|---|---|---|
| *Xerox DMO (Stamford)* | | accounting failed to comply with GAAP. |
| 39. Michael Festa | VP of Finance | The SEC deposed Festa for four (4) days in the government's case against Xerox and KPMG. Festa has extensive knowledge of the numerous accounting manipulations that Xerox used to manage earnings at DMO operating units, including ROE, Margin Normalization, PAS/EPS transactions, residual value adjustments and improper sales-type lease accounting. In addition, Festa has knowledge concerning Xerox's investigation of accounting problems at XMEX, DMO and beyond prior to the 1st Restatement. |
| 40. Phil Devon | VP and Controller | The SEC deposed Devon for four (4) days in the government's case against Xerox and KPMG. Devon has intimate knowledge concerning numerous accounting manipulations that Xerox used to manage earnings at DMO operating units, including ROE, Margin Normalization, PAS/EPS transactions, residual value adjustments and improper sales-type lease accounting. In addition, Devon has knowledge concerning Xerox's investigation of accounting problems at XMEX, DMO and beyond prior to the 1st Restatement. |
| 41. Patrick Martin | President of DMO ('96– '99); President of NASG ('00 -) | The SEC deposed Martin for two (2) days in the government's case against Xerox and KPMG. Martin has knowledge concerning numerous accounting manipulations that Xerox used to manage earnings at DMO and North American operating units, including Margin Normalization, ROE, PAS/EPS transactions, upward residual value adjustments and improper sales-type lease accounting. In addition, Martin has knowledge of XBRA's dependence on accounting actions to meet earnings targets. |

12

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 42. Don Weber | Vice President of Finance | Weber did not testify before the SEC in the government's case against Xerox and KPMG. Weber has significant knowledge concerning Xerox's improper reserve accounting, including the 1993 and 1998 Restructuring Reserves. Weber also will provide testimony concerning retroactive residual value uplifts at XMEX, ROE manipulations at XBRA, and the corporate approval process for non-operational accounting actions undertaken by individual Xerox business units such as XARG, XBRA and XMEX. |
| 43. Peter Rasch | Director of Treasury/Director of Government Relations/Finance (XBRA) | The SEC deposed Rasch for two (2) days in the government's case against Xerox and KPMG. Rasch has significant knowledge concerning non-GAAP accounting at XBRA, such as retroactive upward residual value adjustments, PAS/EPS transactions, and improper sales-type lease accounting at XBRA. |
| 44. Nestor Sawicki | Finance Director | Sawicki did not testify before the SEC in the government's case against Xerox and KPMG. Sawicki has relevant knowledge concerning DMO operating units' use – at senior management's direction – of various non-GAAP accounting devices, including ROE, Margin Normalization, residual value adjustments (1997-1999), and PAS/EPS transactions in (1998-2000). |
| 45. Ricardo Newark | VP of Internal Controls and Operations Support | Newark did not testify before the SEC in the government's case against Xerox and KPMG. Newark has relevant knowledge concerning Xerox's investigation into the XMEX fraud and XMEX's cooperation with Akin Gump's Special Investigation. |
| | | Brongers did not testify before the SEC in the government's case against |

13

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 46. Peter Maria Brongers | Director of Internal Audit for Latin America | Xerox and KPMG. Brongers has relevant knowledge of faulty bad debt reserve accounting and utilization of improper sales-type lease accounting at DMO operating units, as well as the lax internal controls at those DMO operating units. |
| 47. Carlos Pascual | President of DMO | Pascual did not testify before the SEC in the government's case against Xerox and KPMG. Pascual has relevant knowledge of the numerous accounting manipulations that Xerox used to manage earnings at DMO, including ROE, Margin Normalization, PAS/EPS transactions, residual value adjustments and improper sales-type lease accounting. Pascual also has relevant knowledge concerning Xerox's investigation into problems at XMEX, DMO and beyond prior to the 1st Restatement. |
| 48. Terry J. Daly | Manager, XBRA Leasing Strategies before 2/01; Director of International Treasury after 2/01 | Daly did not testify before the SEC in the government's case against Xerox and KPMG. Daly has relevant knowledge concerning all aspects of the numerous PAS/EPS transactions consummated at DMO operating units, including internal Xerox analysis of the relevant provisions of FAS 13, which governed the accounting for such transactions. |
| *Xerox Mexico* | | |
| 49. Rafael Florez | General Manager Xerox Latin America North (1997-1999) | The SEC deposed Florez for four (4) days in the government's case against Xerox and KPMG. Florez has knowledge concerning various non-GAAP accounting actions undertaken at XMEX, including improper sales-type lease accounting, Margin Normalization, ROE, and PAS/EPS transactions. In addition, Florez has knowledge of XMEX lax internal controls and Xerox's investigation into the accounting problems at XMEX. |
| | | The SEC deposed Thakore for three (3) days in the government's case against Xerox and KPMG. Thakore has relevant knowledge about numerous |

