# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In Re Federal National Mortgage | ) | |
| Association Securities, Derivative, | ) | MDL No. 1688 |
| and "ERISA" Litigation | ) | |
| | ) | |
| In re: Fannie Mae Securities Litigation | ) | Consolidated Civil Action No. 04-1639-RJL |

**MOTION AND SUPPORTING MEMORANDUM
OF SECURITIES AND EXCHANGE COMMISSION
TO INTERVENE AND FOR A PROTECTIVE ORDER**

Certain plaintiffs and defendants in the above-captioned private civil action have served

subpoenas on the Office of Federal Housing Enterprise Oversight ("OFHEO") that seek

transcripts of non-public investigative testimony taken by the staff of the Securities and

Exchange Commission ("Commission"). The Commission granted OFHEO access to the

transcripts pursuant to an OFHEO request that includes an assurance that OFHEO would

maintain their confidentiality. These transcripts are protected by the law enforcement privilege

because they relate to an ongoing Commission investigation in which the Commission's staff is

currently considering whether it is appropriate to seek authorization to bring additional

enforcement proceedings. Consequently, the Commission moves to intervene in this action

pursuant to Rule 24(a) of the Federal Rules of Civil Procedure for the limited purpose of seeking

a protective order for its transcripts pursuant to Rule 26(c). As described in the Declaration of

Charles E. Cain, the Commission attorney principally responsible for the Commission's ongoing

investigation, a protective order is necessary to prevent harm to the Commission's ongoing

enforcement efforts from the disclosure of these Commission transcripts to defendants in this

action who may later be defendants in a Commission enforcement action. *See* Cain Decl. ¶¶ 8-10 (Attachment 1 hereto).[1]

**BACKGROUND**

On or about October 14, 2004, the Commission issued a formal order directing the staff to commence a non-public investigation into potential securities law violations involving the Federal National Mortgage Association ("Fannie Mae") and others. Cain Decl. ¶ 2. This investigation is captioned *In the Matter of Federal National Mortgage Association. Id.* OFHEO was investigating related matters and, on October 22, 2004, sought access to the Commission's investigative files in *In the Matter of Federal National Mortgage Association* pursuant to 15 U.S.C. 78x(c) and 17 C.F.R. 240.24c-1 (describing circumstances in which the Commission can grant access to non-public files to other law enforcement agencies). Cain Decl. ¶ 3. In requesting access, OFHEO provided assurances that it "has and will maintain safeguards necessary and appropriate to protect the confidentiality of files to which access is granted." *Id.* On November 1, 2004, the Commission granted OFHEO access to its investigative files "in reliance upon the assurances regarding use and confidentiality set forth in [its] letter." *Id.* at ¶ 4. Pursuant to that access grant, the Commission has provided to OFHEO, as they have become available, copies of 57 transcripts of investigative testimony it has taken in *In the Matter of Federal National Mortgage Association. Id.*

On or about May 23, 2006, the Commission filed a civil injunctive action against Fannie Mae captioned *SEC v. Federal National Mortgage Association*, Civil Action No. 06-00959

---

[1] Consistent with Local Rule 7(m), Commission counsel advised counsel for Howard, Raines, Spencer, and the plaintiffs of this motion via telephone, but was unable to obtain their respective positions on it.

(D.D.C.). Cain Decl. ¶ 5. At the time the Commission filed the case, the Commission and

Fannie Mae had reached a settlement of the case, and judgment was entered on August 9, 2006

pursuant to that settlement. *Id.* Because the case was filed as a settled matter, there was no

discovery in the case, and the Commission has not disclosed any transcripts of investigative

testimony to Fannie Mae. *Id.* The Commission has not publicly disclosed its transcripts of

investigative testimony from *In the Matter of Federal National Mortgage Association. Id.* at ¶ 6.

In addition, as far as Commission staff is aware, OFHEO has not disclosed the transcripts to

anyone. *Id.*

At this time, the Commission staff is continuing to investigate whether other individuals

and/or entities may also have violated the federal securities laws, and the Commission staff is

actively considering whether to seek authorization to bring enforcement actions against

additional individuals or entities in the future. *Id.* at ¶ ¶ 2, 8. As part of this analysis,

Commission staff is also considering whether to take additional investigative testimony. *Id.* at

¶ 8. Premature disclosure of the Commission's investigative files would likely interfere with the

Commission's ability to investigate, bring, and prosecute subsequent actions because potential

defendants who had the transcripts would know exactly what the Commission staff knew and did

not know about certain issues, and that knowledge would enable them to hinder the

Commission's investigation by, among other things, interfering with witnesses and destroying or

altering key documents. *Id.* at ¶ 9. The Commission has a well-established policy of keeping all

investigative records confidential because of the very real and significant danger of such

improper actions. *See, e.g.,* 17 C.F.R. 203.2, 203.5, 240.0-4.

