## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>XEROX CORPORATION, KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER and PHILIP FISHBACH,<br><br>   Defendants. | 3:00-CV-1621 (AWT)<br>**ALL CASES** |

## DEFENDANTS' POSITION STATEMENT IN OPPOSITION TO PLAINTIFFS' PROPOSAL REGARDING THE NUMBER AND LENGTH OF DEPOSITIONS

   Defendants Xerox Corporation ("Xerox"), KPMG LLP ("KPMG"), Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler and Philip Fishbach (collectively "Defendants") respectfully submit this statement in support of their position with respect to the appropriate number and length of depositions in this matter. Defendants respectfully request an order allowing each side to take up to 40 days of deposition testimony, measured in half-day (3.5 hour) increments, with no deposition to exceed one day of seven hours, except upon agreement of the parties or by leave of Court upon good cause shown.

**PRELIMINARY STATEMENT**

Plaintiffs have requested that the Court permit them to take 70 days of deposition testimony in this matter, a number far in excess of the limits set forth in the Federal Rules and unsupported by the circumstances presented here.  In an effort to reach a compromise on this issue, Defendants substantially increased their proposal regarding the appropriate number of days of deposition testimony and also agreed to permit half-day depositions in order to increase the number of witnesses Plaintiffs would be able to depose.  In contrast, Plaintiffs have increased the number of deposition days they previously sought in submissions to the Court.  In light of Plaintiffs' possession of an extensive record of deposition testimony from prior SEC matters involving issues substantially identical to those at issue here, as well as the comparatively small number of witnesses the SEC deemed it necessary to depose during those matters, Plaintiffs have failed to justify their need for anywhere near the number of deposition days they seek.

**BACKGROUND**

On November 18, 2005, the parties jointly submitted to the Court a Rule 26(f) Report of the Parties' Planning Meeting ("Rule 26(f) Report").  As reflected in the Rule 26(f) Report, the parties disagreed on a number of issues, including the number and length of depositions to be taken in this matter.  On December 2, 2005, the parties filed Position Statements setting forth their respective positions regarding those outstanding issues.

At that time, Plaintiffs requested an order permitting up to 50 days of deposition testimony per side, measured in half-day increments.  Defendants acknowledged the complexity of this matter and submitted that an order permitting 25

depositions per side -- 15 more than the presumptive limit set forth in the Federal Rules -- would be reasonable.  As provided under the Federal Rules, Defendants argued that depositions should be measured by deponent (rather than in half-days) and limited to one, seven-hour day.

Subsequent to the submission of the parties' Position Statements, the parties informed the Court of their agreement temporarily to put aside the disputes regarding the Rule 26(f) Report while they engaged in a process of voluntary discovery.  Through this process, Defendants produced to Plaintiffs several million pages of documents which previously had been produced during the Securities and Exchange Commission's investigation of Xerox (the "SEC Investigation") and during <u>SEC v. KPMG</u>, 03-CV-0671 (DLC) (S.D.N.Y.) (the "SEC Litigation").  Defendants also produced transcripts of all of the deposition testimony elicited in those matters.[1]

Beginning in March 2007, the parties engaged in a series of meet-and-confer negotiations to work toward resolution of the remaining disputes regarding the Rule 26(f) Report.  In an attempt to reach a compromise on the number and length of depositions in this matter, Defendants offered to allow up to 40 days of deposition testimony per side and to withdraw their objection to counting depositions in half-day (3.5 hour) increments.[2]  In making that proposal, Defendants increased their previous position by 15 depositions and moved to within 10 days of the 50 deposition days

---

[1] Although Plaintiffs state that fact discovery is scheduled to close on November 21, 2007, it appears that the Court's clerk calculated this date based upon the parties' representation in the Rule 26(f) Report that they anticipated that fact discovery would end within 24 months of the date of that report.  Given the amount of time that Defendants agreed to allow Plaintiffs to review Defendants' extensive production, and the fact that, with only five months remaining before the November 21 deadline, depositions of fact witnesses have not commenced, it is almost certain that the deadline will need to be extended.

