**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) 3:00-CV-1621 (AWT) |

RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated,

                          Plaintiffs,

        v.

XEROX CORPORATION, KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER AND PHILIP FISHBACH,

                          Defendants.

3:00-CV-1621 (AWT)

This document relates to:

| | | |
|---|---|---|
| 00-cv-01758 | 00-cv-01908 | 01-cv-00449 |
| 00-cv-01779 | 00-cv-01916 | 01-cv-00497 |
| 00-cv-01792 | 00-cv-01967 | 01-cv-00583 |
| 00-cv-01795 | 00-cv-02029 | 01-cv-00584 |
| 00-cv-01824 | 01-cv-00244 | 01-cv-00591 |
| 00-cv-01846 | 01-cv-00285 | 01-cv-00614 |
| 00-cv-01883 | 01-cv-00341 | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation") is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is entered into between Plaintiffs Louisiana State Employees' Retirement System, Thomas Zambito and Dr. Paul Dantzig (collectively "Lead Plaintiffs") on behalf of the Class (as defined in Paragraph 1 below), on the one hand, and Defendants Xerox Corporation ("Xerox"), Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler, Philip Fishbach (the "Individual Defendants" and, together with Xerox, the "Xerox Defendants") and KPMG LLP ("KPMG") (collectively with the Xerox Defendants, the "Defendants"), on the other hand, by and through their respective counsel.

WHEREAS:

    A.    The above-captioned consolidated action was initially filed in this Court on or about August 24, 2000, and is hereinafter referred to as the "Action." The Action and all actions consolidated into it (with the exception of *FSBA, et al. v. Xerox Corp., et al.,* No. 3:02-CV-1303

(D. Conn.) (AWT)) are to be settled hereby and dismissed with prejudice upon final approval of the Settlement;

B.      The operative Third Consolidated Amended Complaint dated August 7, 2002 (the "Complaint") filed in the Action generally alleges, among other things, that Defendants issued materially false and misleading press releases, financial statements or other statements regarding Xerox's financial condition during the period February 17, 1998 through June 27, 2002 (the "Class Period") in a scheme to artificially inflate the value of Xerox's securities;

C.      The Complaint further alleges that Lead Plaintiffs and other Class Members purchased Xerox securities during the Class Period at prices artificially inflated as a result of the Defendants' dissemination of allegedly materially false and misleading statements regarding Xerox in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder;

D.      The Defendants have denied and continue to deny any wrongdoing whatsoever and this Stipulation, whether or not consummated, any proceedings related to any settlement, or any terms of any settlement, whether or not consummated, shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have or could have asserted;

E.      Lead Plaintiffs, Defendants and their counsel shall not make any applications for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure or other court rule or statute with respect to any claims or defenses asserted in this Action. The parties to this Stipulation agree that the Action is being voluntarily settled after advice of counsel. This

- 2 -

Stipulation shall not be construed or deemed to be a concession by any Plaintiff of any infirmity in the claims asserted in the Action;

F.     Plaintiffs' Co-Lead Counsel represent that they have conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Complaint. Plaintiffs' Co-Lead Counsel represent that they have analyzed the evidence adduced during pretrial discovery and have researched the applicable law with respect to the claims of Lead Plaintiffs and the Class against the Defendants and the potential defenses thereto. In so doing, Plaintiffs' Co-Lead Counsel represent that they have reviewed over 3.5 million pages of documents and deposition transcripts received from the Defendants in pretrial discovery proceedings and, pursuant to the deposition program approved by this Court, represent that they have prepared for taking 50 depositions of fact witnesses. At the time the Lead Plaintiffs and the Defendants reached a resolution, Plaintiffs' Co-Lead Counsel had taken seven depositions over the course of eight deposition days. Additionally, Plaintiffs' Co-Lead Counsel represent that they have consulted regularly with several experts regarding lease accounting issues, loss causation and damages issues;

G.     Lead Plaintiffs, by their counsel, have conducted numerous discussions and arm's length negotiations with counsel for Defendants with respect to a compromise and settlement of the Action as against the Defendants with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Class. These discussions spanned several years and involved the assistance of several different mediators for discussions with different defendants at different times, including Eric D. Green, Esq., Resolutions, LLC, and Robert A. Meyer, Esq., who acted as a mediator during the final mediation session;

H.      Based upon their investigation, pretrial discovery, consultation with experts, and the assistance of different mediators as set forth above, Plaintiffs' Co-Lead Counsel represent that they have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiffs and the Class, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that Lead Plaintiffs and the members of the Class will receive from settlement of the Action as against the Defendants, (b) the attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation; and

I.      Defendants represent that they have concluded that further conduct of this Action would be protracted and expensive, and it is desirable that this Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation to limit further expense, inconvenience and distraction; to dispose of the burden of protracted litigation; and to permit the operation of Xerox's and KPMG's business without further distraction and diversion of the companies' executives and other personnel with respect to the matters at issue in this Action.  Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action.

NOW THEREFORE, without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and among the parties to this Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from the

Settlement, that all Settled Claims (as defined below) as against the Released Parties (as defined below) and all Settled Defendants' Claims (as defined below) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## CERTAIN DEFINITIONS

1.  As used in this Stipulation, the following terms shall have the following meanings:

(a)  "Authorized Claimant" means a Class Member who submits a valid Proof of Claim form to the Claims Administrator.

(b)  "Cash Settlement Amount" means the amounts specified in ¶ 4 hereof.

(c)  "Claims Administrator" means the firm which shall administer the Settlement, to be selected by Plaintiffs' Co-Lead Counsel, subject to approval by the Court.

