# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> XEROX CORPORATION, KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER AND PHILIP FISHBACH, <br><br> Defendants. | 3:00-CV-1621 (AWT) <br><br> This document relates to: |

| | | |
|---|---|---|
| 00-cv-01758 | 00-cv-01908 | 01-cv-00449 |
| 00-cv-01779 | 00-cv-01916 | 01-cv-00497 |
| 00-cv-01792 | 00-cv-01967 | 01-cv-00583 |
| 00-cv-01795 | 00-cv-02029 | 01-cv-00584 |
| 00-cv-01824 | 01-cv-00244 | 01-cv-00591 |
| 00-cv-01846 | 01-cv-00285 | 01-cv-00614 |
| 00-cv-01883 | 01-cv-00341 | |

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, MOTION FOR ATTORNEYS' FEES AND SETTLEMENT FAIRNESS HEARING

**If you purchased Xerox Corporation common stock and/or bonds during the period from February 17, 1998 through June 27, 2002 inclusive, and your transactions in Xerox common stock and/or bonds during this period resulted in a loss, then you could get a payment from a class action settlement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The settlement will provide a $750 million settlement fund ($670 million contributed by Xerox and $80 million by KPMG) ("Settlement Fund") for the benefit of investors who bought Xerox Corporation common stock and/or bonds during the period from February 17, 1998 through June 27, 2002 inclusive, and whose transactions in Xerox common stock and/or bonds during the Class Period resulted in a loss.

- The settlement resolves a lawsuit over whether Xerox misled investors about its earnings.

- Your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM BY _____, 2008** | The only way to get a payment. |

| **EXCLUDE YOURSELF BY _____, 2008** | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against Xerox, KPMG and the other Released Parties about the Settled Claims. |
|---|---|
| **OBJECT BY _____, 2008** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING ON _____, 2008** | Ask to speak in Court about the settlement. |
| **DO NOTHING** | Get no payment. Give up rights. |

- These rights and options - **and the deadlines to exercise them** - are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after appeals are resolved. Please be patient.

## SUMMARY NOTICE

Statement of Plaintiff Recovery

Pursuant to the settlement described herein, a Settlement Fund consisting of $750 million in cash, plus interest, is being established. Plaintiffs estimate that there were approximately 1.564 billion shares of Xerox common stock traded during the Class Period that may have resulted in loss. Plaintiffs estimate that the average recovery per each of these shares of Xerox common stock under the settlement is 45.6¢ per share[1] before deduction of Court-awarded attorneys' fees and expenses. There were approximately thirty-six different individual issues of Xerox bonds outstanding during the Class Period, each of which is subject to differing potential loss amounts, as indicated in the Plan of Allocation beginning on page [___] below, as such, estimating an average recovery per bond is not meaningful. A Class Member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's Recognized Claim as compared to the total Recognized Claims of all Class Members who submit acceptable Proofs of Claim. Depending on the number of claims submitted, when during the Class Period a Class Member purchased shares of Xerox common stock and/or bonds, the purchase price paid, and whether those shares and/or bonds were held at the end of the Class Period or sold during the Class Period, and, if sold, when they were sold and the amount received, an individual Class Member may receive more or less than these average amounts. *See* the Plan of Allocation for more information on your Recognized Claim.

---

[1]     A single share might have been traded more than once during the Class Period, and the indicated average recovery would be the total for all purchasers of that share.

- 2 -

Statement of Potential Outcome of Case

The parties disagree on both liability and damages and do not agree on the average amount of damages per share if any that would be recoverable if plaintiffs were to have prevailed on each claim alleged.  The issues on which the parties disagree include, but are not limited to, (a) the appropriate economic model for determining the amount by which Xerox's common stock and/or bonds were allegedly artificially inflated (if at all) during the Class Period; (b) the amount by which Xerox's common stock and/or bonds were allegedly artificially inflated (if at all) during the Class Period; (c) the effect of various market forces influencing the trading price of Xerox's common stock and/or bonds at various times during the Class Period; (d) the extent to which external factors, such as general market and industry conditions, influenced the trading price of Xerox's common stock and/or bonds at various times during the Class Period; (e) the extent to which the various matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of Xerox's common stock and/or bonds at various times during the Class Period; (f) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the trading price of Xerox's common stock and/or bonds at various times during the Class Period; and (g) whether the statements made or facts allegedly omitted were material or otherwise actionable under the federal securities laws.  The Defendants deny that they are liable to the plaintiffs or the Class and deny that plaintiffs or the Class have suffered any damages.

Statement of Attorneys' Fees and Costs Sought

Plaintiffs' Counsel are moving the Court to award attorneys' fees not to exceed twenty percent (20%) of the Gross Settlement Fund, and for reimbursement of expenses incurred in connection with the prosecution of this Action in the approximate amount of five million dollars ($5,000,000).  The requested fees and expenses would amount to an average of approximately 9.4¢ per share entitled to recovery in total for fees and expenses.  Plaintiffs' Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent fee basis, and have advanced the expenses of the litigation, in the expectation that if they were successful in obtaining a recovery for the Class they would be paid from such recovery.  In this type of litigation, it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees.

Further Information

Further information regarding the Action and this Notice may be obtained by contacting Plaintiffs' Co-Lead Counsel:  Glen DeValerio, Esq., Berman DeValerio Pease Tabacco Burt & Pucillo, One Liberty Square, Boston, Massachusetts 02109, Telephone (617) 542-8300; Dennis J. Johnson, Esq., Johnson & Perkinson, 1690 Williston Road, South Burlington, Vermont 05403, Telephone (802) 862-0030; Brad N. Friedman, Esq., Milberg LLP, One Penn Plaza, New York, New York  10119-0165, Telephone (212) 594-5300.

