UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XEROX CORP., KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER AND PHILP FISHBACH | 3:00-CV-1621(AWT)<br><br>This document relates to:<br>00-cv-1758    00-cv-01908<br>00-cv-01779  00-cv-01916<br>00-cv-01792  00-cv-01967<br>00-cv-01795  00-cv-02029<br>00-cv-01824  01-cv-00244<br>00-cv-01846  01-cv-00285<br>00-cv-01883  01-cv-00341<br>01-cv-00449  01-cv-00497<br>01-cv-00583  01-cv-00584<br>01-cv-00591  01-cv-00614 |

**OBJECTION TO CLASS ACTION SETTLEMENT
AND REQUEST FOR ATTORNEY'S FEES
AND NOTICE OF INTENTION TO APPEAR
OF JOEL SHAPIRO**

Class member Joel Shapiro, 7015 Milani Street, Lake Worth, Florida 33467, hereby objects to the proposed class action settlement of this action and the request for attorney's fees for the following reasons.[1] Objector Shapiro intends to appear and argue at the fairness hearing scheduled for October 7, 2008 through his undersigned counsel.

I.   Class Counsel Has Failed to Direct Notice of Its Fee Motion and
     The Motion for Incentive Awards to Class Members

---

[1] Mr. Shapiro purchased 15 shares of Xerox Corp. at the price of $7.50 per share in January 2001, and sold those shares at a loss for $6.75 per share in September 2002. *See* Account Statements attached as *Exhibit A*.

### in a Reasonable Manner.

The Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorney's Fees and Settlement Fairness Hearing ("Notice") fails to provide the information required by Fed. R. Civ. P. 23(h). Fed. R. Civ. P. 23(h) provides:

> (1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

The Notice states only that Class Counsel intends to request up to 20% of the Settlement Fund. It does not provide the basis for the requested fee award, such as Class Counsel's reasonable lodestar, or the fee negotiated by Lead Plaintiffs at the commencement of this case, *i.e.*, the relevant information that would permit class members to make an informed consideration of the fee request.

The Notice fails to provide *any* information about the amount of incentive awards that will be requested or the basis for them.

The Notice requires that any objections to the settlement *or to class counsel's attorney's fees* must be filed by July 1, 2008, long before Class Counsel will file its Motion for Attorney's Fees or the Motion for Incentive Awards. Pursuant to Rule 23(h)(2), each class

2

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

member shall have the right to object to Class Counsel's fee motion within fourteen days of its filing. Objector Shapiro reserves the right to file his objection to Class Counsel's fee motion once that motion is filed. Simply filing that motion with the Court, however, without notice to the Class of when the motion is filed or how it can be accessed, is not "direct[ing notice] to class members in a reasonable manner."

The Notice fails to convey the content of the motion for attorney's fees, in violation of Rule 23(h). Class members, whose objections to the fee are due by July 1, 2008, are forced to guess about what class counsel's fee request is likely to be at the time they file their objections. The method followed in this case results in the procedural anomaly of requiring objections to the fee motion to be filed before the motion itself has been filed. Objector Shapiro will file a supplemental objection to Class Counsel's motion for an award of attorney's fees after it is filed on September 22, 2008.

## II.   20% Of A $750 Million Settlement Is An Excessive Attorney's Fee.

Even in the absence of supporting data, Objector Shapiro can safely say that Class counsel's request for attorney's fees of $150 million, plus costs of $5 million for a total award of $155 million, is certainly excessive by any standard. When measured against recent precedents in this Circuit, the requested fees are clearly unreasonable and excessive.

The Second Circuit has announced a preference for "moderation" in the awarding of common fund attorney's fees in a class action context. *Goldberger v. Integrated Resources,*

*Inc.*, 209 F.3d 43, 57 (2d Cir. 2000). Windfalls to class counsel are to be avoided. *Id.* at 49. Lodestar cross-checks are "encouraged." *Id.* at 50.

