**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| |
|---|
| IN RE XEROX SECURITIES LITIGATION |

CIVIL ACTION NO.
3:99-CV-2374 (AWT)

April 11, 2008

**DEFENDANTS' MEMORANDUM IN RESPONSE TO LEAD PLAINTIFFS'**
**SECOND RENEWED MOTION FOR CLASS CERTIFICATION AND IN**
**SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY MILBERG LLP**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

Preliminary Statement............................................................................................1

I.     DEFENDANTS DO NOT OPPOSE CERTIFICATION OF A
       CLASS SUBJECT TO CERTAIN MODIFICATIONS BEING
       MADE TO PLAINTIFFS' PROPOSED ORDER.....................................3

II.    MILBERG SHOULD BE DISQUALIFIED FROM THIS CASE
       AND SHOULD NOT BE APPOINTED CLASS COUNSEL. ...................6

       A.     Background. ....................................................................................7

              1.     The Conspiracy. ..................................................................7

              2.     The Fraud Perpetrated By Milberg Against This Court.....10

              3.     Now is the Appropriate Time to Resolve These Issues. ....12

       B.     Milberg Should Be Disqualified from this Case as a Sanction for
              its Misconduct and Should Not Be Appointed Class Counsel.......15

       C.     Not Appointing Milberg As Class Counsel is in the Best Interest of
              the Class. .......................................................................................19

Conclusion .............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bello v. Barden Corp., No. 3:01-CV-01531, 2006 WL 2827091 (D. Conn.
Sept. 29, 2006) ............................................................................................ 15

Blum v. Schlegel, No. 91-CV-633S, 1996 WL 925921 (W.D.N.Y. May 9, 1996).......... 17

Chambers v. NASCO Inc., 501 U.S. 32 (1991)............................................................ 15, 17

Gariety v. Grant Thornton, LLP, 368 F.3d 356 (4th Cir. 2004) .......................................... 4

Gen. Refractories Co. v. Fireman's Fund Ins. Co., 45 Pa. D. & C. 4th 159 (Pa. Com.
Pl. 2000)...................................................................................................... 18

Hammond v. City of Junction City, Kansas, No. 00-2146-JWL, 2002 WL 169370
(D. Kan. Jan. 23, 2002) ........................................................................... 15, 16

Hughes v. Atl. Oldsmobile, Ltd., 608 N.Y.S.2d 522 (N.Y. App. Div. 1994)................... 16

In re CMS Energy Sec. Litig., No. 02-72004 (E.D. Mich. Sept. 6, 2007)....................... 22

In re Flag Telecom Holdings, Ltd. Sec. Litig., 245 F.R.D. 147 (S.D.N.Y. 2007)............ 21

In re Omnivision Techs., Inc., No. 04-2297-SC, 2007 WL 4293467 (N.D. Cal.
Dec. 6, 2007).............................................................................................. 21

In re Organogenesis Sec. Litig., 241 F.R.D. 397 (D. Mass 2007) .................................. 21

In re Stillwater Mining Co. Sec. Litig., No. 03-93 (D. Mont. Dec. 17, 2007)................. 22

In re Truck-A-Way, 300 B.R. 31 (E.D. Cal. 2003).......................................................... 18

In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249 (D.N.H. 2007)................ 22

Int'l Bhd. of Elec. Workers v. Acme Elec. Co., 652 F. Supp. 182 (E.D. Mo. 1986) passim

Marsden v. Select Med. Corp., 246 F.R.D. 480 (E.D. Pa. 2007)...................................... 21

Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24
(2d Cir. 2006)................................................................................................ 4

Nowak v. Ford Motor Co., 240 F.R.D. 355 (E.D. Mich. 2006)....................................... 21

Plaintiffs' Baycol Steering Comm. v. Bayor Corp., 419 F.3d 794 (8th Cir. 2005) .......... 15

Schoenbaum v. E.I. Dupont De Nemours & Co., No. 05-CV-01108, 2008 U.S. Dist.
    LEXIS 24630 (E.D. Mo. Mar. 27, 2008) ............................................................... 21, 22

Stubli v. Big D Int'l Trucks, Inc., 810 P.2d 785 (Nev. 1991)........................................... 16

United States v. Small, No. 03-CV-1368, 2007 WL 2293028 (E.D.N.Y. Aug. 9, 2007). 16

Ward v. Nierlich, No. 99-14227, 2006 WL 5412626 (S.D. Fla. Sept. 18, 2006)......... 6, 17

## Statutes & Rules

15 U.S.C. § 78(j)(b) ........................................................................................................... 5

15 U.S.C. § 78t(a) ............................................................................................................. 5

15 U.S.C. § 78u-4 ............................................................................................................ 15

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................ 15

17 C.F.R. § 240.10b-5..................................................................................................... 5

Fed. R. Civ. P. 23 ........................................................................................................ 3, 4

United States District Court for the District of Connecticut Local Civil Rule
16(g)(1)...................................................................................................................15

Defendants Xerox Corporation, Paul A. Allaire, G. Richard Thoman and Barry D. Romeril (collectively, "Defendants") respectfully submit this memorandum in response to Lead Plaintiffs' Second Renewed Motion for Class Certification (the "Second Renewed Motion") and in support of Defendants' Motion to Disqualify Milberg LLP.

## Preliminary Statement

This memorandum is divided into two parts. In Part I, Defendants respond to the Second Renewed Motion insofar as it seeks to certify this case as a class action. As explained more fully below, now that Plaintiffs have complied with the procedures mandated by the Court, Defendants do not oppose the certification of a class consisting of all persons and entities who purchased Xerox Corporation common stock during the period October 22, 1998, through October 7, 1999, and who incurred loss thereby, subject to certain modifications to Plaintiffs' Proposed Order.[1]

In Part II, Defendants respond to the Second Renewed Motion insofar as it moves the Court to appoint Milberg LLP ("Milberg") as Class Counsel.[2] Defendants oppose that aspect of the Second Renewed Motion and respectfully request that the Court disqualify Milberg and decline to appoint it as Class Counsel.

On March 20, 2008, Melvyn Weiss--who previously had been lead counsel for Milberg on this case--announced that he had agreed to plead guilty to a

---

[1] Defendants completely disagree with positions set forth by Plaintiffs in the Second Renewed Motion, including Plaintiffs' summary of the "facts" and allegations in this litigation. Defendants' decision not to oppose certification of a class should not be taken to suggest or admit otherwise.

