UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL CARLSON, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>v.<br><br>XEROX CORP., KPMG LLP, PAUL A. ALLAIRE, G. RICHARD THOMAN, ANNE MULCAHY, BARRY D. ROMERIL, GREGORY TAYLER AND PHILP FISHBACH | 3:00-CV-1621(AWT)<br><br>This document relates to:<br>00-cv-1758   00-cv-01908<br>00-cv-01779  00-cv-01916<br>00-cv-01792  00-cv-01967<br>00-cv-01795  00-cv-02029<br>00-cv-01824  01-cv-00244<br>00-cv-01846  01-cv-00285<br>00-cv-01883  01-cv-00341<br>01-cv-00449  01-cv-00497<br>01-cv-00583  01-cv-00584<br>01-cv-00591  01-cv-00614 |

OBJECTION TO CLASS ACTION SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

Now come CHARLES REINER (originally represented by Edward F. Siegel) and PETER CARFAGNA (originally represented by Edward W. Cochran) by and through the undersigned counsel, and hereby file these Objections to the proposed Settlement of this Class Action and, in support thereof, state as follows:

PROOF OF MEMBERSHIP IN CLASS

Objector CHARLES REINER resides at 3909 Beechmont Trail, Orange Ohio 44122. His telephone number is (216) 831-2149. Attached hereto as Exhibit A are

1

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

documents indicating purchases and sales of Xerox securities during the class period. Objector PETER CARFAGNA resides at 2881 South Park Blvd. Cleveland Ohio 44120. His telephone number is (216) 685-1439. Attached hereto as Exhibit B are documents indicating purchases and sales of Xerox securities during the class period.

## NOTICE OF INTENT TO APPEAR

Objectors hereby give notice that they intend to appear, through undersigned counsel, at the Settlement Hearing presently scheduled for October 7, 2008 at 3:00 PM at the United States Courthouse, Abraham Ribicoff Federal Building 450 Main Street, Hartford CT 06103.

## OBJECTIONS

The proposed Class Action Settlement Agreement is inadequate, unfair and unreasonable for the following reasons:

1. **AMOUNT OF FEE REQUEST IS TOO HIGH.** The Settlement Fund consists of cash in the amount of Seven Hundred and Fifty Million Dollars ($750,000,000) plus interest. The Notice indicates that of this amount, Class Counsel intend to seek a fee of 20% ($150 Million) plus reimbursement of up to Five Million Dollars ($5,000,000) in expenses. It is anticipated that the Lead Plaintiffs will also request certain fees. The total

2

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

request, therefore, will be in excess of $155 million, or almost twenty-one (21%) percent of the Settlement.

Based upon the size of the Settlement Fund, the Court should award **total fees and expenses** to all counsel in an amount not exceeding approximately 15 % percent of the Settlement Fund. According to the study by the consulting firm of Logan, Moshman and Moore which analyzed over 1100 Common Fund cases, the average fee award for Class Action cases whose settlements were valued at more than One Hundred Million dollars ($100 Million) was 15.1% percent. Stuart J. Logan, Jack Moshman and Beverly C. Moore, Jr., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 169 (2003). (Executive Summary attached as Exhibit C). The difference between what Class Counsel has requested and the amount that it should be awarded under the Logan, Moshman Moore formula is $43 million. However, the amount calculated under this formula should be the **highest** amount considered by this Honorable Court because this case qualifies as a "mega-fund" case which should be governed by a different set of rules.

There is ample precedent in this Circuit concerning the appropriate fee to be awarded in a settlement of this size and magnitude. The standard for the award of a "percentage of the common fund" fees in this Circuit was modified in the case of *Goldberger vs. Integrated Resources, Inc.*, 209 F. 3rd 43 (2nd Cir. 2000). Prior to *Goldberger*, Plaintiffs' attorneys had

3

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 117221

asserted a 25% fee as a benchmark for common fund cases; however, that assertion was rejected in *Goldberger*, and the Court awarded a fee of only 4%.