14

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 50. Sandeep Thakore | Director of Finance XLAN | accounting manipulations undertaken at XMEX at the direction of Xerox Corporate, including Margin Normalization, PAS/EPS transactions, as well as improper bad debt reserve accounting. In addition, Thakore has knowledge concerning internal XMEX audits, as well as Xerox's investigation into the accounting problems as XMEX, DMO and beyond prior to the 1st Restatement. |
| 51. Antonio Robles | CFO of XMEX before prior to 3/99; General Manager of XMEX after 3/99 | The SEC deposed Robles for one (1) day in the government's case against Xerox and KPMG. Robles has knowledge concerning various non-GAAP accounting actions that Xerox Corporate imposed on XMEX, including Margin Normalization and PAS/EPS transactions. In addition, Robles has knowledge of Xerox's investigation into the accounting problems at XMEX. |
| 52. Marco Gutierrez | Director of Finance | Gutierrez did not testify before the SEC in the government's case against Xerox and KPMG. Gutierrez has knowledge Xerox's initial reporting and ultimate investigation into the fraudulent accounting at XMEX from late 1999 through 2000. |
| 53. Erasmo Villafana | Finance Director, Concessionaires (CAX/CBU) (1995-1999); Executive Director of ISO Interior (1999) | The SEC deposed Villafana for one (1) day in the government's case against Xerox and KPMG. Villafana has knowledge concerning XMEX's policies and practices with respect to cancellations in XMEX's Concessionaires business unit. |
| **KPMG Mexico** | | |
| 54. Mario Fernandez | Engagement Partner | The SEC deposed Fernandez for three (3) days in the government's case against Xerox and KPMG. Fernandez has knowledge concerning KPMG's audit procedures in XMEX from 1997-2000, including testimony concerning KPMG's knowledge of bad debt issues that plagued XMEX during the Class Period, as |

15

| Deponent | Position | Relevant Testimony |
|---|---|---|
| *Xerox Brazil* | | |
| 55. Guilherme Bettencourt | XBRA General Manager (1/98-12/99); XBRA President (1/99- ) | well as problems that surfaced with XMEX's concessionaires. The SEC deposed Bettencourt for three (3) days in the government's case against Xerox and KPMG. Bettencourt has substantial knowledge concerning numerous management-driven accounting devices utilized at XBRA, including ROE, Margin Normalization, residual value adjustments, Reserve account manipulations, and PAS/EPS transactions. In addition, Bettencourt has knowledge concerning XBRA's improper sales-type lease accounting related to contract churning, lease extensions and price indexation clauses. |
| 56. Carlos Salles | XBRA President | Salles did not testify before the SEC in the government's case against Xerox and KPMG. Salles has knowledge concerning numerous accounting manipulations at XBRA, including ROE, Margin Normalization, PAS/EPS transactions and improper sales-type lease accounting related to contract churning. Salles also has knowledge concerning XBRA's increased dependence on non-GAAP accounting actions to meet internal earnings targets throughout the Class Period. |
| *KPMG Brazil* | | |
| 57. Jose Matos Nicolau | Engagement Partner | The SEC deposed Nicolau for three (3) days in the government's case against Xerox and KPMG. Nicolau has knowledge concerning KPMG's audit procedures in XBRA from 1997-1999. In particular, Nicolau has knowledge of customer bad debt issues at XBRA, as well as Xerox's application of Margin Normalization adjustments to XBRA results. |
| 58. Timothy Young | Engagement Partner | Young did not testify before the SEC in the government's case against Xerox and KPMG. Having succeeded Nicolau as Audit Partner for XBRA in 1999, Young has knowledge concerning KPMG's 1999 and 2000 audit procedures related to XBRA. |