About the same time the Commission opened its formal investigation in *In the Matter of*

*Federal National Mortgage Association*, Fannie Mae, Franklin D. Raines, J. Timothy Howard, and Leanne G. Spencer were named as defendants in private actions alleging violations of securities laws, which are now pending before this Court. In the summer of 2006 in the private securities action, Howard and Raines served subpoenas on OFHEO seeking Commission transcripts. *See* Attachments 2 & 3 hereto. In particular, Howard seeks:

> All transcripts of interviews conducted by the Securities & Exchange Commission referred to on page 19 of the Report of the Special Examination of Fannie Mae.

Attachment 2, Document Request No. 10. Raines seeks:

> Transcripts of all "formal" interviews conducted by the SEC and reviewed by OFHEO during the course of its Special Examination (said by OFHEO to be 47 interviews).

Attachment 3, Document Request No. 2. The transcripts may also be responsive to additional requests in Howard's and Raines' subpoenas that do not specifically request the transcripts. In February 2007, Spencer also served a subpoena on OFHEO, and in that subpoena she seeks, among other things, all documents responsive to Raines' and Howard's subpoenas. *See* Attachment 4 hereto, Document Request No. 13. Plaintiffs in the private actions also served a subpoena on OFHEO seeking all documents relied upon by OFHEO, and that request may also include the transcripts. Attachment 5 hereto, Document Request No. 1.

Pursuant to its assurances of confidentiality, OFHEO informed the Commission that Howard, Raines, Spencer, and the lead plaintiffs were seeking disclosure of the Commission transcripts, and the Commission staff informed OFHEO that the transcripts were protected by the law enforcement privilege. Cain Decl. ¶ 11. Consequently, OFHEO has not released the Commission transcripts in response to the subpoenas, and the Commission now seeks to

intervene to protect its interest in keeping the transcripts confidential. OFHEO has informed

Commission staff that it has conferred with counsel for Raines, Howard, and Spencer and that

they are planning to file a motion to compel for the transcripts.

## ARGUMENT

**I.    THE COMMISSION CAN INTERVENE AS OF RIGHT IN THIS PROCEEDING TO PROTECT ITS INTEREST IN ITS TRANSCRIPTS.**

The Commission moves to intervene as of right pursuant to Rule 24(a) of the Federal

Rules of Civil Procedure because it has an interest in protecting its transcripts of investigative

testimony taken during an ongoing investigation. Rule 24(a)(2) permits intervention as of right

where "the applicant claims an interest relating to the property or transaction which is the subject

of the action and the applicant is so situated that the disposition of the action may as a practical

matter impair or impede the applicant's ability to protect that interest, unless the applicant's

interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).

Rule 24(a)(2) permits third parties to intervene in discovery disputes when the

requirements of the rule have been met. *See United States v. AT&T,* 642 F.2d 1285 (D.C. Cir.

1980) (permitting MCI to intervene to assert the work product doctrine); *Alexander v. FBI,* 186

F.R.D. 21 (D.D.C. 1998) (permitting the President of the United States to intervene to preserve

the protections afforded by his attorney-client privilege and the work product doctrine). The

District of Columbia Circuit has explained that "[w]ithout the right to intervene in discovery

proceedings, a third party with a claim of privilege in otherwise discoverable material 'could

suffer the obvious injustice of having his claim erased or impaired by the court's adjudication

without ever being heard.'" *Id.* at 1293 (quoting *Cascade Natural Gas Corp.  v. El Paso Natural*

*Gas Co.,* 386 U.S. 129, 145 (1967)).

Here, the Commission clearly has an interest in protecting investigative transcripts from an ongoing investigation that are being sought by both plaintiffs and defendants. Existing parties to the litigation cannot protect this interest because they are seeking disclosure of the Commission's investigative transcripts while the Commission seeks to protect them.[2] Without the right to intervene in this case, the Commission will lose the ability to assert its law enforcement privilege and protect investigative transcripts from its ongoing investigation.

**II.    ENTRY OF A PROTECTIVE ORDER BARRING DISCLOSURE OF COMMISSION TRANSCRIPTS IS NECESSARY TO PROTECT AN ONGOING COMMISSION INVESTIGATION.**

The law enforcement privilege authorizes withholding records or information compiled for law enforcement purposes when production of that information could reasonably be expected to interfere with enforcement proceedings. *See Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C. Cir. 1984); *Black v. Sheraton,* 564 F.2d 531 (D.C. Cir. 1977).[3] That privilege protects the Commission's transcripts from disclosure in this proceeding.

---

[2] OFHEO also cannot adequately protect the transcripts because the relevant privilege belongs to the Commission and requires consideration of harm to the Commission which is conducting an investigation that is separate from and independent of any OFHEO proceedings.