[2] Thus, the parties are not in dispute regarding the measurement of depositions in half-day (3.5 hour) increments.

initially requested by Plaintiffs.  Moreover, Defendants' agreement to measure

depositions in half-day increments (with each deponent's deposition lasting no longer

than one full day) presented Plaintiffs with the opportunity to depose significantly more

than 40 people, perhaps as many as 70 to 80.  Rather than work toward a compromise on

this issue, Plaintiffs actually <u>increased</u> the number of deposition days that they demanded

from 50 to 70 deposition days.[3]

### ARGUMENT

The extensive record of testimony that Defendants have produced from the

SEC Investigation and SEC Litigation -- which together addressed every significant issue

raised in this matter -- reduces both the number and length of depositions that might

otherwise have been necessary.  As a result, Defendants' proposal of 40 days of

deposition testimony per side is reasonable, would promote judicial efficiency and would

prevent the very discovery abuses that the Federal Rules are intended to foreclose.  As

demonstrated below, Plaintiffs' proposal is unreasonable and without support.[4]

I.      <u>Plaintiffs' Request for 70 Deposition Days is Excessive and Unreasonable</u>

Defendants' proposal to permit 40 days of depositions per side recognizes

the reality that this is a complex matter that will require more than the 10 depositions

provided for under the Federal Rules.  Plaintiffs' claim that 40 deposition days per side is

insufficient fails because it is based upon mischaracterizations of:  (1) the number of

---

[3] On June 13, 2007, Plaintiffs noticed two multi-day depositions in this matter, despite the fact that the issue of whether depositions may exceed one seven-hour day is currently pending before the Court.  (<u>See</u> Exhibit A to the Declaration of Kevin J. Orsini, dated June 22, 2007 (hereinafter "Orsini Decl. Ex. __").)

[4] Defendants incorporate by reference those portions of their December 2, 2005, Position Statements that addressed the issue of the number and length of depositions.

depositions that were necessary in the SEC matters; (2) the nature of the SEC matters; and (3) the case law upon which Plaintiffs rely.

First, in previous correspondence and their submission to the Court, Plaintiffs claim that they will need 70 days of deposition testimony to depose as many as 85 different witnesses.  (Pl.'s Pos. Stmt. 7-8 and Ex. 9.)[5]  This request significantly exceeds the number of depositions that the SEC deemed necessary in the Xerox-related matters.  While Plaintiffs state that 66 "SEC witnesses" were deposed during the SEC Investigation and the subsequent SEC Litigation concerning Xerox's accounting practices (Pl.'s Pos. Stmt. 7), that number includes not only the witnesses deposed by the SEC during the course of those matters, but also those witnesses deposed by the KPMG defendants in the SEC Litigation.[6]  In fact, the SEC deposed only a total of 48 witnesses over the course of both its investigation and the subsequent litigation -- a little more than half of the number of witnesses that Plaintiffs claim will be necessary here.  Defendants' proposal to permit 40 deposition days of testimony per side -- which easily could permit Plaintiffs to depose at least 50 people -- is therefore supported by the record of those related matters.

Moreover, while the SEC deposed 39 witnesses during the course of its investigation of Xerox's accounting practices, it noticed the depositions of only 20 witnesses in the subsequent SEC Litigation.  Thus, with the benefit of extensive prior testimony to guide its examinations, the SEC found it necessary to depose only about one fourth of the individuals whom Plaintiffs claim that they will need to depose here, and

---

[5] Citations to "Pl.'s Pos. Stmt. __" refer to Plaintiffs' Revised Position Statement on Paragraph V.E 19 of the Rule 26(f) Report of the Parties' Planning Meeting, dated June 15, 2007, and the exhibits thereto.

less than <u>half</u> of the number of people that Defendants have offered to permit.  Just as the investigation transcripts helped to narrow the focus of depositions in the SEC Litigation, the investigation and litigation transcripts will allow Plaintiffs to target their deposition discovery in <u>Carlson</u>.[7]