(d)  "Class" means, for the purposes of this Settlement only, all persons and/or entities that purchased Xerox common stock and/or bonds during the period from February 17, 1998 through June 27, 2002 inclusive, and whose transactions in Xerox common stock and/or bonds during the Class Period resulted in a loss. Excluded from the Class are the Defendants, their officers and directors, members of their immediate families (parents, spouses, siblings, and children) and their agents and affiliates. Also excluded from the Class are those plaintiffs in the action entitled *FSBA, et al. v. Xerox Corp., et al.*, No. 3:02-CV-1303 (D. Conn.) (AWT), as well as any putative Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice as that term is defined in ¶ 1(n) below. "Class Member" means a member of the Class.

(e)  "Class Period" means, for the purposes of this Settlement only, the period from February 17, 1998 through June 27, 2002 inclusive.

- 5 -

(f)      "Defendants" means Xerox Corporation, Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler, Philip Fishbach and KPMG LLP.

(g)      "Defendants' Counsel" means (i) the law firm of Cravath, Swaine & Moore LLP for Defendant Xerox Corporation, (ii) the law firm of Day Pitney LLP for Defendants Anne Mulcahy, G. Richard Thoman, and Philip Fishbach, (iii) the law firm of Wilmer Cutler Pickering Hale and Dorr LLP for Defendants Paul A. Allaire, Barry D. Romeril, and Gregory Tayler, and (iv) the law firm of Hogan & Hartson LLP for Defendant KPMG LLP.

(h)      "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in ¶ 26 below.

(i)      "Final," with respect to the Order and Final Judgment, means: (a) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal from the Court's entry of the Order and Final Judgment substantially in the form of Exhibit B hereto, i.e. thirty (30) days after entry of the Order and Final Judgment; or (b) if there is an appeal, the date of final dismissal of any appeal from the Order and Final Judgment, or the final dismissal of any proceeding on certiorari to review the Order and Final Judgment; or (c) the date of final affirmance on an appeal, if any, of the Order and Final Judgment, the expiration of the time to file a petition for a writ of certiorari, or the denial of a writ of certiorari to review the Order and Final Judgment, and, if certiorari is granted, the date of final affirmance of the Order and Final Judgment following review pursuant to that grant.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

- 6 -

(j)    "Gross Settlement Fund" means the Cash Settlement Amount plus any income or interest earned thereon.

(k)    "Individual Defendants" means Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler and Philip Fishbach.

(l)    "KPMG Released Parties" means KPMG and its past or present subsidiaries, parents, successors and predecessors, officers, partners, principals, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, advisors, and investment advisors, and any person, firm, trust, corporation, officer, director or other individual or entity in which KPMG has a controlling interest or which is related to or affiliated with KPMG, and the legal representatives, heirs, successors in interest and assigns of KPMG.

(m)    "Net Settlement Fund" has the meaning defined in ¶ 8 hereof.

(n)    "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit 1 to Exhibit A.

(o)    "Order and Final Judgment" means the proposed order to be entered approving the Settlement substantially in the form attached hereto as Exhibit B.

(p)    "Order for Notice and Hearing" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

(q)    "Plaintiffs' Counsel" means Plaintiffs' Co-Lead Counsel and all other counsel representing Class Member Plaintiffs in the Action.

(r)    "Plaintiffs' Co-Lead Counsel" means (i) the law firm of Berman DeValerio Pease Tabacco Burt & Pucillo, (ii) the law firm of Johnson & Perkinson, and (iii) the law firm of Milberg LLP.

(s)    "Publication Notice" means the summary notice of proposed Settlement and hearing for publication substantially in the form attached as Exhibit 3 to Exhibit A.

(t)    "Released Parties" means any and all of the Xerox Released Parties and any and all of the KPMG Released Parties.

(u)    "Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and Unknown Claims, (i) that have been asserted in this Action by any of the Class Members against any of the Released Parties, or (ii) that could have been asserted in any forum by any of the Class Members against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and relate to the purchase or acquisition of Xerox common stock and/or bonds during the Class Period, except that "Settled Claims" does not mean or include the "Specifically Excluded Claims" (as defined below).

(v)    "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law

or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Lead Plaintiffs, other Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement).

(w)    "Settlement" means the settlement contemplated by this Stipulation.

(x)    "Specifically Excluded Claims" means: (i) any and all claims related to Xerox common stock and/or bonds that have been asserted in *In re: Xerox Securities Litig.,* 3:99-CV-02374 (D. Conn.) (AWT); and (ii) any and all claims under the Employee Retirement Income Security Act of 1974 as amended that have been asserted in *In re Xerox Corp. ERISA Litig.,* 3:02-CV-1138 (D. Conn.) (AWT) (the "ERISA Case") on behalf of a purported class of participants and beneficiaries in the Xerox Corporation Profit Sharing and Savings Plan and/or the Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O.-C.L.C. (each, a "Plan"); provided, however, that Defendants shall be free to assert that any aggregate monetary recovery by any Plan or Participant therein as, or on behalf of, such alleged or potential class members for any period of time that includes the Class Period shall constitute an offset in the ERISA Case. Lead Plaintiffs shall not oppose such argument.

(y)    "Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and

all Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the

Effective Date, the Lead Plaintiffs and the Defendants shall expressly waive, and each Class

Member shall be deemed to have waived, and by operation of the Order and Final Judgment

shall have expressly waived, any and all provisions, rights and benefits conferred by any law of

any state or territory of the United States, or principle of common law, which is similar,

comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor at the
> time of executing the release, which if known by him or her must
> have materially affected his or her settlement with the debtor.

Lead Plaintiffs and Defendants acknowledge, and all other Class Members by operation of law

shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition

of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key

element of the Settlement.

   (z)  "Xerox Defendants" means Xerox and the Individual Defendants.