Reasons for the Settlement

For the plaintiffs, the principal reason for the settlement is the substantial cash benefit to be provided to the Class now.  This benefit must be compared to the risk that no greater recovery

might be achieved after a contested trial and likely appeals, possibly years into the future. Moreover, the Court has not yet ruled on the issue of class certification. If class certification were denied, no recovery likely would have been achieved. Finally, by settling, Plaintiffs avoided significant questions of loss causation and damages, which may have limited their recovery, even if they ultimately prevailed at the trial.

For the Defendants, who deny all allegations of wrongdoing or liability whatsoever, the principal reason for the settlement is to eliminate the time, burden, disruption, expense, risks, and uncertain outcome of the litigation.

**[END OF COVER PAGE]**

| WHAT THIS NOTICE CONTAINS |
|---|

### Table of Contents

Page

SUMMARY NOTICE ...................................................................................................2

    Statement of Plaintiff Recovery..........................................................................2

    Statement of Potential Outcome of Case ...........................................................3

    Statement of Attorneys' Fees and Costs Sought................................................3

    Further Information...............................................................................................3

    Reasons for the Settlement..................................................................................3

BASIC INFORMATION .............................................................................................7

    1.    Why did I get this notice package?............................................................7

    2.    What is this lawsuit about? ........................................................................7

    3.    Why is this a class action? ........................................................................8

    4.    Why is there a settlement? ........................................................................8

WHO IS IN THE SETTLEMENT.................................................................................9

    5.    How do I know if I am part of the Class?...................................................9

    6.    Are there exceptions to being included?....................................................9

    7.    What if I am still not sure if I am included? ..............................................9

THE SETTLEMENT BENEFITS — WHAT YOU GET ............................................................10

    8.    What does the settlement provide? ...................................................10

    9.    How much will my payment be? .......................................................10

HOW YOU GET A PAYMENT — SUBMITTING A PROOF OF CLAIM FORM..................10

    10.    How can I get a payment?.................................................................10

    11.    When would I get my payment? ........................................................10

    12.    What am I giving up to get a payment or stay in the Class?......................11

EXCLUDING YOURSELF FROM THE SETTLEMENT..............................................12

    13.    How do I get out of the proposed settlement? ...........................................12

    14.    If I do not exclude myself, can I sue the Defendants and the other Released Parties for the same thing later? .................................................13

    15.    If I exclude myself, can I get money from the proposed settlement?........13

THE LAWYERS REPRESENTING YOU ...........................................................13

    16.    Do I have a lawyer in this case?.......................................................13

    17.    How will the lawyers be paid?................................................................14

OBJECTING TO THE SETTLEMENT ..............................................................14

    18.    How do I tell the Court that I do not like the proposed settlement?..........14

    19.    What is the difference between objecting and excluding?.........................16

THE COURT'S SETTLEMENT FAIRNESS HEARING ..........................................16

    20.    When and where will the Court decide whether to approve the proposed settlement?................................................................................16

    21.    Do I have to come to the hearing? ...............................................16

    22.    May I speak at the hearing? ...........................................................17

IF YOU DO NOTHING ............................................................................17

    23.    What happens if I do nothing at all? ..............................................17

GETTING MORE INFORMATION................................................................17

24.    Are there more details about the proposed settlement? .............................17

25.    How do I get more information? ...............................................................18

PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS
      MEMBERS ...................................................................................................18

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES ........................24

## BASIC INFORMATION

| 1. Why did I get this notice package? |
| :-- |

You or someone in your family may have purchased Xerox common stock and/or bonds during the period from February 17, 1998 through June 27, 2002 inclusive, and incurred a loss on such purchase(s).

The Court directed that this Notice be sent to Class Members because they have a right to know about a proposed settlement of a class action lawsuit, and about all of their options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows.

This package explains the lawsuit, the settlement, Class Members' legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the District of Connecticut, and the case is known as *Russell Carlson, et al., v. Xerox Corporation, et al.*, Case No. 3:00-CV-1621 (AWT). This case was assigned to United States District Judge Alvin W. Thompson. The people who sued, Louisiana State Employees' Retirement System, Thomas Zambito and Dr. Paul Dantzig, are called plaintiffs, and the company and the persons they sued, Xerox Corporation, Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler, Philip Fishbach and KPMG LLP, are called the Defendants. Paul A. Allaire, G. Richard Thoman, Anne Mulcahy, Barry D. Romeril, Gregory Tayler and Philip Fishbach are or were officers or directors of Xerox. KPMG LLP audited Xerox's financial statements during the period when Plaintiffs allege that Xerox's financial condition was misrepresented to the investing public.

| 2. What is this lawsuit about? |
| :-- |

Xerox is a world-wide enterprise engaged in the office technology and services business. The lawsuit claimed that Xerox and the individual defendants misled investors by intentionally overstating the company's earnings through five annual reporting periods. Plaintiffs alleged that Xerox, with the help of its auditor, KPMG LLP, increasingly manipulated its reported earnings from less than $0.01 of Xerox's reported earnings per share in the first quarter of 1997, through $0.27 per share of Xerox's reported earnings in the fourth quarter of 1999. Plaintiffs state that the true picture began to be revealed in October 1999, when Xerox missed the earnings figures expected by market analysts, a miss that Plaintiffs attribute to a materialization of the alleged fraud. Plaintiffs alleged that the truth continued to be revealed over the next 20 months, including when Xerox restated its earnings in 2001 (1st Restatement) and in 2002 (2nd Restatement). The 2nd Restatement was, at that time, the largest financial restatement in United States history, involving $6.4 billion in revenue and $1.4 billion in income. It was also claimed that while Xerox was reporting allegedly artificially inflated earnings, some of the Individual

Defendants sold Xerox securities at artificially inflated prices for approximately $50 million in pre-tax proceeds. The lawsuit seeks money damages against the Defendants for violations of the federal securities laws.