Percentage fees in securities and antitrust class actions post-*Goldberger* have ranged from 4% to 16%. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005)(awarding 4% fee out of $300 million settlement fund); *In re Elan Securities Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005)(awarding 12% fee out of $75 million settlement fund); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002)(awarding 12% fee that resulted in multiplier of 1.3); *In re Interpublic Sec. Litig.*, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. 2004)(awarding 12% of $77 million settlement as fees); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)(awarding 16% of $245 million settlement as fees in securities action, and 15% of $78 million settlement fund in ERISA action); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (awarding fee of 6.5%); *Klein ex rel SICOR Inc. v. Salvi*, 2004 US Dist LEXIS 4844 (S.D.N.Y. 2004)(awarding a fee of 8% of the settlement, representing 1.45 times lodestar).

As the Eastern District stated in *Twinlab, supra*:

> In *Goldberger*, the Second Circuit affirmed an attorney's fees award of 4% of the common fund and criticized courts who have used 25% … as a benchmark for attorney's fees, because that percentage presumes "a substantial contingency risk in every common fund case." … Post-*Golberger* courts … have generally refused multipliers as high as 2.03.

4

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

187 F. Supp. 2d at 85-87.

"The first, and most important ... factor is the risk in pursuing the case." *Bristol-Myers*, 361 F. Supp. 2d at 233 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000). "It is well-settled that the risk of the litigation must be measured as of when the case is filed." *Id.* at 234. In *Bristol-Myers*, the court found that "Lead Counsel have failed to set forth a single fact that was apparent prior to the commencement of the case that would demonstrate any unusual degree of risk in pursuing the action. To the contrary, the circumstances preceding the filing of the Complaint ... particularly the Company's restatement of its financials, support a finding that this case falls along the low end of the continuum of risk." *Id.*

In particular, the following were cited as evidence of low risk:

All of the alleged misstatements were easily found in the public record... Similarly, the claims were precipitated by public events. The FDA's issuance of the RTF letter predated the Erbitux claims, and the restatement preceded the channel-stuffing allegations. Lead counsel merely drafted complaints setting out roughly chronologically the material in the public record and alleging Defendants' knowledge and scienter. Neither the facts nor the legal and accounting theories were complicated. Among securities class actions, this case as a whole was neither unique nor complex.

*Id.* The same could be said of this case. Many of these consolidated cases were filed following the Defendant's 2001 restatement. The rest were filed in response to Xerox's June

5

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

2000 announcement that it was being investigated by the SEC. The $6.4 billion 2002 restatement significantly advanced this action, and made settlement almost inevitable.

This action also benefited from the SEC enforcement action that was commenced prior to this litigation and settled in 2002 for a $10 million fine and various forms of injunctive relief. *See Exhibit B*. The Plaintiffs borrowed the allegations of their Complaint wholesale from the SEC investigation, as recognized by this Court in its July 13, 2005 Ruling on Motions to Dismiss. As stated by this Court:

> ***Based on conclusions reached by an official at the SEC*** following an almost two-year investigation, the plaintiffs allege that "Xerox's senior management orchestrated a four-year scheme to disguise the company's true operating performance." ***Based on conclusions reached by another official at the SEC***, the plaintiffs allege that "Xerox employed a wide variety of undisclosed and often improper top-side accounting actions to manage the quality of its reported earnings," … ***Based on the SEC investigation***, the plaintiffs also allege as follows…

*Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 271-273 (D. Conn. 2005). Paragraph 14 of the Third Amended Consolidated Complaint was based entirely on the SEC Complaint. *Id.* at 272-273. Clearly, this litigation benefited enormously from, and piggybacked upon, the SEC investigation that took place between 2000 and 2002. This factor significantly decreases both the risk of the litigation as well as Class Counsel's ability to take full credit for the result.

Given Xerox' decision to cooperate with the SEC and effectively admit to a four-year scheme to disguise the company's true performance, the settlement of these tag-along private

6

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

actions was a foregone conclusion, despite the fact that it took another six years to finalize all of the details, including the settlement amount.