[2] When this case began, the firm was known as "Milberg Weiss Bershad Hynes & Lerach LLP". During the course of this litigation, the firm has changed its name to "Milberg Weiss Bershad & Schulman LLP", "Milberg Weiss LLP" and, most recently, to "Milberg LLP". The firm is referred to herein as "Milberg".

Federal criminal racketeering charge. In particular, Mr. Weiss acknowledged that he, along with other former Milberg lawyers, paid millions of dollars in secret and illegal "kickbacks" to shareholders in exchange for the shareholders' agreement to serve as named plaintiffs in class action lawsuits brought by Milberg throughout the United States. Mr. Weiss also admitted that he, and the other Milberg lawyers, conspired to conceal that illegal kickback scheme from the courts that oversaw the Milberg class actions by, among other things, submitting false and misleading certifications to those courts. This case was one of the class actions targeted by the illegal scheme, and this Court was one of the Courts that Mr. Weiss and others defrauded.

Despite Mr. Weiss's guilty plea, Milberg apparently persists in asking this Court to appoint it Class Counsel. In doing so, Milberg is asking the very Court it defrauded to put its stamp of approval on Milberg as the best representative of the class in this case, and is seeking potentially to profit from the very case in which the fraud was committed. Such an outcome would fly in the face of this Court's "power, authority, and duty to ensure the administration of justice and the integrity of the litigation process"[3] and would prejudice the interests of the proposed class. For those reasons, and as explained herein, Milberg should be disqualified from this case and should not be appointed Class Counsel. (See infra Part II.)

---

[3] Int'l Bhd. of Elec. Workers v. Acme Elec. Co., 652 F. Supp. 182, 184-85 (E.D. Mo. 1986) (noting that "a law firm may not escape the consequences of misconduct committed by one of its attorneys" and disqualifying defendants' law firm on the grounds that one of its partners, who had since left the firm, photocopied plaintiff's attorney's work product).

2

## I.  DEFENDANTS DO NOT OPPOSE CERTIFICATION OF A CLASS SUBJECT TO CERTAIN MODIFICATIONS BEING MADE TO PLAINTIFFS' PROPOSED ORDER.

Defendants are satisfied that, having now followed the notice procedures appropriately mandated by the Court, Co-Lead Counsel have finally put forward a group of acceptable proposed class representatives. Mr. Dalberth is the only proposed class representative who remains from Plaintiffs' original motion for class certification.[4] Although Defendants continue to believe that Mr. Dalberth suffers from the typicality and adequacy problems addressed in Defendants' Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Class Certification, dated June 28, 2005 (Docket No. 260), Defendants have chosen not to press those arguments here, as Mr. Dalberth is no longer the sole proposed class representative, and therefore his qualifications are no longer dispositive of class certification.[5]

---

[4] Plaintiffs filed their original motion for class certification in 2003. (Docket No. 124.) Four of the five original proposed class representatives withdrew. (Docket Nos. 183, 237 and 257.) Defendants argued that a class could not be certified because the sole remaining proposed class representative, Thomas Dalberth, did not meet the requirements of Federal Rule of Civil Procedure 23. (Docket No. 260.) Without giving the other members of the putative class notice and the opportunity to seek class representative status, Co-Lead Counsel first attempted to have the Joint Welfare Fund of Local 164 of the International Brotherhood of Electrical Workers ("IBEW") intervene and then attempted to "substitute" IBEW and Robert W. Roten as new representative parties. (Docket Nos. 245 and 258.) The Court denied without prejudice the initial motion for class certification and the proposed intervention of IBEW and substitution of Mr. Roten and IBEW. (Docket No. 287.) The Court further ruled that Co-Lead Counsel had to provide notice to individuals and entities which had previously expressed an interest in serving as a representative party in this action to determine whether any of them wanted to serve as a Lead Plaintiff and proposed class representative. (Id.) After providing the required notice, Plaintiffs filed a renewed motion for class certification. (Docket No. 312.) That motion was denied without prejudice to renewal after the Court held a prefiling conference. (Docket No. 338.) Mr. Robert Agius, who was listed as a proposed class representative in that renewed motion, has also withdrawn. (Docket No. 364.) The Court held a prefiling conference on December 12, 2007 (Docket No. 365), and Plaintiffs renewed their motion on February 5, 2008 (Docket No. 367).

[5] We note that Mr. Dalberth is a member of the putative class solely to the extent he purchased Xerox common stock during the class period. Although Mr. Dalberth also

3

As Defendants advised the Court during the December 12, 2007, telephonic conference, Defendants intend to raise a number of potentially dispositive issues in this case, including loss causation and market efficiency.[6]  (See Status Conf. Tr. 6:22-7:12, Dec. 12, 2007, Docket No. 366.)  However, because those issues relate to expert discovery, which is currently ongoing, Defendants will address those and other related issues on the merits at a later date and not as part of the class certification proceedings.[7]  (Id.)

Defendants do not object to entry of Plaintiffs' Proposed Order Granting Lead Plaintiffs' Second Renewed Motion for Class Certification, with three exceptions (in addition to Milberg being disqualified and not appointed Class Counsel as discussed in Part II).  First, Defendants respectfully submit that Plaintiffs' proposed "Class Definition" should be modified to read "and incurred loss thereby" instead of "and were damaged thereby".[8]  Second, Defendants believe that the fifth "Whereas" clause is not

---

acquired units in the Xerox Stock Fund, those units do not fall within Plaintiffs' proposed class definition in this case.

[6] For example, since the December 12, 2007, telephonic conference, Defendants have taken the deposition of Plaintiffs' damages expert, Anthony Saunders, and have submitted a rebuttal expert report.  Defendants believe that the report submitted by Professor Saunders is, among other things, based on an unreliable methodology for determining market efficiency, loss causation and damages.  Defendants intend to move to exclude Professor Saunders's testimony.

[7] Although the Court is required to make certain findings in connection with class certification, those findings are not binding on the merits of this case.  See Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24, 41 (2d Cir. 2006) ("[T]he determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge.") (citing Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004)).