Percentage fees in securities and antitrust class actions post-*Goldberger* have ranged from 4% to 16%. *See In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 237 (S.D.N.Y. 2005)(awarding 4% fee out of $300 million settlement fund); *In re Elan Securities Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005)(awarding 12% fee out of $75 million settlement fund); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002)(awarding 12% fee that resulted in multiplier of 1.3); *In re Interpublic Sec. Litig.*, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. 2004)(awarding 12% of $77 million settlement as fees); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)(awarding 16% of $245 million settlement as fees in securities action, and 15% of $78 million settlement fund in ERISA action); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (awarding fee of 6.5%); *Klein ex rel SICOR Inc. v. Salvi*, 2004 US Dist LEXIS 4844 (S.D.N.Y. 2004)(awarding a fee of 8% of the settlement, representing 1.45 times lodestar).

In *In re Interpublic Sec. Litig.* 2004 U.S. Dist. Lexis 21429 (SDNY 2004) at the outset of its analysis, the court noted:

> "To avoid 'routine windfalls where the recovered funds run into the multimillions,' [*Goldberger v. Integrated Resources, Inc.*] 209 F.3d at 52, <u>courts typically decrease</u>

4

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

the percentage of the fee as the size of the fund increases. See *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 at 521 (collecting cases). In cases 'where a class recovers more than $75-$200 million…fees in the range of 6-10 percent and even lower are common.' *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D., 486 (S.D.N.Y. 1998)." (emphasis added).

Notwithstanding the fact that class counsel had originally agreed to a fee of 20% and later negotiated the fee down to 17%, the court in *Interpublic* awarded a fee of 12% of the settlement.

Several significant Third Circuit cases are also instructive. In the case of *In re: Prudential Insurance Company, 148 F. 3d 283(1998)* which was a mega-settlement of over One Billion Dollars, the Court stated:

> Examining several factors in order to calculate an appropriate percentage under this two tier analysis, the court noted that, although percentages from 20 to 30% have been deemed appropriate, the exceptional size of the class recovery in this instance counseled in favor of a lower percentage of recovery. The district court examined the fee awards in other cases involving substantial recoveries, and found a range of 4.1% to 17.92% in cases where the recovery exceeded $100 million. (Emphasis added). *Id. at 331*.

Another is *In re Cendant Corp Securities Litigation*, 109 F. Supp 2d 285,302,306 (D.N.J. 2000), vacated 264 F. 3d 201 (3rd. Cir 2001), after remand, 243 F. Supp 2d 166, 174 (D.N.J. 2003) which involved a settlement exceeding $3 Billion. The fee initially awarded was about $262 million, which was about 8.275% of the settlement amount. However, that fee was later reduced to $55 Million or less than two (2%) percent of the settlement fund.

5

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

The Third Circuit in *Cendant* also suggested that a court should apply a "declining percentage principle," in mega-fund cases meaning that the percentage of the recovery allocated to attorneys' fees decreases as the size of the recovery increases. See Also Barbara J. Rothstein & Thomas E. Willing, <u>Managing Class Action Litigation: A Pocket Guide for Judges</u>, 22 (Fed. Jud. Center 2005) (stating that in mega cases involving monetary recovery "in the hundreds of millions of dollars, even in the billions…generally, as the total recovery increases the percentage allocated to fees decreases").

This Circuit recently elaborated on the "preference for moderation" it had articulated in *Goldberger* in 2000, in *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 484 F.3d 162 (2d Cir. 2007). In that case, the court emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Id.* at 169, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 164. The import of *Arbor Hill* is that, assuming that there is a so-called "range of reasonableness," the fee awarded must be at the **lower** limit of that range. Therefore, this court needs to determine if $155 million is the "minimum necessary" to litigate this case.

6

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

Before *Arbor Hill*, district courts focused on the theoretical **upper limit** on attorney's fees, beyond which the fees would shock the conscience, violate the Rules of Professional Conduct, or otherwise be "absurd." *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 522 (describing requested fee of $609 million, which was almost ten times hourly rate, as "absurd"). An attorney's fee almost had to be grounds for professional discipline before a district court would lower it or deny approval to a motion for fees. In light of *Arbor Hill*, however, it is clear that the entire procedure that a district court should follow in trying to ascertain a minimum reasonable fee has fundamentally changed. Rather than starting with class counsel's requested amount of fees and (possibly) working down from there, a district court should instead start at zero and move up incrementally until it arrives at a number that is not unfair to the Class or to Class Counsel.