16

| Deponent | Position | Relevant Testimony |
|---|---|---|
| *Xerox Europe* | | |
| 59. Vic Davies | Director of Group Accounting, Group Chief Accountant | The SEC deposed Davies for two (2) days in the government's case against Xerox and KPMG. Davies has knowledge concerning the implementation and subsequent modifications of the ROE and Margin Normalization methodologies at XE, including communications with KPMG UK regarding the validity of the methodologies due to the availability of fair value surrogates in Europe. Davies also has relevant knowledge concerning the impact that the ROE and Margin Normalization methodologies had on XE's financial results. |
| 60. Patrick Ponchon | Finance Director of Rank Xerox Limited | Ponchon did not testify before the SEC in the government's case against Xerox and KPMG. Ponchon has knowledge concerning efforts to use Margin Normalization and ROE to "close the gap" at XE and the impact that those efforts had on XE's financial results throughout the Class Period, as well as knowledge concerning improper takedowns of the Rank Reserve and the 1998 restructuring reserves. |
| 61. Pierre Danon | President of XE | Danon did not testify before the SEC in the government's case against Xerox and KPMG. Danon has knowledge concerning KPMG's awareness that XE was using Margin Normalization and ROE to "close the gap" between actual and expected earnings and that such accounting actions were no longer available to increase Xerox's revenues after 1999. |
| 62. Chris Ross-Parker | Manager, Group Financial Reporting | Ross-Parker did not testify before the SEC in the government's case against Xerox and KPMG. Ross-Parker has knowledge concerning the quarter-by-quarter impact that Margin Normalization and ROE (including subsequent modifications) had on XE's revenues. |

17

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 63. David Maw | Manager, Treasury; Director, Tax, Treasury and Leasing | Maw did not testify before the SEC in the government's case against Xerox and KPMG. Maw has knowledge concerning quarterly direction that Xerox's senior management gave XE to implement various non-GAAP accounting manipulations and the impact of those and other improper accounting actions – which included ROE, Margin Normalization, upward residual value adjustments and improper factoring transactions – had on XE's revenues. |
| *KPMG Europe* | | |
| 64. John Diggins | Engagement Partner | The SEC deposed Diggins for four (4) days in the government's case against Xerox and KPMG. Diggins has information concerning KPMG UK's audit procedures at XE from 1997-2000, including the significant issues that KPMG UK had with respect to: (1) the validity of Xerox's ROE and Margin Normalization adjustments and related refinements; and (2) the quality of XE's earnings as a result of such manipulations. |
| 65. Rupert Hickman | Senior Manager | The SEC deposed Hickman for two (2) days in the government's case against Xerox and KPMG. Hickman has knowledge concerning KPMG UK's audit procedures at XE from 1997-2000, including KPMG UK's concerns about Xerox's 15% ROE target and the multiple revisions that XE made to the ROE methodology. |
| 66. Joanna Osborne | Lead Relationship Partner | Osborne did not testify before the SEC in the government's case against Xerox and KPMG. Osborne has knowledge concerning the scope, implementation and results of KPMG UK's due diligence in connection with Xerox's acquisition of Rank Group remaining interest in Xerox Ltd., including information concerning the validity of Xerox's creation of the Rank Reserve. |

18

| Deponent | Position | Relevant Testimony |
|---|---|---|
| Xerox Fuji (Subsidiary of Xerox Europe) | | |
| 67. Haruhiko Yoshida | Controller of Fuji Xerox | Yoshida did not testify before the SEC in the government's case against Xerox and KPMG. Yoshida has knowledge concerning Tayler and Safran's visit to Japan in December 1998 at Romeril's behest to ensure that the Japanese operating unit implemented non-GAAP accounting actions such as Margin Normalization, ROE and residual value adjustments. |
| KPMG Tokyo | | |
| 68. Satoshi Yura | Partner and Vice Chairman of Operations | Yura did not testify before the SEC in the government's case against Xerox and KPMG. Yura has knowledge concerning KPMG's awareness of Tayler and Safran's visit to Japan in December 1998 at Romeril's behest in an effort to ensure that Fuji Xerox implemented non-GAAP accounting actions such as Margin Normalization, ROE and residual value adjustments. |
| PwC | | |
| 69. Harvey Kelly | Partner | The SEC deposed Kelly for two (2) days in the government's case against Xerox and KPMG. Kelly has intimate knowledge concerning his investigation on behalf of Xerox's Audit Committee. In particular, Kelly has knowledge concerning the scope, procedures and results of his investigation, as well as his communications with Xerox's Audit Committee, management, the Dooley investigation team, the SEC and KPMG. |
| 70. Dan Dooley | Partner | The SEC deposed Dooley for two (2) days in the government's case against Xerox and KPMG. Dooley has intimate knowledge concerning his investigation on behalf of Xerox's management. In particular, Dooley has knowledge concerning the scope, procedures and results of his investigation, as |