[3] Congress recognized the need for this privilege by incorporating a similar provision as Exemption 7 of the Freedom of Information Act. 5 U.S.C. 552(b)(7). Exemption 7 covers "records or information compiled for law enforcement purposes" under six specified conditions. The condition relevant here authorizes withholding to the extent that production of such information "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. 552(b)(7)(A).

A.     **The Commission's Transcripts of Investigative Testimony from an Ongoing Investigation Come Within the Law Enforcement Privilege.**

The Commission has satisfied the three requirements necessary to sustain a claim of the law enforcement privilege. First, it has satisfied the requirement that "there must be a formal claim of privilege by the head of the department having control over the requested information." *See In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (listing requirements). As recognized in *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1308 (Fed. Cir. 2006), an agency may delegate to appropriate staff the authority to invoke governmental privileges on the agency's behalf. *See also In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, 1987 WL 20408, at 7 (N.D. Ill. 1987) (permitting responsible agency official to assert governmental privileges on the agency's behalf); *Founding Church of Scientology, Inc. v. FBI*, 104 F.R.D. 459, 465 (D.D.C. 1985) (requiring the head of the agency to review privileged material before asserting the privilege is "an unwarranted imposition on the time of the heads of departments and agencies, who need to be free to devote their time to major policy issues and the management of their departments and agencies"). Here, the agency has delegated this responsibility to the Associate General Counsel for Litigation and Administrative Practice (currently Richard M. Humes). *See* Declaration of Nancy M. Morris, Secretary of the Commission ¶ 3 (Attachment 6). Humes has asserted the law enforcement privilege on behalf of the Commission for the transcripts from *In the Matter of Federal National Mortgage Association*. Morris Decl. ¶ 3.

Second, the Commission has satisfied the requirement that "assertion of the privilege must be based on personal consideration" by the person asserting the privilege. *Sealed Case*, 856

F.2d at 271. Humes has given personal consideration to the matter and considered the potential

harm of releasing the transcripts of Commission investigative testimony at issue here. Morris

Decl. ¶¶ 3, 4.

Third, the Commission has satisfied the requirement that "the information for which the

privilege is claimed must be specified, with an explanation why it properly falls within the scope

of the privilege." *Sealed Case*, 856 F.2d at 271. The Commission has specified that it is

asserting the law enforcement privilege over the 57 investigative transcripts currently in

OFHEO's possession from the investigation in *In the Matter of Federal National Mortgage*

*Association* in the possession of OFHEO. Morris Decl. ¶ 3. The Commission has also explained

that those transcripts are privileged because they are from an ongoing investigation, and

production of the transcripts could impair future Commission enforcement proceedings by

prematurely disclosing what information and evidence the Commission has obtained. Morris

Decl. ¶ 4. Premature disclosure raises a significant danger that persons interested in the outcome

of the investigation will interfere with the Commission's efforts to obtain additional information

and evidence and will have access to evidence before they are entitled to it. *Id.*; Cain Decl. ¶ 8-

10.

**B.    The Commission's Need to Protect the Transcripts Is Greater than the
Defendants' Need for Access.**

Because the law enforcement privilege is qualified, it is necessary to balance the public

interest in nondisclosure against the need of the requesting party for access to the privileged

information. *See Sealed Case*, 856 F.2d at 272 (citing *Black*, 564 F.2d at 545; *Friedman*, 738

F.2d at 1341). This Circuit has said that the following factors are illustrative of the factors the

district court must consider:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Sealed Case*, 856 F.2d at 272 (citing *Friedman,* 738 F.2d at 1342-43; *Frankenhauser,* 59 F.R.D. at 344).

Several of those factors weigh strongly in favor of protecting the transcripts from disclosure. First, the second, fifth, sixth, and seventh factors require consideration of ongoing government investigations and proceedings. At this time, the Commission has an ongoing investigation into potential securities law violations involving individuals and entities associated with Fannie Mae. Cain Decl. ¶ 2. Although it previously brought an action against Fannie Mae, that matter was filed as a settled matter, and Fannie Mae did not receive any of the documents at issue (or any other investigative files) in connection with the matter. *Id.* at ¶ 5. Commission staff is now investigating whether other individuals or entities may have violated the federal securities law, and the Commission staff is actively considering whether to seek to bring additional enforcement actions.[4] *Id.* at ¶ 8. In connection with those deliberations, the staff is