        <u>Second</u>, in an attempt to obtain unnecessary depositions, Plaintiffs argue that the Third Consolidated Amended Complaint ("Complaint") contains allegations substantially beyond the scope of those with which the SEC was concerned.  (Pl.'s Pos. Stmt. 8.)  This claim is without merit.  Indeed, both examples provided by Plaintiffs in support of this assertion involve matters that explicitly were included in the SEC proceedings.  (<u>Id.</u>)  Plaintiffs' allegations of fraud in Xerox's Mexican subsidiary were the focus of nearly five months of the SEC Investigation and were included in the SEC's complaint against Xerox.  Plaintiffs' own list of potential deponents (Pl.'s Pos. Stmt. Ex. 9) describes at least four individuals (Rafael Florez, Sandeep Thakore, Antonio Robles, and Erasmo Villafana) whom the SEC deposed regarding the precise issues contained in the Complaint with respect to Xerox's Mexican subsidiary.  Similarly, the issue of churning was the subject of deposition testimony both during the SEC Investigation and the SEC Litigation.

        Indeed, Plaintiffs' own actions with respect to Defendants' document production in this matter contradict their assertion that the allegations in the Complaint significantly exceed the scope of the SEC matters.  Aside from a small (and largely non-

---

[6] Further, excluding the testimony of the 5 experts that were deposed during the SEC Litigation, the total number of fact witnesses deposed by either side during those matters was 61.

[7] Plaintiffs' assertion that the SEC transcripts will not reduce their need for deposition testimony because they present potential admissibility issues (Pl.'s Pos. Stmt. 8-9) is unpersuasive.  Those same potential admissibility issues were present in the SEC Litigation, yet the existence of prior testimony greatly reduced the number of depositions necessary in that case.

substantive) production by Xerox of approximately 1,400 pages in response to Plaintiffs'

document requests, and about two boxes of material from the individual Defendants, the

document production which Plaintiffs sought and deemed sufficient in this matter (see

Pl.'s Pos. Stmt. Ex. 12) consists entirely of materials that previously had been produced

during the SEC Investigation or the SEC Litigation (in addition to the pleadings and

transcripts from those matters).

   Now, despite the fact that Plaintiffs deemed the documents produced in

the SEC matters sufficient for their purposes here, they seek to expand dramatically the

scope of deposition discovery without a corresponding distinction between the

substantive scope of this case and the SEC matters.[8]  In fact, Plaintiffs have identified no

less than 36 potential deponents whom the SEC did not deem it necessary to depose

during nearly six years of investigation and litigation.  (See Orsini Decl. Ex. B.)

   Third, the cases upon which Plaintiffs rely do not support their request for

70 days of deposition testimony.  As an initial matter, the four cases that appear to permit

the greatest number of depositions are readily distinguishable.  For example, in In re

Fannie Mae Securities Litigation, Civ. No. 04-1639-RJL, the SEC's recent filing of a

motion seeking protection of non-public investigative testimony taken by the SEC during

its prior investigation of Fannie Mae (see Orsini Decl. Ex. C) indicates that the deposition

protocol cited in Plaintiffs' brief (Pl.'s Pos. Stmt. Ex. 1) did not anticipate that the parties

would have access to prior deposition testimony, as they do in this case.  Moreover, the

deposition protocol in that case contemplated a total of 140 days of deposition testimony

---

[8] Although Plaintiffs claim that the requirement for them to demonstrate loss causation in this matter
distinguishes it from the SEC proceedings, Defendants fail to see how the testimony of the witnesses in
question here could be relevant to loss causation.

for a number of consolidated actions, including derivative, securities and ERISA litigations.  See In re Fed. Nat'l Mortgage Ass'n Sec., Derivative, and ERISA Litig. ("In re Fannie Mae"), MDL No. 1688 (D.D.C. Dec. 12, 2006) (Pl.'s Pos. Stmt. Ex. 1).

       The other cases cited by Plaintiffs that permit the largest number of depositions each involve a significantly greater number of defendants than are present in this case.  See In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281 (S.D.N.Y. 2003) and (Pl.'s Pos. Stmt. Ex. 2) (permitting 280 total depositions where plaintiffs sued 55 underwriters, 309 issuers and thousands of individual defendants); In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F. Supp. 1379 (D. Ariz. 1989) (allowing over 300 depositions in a case involving more than 100 defendants, including 19 public utilities and 68 other participants in the relevant market, as well as several bond underwriters and securities rating agencies); Spicer v. Chicago Bd. Options Exch., 844 F. Supp. 1226 (N.D. Ill. 1993) (76 depositions taken in a case involving more than 35 defendants). Equally important, Plaintiffs fail to introduce evidence that the parties to any of the litigations cited in their Position Statement had the benefit of the extensive record of prior testimony that exists here and distinguishes this case from those upon which Plaintiffs rely.