   (aa)  "Xerox Released Parties" means Xerox and any and all of the Individual

Defendants, their past or present subsidiaries, parents, successors and predecessors, officers,

partners, principals, directors, shareholders, agents, employees, attorneys, insurers, reinsurers,

advisors, and investment advisors, and any person, firm, trust, corporation, officer, director or

other individual or entity in which Xerox or any of the Individual Defendants has a controlling

interest or which is related to or affiliated with Xerox or any of the Individual Defendants, and

the legal representatives, heirs, successors in interest and assigns of Xerox or any of the

Individual Defendants.

**SCOPE AND EFFECT OF SETTLEMENT**

2.      Provided that this Stipulation is not entirely terminated or partially terminated by (i) Xerox on behalf of itself and the Individual Defendants or (ii) by KPMG; and provided that Lead Plaintiffs do not elect to entirely terminate the Stipulation as a result of such a partial termination; the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims.  In the event that either Xerox or KPMG elects to terminate the Stipulation, and Lead Plaintiffs do not elect to terminate the entire Stipulation as a result of such a partial termination, then the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action with respect to the non-terminating, settling defendant(s) only, and any and all Settled Claims as against the non-terminating, settling defendant(s) and either all the Xerox Released Parties or KPMG Released Parties as the case may be, and any and all Settled Defendants' Claims of the non-terminating, settling defendant(s), and shall not affect any claims by or between Lead Plaintiffs and the Class on the one hand and the terminating defendant(s) on the other hand.  In the event that either Xerox or KPMG exercises such an option to terminate, but the other does not, and Lead Plaintiffs do not thereafter terminate the entire settlement, then the settlement between the Class and the settling defendant(s) shall bar all claims for contribution arising out of the action:  (i) by any person or entity against the settling defendant(s); and (ii) by the settling defendant(s) against any person or entity, other than a person whose liability has been extinguished by the settlement of the settling defendant(s).  In those circumstances, any verdict or final judgment that is entered against the non-settling defendant(s) shall be reduced by the greater of:  (i) an amount that corresponds to the percentage

of responsibility of the settling defendant(s); or (ii) the amount paid to the plaintiff by the settling defendant(s).

3.    (a)    If there is no partial termination of this Stipulation, then upon the Effective Date of this Settlement, Lead Plaintiffs and all the other members of the Class on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall, with respect to each and every Settled Claim, release and forever discharge, and shall forever be enjoined from prosecuting, either directly, indirectly, representatively, derivatively or in any other capacity, any Settled Claims against any or all of the Released Parties.

(b)    If there is no partial termination of this Stipulation, then upon the Effective Date of this Settlement, each of the Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall release and forever discharge each and every of the Settled Defendants' Claims, and shall forever be enjoined from prosecuting, either directly, indirectly, representatively, derivatively or in any other capacity, the Settled Defendants' Claims against Lead Plaintiffs, any or all other Class Members and their counsel.

(c)    If there is a partial termination of this Stipulation by Xerox and the Stipulation is not otherwise terminated, then upon the Effective Date of this Settlement, Lead Plaintiffs and all the other members of the Class on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall, with respect to each and every Settled Claim against KPMG or any of the KPMG Released Parties, release and forever discharge, and shall forever be enjoined from prosecuting, either directly, indirectly, representatively, derivatively or in any other capacity, any Settled Claims against KPMG or any of the KPMG Released Parties.

(d)     If there is a partial termination of this Stipulation by Xerox and the Stipulation is not otherwise terminated, then upon the Effective Date of this Settlement, KPMG , on behalf of itself, its heirs, executors, administrators, predecessors, successors and assigns, shall release and forever discharge each and every of KPMG's Settled Defendants' Claims, and shall forever be enjoined from prosecuting KPMG's Settled Defendants' Claims against Lead Plaintiffs, all other Class Members and their counsel.

(e)     If there is a partial termination of this Stipulation by KPMG and the Stipulation is not otherwise terminated, then upon the Effective Date of this Settlement, Lead Plaintiffs and all the other members of the Class on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall, with respect to each and every Settled Claim against the Xerox Defendants or any Xerox Released Parties, release and forever discharge, and shall forever be enjoined from prosecuting, any Settled Claims against Xerox, any of the Individual Defendants or any Xerox Released Parties.

(f)     If there is a partial termination of this Stipulation by KPMG and the Stipulation is not otherwise terminated, then upon the Effective Date of this Settlement, each of Xerox and the Individual Defendants, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns, shall release and forever discharge each and every of the Xerox Defendants' Settled Defendants' Claims, and shall forever be enjoined from prosecuting the Xerox Defendants' Settled Defendants' Claims against Lead Plaintiffs, all other Class Members and their counsel.

(g)     If there is no partial termination of this Stipulation, then upon the Effective Date of this Settlement, the Xerox Defendants shall release the KPMG Released Parties from all claims and causes of action of every nature and description, whether known or

unknown, whether arising under federal, state, common or foreign law, including claims for indemnification and/or contribution, that were or could have been asserted in or in connection with the above-entitled action, or arise out of or are based upon the allegations, transactions, facts, matters or occurrences that serve as the basis for the above-entitled action, excluding claims related to the action entitled *FSBA, et al. v. Xerox Corp., et al.*, No. 3:02-CV-1303 (D. Conn.) (AWT).

> (h)     If there is no partial termination of this Stipulation, then upon the Effective Date of this Settlement, KPMG shall release the Xerox Released Parties from all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common or foreign law, including claims for indemnification and/or contribution, that were or could have been asserted in or in connection with the above-entitled action, or arise out of or are based upon the allegations, transactions, facts, matters or occurrences that serve as the basis for the above-entitled action, excluding claims related to the action entitled *FSBA, et al. v. Xerox Corp., et al.*, No. 3:02-CV-1303 (D. Conn.) (AWT).