The Defendants have denied and continue to deny all allegations of misconduct contained in the Complaint, and deny having engaged in any wrongdoing whatsoever.

| 3. | Why is this a class action? |
|---|---|

In a class action, one or more people called Class Representatives (in this case lead plaintiffs Louisiana State Employees' Retirement System, Thomas Zambito and Dr. Paul Dantzig) sue on behalf of people who have similar claims. All these people together are a Class or Class Members. Bringing a case, such as this one, as a class action allows adjudication of many similar claims of persons and entities that might be economically too small to bring in individual actions. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

| 4. | Why is there a settlement? |
|---|---|

The first complaint in this action was filed in August 2000. Since that time, the Lead Plaintiffs filed three amended complaints, the most recent of which was dated August 7, 2002. The Defendants filed a motion with the Court to dismiss that complaint, which was denied by the Court in July 2005. Since that time, the Plaintiffs have engaged in an extensive discovery program, reviewing millions of documents related to the claims and defenses at issue in the case and numerous transcripts and exhibits from prior litigation. Subsequently, the Lead Plaintiffs began taking depositions of various fact witnesses. The parties had mediation sessions in attempts to resolve the parties' differing views of the Lead Plaintiffs' allegations and the value of the case. In March 2008, the parties signed a Memorandum of Understanding reflecting the general terms under which the parties would agree to settle the case.

Thus, the Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the risks and cost of a trial, and the people allegedly affected will get compensation. The Class Representatives and their attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this settlement, you first have to decide if you are a Class Member.

| 5. | How do I know if I am part of the Class? |
|---|---|

The Court directed, for the purposes of the proposed settlement, that everyone who fits this description is a Class Member:  all persons and/or entities that purchased Xerox common stock and/or bonds during the period from February 17, 1998 through June 27, 2002 inclusive, and whose transactions in Xerox common stock and/or bonds during the Class Period resulted in a loss.

| 6. | Are there exceptions to being included? |
|---|---|

Excluded from the Class are the Defendants, their officers and directors, members of their immediate families (parents, spouses, siblings, and children) and their agents and affiliates.

If one of your mutual funds purchased Xerox stock or bonds during the Class Period, that alone does not make you a Class Member.  You are a Class Member only if you directly purchased Xerox common stock or bonds during the Class Period.  Check your investment records or contact your broker to see if you purchased Xerox stock or bonds during the Class Period.

If you **sold** Xerox stock or bonds during the Class Period, that alone does not make you a Class Member.  You are a Class Member only if you **purchased** your shares or bonds during the Class Period.

| 7. | What if I am still not sure if I am included? |
|---|---|

If you are still not sure whether you are included, you can ask for free help.  You can call (800)708-4103, or visit www.gilardi.com/xeroxsettlement for more information.  Or you can fill out and return the Proof of Claim form described on page [___], in question 10, to see if you qualify.

## THE SETTLEMENT BENEFITS — WHAT YOU GET

| 8.    What does the settlement provide? |
| --- |

In exchange for the Settlement and dismissal of the Action, Xerox has agreed to contribute $670 million and KPMG has agreed to contribute $80 million to a cash fund to be divided, after fees and expenses, among all Class Members who send in valid Proof of Claim forms.

| 9.    How much will my payment be? |
| --- |

Your share of the fund will depend on the total Recognized Claims represented by the valid Proof of Claim forms that Class Members send in, how many shares of Xerox stock and/or bonds you bought, how much you paid for them, and when you bought and whether or when you sold them, and if so for how much you sold them.

You can calculate your Recognized Claim in accordance with the formula shown below in the Plan of Allocation.  It is unlikely that you will get a payment for all of your Recognized Claim.  After all Class Members have sent in their Proof of Claim forms, the payment you get will be a part of the Net Settlement Fund equal to your Recognized Claim divided by the total of everyone's Recognized Claims.  *See* the Plan of Allocation beginning on page [___] for more information on your Recognized Claim.

## HOW YOU GET A PAYMENT — SUBMITTING A PROOF OF CLAIM FORM

| 10.    How can I get a payment? |
| --- |

To qualify for a payment, you must send in a Proof of Claim form.  A Proof of Claim form is being circulated with this Notice.  You may also get a Proof of Claim form on the Internet at www.gilardi.com/xeroxsettlement .  Read the instructions carefully, fill out the Proof of Claim form, include all the documents the form asks for, sign it, and mail it postmarked no later than _____, **2008**.

| 11.    When would I get my payment? |
| --- |

The Court will hold a hearing on _____, **2008**, to decide whether to approve the settlement.  If the Court approves the settlement after that, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time for all the Proofs of Claim to be processed.  Please be patient.

| 12. | What am I giving up to get a payment or stay in the Class? |
|---|---|

Unless you exclude yourself, you are staying in the Class, and that means that, upon the "Effective Date" (as defined below), you will release all "Settled Claims" (as defined below) against the "Released Parties" (as defined below).

"Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and unknown claims, (i) that have been asserted in this Action by any of the Class members against any of the Released Parties, or (ii) that could have been asserted in any forum by any of the Class members against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and relate to the purchase or acquisition of Xerox common stock and/or bonds during the Class Period, except that "Settled Claims" does not mean or include the "Specifically Excluded Claims" (as defined below).

"Specifically Excluded Claims" means:  (i) any and all claims related to Xerox common stock and/or bonds that have been asserted in *In re: Xerox Securities Litig.,* 3:99-CV-02374 (D. Conn.) (AWT); and (ii) any and all claims under the Employee Retirement Income Security Act of 1974 as amended that have been asserted in *In re Xerox Corp. ERISA Litig.,* 3:02-CV-1138 (D. Conn.) (AWT) (the "ERISA Case") on behalf of a purported class of participants and beneficiaries in the Xerox Corporation Profit Sharing and Savings Plan and/or the Profit Sharing Plan of Xerox Corporation and the Xerographic Division, Union of Needletrades, Industrial and Textile Employees, A.F.L.-C.I.O. - C.L.C. (each, a "Plan"); provided, however, that Defendants shall be free to assert that any aggregate monetary recovery by any Plan or Participant therein as, or on behalf of, such alleged or potential class members for any period of time that includes the Class Period shall constitute an offset in the ERISA Case.  Lead Plaintiffs shall not oppose such argument.

"Released Parties" means any and all of the Xerox Released Parties and any and all of the KPMG Released Parties.

"Xerox Released Parties" means Xerox and any and all of the Individual Defendants, their past or present subsidiaries, parents, successors and predecessors, officers, partners, principals, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, advisors, and investment advisors, and any person, firm, trust, corporation, officer, director or other individual or entity in which Xerox or any of the Individual Defendants has a controlling interest or which is related to or affiliated with Xerox or any of the Individual Defendants, and the legal representatives, heirs, successors in interest and assigns of Xerox or any of the Individual Defendants.

"KPMG Released Parties" means KPMG and its past or present subsidiaries, parents, successors and predecessors, officers, partners, principals, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, advisors, and investment advisors, and any person, firm, trust, corporation, officer, director or other individual or entity in which KPMG has a controlling interest or which is related to or affiliated with KPMG, and the legal representatives, heirs, successors in interest and assigns of KPMG.

The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes final and not subject to appeal.

As more fully provided in the Stipulation, it is possible for the Settlement to be partially terminated by either Xerox (on behalf of itself and the Individual Defendants) or KPMG.  If either Xerox or KPMG elects to terminate their participation in the Settlement, Lead Plaintiffs will have the right to terminate the entire Settlement or to proceed with the non-terminating defendant portion of the Settlement, in which case only the settling defendant's Released Parties would be released from the Settled Claims.

If you remain a member of the Class, all of the Court's orders will apply to you and legally bind you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep any right you may have to sue or continue to sue the Defendants and the other Released Parties, on your own, about the Settled Claims, then you must take steps to get out.  This is called excluding yourself — or is sometimes referred to as "opting out" of the settlement class.  The Defendants may withdraw from and terminate the Settlement if putative Class Members who purchased in excess of a certain amount of Xerox common stock and/or bonds exclude themselves from the Class.

| 13. | How do I get out of the proposed settlement? |
|---|---|

To exclude yourself from the settlement Class, you must send a signed letter by mail stating that you "request exclusion from the Class in *Russell Carlson, et al., v. Xerox Corporation, et al.*, Case No. 3:00-CV-1621 (D. Conn.) (AWT)."  Your letter should state the date(s), price(s), and number(s) of shares and/or bonds of all your purchases and sales of Xerox Corporation securities during the Class Period.  In addition, be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked no later than _____, **2008** to:

*Russell Carlson, et al., v. Xerox Corporation, et al.*,
Securities Litigation **Exclusions**
c/o Gilardi & Co. LLC, Claims Administrator
P.O. Box 808003
Petaluma, CA 94975-8003

You cannot exclude yourself by telephone or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) the Defendants and the other Released Parties in the future.

| 14. | If I do not exclude myself, can I sue the Defendants and the other Released Parties for the same thing later? |
|---|---|

No. Unless you exclude yourself, you give up any rights to sue the Defendants and the other Released Parties for any and all Settled Claims. If you have a pending lawsuit pertaining to such claims, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion deadline is _____, **2008**.

| 15. | If I exclude myself, can I get money from the proposed settlement? |
|---|---|

No. If you exclude yourself, do not send in a Proof of Claim form to ask for any money. But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against the Defendants and the other Released Parties.

## THE LAWYERS REPRESENTING YOU

| 16. | Do I have a lawyer in this case? |
|---|---|

The Court ordered that the law firms of Berman DeValerio Pease Tabacco Burt & Pucillo; Johnson & Perkinson; and Milberg LLP[2] will represent all Class Members. These lawyers are called Plaintiffs' Co-Lead Counsel. You will not be separately charged for these lawyers. The Court will determine the amount of Plaintiffs' Co-Lead Counsel's fees and expenses, which will be paid from the Gross Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

---

[2]    Milberg LLP was formerly known as Milberg Weiss Bershad & Schulman LLP. On May 18, 2006 in the United States District Court for the Central District of California (Los Angeles), Milberg Weiss Bershad & Schulman LLP and two of its partners, David J. Bershad and Steven G. Schulman, and others, were named as defendants in an indictment. On September 20, 2007 a superseding indictment was filed which added Melvyn I. Weiss as a named defendant. The indictments alleged that, in certain cases identified in the indictments, portions of attorneys' fees awarded to the firm were improperly shared with certain plaintiffs. Milberg LLP has pleaded not guilty. The three partners named in the indictments have left the firm and have agreed to plead guilty to a charge of conspiracy. The indictments do not refer to this action, and make no allegations of any impropriety in the conduct of this action.

| 17. | How will the lawyers be paid? |
|---|---|

Plaintiffs' Co-Lead Counsel are moving the Court to award attorneys' fees from the Gross Settlement Fund in an amount of not greater than twenty percent (20%) of the Gross Settlement Fund and for reimbursement of their expenses in the approximate amount of $5,000,000, plus interest on such expenses at the same rate as earned by the Settlement Fund.