The average percentage fee for all class actions that have settled for more than $100 million is 15%. *See Exhibit C.* The only possible justification for a percentage fee as high as even 15% in the context of this case would be a very large lodestar, which might justify a higher percentage fee if the resulting lodestar multiplier were at the low end. But Class Counsel has failed to provide any lodestar information or even notice of its actual motion for fees to class members. Presumably, the motion itself will contain the requisite information about hours and fees, as well as argument about risk.

By not having access to Class Counsel's actual motion for an award of fees at the time this objection is due, class members have been denied the opportunity to distinguish and rebut the cases and arguments that Class Counsel will cite in their motion for fees. This creates a one-sided playing field – Class Counsel know all of Objectors' arguments at the time they file their fee motion, but Objectors are not privy to any of Class Counsel's arguments in support of their fees at the time they must file their objections. Again, this is a result of the procedural anomaly of requiring objections to the fee motion to be filed before the fee motion itself, contrary to what Rule 23(h) prescribes.

The Second Circuit recently announced the general principle, albeit in a different context, that attorney's fees should be set at "the minimum necessary to litigate the case

7

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 493 F.3d 110 (2d Cir. 2007). In *Arbor Hill* (a case on which retired Justice Sandra Day O'Connor sat by designation), the Second Circuit emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *id.* at 118, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 112. The proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid by the defendant pursuant to a fee-shifting statute, or by the plaintiff class pursuant to the common fund doctrine. Minimization of attorney's fees is the goal of every client who has not been promised a share of the attorney's fees.

Before *Arbor Hill*, some district courts in the Second Circuit and elsewhere focused on the theoretical *upper limit* on attorney's fees, beyond which the fees would shock the conscience, violate the Rules of Professional Conduct, or otherwise be "absurd." *See In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d at 522* (describing requested fee of $609 million, which was almost ten times hourly rate, as "absurd"). In light of *Arbor Hill*, however, it is clear that the entire procedure that a district court should follow in trying to ascertain a minimum reasonable fee has fundamentally changed. Rather than starting with

SILVER & SILVER LLP • ATTORNEYS AT LAW
NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

class counsel's requested amount of fees and (possibly) working down from there, a district court should instead start at zero and move up incrementally until it arrives at a number that adequately compensates class counsel.

"The rationale for the [common fund] doctrine is an equitable one; it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its costs." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)(citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392(1970)). Therefore, a common fund attorney's fee award should be set at a level that just eliminates the last bit of unjust enrichment to the class beneficiaries. To award even one million dollars more to the attorneys would result in unjust enrichment of the attorneys at their clients' expense, something that was never contemplated by the common fund exception.

When a district court is evaluating a request for attorney's fees in a common fund case, it should endeavor to determine that point at which the class is no longer being unjustly enriched, without regard to the amount that class counsel have requested. As observed recently by another district court, "after the settlement is completed … the attorneys may be inclined to ask for as much as they think the Lead Plaintiff will agree to, regardless of the initial risk, amount of work, or benefit to the class." *In re: Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). In fulfilling its duty to independently set the fee,

the court must explain why an attorney's fee that is less than the one requested by class counsel is inadequate to completely disgorge the class of any unjust enrichment.

Class counsel will likely demand a fee of $150 million, but have given no reasons why this Court should approve a fee of that magnitude other than the fact that they have asked for it, an entirely arbitrary and circular methodology. *See e.g., In re: Cardinal Health, supra*, 528 F. Supp. 2d at 757 (no presumption of reasonableness for fee amount requested by class counsel unless negotiated *ex ante* by Lead Plaintiff; court must independently set fee without regard to amount requested). Class counsel may point out that the resulting percentage and multiplier are within ranges previously approved by some courts, but that too proves nothing in this Circuit. The import of *Arbor Hill* is that, assuming that there is a so-called "range of reasonableness," the fee awarded must be at the lower limit of that range.

This Court should endeavor to set a reasonable attorney's fee without regard to the amount requested by Class Counsel. The Court should ascertain that the fee awarded is *the lowest one* that will adequately compensate Class Counsel. If there is to be a starting point for this analysis, it should be the 15% historical average across all class actions, including ones far riskier than this restatement, SEC-assisted securities case. The burden is on Class Counsel to show that a fee award of 15% of $750 million, or $112.5 million, is somehow unfair to

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

them and an unjust windfall to the Class. Class Counsel has not and cannot do that. Therefore, this Court may not award a fee in excess of that amount.