[8] The "Class Definition" section in Plaintiffs' Proposed Order reads:  "A class is hereby certified pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure consisting of all persons and entities who purchased Xerox Corporation

accurate and should be revised.[9]  It is not correct that Plaintiffs allege that Defendants

"misrepresent[ed] the success of the Company's <u>worldwide restructuring program</u>"

(emphasis added).  Plaintiffs' allegations concern <u>one</u> of the approximately 150 initiatives

that comprised the worldwide restructuring.  That initiative is referred to as the Customer

Business Operations Reorganization.  Thus, Defendants respectfully submit that the

"Whereas" clause should be modified to read as follows:

> WHEREAS, Plaintiffs allege in the Amended Consolidated
> Class Action Complaint for Violations of Federal Securities
> Laws, dated April 28, 2000, that Defendants violated
> Sections 10(b) and 20(a) of the Securities Exchange Act of
> 1934 (the "1934 Act"), 15 U.S.C. §§ 78(j)(b) and 78t(a),
> and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated by the
> SEC under Section 10(b) (hereinafter, the "Class Claims").

Third, Defendants believe that the "Excluded Person" section is

ambiguous and should be modified to read as follows:  "Excluded from the Class are

defendants Xerox Corporation, Paul A. Allaire, G. Richard Thoman and Barry D.

Romeril, their officers and directors, members of their immediate families (parents,

spouses, siblings, and children) and their agents and affiliates."[10]

---

common stock during the period October 22, 1998 through October 7, 1999, inclusive
(the 'Class Period') and were damaged thereby (the 'Class')."

[9] The fifth "Whereas" clause in Plaintiffs' Proposed Order reads:  "WHEREAS,
Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities
Exchange Act of 1934 (the '1934 Act'), 15 U.S.C. §§ 78(j)(b) and 78t(a), and Rule 10b-
5, 17 C.F.R. § 240.10b-5, promulgated by the SEC under Section 10(b), by undertaking
and maintaining an alleged scheme to artificially inflate the price of Xerox's common
stock by misrepresenting the success of the Company's worldwide restructuring program
(hereinafter, the 'Class Claims')."

[10] The "Excluded Persons" section in Plaintiffs' Proposed Order reads:  "Excluded
from the Class are defendants Xerox Corporation, Paul Allaire, Richard Thoman and
Barry Romeril, any entity in which any defendant or excluded person has or had a
controlling interest, the officers and directors of Xerox Corporation, and the legal
affiliates, representatives, heirs, controlling persons, successors, and predecessors in
interest or assigns of any such excluded party."

## II.    MILBERG SHOULD BE DISQUALIFIED FROM THIS CASE AND SHOULD NOT BE APPOINTED CLASS COUNSEL.

This Court should exercise its inherent authority to disqualify Milberg and decline to appoint it Class Counsel.[11]

First, the Court should disqualify Milberg as a sanction for the deliberate fraud perpetrated against this Court. Anything less would be an unjust and unseemly result that would damage the integrity of the judicial process. Put simply, because Milberg, the firm, is responsible for the conduct of its former lawyers, several of whom have admitted to perpetrating a fraud in this case, Milberg should be disqualified and should not be appointed Class Counsel. (See infra § II(B).)

Second, the Class would not be harmed if Milberg is disqualified. To the contrary, Milberg cannot adequately represent a class in the very same case in which it defrauded the trial judge and, even if it could, the appearance of inadequacy would jeopardize the finality and fairness of any settlement or judgment. The interests of the Class are best protected by disqualifying Milberg and allowing the two remaining firms-- Bernstein Liebhard & Lifshitz, LLP and Stull, Stull & Brody--to represent the Class. (See infra § II(C).)

---

[11] Defendants also respectfully request that the Court order Milberg to reimburse Defendants for all fees and costs associated with the preparation and filing of this motion. See Ward v. Nierlich, No. 99-14227, 2006 WL 5412626 (S.D. Fla. Sept. 18, 2006) (recommending disqualification of plaintiffs' law firm and requiring firm to reimburse defendants for attorneys' fees incurred incident to filing the motion); Int'l Bhd. of Elec. Workers, 652 F. Supp. at 186 (disqualifying defense firm and holding that firm was liable for plaintiff's attorneys' fees and expenses associated with bringing the motion for disqualification).

A.    **Background.**

1.    **The Conspiracy.**

It is now undisputed that former Milberg lawyers formulated and enacted a wide-ranging "kickback" scheme that involved fraud and the obstruction of justice.[12]

The mechanics of the scheme were simple. Milberg lawyers paid millions of dollars to certain individuals who agreed to serve as named plaintiffs in dozens of class action and shareholder derivative suits brought by Milberg in state and Federal courts across the country.[13] The conspiracy allowed Milberg "to secure a reliable source of individuals who were ready, willing and able to serve as named plaintiffs in Class Actions that Milberg Weiss wanted to bring", allowing Milberg to file complaints more quickly than other competing plaintiffs' law firms. (Bershad Plea, Ex. A, ¶ 7 (Earnhardt Decl., Ex. A).) This conduct spanned four decades and enabled Milberg to become one of the most economically successful plaintiffs' law firms in history. (See Weiss Plea, Ex. B (Earnhardt Decl., Ex. H); Schulman Plea, Ex. A, ¶ 8 (Earnhardt Decl., Ex. F).)

---

[12] See Plea Agreement for David J. Bershad, United States v. David J. Bershad, No. 05-587 (C.D. Cal. filed July 9, 2007) ("Bershad Plea") (Exhibit A to the Declaration of J. Wes Earnhardt, dated April 11, 2008 (hereinafter Earnhardt Decl. Ex. [ ])); Plea Agreement for Steven G. Cooperman, United States v. Steven G. Cooperman, No. 06-776 (C.D. Cal. Jan. 31, 2007) (Earnhardt Decl., Ex. B); Plea Agreement for Seymour M. Lazar, United States v. Seymour M. Lazar, No. 05-587 (C.D. Cal. filed Oct. 17, 2007) ("Lazar Plea") (Earnhardt Decl., Ex. C); Plea Agreement for William S. Lerach, United States v. William S. Lerach, No. 07-964 (C.D. Cal. filed Sept. 18, 2007) ("Lerach Plea") (Earnhardt Decl., Ex. D); Plea Agreement for Richard R. Purtich, United States v. Richard R. Purtich, No. 06-400 (C.D. Cal. filed May 22, 2006) (Earnhardt Decl., Ex. E); Plea Agreement for Steven G. Schulman, United States v. Steven G. Schulman, No. 05-587 (C.D. Cal. filed Sept. 20, 2007) ("Schulman Plea") (Earnhardt Decl., Ex. F); Plea Agreement for Howard J. Vogel, United States v. Howard J. Vogel, No. 06-320 (C.D. Cal. filed Apr. 28, 2006) ("Vogel Plea") (Earnhardt Decl., Ex. G); Plea Agreement for Melvyn I. Weiss, United States v. Melvyn I. Weiss, No. 05-587 (C.D. Cal. filed Mar. 20, 2008) ("Weiss Plea") (Earnhardt Decl., Ex. H).