**2. PROCEDURAL ANOMALY**. Objectors wish the Court to take judicial notice of the fact that they are being forced to object to fees and expenses when they do not even know the details of such requests. Because Objectors are obligated to file these objections on or before July 1, 2008, and the Fee and Expense reimbursement request has not been filed as of the date of these objections, Objectors are in the peculiar and anomalous position of objecting to a Motion that has not yet been filed. Objectors believe that the procedure being followed in this case violates F.R.C.P. 23 (h) because the Class does not have actual notice of the amount

7

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 •

of the Fee Request or the details underlying such request in a timely fashion. For such reason, Objectors reserve the right to supplement these objections once the Fee and Expense Reimbursement request has been filed.

### 3. LOW RISK MILITATES AGAINST A LARGE MULTIPLIER

Although the Fee Request has not yet been filed, it will undoubtedly contain a request for a multiple of lodestar in calculating or justifying the fee. This should be carefully scrutinized.

"The first, and most important ... factor is the risk in pursuing the case." *Bristol-Myers*, 361 F. Supp. 2d at 233 (*citing Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000). "It is well-settled that the risk of the litigation must be measured as of when the case is filed." *Id.* at 234. In particular, the following were cited as evidence of low risk in *Bristol-Myers*:

> All of the alleged misstatements were easily found in the public record... Similarly, the claims were precipitated by public events. The FDA's issuance of the RTF letter predated the Erbitux claims, and the restatement preceded the channel-stuffing allegations. Lead counsel merely drafted complaints setting out roughly chronologically the material in the public record and alleging Defendants' knowledge and scienter. Neither the facts nor the legal and

8

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

accounting theories were complicated. Among securities class actions, this case as a whole was neither unique nor complex. *Id.*

The same could be said of this case. Many of these consolidated cases were filed following the Defendant's 2001 restatement. The rest were filed in response to Xerox's June 2000 announcement that it was being investigated by the SEC. The $6.4 billion 2002 restatement significantly advanced this action, and made settlement almost inevitable.

This action also benefited from the SEC enforcement action that was commenced prior to this litigation and settled on April 11, 2002 for a $10 million fine and various forms of injunctive relief. The Plaintiffs borrowed the allegations of their Complaint wholesale from the SEC investigation, as recognized by this Court in its July 13, 2005 Ruling on Motions to Dismiss. As stated by this Court:

> *Based on conclusions reached by an official at the SEC* following an almost two-year investigation, the plaintiffs allege that "Xerox's senior management orchestrated a four-year scheme to disguise the company's true operating performance." *Based on conclusions reached by another official at the SEC,* the plaintiffs allege that "Xerox employed a wide variety of undisclosed and often improper top-side accounting actions to manage the quality of its reported earnings," … *Based on the SEC investigation*, the plaintiffs also allege as follows….*Carlson v. Xerox Corp.*, 392 F. Supp. 2d 267, 271-273 (D. Conn. 2005).

Paragraph 14 of the Third Amended Consolidated Complaint was based entirely on the SEC Complaint. *Id.* at 272-273. Clearly, this litigation benefited enormously from, and

9

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

piggybacked upon, the SEC investigation that took place between 2000 and 2002. This factor significantly decreases both the risk of the litigation as well as Class Counsel's ability to take full credit for the result.

In *Swedish Hospital Corporation v. Shalala, 1 F. 3d 1261(CADC 1993),* the Court of Appeals for the D.C. Circuit had a similar question before it. The District Court had applied a percentage of the fund method ("POF") in determining that class counsel should received 20% of the common fund **produced by their efforts**. The Court awarded only $2 Million Dollars in fees out of a common fund of $27.8 Million reasoning "that because the efforts of the Plaintiff's attorneys had contributed only $10 Million Dollars to the value of the settlement fund, the attorneys were entitled to 20% of only that amount". *Id* at 1263. Applying similar logic, this court must determine, possibly after a full evidentiary hearing, the percentage of the common fund that is attributable to the work of class counsel as opposed to the SEC. See also *In Re First Data Bank Antitrust Litigation, 209 F. Sup. 2d 96 (DDC 2002).*

Given Xerox' decision to cooperate with the SEC and effectively admit to a four-year scheme to disguise the company's true performance, the settlement of these tag-along private actions was a foregone conclusion, despite the fact that it took another six years to finalize all of the details, including the settlement amount.