19

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 71. Vincent Colman | Partner | The SEC deposed Colman for two (2) days in the government's case against Xerox and KPMG. Colman has intimate knowledge concerning PwC's audit of Xerox's 1997-2000 financial statements, culminating in Xerox's $6.4 billion 2nd Restatement. |
| 72. David Bullwinkle | PwC Auditor | Bullwinkle did not testify before the SEC in the government's case against Xerox and KPMG. Bullwinkle has knowledge concerning PwC's audit of Xerox's reserve accounting that was restated in the 2nd Restatement. |
| 73. Dr. Jessica Pollner | Partner | Pollner did not testify before the SEC in the government's case against Xerox and KPMG. Pollner has intimate knowledge concerning Dooley's statistical analysis of the relationship between Xerox's ROE methodology and fair market values for leased equipment. |
| 74. Christina Van Tassel | Auditor | Van Tassel did not testify before the SEC in the government's case against Xerox and KPMG. Van Tassel has knowledge concerning PwC's audit of X Xerox's PAS/EPS transactions that were restated in the 2nd Restatement. |
| 75. Scott Adams | PwC Partner; Member of Special Investigation's Dooley Team | The SEC deposed Adams for two (2) days in the government's case against Xerox and KPMG. Adams has relevant knowledge concerning Dooley's investigation into Xerox's accounting policies. In particular, Adams has significant knowledge concerning Xerox's ValueQuix system. |

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 76. Todd Morrison | Auditor | Morrison did not testify before the SEC in the government's case against Xerox and KPMG. Morrison has relevant knowledge concerning Xerox's accounting practices and financial reporting prior to the 2nd Restatement. In particular, Morrison has significant knowledge concerning Xerox's improper sales-type lease accounting and lax internal controls. |
| *SEC* | | |
| 77. Robert Bayless | Chief Accountant | The SEC deposed Bayless for one (1) day in the government's case against Xerox and KPMG. Bayless has knowledge concerning the SEC's investigation of Xerox's lease accounting practices, including the government's communications with Xerox and KPMG. |
| 78. John M. Morrissey | Deputy Chief Accountant | The SEC did not depose Morrissey in the government's case against Xerox and KPMG. Morrissey has knowledge concerning Xerox's justifications to the SEC for the Company's ROE and Margin Normalization adjustments. |
| 79. Timothy England | Assistant Director of Enforcement at the Securities & Exchange Commission | The SEC deposed England for one (1) day in the government's case against Xerox and KPMG. England has relevant knowledge concerning the attendance at numerous meetings and teleconferences during the SEC's investigation into XMEX and Xerox's accounting practices. |
| *30(b)(6)* | | |
| 80. The Gartner Group | N/A | The SEC did not depose a representative of the Gartner Group in the government's case against Xerox and KPMG. The Gartner Group has knowledge concerning Xerox's analysis of the fair market value of its equipment to justify the use of ROE and Margin Normalization adjustments. |

21

| Deponent | Position | Relevant Testimony |
|---|---|---|
| 81. Heller Financial | N/A | The SEC did not depose a representative of the Heller Financial in the government's case against Xerox and KPMG. Heller Financial has knowledge as to the terms of XMEX's undisclosed Q4 '99 factoring transaction. |
| 82. Citibank, N.A. | N/A | The SEC did not depose a representative of Citibank in the government's case against Xerox and KPMG. Citibank has knowledge concerning multiple PAS/EPS transactions it consummated with XBRA and XMEX in 1999 and 2000. |
| 83. Akin Gump Strauss Hauer Feld LPP | Xerox's Audit Committee's Attorney (XMEX Investigation) | Plaintiffs anticipate filing a motion to compel testimony from Akin Gump, which was retained by Xerox's Audit Committee in connection with the XMEX investigation. Akin Gump has significant knowledge concerning Xerox's investigation into the accounting irregularities at XMEX. |
| 84. Paul Weiss Rifkind Wharton & Garrison LLP | Xerox's Audit Committee's Attorney (Special Investigation by PwC's Kelly Team) | Plaintiffs anticipate filing a motion to compel testimony from Paul Weiss, which was retained by Xerox's Audit Committee in connection with the PwC's Special Investigation into Xerox's accounting. Paul Weiss has significant knowledge concerning PwC's Kelly Team's 2001 investigation into numerous accounting irregularities at Xerox. |
| 85. Skadden, Arps, Slate, Meagher & Flom LLP | Xerox Management's Attorney (Special Investigation by PwC's Dooley Team) | Plaintiffs anticipate filing a motion to compel testimony from Skadden Arps, which was retained by Xerox's management in connection with PwC's Special Investigation into Xerox's accounting. Skadden Arps has significant knowledge concerning PwC's Dooley Team's 2001 investigation into numerous accounting irregularities at Xerox. |