---

[4] Although OFHEO has already brought an administrative claim against the defendants in the instant case who have requested the transcripts, the existence of that proceeding is not relevant here and does not alter the balancing in favor of either party. The defendants' need for

also considering whether it needs to take further investigative testimony. *Id.*

Releasing the transcripts of Commission investigative testimony sought here could significantly interfere with the Commission's investigation and with any subsequent enforcement proceedings. Defendants in this proceeding could be defendants in a Commission proceeding, so obtaining the transcripts would enable them to know the identities of the witnesses who testified and whether they are cooperating, the questions Commission investigators asked (and did not ask) witnesses, and the evidence those witnesses did (and did not) provide.[5] *See* Cain Decl. ¶¶ 8-10. Release of this information could reveal the nature, scope, direction, focus, or strategy of the Commission's ongoing enforcement efforts. *Id.* at ¶ 10. Revelation of this type of information could provide other witnesses and entities whose transactions are being scrutinized with information that could help them thwart the Commission's ongoing investigatory efforts. *Id.* In cases under the FOIA, courts have recognized the harms from premature disclosure of investigatory documents like the transcripts at issue here. The harms they have recognized include the following: (1) witness intimidation; (2) chilling investigations by making third parties reluctant to provide information; (3) giving a suspected violator early access to information in the case against it, allowing it to construct bogus defenses and to manufacture or destroy evidence; (4) revealing the scope, direction or focus of law enforcement investigative

---

the transcripts in the OFHEO administrative proceeding is not relevant in this proceeding.

[5] Because the Commission's primary concern here is disclosure to persons being investigated, disclosure to another entity engaged in law enforcement activities such as OFHEO pursuant to assurances of confidentiality cannot be deemed a relevant precedent or a waiver of the privilege. An agency does not waive its privileges by providing a copy of the material to another entity engaged in law enforcement activities. *See United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *Audio Technical Services, Ltd. v. Dep't of the Army*, 487 F. Supp. 779, 783 (D.D.C. 1979).

efforts; (5) revealing the agency's impressions of testimony; and (6) hindering the government's ability to shape and control its investigations. *See generally North*, 881 F.2d at 1097-98 (collecting and citing cases for above propositions); *see also Swan v. SEC*, 96 F.3d 498, 499 (D.C. Cir. 1996); *New England Med. Ctr. v. NLRB*, 548 F.2d 377, 382-83 (1st Cir. 1977).

The ninth and tenth factors – which require consideration of whether the requesting parties could get the information from other sources and whether the information is important to those parties' cases – also weigh strongly in favor of the Commission. The Commission is not aware of any showing that the parties in this case have attempted to obtain any information in discovery and have not been able to. Because this case has been pending as long as the Commission's investigation and Fannie Mae conducted an extensive internal investigation that is publicly available, there is every reason to believe that the parties could obtain in discovery all the information the Commission has obtained. Thus, the real benefit to the parties – and particularly to the defendants – is not that they could obtain the facts revealed in the Commission's transcripts but that they could see the Commission's thinking, analysis, and strategy by reviewing the 57 transcripts of investigative testimony, indicating that the fourth factor (requiring consideration of what type of information is being sought) also supports non-disclosure.[6] It is also significant here that the Commission's investigation itself is in no way

---

[6] To the extent it appears that the defendants are seeking discovery in this case not because of a need in this case but because they want to evaluate the Commission's evidence and prepare for any Commission action against them, the eighth factor weighs heavily against them, as they would not be acting in good faith. A party cannot seek discovery where its real purpose is to use any information obtained for other litigation. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992); *Campbell v. Eastland*, 307 F.2d 478, 480, 482 (5th Cir. 1962) (plaintiff improperly used civil action as tactic to gain otherwise unavailable information on criminal case); *Empire Liquor Corp. v. Gibson Distilling Co.*, 2 F.R.D. 247, 248 (S.D.N.Y. 1941).

relevant to the instant action as far as we are aware. Only the events the Commission has investigated are relevant. In similar circumstances, courts have recognized that investigative files have limited importance to the requesting parties' cases. *See, e.g., DGM Investments v. New York Futures Exchange*, 224 F.R.D. 133, 141 (S.D.N.Y. 2004); *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 497 (S.D.N.Y. 1985).

The remaining factors (one and three) have little relevance to this case or do not strongly favor either the Commission or the requesting parties. Thus, the balancing strongly favors protecting the transcripts at this time. The requesting parties' general desire to obtain every piece of information they can obtain is simply not a sufficient basis for ignoring the important protections provided by the law enforcement privilege.

* * * * * *

## CONCLUSION

For the reasons stated herein, this Court should allow the Commission to intervene and enter an order protecting the Commission's investigative transcripts from disclosure in the above-captioned private action.

Respectfully submitted,


    /s/ Kathleen Cody
MELINDA HARDY
Assistant General Counsel
D.C. Bar # 431906

KATHLEEN CODY
Senior Counsel
D.C. Bar # 412517

Counsel for SEC
100 F Street, N.E.
Washington, D.C. 20549-9612
Tel: 202-551-5126
Fax: 202-772-9263

May 25, 2007