       In sum, Plaintiffs have failed to provide any basis for their request to take 70 days of deposition testimony, which they suggest would result in at least 85 depositions.  Consistent with the unique facts presented here and production of the extensive record of prior testimony, Defendants' proposal of 40 days of deposition testimony (i.e., up to 80 depositions) is sufficient.

II.    The Length of Depositions Should Not Exceed the Limits Established by the Federal Rules

As with Plaintiffs' request for 70 deposition days, their request for multi-day depositions ignores the circumstances of this case and is likely to lead to the very inefficiencies and abuses that the Federal Rules were amended to prevent.

First, rather than supporting Plaintiffs' request for multi-day depositions, Defendants' production of the testimony from the SEC proceedings establishes that the presumptive limit of seven hours should be sufficient in almost every instance. Based upon Plaintiffs' list of potential deponents, the vast majority of the witnesses who will be deposed in this matter already have provided multiple days of testimony during both the SEC Investigation and the SEC Litigation. Plaintiffs' review of that testimony should permit them to develop targeted and efficient examinations that avoid subjects with respect to which a particular witness has expressed a lack of knowledge. While the SEC found it necessary to take multi-day depositions of various witnesses during the course of its investigation to establish even a basic description of the relevant issues, Plaintiffs now have the benefit of nearly six years of investigation and litigation on the very topics that form the basis of Plaintiffs' Complaint.[9]

The deposition schedule from the SEC Litigation further undermines Plaintiffs' claim. Plaintiffs' apparent assertion that the SEC took a number of multi-day depositions during the SEC Litigation simply is not true.[10] While most of the witnesses

---

[9] Although Plaintiffs cite to various securities litigations in which courts have permitted multi-day depositions, there is no suggestion (either in those cases or by Plaintiffs) that the plaintiffs in any of those actions had access to transcripts of extensive prior testimony given by the majority of the relevant witnesses concerning the same issues that formed the basis of those securities litigations. (See Pl.'s Pos. Stmt. 4-5.)

[10] In fact, the only fact witness who was deposed for more than one day by either side in the SEC Litigation was Thomas Yoho, who was deposed for one day by the SEC early in the litigation and for a second day

in that case were deposed for two days, one day was reserved for direct examination and the other was reserved for cross examination. Presumably, the existence of the prior testimony for many witnesses eliminated the need for any party to conduct multi-day depositions (if there ever was such a need). Plaintiffs have not presented any compelling justification for their claim that they will need to depose as many as 15 witnesses for more than one day each where the presumptive limit of seven hours per witness was sufficient for the SEC and the defendants in the SEC Litigation.[11]

   Second, Plaintiffs' request for an order permitting up to 15 depositions of unlimited duration is likely to result in undue costs and delays. For example, under Plaintiffs' proposal, Plaintiffs would be permitted to depose one witness for a nearly unlimited amount of time, regardless of need. It is precisely for these reasons that depositions are permitted to extend beyond one day of seven hours only upon stipulation of the parties or a showing of good cause. See, e.g., Fed. R. Civ. P. 30 advisory committee's notes ("The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."); New Colt Holding Corp. v. RJG Holdings of Fla., Inc., No. Civ. 302CV173PCD, 2003 WL 22326978, at * 1 (D. Conn. Mar. 27, 2003) (granting extensions only because a substantial portion of the questioning had been done by a co-defendant with interests not aligned with those of the moving defendant); LaPlante v. Estano, 226 F.R.D. 439, 440

---

over a year later after he was added as a defendant in that action. Moreover, Yoho had not previously been deposed in the SEC Investigation.

[11] Indeed, a recent deposition notice served by Plaintiffs provides a direct example of Plaintiffs' intent to depose witnesses for more than one day where one day was sufficient for each side in the SEC Litigation. (See Orsini Decl. Ex. A). In that notice, Plaintiffs state that they will depose Vin Colman (an audit partner at PwC) and James Bingham (a former Xerox employee) for two days each. In the SEC Litigation, both individuals were subject only to one day of direct examination and one day of cross examination. In the

(D. Conn. 2005) (granting extension only because plaintiff had been uncooperative and unilaterally had curtailed the initial deposition).