## THE SETTLEMENT CONSIDERATION

4.      In accordance with the allocation set forth in ¶¶ 5 - 7 below, Defendants shall pay

or cause to be paid to the Class, in settlement of the claims against them, an amount (the "Cash

Settlement Amount") equal to $750,000,000 (Seven Hundred Fifty Million US Dollars) in the

following five (5) installments: (i) a payment of $10,000,000 (Ten Million Dollars) within three

(3) business days after entry of the Order for Notice and Hearing by the Court preliminarily

approving the Settlement; (ii) a payment of $150,000,000 (One Hundred Fifty Million Dollars)

on May 21, 2008; (iii) a payment of $150,000,000 (One Hundred Fifty Million Dollars) on July

1, 2008; (iv) a payment of $150,000,000 (One Hundred Fifty Million Dollars) on July 21, 2008;

and (v) a payment of $290,000,000 (Two Hundred Ninety Million Dollars) on October 1, 2008.

Such funds shall be deposited by Xerox and KPMG, in the respective amounts provided below,

on behalf of all Defendants into an interest-bearing account(s) designated by Plaintiffs' Co-Lead

Counsel (the "Settlement Account") pursuant to the allocation schedule set forth herein.  No

funds are to be paid or withdrawn from the Settlement Account absent a Court order, except as

set forth in ¶¶ 8 through 15 herein or as otherwise provided herein.  The Cash Settlement

Amount and any income or interest earned thereon shall be the "Gross Settlement Fund."

5.      Xerox and KPMG shall contribute to the Cash Settlement Amount as follows: (a)

Xerox shall pay on behalf of the Xerox Defendants a total of $670,000,000; and (b) KPMG shall

pay a total of $80,000,000.

6.      Xerox shall contribute the amount set forth in ¶ 5(a) in the following five (5)

installments: (i) a payment of $8,933,333 within three (3) business days after entry of the Order

for Notice and Hearing by the Court preliminarily approving the Settlement; (ii) a payment of

$134,000,000 on May 21, 2008; (iii) a payment of $134,000,000 on July 1, 2008; (iv) a payment

of $134,000,000 on July 21, 2008; and (v) a payment of $259,066,667 on October 1, 2008.

       7.     KPMG shall contribute the amount set forth in ¶ 5(b) above in the following five

(5) installments: (i) a payment of $1,066,667 within three (3) business days after entry of the

Order for Notice and Hearing by the Court preliminarily approving the Settlement; (ii) a payment

of $16,000,000 on May 21, 2008; (iii) a payment of $16,000,000 on July 1, 2008; (iv) a payment

of $16,000,000 on July 21, 2008; and (v) a payment of $30,933,333 on October 1, 2008.

       8.    (a)     The Gross Settlement Fund, net of any Taxes (as defined below) on the

income thereof, shall be used to pay (i) the Notice and Administration Costs referred to in ¶ 10

hereof, (ii) the attorneys' fee and expense award referred to in ¶ 11 hereof, and (iii) the

remaining administration expenses referred to in ¶ 12 hereof.  The balance of the Gross

Settlement Fund after the above payments shall be the "Net Settlement Fund."  The Net

Settlement Fund shall be distributed to the Authorized Claimants as provided in ¶¶ 13-15 hereof.

Any sums required to be held in escrow hereunder prior to the Effective Date shall be held by

Plaintiffs' Co-Lead Counsel as Escrow Agents for the Settlement Fund.  All funds held by

Plaintiffs' Co-Lead Counsel shall be deemed to be in the custody of the Court and shall remain

subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned

to the persons paying the same pursuant to this Stipulation and/or further order of the Court.

Plaintiffs' Co-Lead Counsel shall invest any funds held in escrow in short-term United States

Agency or Treasury Securities (or a mutual fund invested solely in such instruments), and shall

collect and reinvest all interest accrued thereon.  The parties hereto agree that the Settlement

Account is intended to be a Qualified Settlement Fund within the meaning of Treasury

Regulation § 1.468B-1.  Plaintiffs' Co-Lead Counsel, as administrator of the Settlement Account

within the meaning of Treasury Regulation §1.468B-2(k)(3) (the "Administrator"), shall be solely responsible for (1) filing tax returns for the Settlement Account; (2) paying from the Settlement Account any Taxes owed with respect to the Settlement Account; and (3) complying with all applicable Tax reporting requirements with respect to any distributions from the Net Settlement Fund. The parties hereto agree that the Settlement Account shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the Settlement Account as a Qualified Settlement Fund from the earliest date possible. The Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution out of the Settlement Account any funds necessary to pay or reimburse any applicable Taxes or Tax Expenses. To the extent that the income earned in the Settlement Account is not taxed to the Settlement Account as a Qualified Settlement Fund and the Defendants are responsible for reporting the income earned in the Settlement Account and pay taxes on such income, Defendants shall be entitled to a refund from the Settlement Account to the extent of the income taxes they pay on such income, net of any deductions they become entitled to by virtue of their payment of such income into the Settlement Account. Counsel for Xerox and KPMG agree to provide promptly to Plaintiffs' Co-Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).

(b)     All (i) taxes on the income of the Gross Settlement Fund and (ii) expenses and costs incurred in connection with the taxation of the Gross Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) (collectively "Taxes") shall be paid out of the Gross Settlement Fund, shall be considered to be a cost of administration of the settlement and shall be timely paid by Plaintiffs' Co-Lead Counsel without prior Order of the Court.