Plaintiffs' Co-Lead Counsel are also moving the Court to award a payment of the Class Representatives, Plaintiffs Louisiana State Employees' Retirement System, Thomas Zambito and Dr. Paul Dantzig, for their reasonable costs and expenses (including lost wages) directly relating to their representation of the Class.

Plaintiffs' Co-Lead Counsel, without further notice to the Class, will subsequently apply to the Court for payment of the Claims Administrator's fees and expenses incurred in connection with giving notice, administering the settlement and distributing the settlement proceeds to the members of the Class.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

| 18. | How do I tell the Court that I do not like the proposed settlement? |
|---|---|

If you are a Class Member you can object to the Settlement or any of its terms, the proposed Plan of Allocation and/or the application by Plaintiffs' Co-Lead Counsel for an award of fees and expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve any or all of the Settlement terms or arrangements. The Court will consider your views if you file a proper objection within the deadline identified, and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed settlement in the *Russell Carlson, et al., v. Xerox Corporation, et al.*, Case No. 3:00-CV-1621 (D. Conn.) (AWT) Securities Litigation. Be sure to include your name, address, telephone number, and your signature, identify the date(s), price(s), and number(s) of shares of all purchases and sales of Xerox common stock and/or bonds you made during the Class Period, and state the reasons why you object to the Settlement. Your objection must be filed with the Court and served on all the following counsel on or before _____, **2008**:

| COURT | PLAINTIFFS' CO-LEAD COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>for the District of Connecticut<br>Abraham Ribicoff Federal<br>Building<br>450 Main Street<br>Hartford, CT 06103 | Glen DeValerio, Esq.<br>Berman DeValerio Pease<br>Tabacco Burt & Pucillo<br>One Liberty Square<br>Boston, MA 02109<br><br>Dennis J. Johnson, Esq.<br>Johnson & Perkinson<br>1690 Williston Road<br>P.O. Box 2305<br>South Burlington, VT 05403<br><br>Brad N. Friedman, Esq.<br>Milberg LLP<br>One Penn Plaza<br>New York, NY  10119-0165 | Sandra C. Goldstein, Esq.<br>Cravath, Swaine & Moore,<br>LLP<br>Worldwide Plaza<br>825 Eighth Ave.<br>New York, NY  10019<br><br>*Counsel for Xerox Corporation*<br><br>Thomas D. Goldberg, Esq.<br>Day Pitney LLP<br>One Canterbury Green<br>Stamford, CT 06901<br><br>*Counsel for Anne Mulcahy, G. Richard Thoman and Philip Fishbach*<br><br>John A. Valentine, Esq.<br>Wilmer Cutler Pickering Hale<br>and Dorr LLP<br>1875 Pennsylvania Ave, NW<br>Washington, DC 20006<br><br>*Counsel for Paul Allaire, Barry Romeril and Gregory Tayler*<br><br>George A. Salter, Esq.<br>Hogan & Hartson LLP<br>875 Third Avenue<br>New York, NY 10022<br><br>*Counsel for KPMG LLP* |

You do not need to go to the Settlement Fairness Hearing to have your written objection considered by the Court.  At the Settlement Fairness Hearing, any Class Member who has not previously submitted a request for exclusion from the Class and who has complied with the procedures set out in this question 18 and question 22 below for filing with the Court and providing to the counsel for Plaintiffs and Defendants a statement of an intention to appear at the Settlement Fairness Hearing may also appear and be heard, to the extent allowed by the Court, to state any objection to the Settlement, the Plan of Allocation or Plaintiffs' Co-Lead Counsel's

motion for an award of attorneys' fees and reimbursement of expenses.  Any such objector may appear in person or arrange, at that objector's expense, for a lawyer to represent the objector at the Hearing.

| 19. | What is the difference between objecting and excluding? |
| --- | --- |

Objecting is simply telling the Court that you do not like something about the proposed settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S SETTLEMENT FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the proposed settlement.  You may attend and you may ask to speak, but you do not have to.

| 20. | When and where will the Court decide whether to approve the proposed settlement? |
| --- | --- |

The Court will hold a Settlement Fairness Hearing at ___:_____ __.m. on ____day, _____, 2008, at the United States District Court for the District of Connecticut, Abraham Ribicoff Federal Building, 450 Main Street, Hartford, CT 06103.  At this hearing the Court will consider whether the settlement is fair, reasonable and adequate. At the Settlement Fairness Hearing, the Court also will consider the proposed Plan of Allocation for the proceeds of the Settlement and the application of Plaintiffs' Co-Lead Counsel for attorneys' fees and reimbursement of expenses.  The Court will take into consideration any written objections filed in accordance with the instructions at question 18.  The Court also may listen to people who have properly indicated, within the deadline identified above, an intention to speak at the hearing; but decisions regarding the conduct of the hearing will be made by the Court.  *See* question 22 for more information about speaking at the hearing.  The Court may also decide how much to pay to Plaintiffs' Counsel.  After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Fairness Hearing.  Thus, if you want to come to the hearing, you should check with one of Plaintiffs' Co-Lead Counsel before coming to be sure that the date and/or time has not changed.