### III. Milberg LLP Should Be Disqualified As Class Counsel in This Case, And The Firm's Lodestar Should Be Excluded From Consideration.

For all of the reasons contained in Defendants' Memorandum in Response to Lead Plaintiffs' Renewed Motion for Class Certification and in Support of Defendants' Motion to Disqualify Milberg LLP, attached hereto as *Exhibit D*, Milberg LLP should be disqualified as co-Class Counsel in this settled litigation, should receive no award or share of attorney's fees, and should have its lodestar excluded from the calculation of the attorney's fee in this matter.

Milberg's entry into this litigation was predicated upon its use of paid plaintiff Seymour Lazar, who filed a false Certification with this Court stating that he had no financial interest in this litigation beyond his *pro rata* share. It has now been established that that Certification was false. As stated in Xerox' Memorandum referenced above, "it is inconceivable that a firm that committed a fraud against this Court and against the absent class members in this case would be allowed potentially to profit from that fraud by representing the very class members it deceived. Such a result would impugn the fundamental fairness and integrity of the judicial process."

Since that Memorandum was filed on April 11, 2008, Milberg LLP itself has agreed to plead guilty to charges of criminal conduct related to the payment of plaintiffs and to a failure

11

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

to adequately investigate allegations made by the Department of Justice at the time the indictments were filed. Therefore, there can no longer be any contention that the criminal misconduct by Milberg LLP was limited to a few rogue partners, and that the firm itself was blameless and ignorant of any wrongdoing. Instead, Milberg LLP was at least recklessly indifferent to the truth or falsity of those charges, and failed to take adequate steps to ensure that the firm was not continuing in its criminal behavior.

Because Milberg LLP must be disqualified as class counsel in this case, the lodestar claimed by that firm must be excluded from consideration as well. It would be unfair for the other two Co-Lead Counsel firms, Berman DeValerio and Johnson & Perkinson, to reap a windfall from Milberg's disqualification by retaining the lodestar amounts billed by, but not paid to, Milberg. Instead, the beneficiaries of the disqualification should be the absent class members who have been harmed in the scores of other cases in which Milberg received inflated fees because of its use of paid plaintiffs.

By the same token, the other two Co-Lead Counsel firms should not be penalized by Milberg's disqualification, either. They should receive the same multiplier on their respective lodestars as they would have if Milberg had remained in the case and taken its cut of the total fee award. While the overall percentage fee will undoubtedly be significantly lower as a result of Milberg's disqualification, the net recoveries of the remaining two firms should not change.

SILVER & SILVER LLP • ATTORNEYS AT LAW
NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS No. 417231

## CONCLUSION

For the foregoing reasons, this Court should require supplemental notice to the Class before ruling on Class Counsel's request for attorney's fees, give Class Members a reasonable opportunity to respond to Class Counsel's motion for an award of fees, and award Class Counsel a reasonable attorney's fee of no more than 10-15% of the fund, after disqualifying Milberg LLP and excluding that firm's lodestar from the fee analysis.

Respectfully submitted,
Joel Shapiro,
By his attorneys,

Daniel A. Silver, Esq. (ct08183)
Silver & Silver LLP
One Liberty Square
New Britain, Connecticut 06051
Phone: 860-225-3518
Fax: 860-348-0612
Email: Daniel@LawSilver.com

John J. Pentz, Esq. (*pro hac vice* motion pending)
Class Action Fairness Group
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Phone: (978) 461-1548
Fax: (707) 276-2925
Clasaxn@earthlink.net

CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2008, a copy of the foregoing Objection to Class Action Settlement and Request for Attorney's Fees and Notice of Intention to Appear of Joel Shapiro was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

s/s Daniel A. Silver
Daniel A. Silver (ct08183)
Silver & Silver LLP
One Liberty Square
New Britain, CT 06051
phone: (860) 225-3518
fax: (860) 348-0612
email: Daniel@lawsilver.com

14

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231