[13] See, e.g., Weiss Plea, Ex. B (Earnhardt Decl., Ex. H); Schulman Plea, Ex. A (Earnhardt Decl., Ex. F); Vogel Plea, Ex. A (Earnhardt Decl., Ex. G).

On May 18, 2006, and September 20, 2007, grand juries in the Central District of California returned indictments against Milberg, several of its former lawyers, Seymour Lazar and Mr. Lazar's former attorney, Paul Selzer, in connection with the illegal kickback scheme (collectively, the "Indictment"). In particular, the May 18, 2006, indictment charged former Milberg lawyers Steven Schulman and David Bershad with, among other things, conspiracy to obstruct justice and to commit perjury, bribery and fraud. (See First Superseding Indictment, United States v. Milberg Weiss Bershad & Schulman LLP, David J. Bershad, Steven G. Schulman, Seymour M. Lazar and Paul T. Selzer, No. 05-587 (C.D. Cal. filed May 18, 2006) ("First Superseding Indictment") (Earnhardt Decl., Ex. I).) The September 20, 2007, indictment charged Milberg senior partner Melvyn Weiss with essentially the same crimes. (See Second Superseding Indictment, United States v. Milberg Weiss LLP, Melvyn I. Weiss, Seymour M. Lazar and Paul T. Selzer, No. 05-587 (C.D. Cal. filed Sept. 20, 2007) ("Second Superseding Indictment") (Earnhardt Decl., Ex. J).) Both indictments alleged that the co-conspirators carried out (and concealed) the illegal scheme by, among other things, causing Mr. Lazar to file a false certification in this case (the "Lazar Certification").[14] On September 18, 2007, William Lerach, a former name partner at Milberg, was also charged in connection with the conspiracy. (Information, United States v. William S. Lerach, No. 07-964 (C.D. Cal. filed Sept. 18, 2007) ("Lerach Charge") (Earnhardt Decl., Ex. K).) The Lerach Charge also alleged that the false Lazar Certification was filed with this Court in furtherance of the conspiracy. (Lerach Charge, ¶ 2(b) (Earnhardt Decl., Ex. K).)

---

[14] First Superseding Indictment at 49, Overt Act No. 104; Second Superseding Indictment at 40, Overt Act No. 71.

Mr. Bershad pled guilty in July 2007. (Bershad Plea (Earnhardt Decl., Ex. A).) The submission of the fraudulent Lazar Certification in this case is one of three "overt acts" that Mr. Bershad admitted took place in furtherance of the conspiracy. (Bershad Plea, Ex. A, ¶ 32(a) (Earnhardt Decl., Ex. A).) He will be sentenced in October 2008. (Order to Continue Sentencing Hearing Date for Defendant David Bershad, United States v. David J. Bershad, No. 05-587 (C.D. Cal. filed Mar. 26, 2008) (Earnhardt Decl., Ex. L).)

On September 18, 2007, Mr. Lerach pled guilty and was sentenced to two years in prison and was fined $250,000. (Sentencing Hearing Tr. 84:12-21, United States v. William S. Lerach, No. 07-964 (C.D. Cal. Feb. 11, 2008) ("Lerach Sentencing") (Earnhardt Decl., Ex. M).)

On September 20, 2007, Mr. Schulman, whose name appeared as counsel for Plaintiffs on the first two complaints filed in this litigation,[15] also pled guilty. (Schulman Plea (Earnhardt Decl., Ex. F).) He will be sentenced in October 2008. (Order to Continue Sentencing Hearing Date for Defendant Steven G. Schulman, United States v. Steven G. Schulman, No. 05-587 (C.D. Cal. filed Mar. 11, 2008) (Earnhardt Decl., Ex. N).)

On October 17, 2007, Mr. Lazar pled guilty in connection with the Indictment. (Lazar Plea (Earnhardt Decl., Ex. C).) He admitted that, beginning in 1979 and continuing until 2002, he and Milberg established a secret payment arrangement under which Mr. Lazar would be paid a portion of the attorneys' fees that Milberg obtained in cases in which Mr. Lazar served as a named plaintiff. (Lazar Plea, Ex. A, ¶ 4

_____

[15] See Docket No. 1; Docket No. 4.

(Earnhardt Decl., Ex. C).)  Mr. Lazar admitted that he filed the false Lazar Certification

in this case to avoid disclosing the existence of the conspiracy to this Court.  (Lazar Plea,

Ex. A, ¶¶ 11-16 (Earnhardt Decl., Ex. C).)  Indeed, this case is the <u>only</u> litigation

mentioned by name in Mr. Lazar's plea agreement.  (See Lazar Plea (Earnhardt Decl.,

Ex. C).)

Finally, on March 20, 2008, it was announced that Mr. Weiss would plead

guilty.  (Weiss Plea (Earnhardt Decl., Ex. H); Press Release, United States Attorney's

Office for the Central District of California, Melvyn Weiss, Co-Founder of Milberg

Weiss Law Firm, Agrees to Plead Guilty to Federal Racketeering Charge (Mar. 20, 2008)

(Earnhardt Decl., Ex. O).)  Mr. Weiss admitted that he or his co-conspirators filed the

false Lazar Certification in this case to conceal the conspiracy.  (Weiss Plea, Ex. B,

¶ 13(c) (Earnhardt Decl., Ex. H).)  Mr. Weiss also admitted that he agreed to the payment

arrangement between Milberg and Lazar.  (Weiss Plea, Ex. B, ¶ 11 (Earnhardt Decl., Ex.