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

Therefore, this court must consider whether or not the Plaintiff's attorneys ever faced a real risk of zero recovery. It is quite likely that the very central issues involved in this case were decided very early in the proceedings. Once the SEC investigation became public record, and especially after the Settlement was announced on April 11, 2002, this was in essence a "risk-free" case, and no lodestar multiplier should apply to time expended after the April 2002 SEC announcement.

4. **MILLBERG LLP SHOULD BE DISQUALIFIED AS CLASS COUNSEL IN THIS CASE AND THE FIRM'S LODESTAR SHOULD BE EXCLUDED FOR CONSIDERATION**

For all of the reasons contained in Defendants' Memorandum in Response to Lead Plaintiffs' Renewed Motion for Class Certification and in Support of Defendants' Motion to Disqualify Milberg LLP (filed in this District Court in the case of *In re: Xerox Securities Litigation*, 3;99-CV-2374 (AWT), Docket no. 377), Milberg LLP should be disqualified as co-Class Counsel in this settled litigation, should receive no award or share of attorney's fees, and should have its lodestar excluded from the calculation of the attorneys' fee in this matter.

Class Counsel referred to Milberg's problems in the Notice in a footnote. While the statements contained in this footnote might be technically correct, they are misleading in the extreme. Particularly the last line which states "The indictments [filed on May 18, 2006 and September 20, 2007] do not refer to this action, and make no allegations of any impropriety in

11

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

the conduct of this action." Notice fn2, p 9. However, the Court is well aware that Milberg's entry into this litigation was predicated upon its use of paid plaintiff Seymour Lazar, who filed a false Certification with this Court stating that he had no financial interest in this litigation beyond his *pro rata* share. It has now been established that that Certification was false. As stated in Xerox' Memorandum referenced above, "it is inconceivable that a firm that committed a fraud against this Court and against the absent class members in this case would be allowed potentially to profit from that fraud by representing the very class members it deceived. Such a result would impugn the fundamental fairness and integrity of the judicial process." That Memorandum was filed on April 11, 2008. Since that time, Milberg LLP itself has agreed to plead guilty to charges of criminal conduct related to the payment of plaintiffs and to a failure to adequately investigate allegations made by the Department of Justice at the time the indictments were filed. Therefore, there can no longer be any contention that the criminal misconduct by Milberg LLP was limited to a few rogue partners, and that the firm itself was blameless and ignorant of any wrongdoing. Instead, Milberg LLP was at least recklessly indifferent to the truth or falsity of those charges, and failed to take adequate steps to ensure that the firm was not continuing in its criminal behavior.

    Because Milberg LLP must be disqualified as class counsel in this case, the lodestar claimed by that firm must be excluded from consideration as well. It would be unfair for the

12

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

other two Co-Lead Counsel firms, Berman DeValerio and Johnson & Perkinson, to reap a windfall from Milberg's disqualification by retaining the lodestar amounts billed by, but not paid to, Milberg. Instead, the beneficiaries of the disqualification should be the Class Members herein.

5. **GENERAL**

(a) Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserves the right to supplement these Objections with other and fuller objections after the Fee Request is filed.

(b) The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

(c) These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully request that this Court:

A.  Upon proper hearing, sustain these Objections;

B.  Continue the issue of attorneys' fees and expense reimbursement

13

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

for a subsequent hearing;

C.    Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

/s/ Daniel A. Silver
DANIEL A. SILVER, fed ct # 08183
Silver & Silver
Counsel for Objectors
One Liberty Square
New Britain, Connecticut 06051
860-225-3518
fax 860-348-0612
Daniel@lawsilver.com

OF COUNSEL:
Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd. #340
Cleveland Ohio 44122
Voice: (216) 831-3424
Fax:   (216) 831-6584
e-mail: efsiegel@efs-law.com
(pro hac vice application pending)

Edward W. Cochran (OH Bar 0032942)
20030 Marchmont Road
Shaker Heights, OH 44122
Telephone: 216-751-5546
Facsimile: 216-751-6630
Email: edwardcochran@adelphia.net

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2008, a copy of the foregoing Objection to Class Action Settlement and Notice of Intent to Appear was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

        s/s Daniel A. Silver
        Daniel A. Silver (ct08183)
        Silver & Silver LLP
        One Liberty Square
        New Britain, CT 06051
        phone: (860) 225-3518
        fax: (860) 348-0612
        email: Daniel@lawsilver.com

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231