Defendants expect that the parties will cooperate in good faith to permit the depositions of particular witnesses to extend beyond the presumptive time limitation where it is evident that such additional time is necessary for a fair examination of the deponent.  Even the case law cited by Plaintiffs (Pl.'s Pos. Stmt. 11) recognizes that "it is preferable for a party to first proceed with the deposition under available limits because only then will it be evident whether additional time really is necessary".  Schmidt v. Levi Strauss & Co., No. C04-01026 (RMW)(HRL), 2006 WL 2192054, at *2 (N.D. Cal. Aug. 1, 2006).  Numerous courts and commentators have endorsed this approach.  See, e.g., Malec v. Trustees of Boston College, 208 F.R.D. 23, 24 (D. Mass. 2002); 7 James Wm. Moore et al., Moore's Federal Practice § 30.45 (3d ed. 2007) ("A party generally should not seek additional time for a deposition before the deposition is taken.").  Plaintiffs have failed to demonstrate why this preferred approach, which promotes efficiency, should not govern discovery in this matter.

---

case of James Bingham, his deposition for one day by each side in the SEC Litigation followed five days of testimony that he provided during the SEC Investigation.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court permit the parties to take 40 days of deposition testimony per side, measured in half-day (3.5 hour) increments, with no deposition to exceed one day of seven hours, except upon agreement of the parties or by leave of Court upon good cause shown.

CRAVATH, SWAINE & MOORE LLP,

by       /s/ Sandra C. Goldstein
            Evan R. Chesler (ct 03177)
            Sandra C. Goldstein (ct 24019)
            Members of the Firm

          Worldwide Plaza
          825 Eighth Avenue
          New York, NY 10019
          (212) 474-1000

          Attorneys for Defendant
          Xerox Corporation

DAY PITNEY LLP,

by

_/s/ Thomas D. Goldberg / HV_
Thomas D. Goldberg (ct 04386)
A member of the Firm
Terence J. Gallagher (ct 22415)

One Canterbury Green
Stamford, CT 06901
(203) 977-7300

Attorneys for Defendants
Anne Mulcahy, G. Richard Thoman
and Philip Fishbach

WILMER CUTLER PICKERING HALE and
DORR LLP,

by

_/s/ John Valentine / HV_
John Valentine (ct 25941)
A member of the Firm
Heather A. Jones (ct 24194)

1875 Pennsylvania Ave, NW
Washington, DC 20006
(202) 663-6000

Alfred U. Pavlis (ct 08603)
DALY & PAVLIS, LLC
107 John Street
Southport, CT 06890
(203) 255-6700

Attorneys for Defendants Paul A.
Allaire, Barry D. Romeril and
Gregory Tayler

13

HOGAN & HARTSON LLP,

by

_/s/ George A. Salter / HV_

W. Sidney Davis, Jr. (phv0738)
George A. Salter (phv0741)
Members of the Firm
Mark J. Lemire (phv0739)

875 Third Avenue
New York, NY 10022
(212) 918-3000

Stuart J. Baskin (ct 25986)
Seth M. Kean (ct 24587)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

Attorneys for Defendant KPMG LLP

Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
800 Long Ridge Road
Stamford, CT 06904
(203) 968-3000
Attorney for Xerox Corporation

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 22, 2007, a copy of the foregoing Defendants' Position Statement in Opposition to Plaintiffs' Proposal Regarding the Number and Length of Depositions, along with the accompanying Compendium of Unreported Authority and Secondary Sources Cited therein and Declaration of Kevin J. Orsini, were filed electronically or served by mail on any party required to be served who is unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any party required to be served who is unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.


  _/s/ Sandra C. Goldstein_____
Sandra C. Goldstein (ct 24019)

Cravath, Swaine & Moore LLP
Worldwide Plaza
  825 Eighth Avenue
   New York, NY 10019
     Phone: (212) 474-1000
       Fax: (212) 474-3700
          Email: sgoldstein@cravath.com