## ADMINISTRATION

9.      The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court.  Except as stated in ¶ 17 hereof, Defendants shall have no responsibility for the administration of the Settlement and shall have no liability to the Class in connection with such administration.  Upon execution of this Stipulation, Xerox shall forthwith provide or cause to be provided to the Claims Administrator any preexisting shareholder and/or bond holder lists as of a date near the end of the Class Period that would be appropriate for providing notice to the Class to the extent that any such lists are available and in the possession of Xerox or its transfer agent(s), and will also provide any preexisting list(s) of all transferees of Xerox stock and bonds issued during the Class Period and a period of thirty days thereafter, to allow for delayed transfers.  To the extent that the list of transferees is not preexisting and will need to be generated, Xerox shall be reimbursed from the Settlement Account for the reasonable cost charged to Xerox by its transfer agent(s) for generating such list.  Xerox shall cooperate to the extent reasonable with the Claims Administrator in obtaining any such lists from Xerox's transfer agent(s).

10.     Plaintiffs' Co-Lead Counsel may pay from the Settlement Account, without further approval from the Defendants, for the reasonable costs and expenses, which are presently estimated to cost up to $1,000,000 (One Million Dollars), associated with identifying members of the Class and effecting mail Notice and Publication Notice to the Class, and the administration of the Settlement, including without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  Prior to the Effective

Date, Plaintiffs' Co-Lead Counsel shall not pay more than $1 million from the Settlement

Account for such notice and administration expenses without the approval of the Defendants,

which approval shall not be unreasonably withheld.

**ATTORNEYS' FEES AND EXPENSES**

11.    Plaintiffs' Co-Lead Counsel may apply for and receive an award of attorneys'

fees and reimbursement of expenses from the Settlement Account in such amounts as may be

approved by the Court.  Provided that such amount already has been deposited in the Settlement

Account pursuant to ¶ 4 herein, such amount shall be paid to Plaintiffs' Co-Lead Counsel

immediately upon the Court's approval of the Settlement and award, subject to each counsel's

obligation to pay back any such amount if the Order and Final Judgment is not entered by the

Court or is reversed or vacated, or if, or to the extent that, the award order is amended or does

not become Final.  Plaintiffs' Co-Lead Counsel shall be jointly and severally liable for any

refunds to the Settlement Account under this Paragraph.  Plaintiffs' Co-Lead Counsel shall

allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which they in good faith

believe reflects the contributions of such counsel to the prosecution and settlement of the Action

with Defendants.  Defendants shall not be separately liable for Plaintiffs' Co-Lead Counsels'

attorneys' fees.  Any attorneys' fees awarded by the Court and payable to Plaintiffs' Counsel

shall be payable from, and not in addition to, the Settlement Sum.  The Parties agree that the

issue of attorneys' fees was not part of any settlement discussions between the Parties, and thus

Defendants take no position with respect to Plaintiffs' Co-Lead Counsel's request for an award

of attorneys' fees and reimbursement of expenses.  The Court's allowance or disallowance of

attorneys' fees and reimbursement of expenses, or the Court's failure to award fees or costs

sought by Plaintiffs' Co-Lead Counsel, or any reversal or modification of a fee or costs award,

shall not affect the finality of the Order and Final Judgment as it relates to approval of the Settlement.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

12.    Plaintiffs' Co-Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

13.    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the Plan of Allocation described in the Notice annexed hereto as Exhibit 1 to Exhibit A, or in such other Plan of Allocation as the Court approves).

14.    The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved. The Court's approval or disapproval of the Plan of Allocation proposed in the Notice, or the Court's failure to approve or disapprove the Plan of Allocation proposed in the Notice, or any reversal or modification of the Plan of Allocation proposed in the Notice, shall not affect the finality of the Order and Final Judgment as it relates to approval of the Settlement.

15.    Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claims of all Authorized Claimants. This is not a claims-made settlement. The entire Net Settlement Fund shall be distributed to the Authorized Claimants. The Defendants shall not be entitled to

get back any of the settlement monies after the Effective Date has occurred. The Defendants

shall have no involvement in reviewing or challenging claims. Distributions will be made to

Authorized Claimants after all claims have been processed and after the Effective Date has

occurred. If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or

otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have

Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash

their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial

distribution of such funds shall be re-distributed to Class Members who have cashed their initial

distributions and who would receive at least $10.00 from such re-distribution, after payment of

any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-

distribution. If after six months after such re-distribution any funds shall remain in the Net

Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit,

501(c)(3) organization(s) designated, but not controlled, by Plaintiffs' Co-Lead Counsel.

<u>**ADMINISTRATION OF THE SETTLEMENT**</u>

16.    Any member of the Class who does not submit a valid Proof of Claim will not be

entitled to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound

by all of the terms of this Stipulation and the Settlement, including the terms of the Order and

Final Judgment to be entered in the Action and the releases provided for herein, and will be

barred from bringing any action against the Released Parties concerning the Settled Claims.

17.    The Claims Administrator shall process the Proofs of Claim and, as provided for

in ¶ 22 herein, distribute the Net Settlement Fund to the Authorized Claimants. Except for their

obligation to pay the Settlement Amount, and to cooperate in the production of information with

respect to the identification of Class Members from Xerox's shareholder transfer records, as

provided herein, Defendants shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund.  Plaintiffs' Co-Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Plaintiffs' Co-Lead Counsel deem to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

18.    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)    Each Class Member shall be required to submit a Proof of Claim (see attached Exhibit 2 to Exhibit A), supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon, or such other documents or proof as the Claims Administrator, in its discretion may deem acceptable;

(b)    All Proofs of Claim must be submitted by the date specified in the Notice, unless such period is extended by Order of the Court.  Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by Order of the Court, a later submitted Proof of Claim by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims.  Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class United States mail and addressed in accordance with the instructions thereon.  In all

other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

      (c)    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

      (d)    Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies in the Proof of Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, each claimant whose Proof of Claim it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

      (e)    If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Co-Lead Counsel shall thereafter present the request for review to the Court; and

(f)     The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

19.     Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

20.     Payment pursuant to this Settlement shall be deemed final and conclusive against all Class Members.  All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Settled Claims.