| 21. | Do I have to come to the hearing? |
| --- | --- |

No.  Plaintiffs' Counsel will answer questions the Court may have.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You

may also pay your own lawyer to attend, but it is not necessary.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| 22. | May I speak at the hearing? |
|---|---|

If you object to the Settlement, you may ask the Court for permission to speak at the Settlement Fairness Hearing.  To do so, you must include with your objection (see question 18 above) a statement stating that it is your "Notice of Intention to Appear in the *Russell Carlson, et al., v. Xerox Corporation, et al.*, Case No. 3:00-CV-1621 (D. Conn.) (AWT) Securities Litigation." Persons who intend to object to the Settlement, the Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing.  Unless otherwise ordered by the Court, you cannot speak at the hearing if you excluded yourself from the Class or if you have not provided written notice of your intention to speak at the Settlement Fairness Hearing by the deadline identified, and in accordance with the procedures described in questions 18 and 20 above.

## IF YOU DO NOTHING

| 23. | What happens if I do nothing at all? |
|---|---|

If you do nothing, you will get no money from this settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against the Defendants and the other Released Parties about the Settled Claims in this case, ever again.  To share in the Net Settlement Fund you must submit a Proof of Claim form (see question 10).  To start, continue or be a part of any other lawsuit against the Defendants and the other Released Parties about the Settled Claims in this case you must exclude yourself from this Class (see question 13).

## GETTING MORE INFORMATION

| 24. | Are there more details about the proposed settlement? |
|---|---|

This notice summarizes the proposed settlement.  More details are in a Stipulation and Agreement of Settlement dated March 24, 2008 (the "Stipulation").  You can get a copy of the Stipulation by writing to one of Plaintiffs' Co-Lead Counsel:  Glen DeValerio, Esq., Berman DeValerio Pease Tabacco Burt & Pucillo, One Liberty Square, Boston, Massachusetts 02109; Dennis J. Johnson, Esq., Johnson & Perkinson, 1690 Williston Road, South Burlington, Vermont 05403; or Brad N. Friedman, Esq., Milberg LLP, One Penn Plaza, New York, New York  10119-0165; or by visiting www.gilardi.com/xeroxsettlement .

You also can call the Claims Administrator at Telephone (800)708-4103, toll free; write to *Russell Carlson, et al., v. Xerox Corporation, et al.*, Securities Litigation, c/o Gilardi & CO. LLC, P.O. Box 808003, Petaluma, CA 94975-8003, or visit the website www.gilardi.com/xeroxsettlement, where you will find answers to common questions about the settlement, a Proof of Claim form, plus other information to help you determine whether you are a Class Member and whether you are eligible for a payment.

| 25. How do I get more information? |
| --- |

For even more detailed information concerning the matters involved in this Action, reference is made to the pleadings, to the Stipulation, to the Orders entered by the Court and to the other papers filed in the Action, which may be inspected at the Office of the Clerk of the United States District Court for the District of Connecticut, United States Courthouse, Abraham Ribicoff Federal Building, 450 Main Street, Hartford, CT 06103, during regular business hours.

**PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS**

The $750 million Cash Settlement Amount ($670 million contributed by Xerox and $80 million contributed by KPMG) and the interest earned thereon shall be the Gross Settlement Fund. The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

The proposed Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim. The following proposed Plan of Allocation reflects plaintiffs' allegations that the price of Xerox common stock and bonds became artificially inflated during the Class Period (February 17, 1998 – June 27, 2002) due to several alleged misrepresentations and/or omissions made during the Class Period. The plaintiffs allege that all or part of the stock price declines on the following dates were attributable to corrective disclosures of the alleged fraud: October 8, 1999, October 18, 1999, June 16, 2000, February 6, 2001, February 7, 2001, April 3, 2001, May 22, 2001, October 5, 2001, April 10, 2002, and June 28, 2002.

Based on the artificial inflation estimated by Plaintiffs' damages expert and Counsel's assessment of the difficulty of proving losses caused by specific disclosures, the following table details the Loss Amount per security for Xerox common stock and Bonds[1] during the Class Period:

| | Time Period | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Xerox Security** | 2/17/98 - 10/7/99 | 10/8/99 - 10/17/99 | 10/18/99 - 6/15/00 | 6/16/00 - 2/5/01 | 2/6/01 | 2/7/01 - 4/2/01 | 4/3/01 - 5/21/01 | 5/22/01 - 10/4/01 | 10/5/01 - 4/9/02 | 4/10/02 - 6/27/02 | **Holding Value** |
| Common Stock | $13.78 | $7.95 | $5.96 | $3.97 | $3.44 | $3.03 | $2.63 | $2.35 | $1.51 | $1.04 | $6.97 |
| Bonds Maturing 5/2001 or prior | 0.44% | 0.44% | 0.44% | 0.44% | 0.44% | 0.44% | 0.25% | N/A | N/A | N/A | N/A |
| Bonds maturing 6/2001 - | 0.60% | 0.60% | 0.60% | 0.60% | 0.60% | 0.60% | 0.00% | 0.00% | N/A | N/A | N/A |