H).)  Mr. Weiss has agreed to a prison sentence of between 18 and 33 months and has

agreed to forfeit approximately $10 million in proceeds obtained through the fraudulent

scheme.  (Weiss Plea, Ex. B, ¶¶ 15, 19-20 (Earnhardt Decl., Ex. H).)  Mr. Weiss formally

pled guilty in open court on April 2, 2008, and is scheduled to be sentenced on June 2,

2008.  (Change of Plea Hearing Tr. 34:5, <u>United States v. Melvyn I. Weiss</u>, No. 05-587

(C.D. Cal. Apr. 2, 2008) (Earnhardt Decl. Ex. P).)

### 2.    The Fraud Perpetrated By Milberg Against This Court.

In December 1999, Milberg attorneys filed a complaint that listed

Mr. Lazar as a named plaintiff in this case.  (Amended Class Action Complaint for

Violations of Federal Securities Laws, Dec. 13, 1999, Docket No. 4.)  In connection with

that complaint, Milberg attorneys caused Mr. Lazar to submit to this Court the Lazar

Certification, in which he declared, under penalty of perjury, that he would "not accept

any payment for serving as a representative party on behalf of a class beyond [his] pro

rata share of any recovery except, for such reasonable costs and expenses . . . as ordered

or approved by the Court".[16] The Lazar Certification--which was prepared by Milberg

attorneys--was false because Mr. Lazar intended to receive some portion of the attorneys'

fees, if any, that Milberg obtained in this case, as payment for his serving as a

representative plaintiff. (Lazar Plea, Ex. A, ¶¶ 13, 15 (Earnhardt Decl., Ex. C).)

Realizing that "disclosure of these facts to the court could potentially

cause the court to exclude him, as well as Milberg Weiss, from participation in [this

case]", Mr. Lazar and the Milberg attorneys misled this Court by filing the fraudulent

Lazar Certification. (Lazar Plea, Ex. A, ¶ 16 (Earnhardt Decl., Ex. C); Sentencing

Hearing Tr. 18:3-7, United States v. Seymour M. Lazar, No. 05-587 (C.D. Cal. Jan. 28,

2008) ("Lazar Sentencing") (Earnhardt Decl., Ex. Q).) But for the false Lazar

Certification, the Court would have learned of the conspiracy and of its link to this case,

and undoubtedly "Milberg Weiss would have been immediately removed from the case

and would have been stripped of all fees". (Lerach Sentencing, 77:16-19 (Earnhardt

Decl., Ex. M).)

While the seriousness of that conduct speaks for itself, the court that

sentenced Mr. Lazar articulated the egregious nature of the fraud perpetrated on this

Court:

---

[16] See Bershad Plea, Ex. A, ¶ 32(a) (Earnhardt Decl., Ex. A); Lerach Charge, ¶ 2(b)
(Earnhardt Decl., Ex. K); Weiss Plea, Ex. B, ¶ 13(c) (Earnhardt Decl., Ex. H); Lazar Plea,
Ex. A, ¶¶ 11-16 (Earnhardt Decl., Ex. C).

> "we've got . . . a cold, calculated declaration under penalty of perjury that
> was filed with and before a Federal District Court Judge . . . [Mr. Lazar]
> had absolutely no respect for the Court. . . . he just went ahead and flatly
> lied to the Court. That is, to me, an incredibly serious criminal conduct . .
> .". (Lazar Sentencing, 18:3-12, 23:1-4 (Earnhardt Decl., Ex. Q).)

The sentencing Court reiterated its position when sentencing Mr. Lerach:

> "the fraud perpetrated on those judges is, in my view, what makes this
> crime so very serious . . . . What Lerach and others did goes to the core of
> our judicial system. The most egregious wrong that a lawyer can commit
> is first to commit a fraud on his clients; the second is to commit a fraud on
> the court. And, that's exactly what was done in this case." (Lerach
> Sentencing, 74:5-12 (Earnhardt Decl., Ex. M).)

As the sentencing Court stated, it was this Court, and the other courts that oversaw the

Milberg class actions, that were defrauded by the submission of the false certifications.

### 3.    Now is the Appropriate Time to Resolve These Issues.

Milberg has repeatedly assured Defendants (and the Court) that the

connection between the conspiracy, this case and the Milberg lawyers who worked on

this case was tenuous at best. For example, on July 13, 2006, Milberg first informed the

Court that the firm and two of its partners, Messrs. Bershad and Schulman, had been

indicted for criminal misconduct. (Letter from Brad N. Friedman to Judge Thompson

(July 13, 2006) (Earnhardt Decl., Ex. R).) That letter stated: "Milberg Weiss and the two

charged partners vehemently deny that they engaged in any misconduct and intend to

fight the charges vigorously." (Id. at 1 (emphasis added).) The letter also stated that the

conspiracy charges consisted of nothing more than "unproven allegations that ultimately

will be refuted"; that the alleged conspiracy's connection to this litigation was remote

because, among other things, the indictment "does not allege that Mr. Lazar actually

received a payment of any sort in connection with his role in the Xerox litigation"; and

12

that the indictment "does not allege <u>anything else at all</u> concerning the <u>Xerox</u> litigation".
(<u>Id.</u> at 1-2 (emphasis added).)

More recently, as part of the Second Renewed Motion, Milberg noted that
Messrs. Bershad and Schulman had pleaded guilty, but emphasized that Mr. Weiss had
not pleaded guilty and did not "in fact" have "any involvement" in the initiation of this
litigation or "any dealings" with Mr. Lazar with respect to this litigation. (Second
Renewed Motion at 33, 34.)

Based, in part, upon those representations, Defendants decided to hold this
issue in abeyance.[17]  On March 19, 2008, Defendants informed the Court that they did not
then intend to challenge the appointment of Milberg as Class Counsel at the class
certification stage, instead reserving their right to raise the issue later if it became
necessary to do so. (<u>See</u> Letter from Sandra C. Goldstein to Judge Thompson (Mar. 19,
2008) (Earnhardt Decl., Ex. T).)

However, one day later, on March 20, 2008, Defendants learned that
Mr. Weiss--the lawyer in charge of prosecuting this case for a number of years--had
agreed to plead guilty to being part of the conspiracy.  Moreover, Mr. Weiss admitted that
he, or one of his "Conspiring Partners"--with Mr. Weiss's knowledge--caused the false
Lazar Certification to be submitted to this Court in connection with this litigation in order

---

[17] In response to Mr. Friedman's July 13, 2006, letter, for example, Defendants did
not seek to take advantage of the Indictment, but instead "reserve[d] their right to raise
with the Court in the future issues relating to the indictment of [Milberg] and Messrs
Schulman, Bershad, Lazar and Selzer, as well as any others whose indictment may have
implications for the issues in this case".  (Letter from Sandra C. Goldstein to Brad N.
Friedman (July 28, 2006) (Earnhardt Decl., Ex. S).)

to conceal the illegal kickback scheme. (Weiss Plea, Ex. B, ¶ 13(c) (Earnhardt Decl., Ex. H).)