21.     All proceedings with respect to the administration, processing and determination of claims described by ¶ 18 of this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

22.     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after:  (i) all Claims have been processed, and all claimants whose Claims have been rejected or disallowed, in whole or in part, have been notified of the opportunity to be heard concerning such rejection or disallowance; (ii) all

objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired, or an adequate reserve from the Net Settlement Fund has been provided to pay any claim with respect to which there is an unresolved objection; (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court, all appeals therefrom have been resolved or the time therefor has expired; and (iv) all costs of administration have been paid or provided for.

## TERMS OF ORDER FOR NOTICE AND HEARING

23.     Concurrently with their application for preliminary Court approval of the Settlement contemplated by this Stipulation, Plaintiffs' Co-Lead Counsel and Defendants' Counsel jointly shall apply to the Court for entry of an Order for Notice and Hearing, substantially in the form annexed hereto as Exhibit A. The parties shall request that the Order for Notice and Hearing schedule that requests for exclusion must be postmarked no later than ninety (90) calendar days after entry of the Order for Notice and Hearing. Upon receiving any request(s) for exclusion pursuant to the Notice, the Claims Administrator shall promptly notify Plaintiffs' Co-Lead Counsel and counsel for Defendants of such request(s) for exclusion.

## TERMS OF ORDER AND FINAL JUDGMENT

24.     If the Settlement contemplated by this Stipulation is approved by the Court, counsel for the parties shall request that the Court enter an Order and Final Judgment substantially in the form annexed hereto as Exhibit B.

## SUPPLEMENTAL AGREEMENT

25.     Simultaneously herewith, Plaintiffs' Co-Lead Counsel and Defendants' Counsel are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be terminated by Xerox or KPMG if potential Class Members who, in aggregate,

purchased in excess of a certain number of shares and/or bonds of Xerox traded during the Class

Period exclude themselves from the Class (the "Opt-Out Threshold"). The Parties intend that the

Supplemental Agreement shall be specifically disclosed to the Court and offered for *in camera*

inspection by the Court at or prior to entry of the Preliminary Order, but, subject to the Court's

approval, it shall not be filed with the Court before the deadline for submitting exclusion requests

unless a dispute arises as to its terms or the Parties are ordered otherwise by the Court. The

Parties shall seek to keep the Opt-Out Threshold confidential before the deadline for submitting

exclusion requests. In the event that the Court directs that the Supplemental Agreement be filed

prior to the deadline for submitting exclusion requests, no party shall have any right to any relief

by reason of such disclosure. In the event of complete termination of this Settlement pursuant to

the Supplemental Agreement, this Stipulation shall, except as otherwise expressly provided

herein, become null and void and of no further force and effect and the provisions of ¶ 28 shall

apply. In the event of partial termination of this Settlement pursuant to the Supplemental

Agreement, (a) this Stipulation shall remain effective and enforceable as to the settling

defendant(s) and Lead Plaintiffs; (b) this Stipulation shall become null and void and of no further

force and effect and the provisions of ¶ 28 shall apply as to the non-settling defendant(s) and

Lead Plaintiffs, but only as such terms apply to the non-settling defendant(s), except as otherwise

expressly provided herein and to the extent taxes and costs of notice and administration have

been incurred or expended pursuant to ¶¶ 8(b) and 10; (c) the non-settling defendants and Lead

Plaintiffs shall revert, without prejudice, to their litigation positions as to one another as of

March 1, 2008; and (d) the fact and terms of this Settlement shall not be admissible in any trial of

this Action. Notwithstanding the foregoing, the Stipulation shall not become null and void as a

result of the election by the Defendant(s) to exercise their option to withdraw from the

Stipulation pursuant to the Supplemental Agreement until the conditions set forth in the

Supplemental Agreement have been satisfied.

### EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

26.    The "Effective Date" of Settlement shall be the date when all the following shall

have occurred:

(a)    approval by the Court of the Settlement, following notice to the Class and

a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(b)    an Order and Final Judgment, substantially in the form set forth in Exhibit

B annexed hereto, has been entered by the Court and has become Final, or, in the event that the

Court enters an order and final judgment in a form other than that provided above (an

"Alternative Judgment") and none of the parties hereto elect to terminate this Settlement, the

date that such Alternative Judgment has become Final.

27.    Xerox, on behalf of itself and the Individual Defendants, KPMG and Lead

Plaintiffs shall each have the right to terminate the Settlement and this Stipulation by providing

written notice of their election to do so ("Termination Notice") to all other parties hereto within

thirty (30) days after: (a) the Court's declining to enter the Order for Notice and Hearing in any

material respect, including but not limited to the Court's not certifying the Class as provided for

in ¶ 29 herein, or amending the scope of the Class; (b) the Court's refusal to approve this

Stipulation or any material part of it; (c) the Court's declining to enter the Order and Final

Judgment in any material respect as it relates to the approval of the terms of the Settlement, but

not as it relates to the award of attorneys' fees and expenses and/or the Plan of Allocation; (d) the

date upon which the Order and Final Judgment is modified or reversed in any material respect as

it relates to the approval of the terms of the Settlement, but not as it relates to the award of

attorneys' fees and expenses and/or the Plan of Allocation, by the Court of Appeals or the Supreme Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material respect as it relates to the approval of the terms of the Settlement, but not as it relates to the award of attorneys' fees and expenses and/or the Plan of Allocation, by the Court of Appeals or the Supreme Court. If Xerox or KPMG elects to terminate the Settlement under this paragraph, but KPMG or Xerox, respectively, does not so elect, Lead Plaintiffs may elect to proceed with the Settlement with respect to the non-terminating, settling defendant(s), or may elect to terminate the entire Stipulation, which election shall be made by Lead Plaintiffs within fifteen (15) business days after the expiration of the applicable thirty (30) day period provided under items (a) through (e) in this paragraph.