---

[1] Xerox Bonds includes debt instruments issued by Xerox Corporation. Xerox Bonds does not include any instruments issued by any subsidiary or affiliate entity other than Xerox Corporation. Thus, Debt issued under the following names (per Bloomberg) are excluded: Xerox Canada Fin, Xerox Cap Europe, Xerox Cap I, Xerox Corp – ESOP, Xerox Credit, Xerox Capital, and Xerox Finance. In addition, per Xerox's SEC filings, securities under Xerox Capital Trusts I and II are excluded.

| 1/2002 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bonds Maturing 4/2002 | 4.56% | 4.48% | 4.40% | 4.25% | 4.25% | 4.25% | 0.25% | 0.25% | 0.25% | N/A | N/A |
| Bonds Maturing 5/2002 | N/A | N/A | 1.15% | 1.15% | 0.98% | 0.98% | 0.04% | 0.00% | 0.00% | N/A | N/A |
| Bonds Maturing 11/2003 | 19.71% | 19.61% | 19.47% | 19.25% | 19.25% | 19.25% | 19.25% | 13.75% | 12.75% | 12.00% | 80.00% |
| Bonds Maturing 12/2003 | 20.0% | 19.91% | 19.84% | 19.75% | 19.75% | 19.75% | 13.25% | 13.25% | 11.75% | 11.50% | 80.00% |
| Bonds Maturing 2/2004 | 16.76% | 16.41% | 16.41% | 16.20% | 16.01% | 16.01% | 13.05% | 13.05% | 12.90% | 11.05% | 72.50% |
| Bonds Maturing 8/2004 | 19.32% | 19.19% | 19.01% | 18.75% | 18.75% | 18.75% | 12.25% | 12.25% | 12.25% | 11.00% | 76.00% |
| Bonds Maturing 2006 - 2007 | 16.26% | 16.20% | 16.15% | 16.00% | 16.00% | 16.00% | 11.50% | 11.50% | 11.50% | 11.00% | 65.00% |
| Bonds Maturing 1/2009 $US | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 14.63% | 14.50% | 76.00% |
| Bonds Maturing 1/2009 EUROS | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | 12.75% | 12.50% | 74.00% |
| Bonds Maturing 2011 | 16.70% | 16.58% | 16.46% | 16.25% | 16.25% | 16.25% | 11.25% | 11.25% | 11.25% | 10.50% | 58.00% |
| Bonds Maturing 4/2016 | 10.00% | 9.47% | 9.27% | 9.06% | 9.06% | 9.06% | 4.00% | 4.00% | 4.00% | 4.00% | 70.00% |
| Bonds Maturing 4/2018 | 11.23% | 8.41% | 8.41% | 8.13% | 8.13% | 8.13% | 8.13% | 8.13% | 4.50% | 4.50% | 55.00% |
| Bonds Maturing 11/2026 | 19.36% | 19.24% | 19.16% | 19.06% | 19.06% | 19.06% | 12.50% | 12.50% | 12.00% | 11.50% | 80.00% |
| Bonds Maturing 2037 - | 8.98% | 8.98% | 8.98% | 8.98% | 8.91% | 8.91% | 0.49% | 0.49% | 0.08% | 0.00% | 83.00% |

| 2038 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

For purposes of the Settlement**,** a Class Member who submits a valid Proof of Claim form will have a **"Recognized Claim"** calculated as follows:

**Common Stock Purchases:**

1.      For shares of Xerox common stock purchased during the Class Period and sold at a loss during the Class Period, **"Recognized Claim"** will be the lesser of:

(A)      The Purchase Price Paid, including commissions and transaction charges (the "PPP") less the Sales Proceeds Received, net of commissions and transaction charges (the "SPR"), OR

(B)      The Loss Amount per share on the date of Purchase as shown in the above table, less the Loss Amount per share on the date of Sale as shown in the above table.

2.      For shares of Xerox common stock purchased during the Class Period and sold at a loss during the period June 28, 2002 through September 27, 2002 (the 90 days following the end of the Class Period), "Recognized Claim" will be the lesser of:

(A)      The PPP less the greater of (i) the SPR, or (ii) $6.97 per share, OR

(B)      The Loss Amount per share on the date of Purchase as shown in the above table.

3.      For shares of Xerox common stock purchased during the Class Period for more than $6.97 per share[2] and still held on September 25, 2002, **"Recognized Claim"** will be the lesser of:

(A)      The PPP less $6.97 per share, OR

(B)      The Loss Amount per share on the date of Purchase as shown in the above table.

**Bond Purchases:**

1.      For Xerox Bonds purchased during the Class Period and sold at a loss during the Class Period, **"Recognized Claim"** will be the lesser of:

(A)      75%[3] of the difference between (i) the Purchase Price Paid, including commissions and transaction charges but excluding any accrued interest (the "BPPP") less (ii)

---

[2]      Purchases of shares made during the Class Period for less than the $6.97 holding value at the end of the Class Period shall not be allocated any Recognized Claim.

[3]      This 25% discount is intended to recognize the somewhat greater difficulty a Bond purchaser faces compared to a purchaser of an equity security in showing the causal relationship between the allegedly misleading information and the claimed loss.

the Sales Proceeds Received, net of commissions and transaction charges but excluding any accrued interest (the "BSPR"), OR

        (B)    75% of the difference between (i) the Loss Amount per Bond[4] on the date of Purchase as shown in the above table, less (ii) the Loss Amount per Bond on the date of Sale as shown in the above table.