The timing and substance of Mr. Weiss's plea agreement and corresponding admission came as a surprise to Defendants and fundamentally altered the landscape of this case. Unlike Messrs. Bershad, Lerach and Schulman, Mr. Weiss took an obvious, active role in prosecuting this litigation. He has appeared before this Court on multiple occasions to argue motions and to apprise the Court of the status of the case.[18] He signed and appeared on numerous briefs and motions submitted to this Court.[19] He wrote letters to this Court.[20] He corresponded with counsel for Defendants and, undoubtedly, he helped Plaintiffs formulate their case strategy. And now he has admitted that he or one of his conspiring partners--with his knowledge--caused a false certification to be filed with this Court in this case.

Thus, there can no longer be any doubt that a Milberg lawyer who had a leading role in this case perpetrated a fraud against this Court. Defendants respectfully submit that Milberg must be disqualified from this litigation and cannot be appointed Class Counsel.[21]

---

[18] See Status Conf. Tr., Feb. 4, 2003 (Docket No. 129); Status Conf. Tr., Feb. 11, 2003 (Docket No. 132); Status Conf. Tr., May 27, 2003 (Docket No. 137); Motion Hr'g Tr., June 26, 2003 (Docket No. 140); Motion Hr'g Tr., July 18, 2003 (Docket No. 160).

[19] See, e.g., Motion to Compel to Depose Five Key Witnesses, July 16, 2003 (Docket No. 150); Memorandum in Opposition to Motion for Protective Order Regarding Discovery and in Support of Motion to Compel Deposition of Five Key Witnesses, July 17, 2003 (Docket No. 153).

[20] Letter from Melvyn I. Weiss to Judge Thompson (Feb. 11, 2003); Letter of Melvyn I. Weiss to Judge Thompson (Apr. 5, 2003).

[21] As a result of disqualification, the Court also should remove Milberg from its position as Co-Lead Counsel. Pursuant to Section 21D of the Private Securities

**B.     Milberg Should Be Disqualified from this Case as a Sanction for its Misconduct and Should Not Be Appointed Class Counsel.**

It is well-settled that, upon a finding of bad faith, a court has the inherent power to sanction lawyers and law firms that appear before it. Chambers v. NASCO Inc., 501 U.S. 32, 43-51 (1991) (recognizing "inherent" power of courts to issue sanctions, particularly in situations where a party commits a fraud on the court); Bello v. Barden Corp., No. 3:01-CV-01531, 2006 WL 2827091, at *10 (D. Conn. Sept. 29, 2006) (Thompson, J.) ("The court has inherent power to sanction the improper conduct of both attorneys and their clients."). In fact, courts have a "duty to ensure . . . the integrity of the litigation process" by, if necessary, imposing appropriate sanctions against lawyers and law firms that engage in misconduct during the practice of law. Int'l Bhd. of Elec. Workers, 652 F. Supp. at 184-85.[22]

Disqualification is a well-recognized sanction that is routinely levied in response to attorney misconduct; indeed, courts have disqualified law firms for behavior substantially less egregious than the behavior at issue here. Plaintiffs' Baycol Steering Comm. v. Bayor Corp., 419 F.3d 794, 807 (8th Cir. 2005) (holding that the district court "acted well within its discretion" in removing attorney and law firm from plaintiffs' steering committee pursuant to its inherent powers, where attorney filed a false declaration and then "deliberately tried to cover-up his actions"); Hammond v. City of

_____

Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, lead plaintiffs' selection of co-lead counsel is subject to the approval of the court and, where a court already has approved lead plaintiffs' selection of lead counsel, it may reconsider that approval at its discretion. See 15 U.S.C. § 78u-4(a)(3)(B)(v).

[22] Rule 16(g)(1) of the Local Civil Rules of the United States District Court for the District of Connecticut provides that the court may impose sanctions "directly against counsel who . . . intentionally obstruct the effective and efficient administration of justice". D. Conn. L. Civ. R. 16(g)(1). That is a separate basis for sanctions in this case.

Junction City, Kansas, No. 00-2146-JWL, 2002 WL 169370 (D. Kan. Jan. 23, 2002)

(upholding magistrate judge's disqualification of plaintiff's law firm where firm violated

state rules of professional conduct by engaging in ex parte communications with one of

defendant's current managerial employees); Int'l Bhd. of Elec. Workers, 652 F. Supp. at

185 (disqualifying law firm due to unethical conduct of former attorney).[23]

        The former Milberg lawyers knowingly, and in bad faith, committed a

fraud against this Court so that they potentially could profit by representing members of

the proposed class in this case. (Bershad Plea, Ex. A, ¶ 32(a) (Earnhardt Decl., Ex. A);

Lazar Plea, Ex. A, ¶¶ 11-16 (Earnhardt Decl., Ex. C); Weiss Plea, Ex. B, ¶ 13(c)

(Earnhardt Decl., Ex. H).) In doing so, the former Milberg lawyers violated principles

that go "to the core of our judicial system". (Lerach Sentencing, 74:8-12 (Earnhardt

Decl., Ex. M).) Moreover, not only was the Court defrauded, but the absent class

members were duped as well. "In effect, the absent class members were at the mercy of

the unscrupulous paid plaintiffs and their corrupt attorneys and their invidious scheme

effectively foreclosed any meaningful judicial scrutiny of their conduct in those cases."