28.    Except as otherwise provided herein, in the event the Settlement is wholly or partially terminated for any reason, including but not limited to those reasons set forth in ¶¶ 25 and 27, then the terminating parties to this Stipulation shall be deemed to have reverted, without prejudice, to their respective status in the Action as of March 1, 2008 and, except as otherwise expressly provided, the terminating parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, the facts and terms of this Settlement shall not be admissible in any trial of this Action, and any portion of the Settlement Amount previously paid by any terminating Defendants, together with any interest earned thereon, less any Taxes due with respect to such income, and less a proportionate share of the costs of administration and notice actually incurred and paid or payable from the Settlement Amount that would have been payable from the terminating defendant, shall be returned to the persons paying the same.

29.    For purposes of this Settlement only, Lead Plaintiffs and Defendants agree to (a) certification of the Action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on

behalf of the Class; (b) appointment of Lead Plaintiffs as class representatives; and

(c) appointment of Plaintiffs' Lead Counsel as class counsel pursuant to Fed. R. Civ. P. 23(g).

30.     In the event the Effective Date does not occur, neither Lead Plaintiffs nor any

other putative member of the putative class may or will use the fact of execution of this

Stipulation consenting to certification of a class for settlement purposes as a basis to argue that

Defendants have in any way circumscribed their ability to oppose, for any reason, certification of

a class other than for purposes of this Settlement.  If there is a partial termination of the

Settlement, neither Lead Plaintiffs nor any other putative member of the putative class may or

will use the fact of execution of this Stipulation consenting to certification of a class for

settlement purposes as a basis to argue that the terminating, non-settling defendant(s) have in any

way circumscribed their ability to oppose, for any reason, certification of a class other than for

purposes of this Settlement. If there is a partial termination of the Settlement, neither Lead

Plaintiffs nor any other putative member of the putative class may or will use the fact of a class

being certified for settlement purposes as against the non-terminating, settling defendant(s) as a

basis to argue that the terminating, non-settling defendant(s) have in any way circumscribed their

ability to oppose, for any reason, certification of a class other than for purposes of this

Settlement.

31.     No settling Defendant shall be liable for any amount in excess of its respective

payments, if any, specified in ¶¶ 5 - 7 above, provided that if any Defendant fails to pay its

portion of the payment set forth in ¶¶ 5 - 7 within three (3) business days after the due date, then,

in addition to any other remedies available for such a breach, Lead Plaintiffs may terminate the

entire Settlement.

### NO ADMISSION OF WRONGDOING

32.    This Stipulation, whether or not consummated, and any proceedings taken pursuant to it:

(a)    shall not be offered or received against any of the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of the Defendants;

(b)    shall not be offered or received against any of the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Defendants;

(c)    shall not be offered or received against any of the Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Defendants may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against any of the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiffs or any of the other Class Members that any of their claims are without merit, or that any defenses asserted by any of the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Gross Settlement Fund.

## MISCELLANEOUS PROVISIONS

33.    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

34.    Each Defendant contributing to the Settlement Amount warrants as to himself, herself or itself that, as to the payments made by or on behalf of him, her or it, at the time of such payment that the Defendant made or caused to be made pursuant to ¶¶ 4 - 7 above, he, she or it was not insolvent, nor did the payment required to be made by or on behalf of him, her or it render such Defendant insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This warranty is made by each such Defendant and not by such Defendant's Counsel.

35.    If a case is commenced in respect of any Defendant contributing to the Settlement Amount (or any insurer contributing funds to the Cash Settlement Amount on behalf of any Defendant) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Gross Settlement Fund or any portion thereof by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Gross Settlement Fund

- 31 -

by others, then, at the election of Plaintiffs' Co-Lead Counsel, the parties shall jointly move the Court to vacate and set aside the releases given and Order and Final Judgment entered in favor of the Defendants pursuant to this Stipulation, which releases and Order and Final Judgment shall be null and void, and the parties shall be restored to their respective positions in the litigation as of March 1, 2008 and any cash amounts in the Gross Settlement Fund shall be returned as provided in ¶ 28 above.

36.    The parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Lead Plaintiffs and Defendants agree not to assert in any forum that the litigation was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis. The parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action. The settling parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

37.    This Stipulation may not be modified or amended, nor may any of its provisions be waived except by a writing signed by all parties hereto or their successors-in-interest.

38.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

39.    The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain jurisdiction for the

purpose of entering orders providing for awards of attorneys' fees and expenses to Plaintiffs' Co-Lead Counsel and enforcing the terms of this Stipulation.

40.　　The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation. Any such waiver shall be made on behalf of the Party waiving the breach, and will not constitute a waiver by any other Party.

41.　　This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among the parties hereto concerning the Settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits and the Supplemental Agreement other than those contained and memorialized in such documents.

42.　　This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

43.　　This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

44.　　The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Connecticut without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

45.　　No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by Plaintiffs' Co-Lead Counsel or counsel for the Defendants; nor is any representation or warranty in this regard made by virtue of

this Stipulation. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

46.    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

47.    Unless otherwise agreed upon or required by law, the Parties agree to maintain the existence and terms of this Stipulation confidential until Xerox publicly announces the Settlement. In the event that Xerox desires publicly to announce the Settlement before entry of the Order for Notice and Hearing by the Court preliminarily approving the Settlement, Xerox shall provide advance notice of at least forty-eight (48) hours to KPMG prior to making such announcement. Defendants retain the right to disclose the existence and terms of this Stipulation to their external auditors and insurers at any time. The Parties further agree that they shall not disparage their opposition in any public statements.