        2.    For Xerox Bonds purchased during the Class Period and sold at a loss during the period June 28, 2002 through September 27, 2002, "Recognized Claim" will be the lesser of:

        (A)    75% of the difference between (i) the BPPP less (ii) the greater of (a) the BSPR, or (b) the Holding Value for such Bonds as shown in the above table, OR

        (B)    75% of the Loss Amount per Bond on the date of Purchase as shown in the above table.

        3.    For Xerox Bonds purchased during the Class Period for more than the Holding Value for such Bonds[5] and still held on September 27, 2002, "Recognized Claim" will be the lesser of:

        (A)    75% of the BPPP less the Holding Value per Bond held, OR

        (B)    75% of the Loss Amount per Bond on the date of Purchase as shown in the above table,.

**IMPORTANT NOTE REGARDING BOND TRANSACTIONS:**  No Recognized Claim will be allowed with respect to any Xerox Bonds that matured, were called by, or were put to, Xerox during the Class Period while owned by the Class Member.

**<u>General Provisions:</u>**

In the event a Class Member has more than one purchase or sale of the Xerox Securities, all purchases and sales of each type of security shall be matched on a First-In-First-Out ("FIFO") basis, Class Period sales will be matched first against any Xerox Securities held at the beginning of the Class Period, and then against purchases in chronological order, beginning with the earliest purchase made during the Class Period.  Purchases and sales of Xerox Securities shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, devise or operation of law of Xerox Securities during the Class Period shall not be deemed a purchase or sale of these Xerox Securities for the

---

[4]    The Inflation per bond is shown on the above table as a percentage of the face value of the bond, such that for example, 0.88% is the equivalent of $8.80 on a $1,000 face amount Xerox Bond.

[5]    Purchases of Bonds made during the Class Period  for less than the holding value at the end of the class period, as shown in the last column of the above table shall not be allocated any Recognized Claim.

calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such Xerox Securities unless specifically provided in the instrument of gift or assignment. The receipt of Xerox common stock during the Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of Xerox common stock.

For purposes of determining whether a Claimant had a gain from his, her or its overall transactions in Xerox securities during the Class Period or suffered a loss, the Claims Administrator shall: (i) total the amount the Claimant paid for all Xerox Securities purchased during the Class Period (the "Total Purchase Amount"); (ii) match any sales of Xerox Securities during the Class Period first against the Claimant's opening position in the securities (the proceeds of those sales will not be considered for purposes of calculating gains or losses); (iii) total the amount received for sales of the remaining Xerox Securities during the Class Period (the "Sales Proceeds");[6] and (iv) ascribe holding values, as listed in the above table, for all Xerox Securities purchased during the Class Period and still held as of the end of the Class Period (the "Holding Value"). The difference between (x) the Total Purchase Amount ((i) above) and (y) the sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be deemed a Claimant's gain or loss on his, her or its overall transactions in the Xerox Securities during the Class Period.

To the extent a Claimant had a gain from his, her or its overall transactions in the Xerox Securities during the Class Period, the value of the Recognized Claim will be zero. Such claimants will in any event be bound by the Settlement. To the extent a Claimant suffered an overall loss on his, her or its overall transactions in the Xerox Securities during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss.

Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants. The minimum distribution amount to an Authorized Claimant with a valid Recognized Claim shall be $10.00.

The amount of a Class Member's Recognized Claim as computed above is not intended to be an estimate of what a Class Member might have been able to recover at trial, and it is not an estimate of the amount that will be paid pursuant to this Settlement. Instead, this computation is only a method to weight Class Members' claims against one another. Each Authorized Claimant will receive *pro rata* shares of the cash in the Net Settlement Fund based on his, her or its Recognized Claim.

Class Members who do not submit acceptable Proofs of Claim will not share in the settlement proceeds. Class Members who do not either submit a request for exclusion or submit an

---

[6] For debt securities that matured, were called or were put during the Class Period, no gain or loss will be computed.

acceptable Proof of Claim will nevertheless be bound by the settlement and the Order and Final Judgment of the Court dismissing this Action.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the settlement.  If any funds remain in the Net Settlement Fund by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.  If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated, but not controlled, by Plaintiffs' Co-Lead Counsel.

Defendants, their respective counsel and all other Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund or any losses incurred in connection therewith.

### SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased common stock and/or bonds of Xerox Corporation during the period from February 17, 1998 through June 27, 2002 inclusive for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN SEVEN (7) DAYS OF YOUR RECEIPT OF THIS NOTICE, you either (a) provide to the Claims Administrator the name and last known address of each person or organization for whom or which you purchased Xerox common stock and/or bonds during such time period or (b) request additional copies of this Notice and the Proof of Claim form, which will be provided to you free of charge, and within seven (7) days mail the Notice and Proof of Claim form directly to the beneficial owners of that Xerox common stock and/or bonds.  If you choose to follow alternative procedure (b), the Court has directed that, upon such mailing, you send a statement to the Claims Administrator confirming that the mailing was made as directed.  You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners.  Those expenses will be paid upon request and submission of appropriate supporting documentation.  All communications concerning the foregoing should be addressed to the Claims Administrator:

*Russell Carlson, et al., v. Xerox Corporation, et al.*,
Securities Litigation
c/o Gilardi & Co. LLC, Claims Administrator
P.O. Box 808003
Petaluma, CA 94975-8003
Telephone (800)708-4103
www.gilardi.com/xeroxsettlement


Dated:        Hartford, Connecticut
              _____, 2008

                              By Order of the Court
                              CLERK OF THE COURT