(Lerach Sentencing, 77:7-11 (Earnhardt Decl., Ex. M).) Under these circumstances,

---

[23] Courts also have the inherent power to sanction lawyers, where appropriate, by dismissing plaintiffs' claims with prejudice or to denying all legal fees earned in the case. See, e.g., United States v. Small, No. 03-CV-1368, 2007 WL 2293028, at *1 (E.D.N.Y. Aug. 9, 2007) (observing that "it is well established that where serious misconduct violative of disciplinary rules is committed by an attorney, it is proper for a court to deny legal fees for all services rendered the client by that attorney", and ordering criminal defense counsel who was removed from the case prior to trial to disgorge all fees paid to him); Hughes v. Atl. Oldsmobile, Ltd., 608 N.Y.S.2d 522 (N.Y. App. Div. 1994) (affirming dismissal of plaintiffs' complaint where plaintiffs' lawyers removed and replaced evidence in violation of court order); Stubli v. Big D Int'l Trucks, Inc., 810 P.2d 785, 788 (Nev. 1991) (affirming dismissal of complaint and holding "[a]lthough dismissal precludes adjudication on the merits and penalizes [plaintiff] for the misconduct of his attorney and expert, such consequences are unavoidable and are outweighed by the need to remedy the unfair litigation practices employed in this case.").

Milberg must be disqualified. See Ward, 2006 WL 5412626, at *7 (relying on its inherent power to recommend disqualification of plaintiffs' law firm for "corrupt[ing] the judicial process and commit[ing] a fraud on this Court" where the firm participated in an agreement to pay defense witnesses for their testimony).

Indeed, disqualifying Milberg and declining to appoint it Class Counsel are the most appropriate sanctions available to the Court that can protect "the integrity of the litigation process" while addressing the fraud perpetrated in this case.[24]  Put simply, it is inconceivable that a firm that committed a fraud against this Court and against the absent class members in this case would be allowed potentially to profit from that fraud by representing the very class members it deceived.  Such a result would impugn the fundamental fairness and integrity of the judicial process.

The fact that Messrs. Weiss and Schulman already have withdrawn from this case and have left Milberg is of no consequence.  Milberg, the firm, is responsible for the misconduct of its former partners.  To be sure, Milberg has attempted to distance itself from Messrs. Weiss, Bershad, Schulman and Lerach.  It has changed its name (eliminating Weiss, Bershad and Schulman), has issued press-releases expressing disappointment at the conduct of the conspirators and has maintained the innocence of the lawyers who remain at the firm.  (Press Release, Sanford Dumain, Member of Milberg Weiss LLP Executive Committee (Mar. 20, 2008) (Earnhardt Decl., Ex. U).)

---

[24] See Chambers, 501 U.S. at 44-45 (observing that court's inherent power enables courts "to fashion an appropriate sanction for conduct which abuses the judicial process"); Blum v. Schlegel, No. 91-CV-633S, 1996 WL 925921, at *11 (W.D.N.Y. May 9, 1996) ("The court's inherent power includes the ability to do whatever is reasonably necessary to deter abuse of the judicial process." (internal quotation marks omitted).)

However, none of those steps can insulate the firm from the actions taken by its former

partners.

As the United States District Court for the Eastern District of Missouri has

stated:

> "The law in this Country, Circuit and State is clear that a law firm may not
> escape the consequences of misconduct committed by one of its attorneys.
> It is clear that all members of a partnership are barred from participating in
> a case from which one partner is disqualified. . . . The principles
> articulated above apply equally to partnerships as well as professional
> corporations."

Int'l Bhd. of Elec. Workers, 652 F. Supp. at 184-85; see also In re Truck-A-Way, 300

B.R. 31, 39 (E.D. Cal. 2003) (disqualifying counsel and his law firm for conduct that

"degraded and impugned the integrity of the court and interfered with the administration

of justice"); Gen. Refractories Co. v. Fireman's Fund Ins. Co., 45 Pa. D. & C. 4th 159,

165-66 (Pa. Com. Pl. 2000) (disqualifying pro hac vice counsel and his law firm on

grounds that defense counsel "intentionally withheld critical documents, ignored court

orders, permitted false testimony at depositions and misrepresented facts to opposing

counsel and the court"). Here, there is no reason to depart from that line of authority and

every reason to follow it.

Indeed, in many ways, Messrs. Weiss, Lerach and Bershad were

synonymous with the Milberg firm--they were named partners, helped build the firm for

over 35 years and owned a significant percentage of the firm's equity. This is not an

instance where one rogue attorney made a mistake; this was, in the words of the

California sentencing court, "a cold, calculated" scheme that originated within the highest

ranks at Milberg and that involved the conspirators "flatly lying" to this Court. (Lazar

Sentencing, 18:5-6; 23:1 (Earnhardt Decl., Ex. Q).) In such circumstances, it is the firm,

18

not just the lawyers, that is responsible for the wrongdoing.  See Int'l Bhd. of Elec.
Workers, 652 F. Supp. at 184-85.

> **C.    Not Appointing Milberg As Class Counsel is in the Best Interest of the Class.**

Contrary to Plaintiffs' arguments in the Second Renewed Motion,
removing Milberg would not prejudice the rights of putative class members.  The two
other law firms seeking appointment as Class Counsel in this case--Bernstein Liebhard &
Lifshitz, LLP and Stull, Stull & Brody--were approved by the Court as Co-Lead Counsel
at the same time as Milberg.  Indeed, as Plaintiffs acknowledge in the Second Renewed
Motion, both of those firms have actively participated in litigating this case and neither
has been implicated in the criminal conduct at issue.  (Second Renewed Motion at 34.)  In
short, Bernstein Liebhard & Lifshitz, LLP and Stull, Stull & Brody are capable of ably
representing the class through the completion of proceedings, as they have done since
2000.

Moreover, because the former Milberg attorneys perpetrated a fraud
against this Court and against the class in this case, appointing Milberg as Class Counsel
might have a detrimental impact on the class.  The fraud perpetrated by the Milberg
attorneys creates a substantial risk that class members will question whether Milberg has
acted in their best interest in prosecuting this case.  This, in turn, increases the likelihood
of any settlement or other resolution being challenged (either by objectors or in a
collateral post-judgment attack) and of plaintiffs opting out of the class.  Thus, appointing
Milberg as Class Counsel would reduce, rather than increase, the likelihood of a fair and
expeditious resolution of this case.