48.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

49.    Plaintiffs' Co-Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Order for Notice and Hearing, the Stipulation

and the Settlement, and to promptly agree upon and execute all such other documentation as may

be reasonably required to obtain final approval by the Court of the Settlement.

IT IS HEREBY AGREED by the undersigned as of March $\underline{24}$, 2008.

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

Glen DeValerio (CT 22582)
One Liberty Square
Boston, Massachusetts 02109
(617) 542-8300

**JOHNSON & PERKINSON**

Dennis J. Johnson (CT 22090)
1690 Williston Road
P.O. Box 2305
South Burlington, Vermont 05403
(802) 862-0030

**MILBERG LLP**

Brad N. Friedman (CT 24910)
One Penn Plaza
New York, New York 10119-0165
(212) 594-5300

**LEAD PLAINTIFFS' COUNSEL**

and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

IT IS HEREBY AGREED by the undersigned as of March 24 , 2008.

**BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO**


Glen DeValerio (CT 22582) /BAW
One Liberty Square
Boston, Massachusetts 02109
 (617) 542-8300


**JOHNSON & PERKINSON**


Dennis J. Johnson (CT 22090) / KJO
1690 Williston Road
P.O. Box 2305
South Burlington, Vermont 05403
(802) 862-0030


**MILBERG LLP**

_____

Brad N. Friedman (CT 24910)
One Penn Plaza
New York, New York 10119-0165
(212) 594-5300


**LEAD PLAINTIFFS' COUNSEL**

and the Settlement, and to promptly agree upon and execute all such other documentation as may

be reasonably required to obtain final approval by the Court of the Settlement.

IT IS HEREBY AGREED by the undersigned as of March _____, 2008.

**BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO**


_____
Glen DeValerio (CT 22582)
One Liberty Square
Boston, Massachusetts 02109
 (617) 542-8300


**JOHNSON & PERKINSON**


_____
Dennis J. Johnson (CT 22090)
1690 Williston Road
P.O. Box 2305
South Burlington, Vermont 05403
(802) 862-0030


**MILBERG LLP**


_____
Brad N. Friedman (CT 24910)
One Penn Plaza
New York, New York 10119-0165
(212) 594-5300


**LEAD PLAINTIFFS' COUNSEL**

CRAVATH, SWAINE & MOORE, LLP


_____

Evan R. Chesler (CT 03177)
Sandra C. Goldstein (CT 24019)
Worldwide Plaza, 825 Eighth Ave.
New York, NY 10019
(212) 474-1000

**COUNSEL FOR DEFENDANT XEROX
CORPORATION**


**DAY PITNEY LLP**


_____

Thomas D. Goldberg (ct 04386)
Terence J. Gallagher (ct 22415)
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

**COUNSEL FOR DEFENDANTS ANNE
MULCAHY, G. RICHARD THOMAN AND
PHILIP FISHBACH**


**WILMER CUTLER PICKERING HALE
AND DORR LLP**


_____

**John A. Valentine (ct 25941)
1875 Pennsylvania Avenue, NW
Washington, DC 20006**

**COUNSEL FOR DEFENDANTS PAUL
ALLAIRE, BARRY ROMERIL AND
GREGORY TAYLER**


- 36 -

**CRAVATH, SWAINE & MOORE, LLP**

_____

Evan R. Chesler (CT 03177)
Sandra C. Goldstein (CT 24019)
Worldwide Plaza, 825 Eighth Ave.
New York, NY 10019
(212) 474-1000

**COUNSEL FOR DEFENDANT XEROX
CORPORATION**

**DAY PITNEY LLP**

_____

Thomas D. Goldberg (ct 04386)
Terence J. Gallagher (ct 22415)
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

**COUNSEL FOR DEFENDANTS ANNE
MULCAHY, G. RICHARD THOMAN AND
PHILIP FISHBACH**

**WILMER CUTLER PICKERING HALE
AND DORR LLP**

_____

**John A. Valentine (ct 25941)
1875 Pennsylvania Avenue, NW
Washington, DC 20006**

**COUNSEL FOR DEFENDANTS PAUL
ALLAIRE, BARRY ROMERIL AND
GREGORY TAYLER**

- 36 -

**CRAVATH, SWAINE & MOORE, LLP**

_____

Evan R. Chesler (CT 03177)
Sandra C. Goldstein (CT 24019)
Worldwide Plaza, 825 Eighth Ave.
New York, NY 10019
(212) 474-1000

**COUNSEL FOR DEFENDANT XEROX
CORPORATION**

**DAY PITNEY LLP**

_____

Thomas D. Goldberg (ct 04386)
Terence J. Gallagher (ct 22415)
One Canterbury Green
Stamford, CT 06901
(203) 977-7300

**COUNSEL FOR DEFENDANTS ANNE
MULCAHY, G. RICHARD THOMAN AND
PHILIP FISHBACH**

**WILMER CUTLER PICKERING HALE
AND DORR LLP**

John A. Valentine (ct 25941)
1875 Pennsylvania Avenue, NW
Washington, DC 20006

**COUNSEL FOR DEFENDANTS PAUL
ALLAIRE, BARRY ROMERIL AND
GREGORY TAYLER**

- 36 -

**HOGAN & HARTSON LLP**

George A. Salter

_____
W. Sidney Davis, Jr. (phv0741)
George A. Salter (phv0738)
875 Third Avenue
New York, New York 10022
(212) 918-3000

**COUNSEL FOR DEFENDANT KPMG LLP**