19

Plaintiffs' attempt to downplay these risks is unpersuasive. (Second Renewed Motion at 33-37.) Plaintiffs first reference an August 24, 2006, letter from a named plaintiff in the <u>Carlson</u> litigation, the Louisiana State Employees Retirement Fund, to support their argument that Milberg is adequate Class Counsel in this case. (<u>Id.</u> at 35.) That letter is entirely irrelevant since, unlike in this case, there are no allegations that Milberg engaged in any wrongdoing in <u>Carlson</u>.[25]

Plaintiffs then argue that the proposed class representatives in this case, after being made aware of the Indictment and guilty pleas, have not attempted to take any steps to have Milberg removed. (<u>Id.</u> at 35.) However, the views of the entire class cannot be divined from those of four proposed class representatives. And even if they could, the assertion in the Second Renewed Motion that Milberg has the support of the proposed class representatives is simply not accurate. Georgia Stanley, one of the three proposed class representatives deposed after Milberg was indicted, testified that in light of the criminal proceedings against Milberg, she would <u>not</u> want the firm to represent her. (Stanley Dep. 99:10-100:24 (Sept. 25, 2007) (Levine Decl., Ex. E).)[26] Similarly, one of the other class representatives, Robert Roten had--contrary to Plaintiffs' assertion--no knowledge of the Indictment or the guilty pleas and did not even know whether Milberg was involved in the litigation at all. (Roten Dep. 110:16-111:13 (Sept. 10, 2007) (Levine Decl., Ex. D).) Absent such knowledge, it is no surprise that Mr. Roten has not challenged Milberg's participation. For those reasons, Plaintiffs' argument that Milberg

---

[25] "<u>Carlson</u>" refers to the separate litigation captioned <u>Carlson v. Xerox Corp.</u>, No. 3:00-CV-1621 (AWT).

[26] References to "Levine Decl., Ex. [ ]" refer to the Declaration of Mark Levine, dated Feb. 5, 2008, which accompanies the Second Renewed Motion.

20

should be appointed because it has not been challenged by the proposed class representatives is without merit.

   Finally, while Defendants concede that Plaintiffs are able to cite to several cases in which courts have determined Milberg to be adequate class counsel post-Indictment, other courts have reached the opposite conclusion.[27] Compare In re Flag Telecom Holdings, Ltd. Sec. Litig., 245 F.R.D. 147, 163 (S.D.N.Y. 2007) (appointing Milberg as class counsel in part because none of the Milberg attorneys working on that case were personally implicated in the conspiracy); In re Omnivision Techs., Inc., No. 04-2297-SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (finding there was "nothing to connect Milberg Weiss's purported wrongdoings in other actions to this case", and noting that "[n]either this lawsuit nor the parties involved in it were mentioned in the indictments against Milberg Weiss"); Marsden v. Select Med. Corp., 246 F.R.D. 480, 487 (E.D. Pa. 2007) (finding Milberg adequate on the grounds that there was "no evidence that any wrongdoing has occurred with respect to the filing of the claim here, or that any of the indicted partners have participated in the case since the filing of the Amended Complaint") with In re Organogenesis Sec. Litig., 241 F.R.D. 397, 410 (D. Mass. 2007) (refusing to appoint Milberg as class counsel); Nowak v. Ford Motor Co., 240 F.R.D. 355, 363-64 (E.D. Mich. 2006) (declining to appoint Milberg as co-lead counsel post-Indictment); Schoenbaum v. E.I. Dupont De Nemours & Co., No. 05-CV-01108, 2008 U.S. Dist. LEXIS 24630, *8 (E.D. Mo. Mar. 27, 2008) (removing Milberg

---

  [27] This case is the only active case referenced by name in the plea agreements of the former Milberg lawyers. That critical fact distinguishes this case from every single case Milberg cites in the Second Renewed Motion.

as co-interim class counsel because Milberg was not "best able to represent the interests of the class" in light of the Indictment and subsequent guilty pleas).[28]

However, not one of those courts considered the issue presented here-- namely, whether Milberg can serve as class counsel in a case where the admitted wrongdoing actually occurred. Surely, in this case--where Mr. Weiss was lead counsel and committed an act in furtherance of the conspiracy--the best interests of the class are served by disqualifying Milberg.

### Conclusion

Subject to the foregoing, Defendants do not oppose the Second Renewed Motion or object to certification of a class in this matter consisting of all persons and entities who purchased Xerox Corporation common stock during the period October 22, 1998, through October 7, 1999, and incurred loss thereby. Defendants do object to the appointment of Milberg as Class Counsel and respectfully submit that Milberg should be disqualified and that the Court should instead appoint Bernstein Liebhard & Lifshitz, LLP and Stull, Stull & Brody as Class Counsel. Defendants also respectfully request that the Court order Milberg to reimburse Defendants for the fees and costs associated with filing the Motion to Disqualify Milberg and that the Court grant Defendants all such other relief that the Court in its discretion finds appropriate. For the Court's convenience, Defendants file herewith a revised version of Plaintiffs' Proposed Order reflecting the changes proposed in Part I, disqualifying Milberg, not appointing Milberg as Class

---

[28] Two of the decisions cited by Plaintiffs do not discuss Milberg's adequacy as class counsel in light of the conspiracy. See In re CMS Energy Sec. Litig., No. 02-72004 (E.D. Mich. Sept. 6, 2007); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249 (D.N.H. 2007). Similarly, in a third case cited by Plaintiffs, In re Stillwater Mining Co. Sec. Litig., No. 03-93 (D. Mont. Dec. 17, 2007), Milberg's adequacy to serve as class counsel was not challenged, and thus Milberg was appointed.

Counsel and ordering Milberg to pay Defendants' costs associated with filing this motion.

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

By
_____
/s/ Sandra C. Goldstein
Evan R. Chesler (ct 03177)
Sandra C. Goldstein (ct 24019)
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Xerox Corporation*

DAY PITNEY LLP

By
_____
/s/ Thomas D. Goldberg
Thomas D. Goldberg (ct 04386)
Terence J. Gallagher (ct 22415)

One Canterbury Green
Stamford, CT 06901
(203) 977-7300

*Attorneys for Defendant G. Richard Thoman*

WILMER CUTLER PICKERING HALE and
DORR LLP

By
_____
/s/ John A. Valentine
John A. Valentine (ct 25941)

1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

23

Alfred U. Pavlis (ct 08603)
DALY & PAVLIS, LLC
107 John Street
Southport, CT 06890
(203) 255-6700

*Attorneys for Defendants Paul A. Allaire and
Barry D. Romeril*

Of counsel:
Ivy Thomas McKinney (ct 09351)
Xerox Corporation
45 Glover Avenue
P.O. Box 4505
Norwalk, Connecticut 06856-4505
(203) 968-3000
*Attorney for Defendant Xerox Corporation*

24